**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| Liberty Property Holdings SC, LLC individually, derivatively on behalf of Renaissance Tower Horizontal Property Regime, and on behalf of a class of all others similarly situated; Azure Bleu, LLC; Edelyne Beauvais-Thomas; Jason E. Blosser; Nicole M. Blosser; Eshellah D. Calhoun; Zachary G. Calhoun; David DiMaio; Linda DiMaio; Susan H. Ferguson; Four Parts Whole, LLC; Sharon M. Hubbard; Carol A. Messenger; Jeffrey S. Palmer; Summalin, Inc.; Terry J. Tuminello; Shelley Ware; and Jonathan S. Williams, | CIVIL ACTION NO.: _____ <br><br><br><br>**COMPLAINT** |
|           Plaintiffs, | |
|    v. | |
| Jeffrey L. Richardson; William S. Spears; Brent M. Whitesell; Laurie Z. Wunderley; Madeline R. Mercer; Catherine M. Gregor; Dennis J. Sassa; Tracy A. Meadows; Peter A. Grusauskas; and William Douglas Management, Inc., | |
|           Defendants. | |

Plaintiffs Liberty Property Holdings SC, LLC ("Liberty Property"), individually, derivatively on behalf of the Renaissance Tower Horizontal Property Regime, and on behalf of a class of all others similarly situated; Azure Bleu, LLC ("Azure Bleu"); Edelyne Beauvais-Thomas ("Beauvais-Thomas"); Jason E. Blosser ("Jason Blosser"); Nicole M. Blosser ("Nicole Blosser"); Eshellah D. Calhoun ("Eshellah Calhoun"); Zachary G. Calhoun ("Zachary Calhoun"); David DiMaio; Linda DiMaio; Susan H. Ferguson ("Ferguson"); Four Parts Whole, LLC ("Four Parts");

Sharon M. Hubbard ("Hubbard"); Carol A. Messenger, also known as "Carol Kelley Messenger" ("Messenger"); Jeffrey S. Palmer ("Palmer"); Summalin, Inc. ("Summalin"); Terry J. Tuminello ("Tuminello"); Shelley Ware ("Ware"); and Jonathan S. Williams ("Williams"), (all plaintiffs together, "Plaintiffs"), by and through their undersigned counsel, complain of Defendants Jeffrey L. Richardson ("Richardson"), William S. Spears ("Spears"), Brent M. Whitesell ("Whitesell"), Laurie Wunderley ("Wunderley"), Madeline R. Mercer, also known as "Renee Cypher" ("Mercer"), Catherine M. Gregor ("Gregor"), Dennis J. Sassa ("Sassa"), Tracy A. Meadows ("Meadows"), Peter A. Grusauskas ("Grusauskas"), and William Douglas Management, Inc. ("William Douglas"), (all defendants together, "Defendants") as follows:

## INTRODUCTION

1.     In circumstances frighteningly similar to the collapse of the Champlain Towers South condominium building in Surfside, Florida in 2021, the Board of the Renaissance Tower Horizontal Property Regime (the "Regime") in Myrtle Beach, South Carolina and its management company knew for years about steadily worsening damage to structural steel components supporting the building yet failed to undertake further inspections or any repairs and allowed the damage to worsen.

2.     Like the Champlain Towers South building that collapsed, the Renaissance Tower building is a high-rise condominium building abutting the beach and Atlantic Ocean and is structurally supported by steel and concrete, and the steel has steadily corroded and weakened over time to the point that the building is now not structurally sound.

3.     Like the Champlain Towers South building that collapsed, the Board of the Regime and its management company knew for years of the structural and safety issue presented by the

corroded and weakened steel but instead chose to undertake expensive building improvement projects that did not address any safety or structural concerns.

4.     The tragic collapse of the Champlain Towers South building in June of 2021 prompted the Board of the Regime to have the corroded structural steel components evaluated again for the first time since 2018.

5.     The engineer who evaluated the structural steel components under the building in 2021 found, as expected, that the steel was substantially more corroded and weakened than in 2018, and he advised the Board that it could not continue delaying the repairs to the structural steel components.

6.     In October of 2022, the Board finally began work to repair the structural steel components under the Renaissance Tower building.

7.     On October 7, 2022, as construction contractors were removing materials from under the building and further exposing the structural steel components, the contractors observed steel that was so corroded and weakened that they called the engineer to evaluate the conditions.

8.     The engineer who inspected the steel on October 7, 2022, found the Renaissance Tower building is "not structurally sound," that some of the steel "column flanges are completely disintegrated on the outer side of the columns," and that the damaged structural components observed present "a very dangerous condition."

9.     The engineer ordered the building evacuated, and the building has remained unoccupied since with no one permitted to return.

10.     The damage to the steel structural components is extreme.







11.     The evacuation of the Renaissance Tower building left some owners who reside in their units homeless with some owners left to purchase and live from tents in a nearby campground.

12.     Some owners had their unit listed for sale and are now unable to sell or had a contract for the sale of their unit and had the buyer back out of the deal.

13.     Despite being left homeless, stuck paying for temporary housing, or deprived of income from a tenant, owners now face a more than $2 million assessment for repairs to the structural steel components plus an unknown additional assessment amount for temporary shoring necessary to make the building safe for occupants and for the expanded scope of repairs needed to address the extremely damaged condition of the steel.

14.     The Board of the Regime and its management company for years failed to inspect, maintain, or repair the structural steel components under the building.

15.     The Board of the Regime and its management company for years failed to have reserve studies performed and failed to provide sufficient reserves for the building.

16.     In 2022, the Regime had less than $1.3 million in reserves which is a grossly unreasonable amount of reserves for a 21-story, 322 unit condominium building constructed nearly forty years ago and located on the beachfront in coastal South Carolina.

17.     Due to the lack of maintenance and repairs and the grossly insufficient reserves held by the Regime, the unit owners are being forced to pay substantial assessments for repairs to the building and the assessments continue to increase given the temporary shoring and expanded steel repairs now necessary at the building.

## PARTIES, JURISDICTION, AND VENUE

18.     Plaintiff Liberty Property is a limited liability company organized in, operating

under the laws of, and operating from its principal place of business in South Carolina.

19.     Plaintiff Azure Bleu is a limited liability company organized in, operating under the laws of, and operating from its principal place of business in Maryland.

20.     Plaintiff Beauvais-Thomas is domiciled in and a citizen of Massachusetts.

21.     Plaintiffs Jason Blosser and Nicole Blosser are domiciled in and citizens of Ohio.

22.     Plaintiffs Eshellah Calhoun and Zachary Calhoun are domiciled in and citizens of South Carolina.

23.     Plaintiffs David DiMaio and Linda DiMaio are domiciled in and citizens of South Carolina.

24.     Plaintiff Ferguson is domiciled in and a citizen of North Carolina.

25.     Plaintiff Four Parts is a limited liability company organized in, operating under the laws of, and operating from its principal place of business in Florida.

26.     Plaintiff Hubbard is domiciled in and a citizen of North Carolina.

27.     Plaintiff Messenger is domiciled in and a citizen of South Carolina.

28.     Plaintiff Palmer is domiciled in and a citizen of South Carolina.

29.     Plaintiff Summalin is a corporation organized in and operating under the laws of Wyoming and operating from its principal place of business in Maryland.

30.     Plaintiff Tuminello is domiciled in and a citizen of North Carolina.

31.     Plaintiff Ware is domiciled in and a citizen of South Carolina.

32.     Plaintiff Williams is domiciled in and a citizen of South Carolina.

33.     Plaintiff Liberty owns condominium units 609, 705, 707, 1805, and 2109 in the Renaissance Tower building located at 5905 South Kings Highway in Horry County, South

Carolina ("Renaissance Tower").

34.     Liberty has owned unit 609 since it was deeded the property by deed recorded January 19, 2017.

35.     Liberty has owned units 705 and 707 since it was deeded the property by deed recorded August 13, 2020.

36.     Liberty has owned unit 1805 since it was deeded the property by deed recorded February 6, 2018.

37.     Liberty has owned unit 2109 since it was deeded the property by deed recorded February 1, 2017.

38.     Plaintiff Azure Bleu owns unit 1613 in the Renaissance Tower and has owned the unit since it was deeded the property by deed recorded July 20, 2006.

39.     Plaintiff Beauvais-Thomas owns unit 1913 in the Renaissance Tower and has owned the unit since she was deeded the property by deed recorded January 28, 2022.

40.     Plaintiffs Jason Blosser and Nicole Blosser own unit 1902 in the Renaissance Tower and have owned the unit since they were deeded the property by deed recorded March 30, 2022.

41.     Plaintiffs Eshellah Calhoun and Zachary Calhoun own unit 1506 in the Renaissance Tower and have owned the unit since they were deeded the property by deed recorded February 15, 2022.

42.     Plaintiffs David DiMaio and Linda DiMaio own unit 1911 in the Renaissance Tower and have owned the unit since they were deeded the property by deed recorded October 21, 2005.

43.     Plaintiff Ferguson owns unit 1905 in the Renaissance Tower and has owned the unit since she was deeded the property by deed recorded February 17, 2014.

44.     Plaintiff Four Parts owns condominium units 606 and 2208 in the Renaissance Tower.

45.     Four Parts has owned unit 606 since it was deeded the property by deed recorded September 18, 2020.

46.     Four Parts has owned unit 2208 since it was deeded the property by deed recorded June 7, 2021.

47.     Plaintiff Hubbard owns unit 811 in the Renaissance Tower and has owned the unit since she was deeded the property by deed recorded February 16, 2022.

48.     Plaintiff Messenger owns unit 309 in the Renaissance Tower and has owned the unit since she was deeded the property by deed recorded September 18, 2020.

49.     Plaintiff Palmer owns unit 1714 in the Renaissance Tower and has owned the unit since he was deeded the property by deed recorded December 8, 2021.

50.     Plaintiff Summalin owns unit 511 and has owned the unit since it was deeded the property by deed recorded September 18, 2018.

51.     Plaintiff Tuminello owns unit 703 in the Renaissance Tower and has owned the unit since she was deeded the property by deed recorded August 5, 2021.

52.     Plaintiff Ware owns unit 1707 in the Renaissance Tower and has owned the unit since she was deeded the property by deed recorded July 3, 2014.

53.     Plaintiff Williams owns unit 206 in the Renaissance Tower and has owned the unit since he was deeded the property by deed recorded July 3, 2017.

54.     Defendant Richardson is domiciled in and a citizen of South Carolina.

55.     Defendant Spears is domiciled in and a citizen of South Carolina.

56.     Defendant Whitesell is domiciled in and a citizen of South Carolina.

57.     Defendant Wunderley is domiciled in and a citizen of Pennsylvania.

58.     Defendant Mercer is domiciled in and a citizen of Pennsylvania.

59.     Defendant Gregor is domiciled in and a citizen of New Jersey.

60.     Defendant Sassa is domiciled in and a citizen of New Jersey.

61.     Defendant Meadows is domiciled in and a citizen of West Virginia.

62.     Defendant Grusauskas is domiciled in and a citizen of Connecticut.

63.     Defendant William Douglas is a corporation organized in, operating under the laws of, and operating from its principal place of business in North Carolina.

64.     Defendants Richardson, Spears, Whitesell, Wunderley, Mercer, Gregor, Sassa, Meadows, and Grusauskas are or were at relevant times directors on the Board of the Regime which owns real property in Myrtle Beach, South Carolina and for which the Board controls the operations, maintenance, repair, and replacement of that property.

65.     Defendants Richardson, Spears, Whitesell, Wunderley, Mercer, Gregor, Sassa, Meadows, and Grusauskas own or at relevant times owned a condominium unit in the Renaissance Tower.

66.     The Regime is a South Carolina nonprofit corporation that owns and is responsible for the maintenance and repair of the common elements of the Renaissance Tower.

67.     The claims in this action arise from and relate to real property located in Horry County, South Carolina and Defendants' decisions, acts, and omissions in their capacities as

directors on the Board of the Regime or as the management company for the Renaissance Tower.

68.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because at least one member of the Class, as defined below, is a citizen of a different state than a defendant, there are more than one hundred members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

69.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and the property that is the subject of the action is situated in this District.

## **FACTUAL BACKGROUND**

70.    The Renaissance Tower is a 21-story condominium building containing 322 residential condominium units.

71.    The Renaissance Tower is subject to and in a horizontal property regime as provided by the South Carolina Horizontal Property Act, Title 27, Chapter 31 of the South Carolina Code of Laws (the "Act.")

72.    The Regime was created by the Master Deed of The Renaissance Tower Horizontal Property Regime recorded with the Horry County Register of Deeds on November 28, 1984, at deed book 917 and page 885 (the "Master Deed").

73.    The Master Deed, as subsequently amended, remains in force and effect.

74.    The units in the Renaissance Tower were sold to Plaintiffs and the Class members subject to and remain subject to the Master Deed.

75.    Pursuant to the Master Deed, the Regime is a nonprofit corporation governed by a board of directors (the "Board").

76.     Richardson began serving as a director on the Board at some time prior to 2000 and remains on the Board.

77.     Spears began serving as a director on the Board at some time in or prior to October of 2019 and remains on the Board.

78.     Whitesell began serving as a director on the Board at some point in or between January and September of 2021 and remains on the Board.

79.     Wunderley began serving as a director on the Board at some time in or prior to October of 2019 and remains on the Board.

80.     Mercer began serving as a director on the Board at some time in October or November of 2020 and remains on the Board.

81.     Gregor began serving as a director on the Board in or prior to May of 2017 and her position on the Board ended at some time in or after January of 2020 and in or prior to October of 2020.

82.     Sassa began serving as a director on the Board at some time in or prior to October of 2019 and he resigned from his position on the Board in or around April of 2020.

83.     Meadows began serving as a director on the Board in or prior to May of 2017 and his position on the Board ended in or around 2019.

84.     Grusauskas began serving as a director on the Board in or prior to May of 2017 and his position on the Board ended in or around 2019.

85.     William Douglas served as the community manager for the Renaissance Tower and the Regime from some time prior to 2015 until 2020.

86.     As owners of units in the Renaissance Tower and as provided by the Master Deed,

Plaintiffs and the Class members are members of the Regime.

87.    Article I.8 of the Master Deed defines the Common Elements as all portions of the Renaissance Tower property that are not the Apartments.

88.    The structural components of the Renaissance Tower, including the steel components below and supporting the first floor of the building, are Common Elements and not Apartments, as provided by the Master Deed.

89.    The Master Deed makes the Regime acting through the Board responsible for the maintenance, repair, and replacement of the Common Elements and all portions of the Renaissance Tower not required to be maintained by individual owners.

90.    Article II.2 of the Master Deed requires the Board to operate the Regime in accordance with the Act, the Master Deed, the articles of incorporation of the Regime, and the by-laws included as Exhibit 3 to the Master Deed (the "By-Laws").

91.    The Board and William Douglas failed to have periodic inspections, maintenance, and repairs performed on the structural steel components under the Renaissance Tower building.

92.    The Board and William Douglas knew more than five years prior to September 1, 2022, that structural steel components under and supporting the Renaissance Tower were damaged and experiencing ongoing damage, including corrosion and weakening of the steel.

93.    The Board and William Douglas knew more than five years prior to September 1, 2022, that repairs to structural steel components below the first floor of the Renaissance Tower were necessary to avoid compromising the structural integrity of the building.

94.    The Board and William Douglas knew more than five years prior to September 1, 2022, that the corrosion to structural steel components below the first floor of the Renaissance

Tower would continue to worsen until repairs were performed.

95.     In or around 2016, the building manager for the Renaissance Tower at that time, Bobby Williams, stated to Plaintiff Ware that the steel under the building was in bad shape and needed to be repaired or replaced.

96.     Five years prior to September 1, 2022, the Board and William Douglas retained Timothy P. Donohue ("Donohue"), a professional engineer licensed in the State of South Carolina, to inspect and evaluate the condition of the structural steel components below the first floor of the Renaissance Tower.

97.     Five years prior to September 1, 2022, Donohue inspected the structural steel components below the first floor of the Renaissance Tower and reported to the Board and William Douglas that the structural steel components under the building were damaged, including corrosion and resulting reduced structural capacity of steel components, that repairs were necessary to avoid compromising the structural system supporting the Renaissance Tower, that the damage to the structural steel components would continue and worsen until repairs were performed, and that the failure to timely repair the damaged steel components would result in a further compromised structural system.

98.     In or around 2018, Donohue prepared repair drawings for repairs to the damaged structural steel components.

99.     In or around 2018, the Regime and William Douglas obtained bids from contractors for performing the repairs set out in Donohue's repair drawings.

100.     Spears stated in a meeting of members on September 1, 2022, that the Board knew the issue with the steel components existed for "quite a period of time" and that there had been

"delay in repairing the [structural steel components] on the front of the building."

101.    Donohue stated in a meeting of the members on September 1, 2022, that he observed the damage to the structural steel components under the building in 2018.

102.    Donohue stated in the September 1, 2022 meeting of the members that the nature of the damage to the structural steel components under the building is such that it will always continue to worsen until repaired.

103.    Donohue stated in the September 1, 2022 meeting of the members that "this condition under the building is problematic and getting more problematic every month of every year and I don't think we can sit here and just keep pushing it down the road."

104.    Donohue stated in the September 1, 2022 meeting that the Board had "deferred [the structural repairs] five years and we know it's getting worse."

105.    Donohue stated in the September 1, 2022 meeting of the members that the structural steel damage and repairs issue had "been percolating out there for a long time."

106.    In the September 1, 2022 meeting of the members, the Regime's attorney stated that "the timing [of the structural repairs] creates issues because we are four years removed from the initial diagnosis," and Donohue corrected the attorney that the diagnosis of the problem was made five, not four, years prior.

107.    The Board and William Douglas did not take action to monitor or periodically inspect the condition of the structural steel components.

108.    At the January 18, 2020 meeting of the Regime's Board and members and as reflected in the approved meeting minutes for that meeting, the Board reported on a "structural assessment" that was ongoing and that the "structural assessment" indicated "we have some steel

underneath the building that has deteriorated from a previous storm surge" and that repair work on the steel needed to be performed "in the near future."

109.     In August of 2020, the Board sent a newsletter to members stating the "horizontal structural steel that supports the first floor and the minor structural steel elements that transfer the first-floor loads into the foundation system are in need of repair" and that the "need for these repairs is a direct result of the structural steel being in a corrosive coastal marine environment and water infiltration from several different sources."

110.     Despite knowing of the damaged structural steel components and that the damage was worsening with the passage of time, the August 2020 newsletter states that the Board decided to delay repairing the damaged steel components and addressing the safety and structural integrity issue presented by those damages and to instead replace cooler components and a cooling tower which are not safety or structural integrity issues and were not worsening such that a delay in their replacement would result in increased repair costs.

111.     Defendants acted contrary to the professional advice of the engineer and did not undertake timely repairs of the damage to the structural steel components under the building.

112.     Defendants unreasonably delayed addressing the structural damage for five years or more with the structural damage worsening throughout the delay.

113.     Following the collapse of the Champlain Towers South building in June of 2021, the Board decided to have Donohue inspect the structural steel components again.

114.     In 2021, Donohue again inspected the condition of the structural steel components supporting the Renaissance Tower.

115.     In his 2021 inspection, Donohue found the damage to the structural steel

components below the first floor of the Renaissance Tower, including corrosion and reduced structural capacity of the steel, had significantly worsened.

116.    In 2021, Donohue again advised the Board that timely repairs to the damaged structural components were necessary to avoid compromising the structural integrity of the Renaissance Tower.

117.    After disregarding the advice of professionals for more than five years, the Board finally decided in 2021 to take action to repair the structural components of the Renaissance Tower.

118.    The Board caused the Regime to engage Donohue to develop a scope of repairs to the structural components supporting the Renaissance Tower including the damaged structural steel components.

119.    The Board caused the Regime to enter into a contract with Procon, Inc. ("Procon") to perform the structural repair work.

120.    On July 31, 2022, the Regime had less than $1.3 million in reserves.

121.    The reserves held by the Regime in 2022 were substantially less than needed to address the damage to the structural steel components under the Renaissance Tower.

122.    The reserves held by the Regime in 2022 were unreasonably low for a common interest property of its size, age, and location.

123.    As stated in the October 23, 2021 meeting minutes for a meeting of the Board, the professional accountant retained by the Regime, Wayne Fassaro, CPA, stated that the Regime needed a reserve study and larger reserves.

124.    On September 15, 2022, the Board notified the members of the Regime that the members were being assessed in total $2,075,600 for the structural repairs to be performed by

Procon (the "Structural Assessment").

125.     The Structural Assessment is imposed on the members based on the percentage of ownership represented by the type of unit owned by each member with the units divided into six residential unit types and the assessment by residential unit type ranging from $9,273.78 for the "FR2BR" unit type to $3,709.10 for the "SMSUN" unit type.

126.     On October 3, 2022, Procon began performing the structural repair work.

127.     On October 7, 2022, Procon removed sufficient materials and exposed sufficient structural steel components for Donohue to determine and state in an October 7, 2022 letter to the Board that the Renaissance Tower is "not structurally sound," that some of the steel "column flanges are completely disintegrated on the outer side of the columns," and that the damaged structural components observed present "a very dangerous condition."

128.     On October 7, 2022, Donohue ordered the building evacuated and closed due to the dangerous condition of the steel.

129.     In his October 7, 2022 letter to the Board, Donohue stated that the Renaissance Tower will require shoring before any further repair work can be performed and the scope of structural repairs must be expanded to include removal and replacement of the bottom portion of columns.

130.     On October 7, 2022, all occupants of the Renaissance Tower were evacuated from the building and have not been permitted to return.

131.     Members of the Regime have been deprived of the use and enjoyment of their units.

132.     Members of the Regime who reside in their units had to find alternative housing at great expense and inconvenience.

133.    Plaintiffs Palmer and Ware were left to purchase and live out of a tent at a nearby campground.

134.    Plaintiff Palmer had a contract in place for the sale of his unit on October 7, 2022, and after the evacuation of the building, the prospective purchaser terminated the contract and refused to proceed with the sale.

135.    On October 6, 2022, Plaintiff Ware signed an agreement with a realtor to list her unit for sale, and due to the subsequent evacuation of the building and necessary repairs, she has been unable to market or sell her unit.

136.    Members of the Regime who reside in their units have been deprived of all their personal possessions other than those they were able to pack and carry out during the approximately one-hour period provided to evacuate the building.

137.    Members of the Regime who rent their units as long-term rentals have had to find alternative housing for their tenants or forego rents they would otherwise receive, all at great expense and inconvenience.

138.    Members of the Regime who rent their units as short-term rentals have lost rental income.

139.    The units in the Renaissance Tower have lost value due to the damaged structural steel components and the evacuation of the building.

**<u>DERIVATIVE ACTION ALLEGATIONS</u>**

140.    Plaintiffs reallege the allegations in the preceding paragraphs as if fully set forth herein.

141.    Plaintiff Liberty Property is a member of the Regime and has been a member of the

Regime since it was deeded unit 609 in January of 2017.

142.    Plaintiff Liberty Property was a member of the Regime at the time of decisions, acts, and omissions by the Board and William Douglas that serve as the basis for claims in this action.

143.    Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, Plaintiff Liberty Property brings this action both individually and on behalf of the Regime.

144.    This action is not a collusive action to confer jurisdiction that the Court would otherwise lack.

145.    Defendants Richardson, Spears, Whitesell, Wunderley, and Mercer suffer from conflicts of interest and divided loyalties which preclude them from exercising independent business judgment in deciding to initiate suit and which render demand futile.

146.    Defendants comprise the majority of the current Board of the Regime, and it would be futile to demand Defendants have the Regime bring claims against themselves.

147.    The Board causing the Regime to initiate claims against Defendants Richardson, Spears, Whitesell, Wunderley, Mercer, Gregor, Sassa, Meadows, and Grusauskas would likely eliminate or negatively impact the insurance coverage otherwise applicable to cover the damages caused by the wrongful decisions, acts, and omissions of Defendants.

148.    Plaintiff Liberty Property will adequately represent the interests of the members of the Regime.

149.    Plaintiff Liberty Property is similarly situated to other members of the Regime in relation to the claims asserted herein.

150.    Plaintiff Liberty Property does not have any interests in relation to the claims

asserted herein adverse to the interests of the other members of the Regime in relation to the claims asserted herein.

151.     The Regime was damaged by Defendants in the amounts the Regime paid and will pay for repairs to the steel structural components under the first floor of the Renaissance Tower, the amounts the Regime paid or will pay for temporary shoring, and any other amounts the Regime paid or will pay due to the lack of inspections, maintenance, and repairs to the structural steel components under the Renaissance Tower.

## CLASS ACTION ALLEGATIONS

152.     Plaintiffs reallege the allegations in the preceding paragraphs as if fully set forth herein.

153.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Liberty Property brings this action both individually and on behalf of all other similarly situated persons (the "Class").

154.     The Class is defined as: All persons or entities who owned a residential condominium unit in the Regime on October 7, 2022.   Excluded from the Class are: (a) any Judge presiding over this action and members of their families; (b) Defendants and their spouses, parents, children, siblings, and any entity for which a majority ownership interest is held alone or in combination by Defendants and their spouses, parents, children, and siblings; and (c) all persons who properly execute and file a timely request for exclusion from the Class in accordance with the orders of this Court and the Federal Rules of Civil Procedure.

155.     The Class consists of approximately 300 members given that there are 322 residential units in the Renaissance Tower, many units are owned by two or more people, some

unit owners own more than one unit, and some units are owned by Defendants.

156.    The approximately 300 members of the Class is so numerous that joinder of all members is impracticable.

157.    Questions of law and fact common to the Class exist as to all members of the Class and predominate over any questions affecting only individual members of the Class.    The common legal and factual issues include:

a.    Whether Defendants Richardson, Spears, Whitesell, Wunderley, Mercer, Gregor, Sassa, Meadows, and Grusauskas breached their fiduciary duties by failing to inspect, maintain, and repair the steel structural components under the first floor of the Renaissance Tower;

b.    Whether Defendants Richardson, Spears, Whitesell, Wunderley, Mercer, Gregor, Sassa, Meadows, and Grusauskas breached their fiduciary duties by failing to repair structural damage and prevent further damage to the steel structural components under the first floor of the Renaissance Tower;

c.    Whether Defendants Richardson, Spears, Whitesell, Wunderley, Mercer, Gregor, Sassa, Meadows, and Grusauskas breached their fiduciary duties by permitting damage to the steel structural components under the first floor of the Renaissance Tower to continue;

d.    Whether Defendants Richardson, Spears, Whitesell, Wunderley, Mercer, Gregor, Sassa, Meadows, and Grusauskas breached their fiduciary duties by failing to obtain a reserve study;

e.    Whether Defendants Richardson, Spears, Whitesell, Wunderley, Mercer,

Gregor, Sassa, Meadows, and Grusauskas breached their fiduciary duties by failing to maintain reasonably sufficient reserves;

f. Whether Defendants Richardson, Spears, Whitesell, Wunderley, Mercer, Gregor, Sassa, Meadows, and Grusauskas breached the Master Deed by failing to inspect, maintain, repair, or replace the steel structural components under the first floor of the Renaissance Tower;

g. Whether Defendants were negligent, careless, reckless, and grossly negligent in failing to inspect, maintain, and repair the structural steel components under the first floor of the Renaissance Tower;

h. Whether Defendants were negligent, careless, reckless, and grossly negligent in failing to promptly repair damage to the steel structural components under the first floor of the Renaissance Tower;

i. Whether Defendants were negligent, careless, reckless, and grossly negligent in failing to prevent further damage to the steel structural components under the first floor of the Renaissance Tower;

j. Whether Defendants were negligent, careless, reckless, and grossly negligent in permitting further damage to the steel structural components under the first floor of the Renaissance Tower;

k. Whether Defendants were negligent, careless, reckless, and grossly negligent in failing to monitor or otherwise periodically inspect the damaged structural steel components;

l. Whether Defendants were negligent, careless, reckless, and grossly negligent

in failing to obtain a reserve study; and

m. Whether Defendants were negligent, careless, reckless, and grossly negligent in failing to maintain reasonably sufficient reserves.

158.    Plaintiff Liberty Property's claims are typical of the claims of the Class members, as all such claims arise out of Liberty Property's and the Class members' status as owners of residential condominiums in the Renaissance Tower and resulting membership in the Regime.

159.    Plaintiff Liberty Property is not aware of any interest it has in relation to the claims asserted herein that is adverse to or different from the interests of the Class members generally.

160.    Plaintiff Liberty Property will fairly and adequately represent and protect the interests of the members of the Class.

161.    Plaintiffs' counsel are competent and experienced in litigating class actions.

162.    This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members and because a class action is superior to any other available method for the resolution of this controversy since individual joinder of all members of the Class is impracticable.   Should individual Class members be required to bring separate actions, this Court would be subjected to a multiplicity of lawsuits which would unnecessarily burden the Court and create the risk of inconsistent rulings and contradictory judgments and which would not offer any improvement in the fairness or efficiency of the adjudication of this controversy.   In contrast to proceeding on a case-by-case basis with individual plaintiffs, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single Court.

163.    The Class members were or will be damaged by Defendants in the amounts the Class members paid and will pay in assessments for repairs to the steel structural components under the first floor of the Renaissance Tower including the $2,075,600 for the Structural Assessment, for temporary shoring, and for any other assessments caused by the lack of inspections, maintenance, and repairs to the structural steel components under the Renaissance Tower; the expenses incurred in vacating their units and obtaining temporary housing for themselves or their tenants; the rental income lost; the value of the lost use and enjoyment of their condominium units; and the lost value of their units.

## FOR A FIRST CAUSE OF ACTION
### Breach of Fiduciary Duty
**(As to Defendants Richardson, Spears, Whitesell, Wunderley, Mercer, Gregor, Sassa, Meadows, and Grusauskas)**

164.    Plaintiffs reallege the allegations in the preceding paragraphs as if fully set forth herein.

165.    As directors on the Board of the Regime, Defendants owed fiduciary duties to the Regime and its members.

166.    As directors on the Board of the Regime, Defendants owed duties to the Regime and its members to discharge their duties as directors with the care an ordinarily prudent person in a like position would exercise under similar circumstances.

167.    Defendants disregarded the advice of professionals retained to advise Defendants and did so without any justification, much less reasonable justification.

168.    Defendants breached their fiduciary duties to the Regime and its members.

169.    Defendants failed to discharge their duties as directors with the care an ordinarily prudent person in a like position would exercise under similar circumstances.

170.    Defendants failed to act in the manner an ordinarily prudent director in a like position would under similar circumstances by failing to inspect, maintain, and repair the structural steel components under the Renaissance Tower.

171.    Defendants failed to act in the manner an ordinarily prudent director in a like position would under similar circumstances by failing to repair the steel structural components under the first floor of the Renaissance Tower and prevent further structural damage to the Renaissance Tower.

172.    Defendants failed to act in the manner an ordinarily prudent director in a like position would under similar circumstances by permitting damage to the steel structural components under the first floor of the Renaissance Tower to continue.

173.    Defendants failed to act in the manner an ordinarily prudent director in a like position would under similar circumstances by failing to monitor or otherwise periodically inspect the structural steel components despite knowing of progressively worsening damage to the structural steel components.

174.    Defendants failed to act in the manner an ordinarily prudent director in a like position would under similar circumstances by failing to obtain a reserve study and failing to maintain reasonably sufficient reserves for the Regime.

175.    Defendants were grossly negligent and incompetent in the foregoing breaches of their fiduciary duties.

176.    The Regime, Plaintiffs, and the Class members were damaged as the direct, foreseeable, and proximate result of Defendants' breaches of their fiduciary duties to the Regime and its members.

177.    The Regime was damaged by Defendants in the amounts the Regime paid and will pay for repairs to the steel structural components under the first floor of the Renaissance Tower, the amounts the Regime paid or will pay for temporary shoring, and any other amounts the Regime paid or will pay due to the lack of inspections, maintenance, and repairs to the structural steel components under the Renaissance Tower.

178.    Plaintiffs and the Class members were or will be damaged by Defendants in the amounts they paid and will pay in assessments for repairs to the steel structural components under the first floor of the Renaissance Tower including the $2,075,600 for the Structural Assessment, for temporary shoring, and for any other assessments caused by the lack of inspections, maintenance, and repairs to the structural steel components under the Renaissance Tower; the expenses incurred in vacating their units and obtaining temporary housing for themselves or their tenants; the rental income lost; the value of the lost use and enjoyment of their condominium units; and the lost value of their units.

<u>FOR A SECOND CAUSE OF ACTION</u>
**Breach of Covenants and By-Laws**
**(As to Defendants Richardson, Spears, Whitesell, Wunderley, Mercer, Gregor, Sassa, Meadows, and Grusauskas)**

179.    Plaintiffs reallege the allegations in the preceding paragraphs as if fully set forth herein.

180.    As covenants running with the land, the Master Deed and the incorporated By-Laws are contractual in nature and their breach gives rise to a claim for breach of contract.

181.    Section 27-31-170 of the South Carolina Code of Laws provides that owners of units in a horizontal property regime must strictly comply with the master deed and by-laws for

the horizontal property regime.

182.    Section 27-31-170 provides that an owner's failure to comply with the master deed and by-laws for a horizontal property regime makes such owner liable for damages caused by such failure.

183.    Section 27-31-170 provides that the association governing a horizontal property regime or an owner in the regime may bring a civil action to recover damages caused by an owner's failure to strictly comply with the master deed and by-laws for the horizontal property regime.

184.    Article XIX.8 of the Master Deed provides that in addition to the remedies provided in the Act, the Regime may bring an action against an owner for violation of the Act, the Master Deed, or the By-Laws and that where the owner's violation was willful or deliberate, the owner must pay the Regime's attorney's fees.

185.    Article II.1 of the Master Deed requires the Board to maintain, repair, and replace the Common Elements.

186.    Article XII.6 of the Master Deed requires the Board to maintain, repair, and replace the Common Elements and all portions of the Renaissance Tower not required to be maintained, repaired, or replaced by the individual unit owners.

187.    Defendants failed to inspect, maintain, repair, and replace the steel structural components under the first floor of the Renaissance Tower.

188.    Defendants violated the Master Deed by failing to inspect, maintain, repair, and replace the steel structural components under the first floor of the Renaissance Tower.

189.    The Regime was damaged by Defendants in the amounts the Regime paid and will pay for repairs to the steel structural components under the first floor of the Renaissance Tower,

the amounts the Regime paid or will pay for temporary shoring, and any other amounts the Regime paid or will pay due to the lack of inspections, maintenance, and repairs to the structural steel components under the Renaissance Tower.

190.    Plaintiffs and the Class members were or will be damaged by Defendants in the amounts they paid and will pay in assessments for repairs to the steel structural components under the first floor of the Renaissance Tower including the $2,075,600 for the Structural Assessment, for temporary shoring, and for any other assessments caused by the lack of inspections, maintenance, and repairs to the structural steel components under the Renaissance Tower; the expenses incurred in vacating their units and obtaining temporary housing for themselves or their tenants; the rental income lost; the value of the lost use and enjoyment of their condominium units; and the lost value of their units.

191.    Plaintiffs are entitled to an award of their attorney's fees.

### FOR A THIRD CAUSE OF ACTION
**Negligence and Gross Negligence**
**(As to All Defendants)**

192.    Plaintiffs reallege the allegations in the preceding paragraphs as if fully set forth herein.

193.    As directors on the Board of the Regime, Defendants Richardson, Spears, Whitesell, Wunderley, Mercer, Gregor, Sassa, Meadows, and Grusauskas owed duties to the Renaissance Horizontal Property Regime and its members to exercise due care in the governance, management, operations, maintenance, and repair of the Renaissance Tower and the Regime.

194.    As the manager for the Renaissance Tower and the Regime, William Douglas owed duties to the Regime and its members to exercise due care in the management, operations,

maintenance, and repair of the Renaissance Tower and the Regime.

195.     Defendants were negligent, careless, reckless, and grossly negligent in failing to exercise due care in the governance, operations, management, maintenance, and repair of the Renaissance Tower and the Regime.

196.     Defendants' failure to exercise due care in the governance, operations, management, maintenance, and repair of the Renaissance Tower and the Regime includes failing to inspect, maintain, and repair the structural steel components under the Renaissance Tower; failing to promptly repair the steel structural components under the Renaissance Tower, failing to prevent further damage to the steel structural components under the Renaissance Tower, permitting further structural damage to the steel structural components under the Renaissance Tower, failing to monitor or otherwise periodically inspect the damaged structural steel components, failing to obtain a reserve study, and failing to maintain reasonably sufficient reserves.

197.     The Regime, Plaintiffs, and the Class members were damaged as the direct, foreseeable, and proximate result of Defendants' negligence and gross negligence.

198.     The Regime was damaged by Defendants in the amounts the Regime paid and will pay for repairs to the steel structural components under the first floor of the Renaissance Tower, the amounts the Regime paid or will pay for temporary shoring, and any other amounts the Regime paid or will pay due to the lack of inspections, maintenance, and repairs to the structural steel components under the Renaissance Tower.

199.     Plaintiffs and the Class members were or will be damaged by Defendants in the amounts they paid and will pay in assessments for repairs to the steel structural components under the first floor of the Renaissance Tower including the $2,075,600 for the Structural Assessment,

for temporary shoring, and for any other assessments caused by the lack of inspections, maintenance, and repairs to the structural steel components under the Renaissance Tower; the expenses incurred in vacating their units and obtaining temporary housing for themselves or their tenants; the rental income lost; the value of the lost use and enjoyment of their condominium units; and the lost value of their units.

200.     Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, Plaintiffs demand a jury trial and pray for judgment against Defendants for actual and punitive damages, attorney's fees, and for such other and further relief as this Court deems just and proper.

THE STEINBERG LAW FIRM, L.L.P.
P.O. Box 2670
Summerville, SC 29485
(843) 871-6522 - office
(843) 871-8565 - facsimile


By: _____s/Elliotte Quinn_____
          F. Elliotte Quinn IV
          Fed. Bar No.: 12563
          SC Bar No.: 100450
          equinn@steinberglawfirm.com

          Rachel Igdal
          Fed. Bar No.: 12775
          SC Bar No.: 102744
          rigdal@steinberglawfirm.com

          *Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### FLORENCE DIVISION

| | |
|---|---|
| Liberty Property Holdings SC, LLC individually, derivatively on behalf of Renaissance Tower Horizontal Property Regime, and on behalf of a class of all others similarly situated; Azure Bleu, LLC; Edelyne Beauvais-Thomas; Jason E. Blosser; Nicole M. Blosser; Eshellah D. Calhoun; Zachary G. Calhoun; David DiMaio; Linda DiMaio; Susan H. Ferguson; Four Parts Whole, LLC; Sharon M. Hubbard; Carol A. Messenger; Jeffrey S. Palmer; Summalin, Inc.; Terry J. Tuminello; Shelley Ware; and Jonathan S. Williams, <br><br>                Plaintiffs, <br><br> v. <br><br> Jeffrey L. Richardson; William S. Spears; Brent M. Whitesell; Laurie Z. Wunderley; Madeline R. Mercer; Catherine M. Gregor; Dennis J. Sassa; Tracy A. Meadows; Peter A. Grusauskas; and William Douglas Management, Inc., <br><br>                Defendants. | CIVIL ACTION NO.: _____ <br><br><br> **VERIFICATION OF COMPLAINT BY LORRAINE LUONGO** |

PERSONALLY APPEARED before me Lorraine Luongo, who being duly sworn, deposes and says that she is the sole member and manager of Liberty Property Holdings SC, LLC, that she has read the Complaint, that she verifies the Complaint, and that the facts set forth in the Complaint are true to the extent of her personal knowledge and she otherwise believes them to be true based upon information and belief.

This _13_ day of October, 2022.

Page **33** of **34**

Sworn by: _Lorraine Luongo_
Lorraine Luongo

SWORN to before me this _13_ day of October, 2022.

_Justin Harding_
NOTARY PUBLIC FOR SOUTH CAROLINA
My commission expires: _01-26-2030_

Page **34** of **34**