# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Liberty Property Holdings SC, LLC individually, derivatively on behalf of Renaissance Tower Horizontal Property Regime, and on behalf of a class of all other similarly situated; Azure Bleu, LLC; Edelyne Beauvais-Thomas; Jason E. Blosser; Nicole M. Blosser; Eshellah D. Calhoun; Zachary G. Calhoun, David DiMaio; Linda DiMaio; Susan H. Ferguson; Four Parts Whole, LLC; Sharon M. Hubbard; Carol A. Messenger; Jeffrey S. Palmer; Summalin, Inc.; Terry J. Tuminello; Shelley Ware; and Jonathan S. Williams,<br><br>          Plaintiffs.<br><br>v.<br><br>Jeffrey L. Richardson; William S. Spears; Brent M. Whitesell; Laurie Z. Wunderley; Madeline R. Mercer; Catherine M. Gregor; Dennis J. Sassa; Tracy A. Meadows; Peter A. Grusauska; and William Douglas Management, Inc.<br><br>          Defendants. | CASE NO. 4:22-CV-03556-RBH<br><br><br><br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants collectively submit this memorandum of law in support of their motion to dismiss the Complaint filed by Plaintiffs in its entirety.

## STATEMENT OF FACTS

Renaissance Tower is an oceanfront, residential high-rise in Myrtle Beach. Plaintiffs are a group of current unit-owners at Renaissance Tower. Plaintiffs allege that the steel supporting the structure of Renaissance Tower has corroded over time, rendering the building unsound.

(**Complaint, ¶ 2**). Plaintiffs allege that all residents were evacuated from Renaissance Tower effective October 7, 2022 on the recommendation of a professional engineer in a letter dated the same day, and that the residents have not been allowed to return since. (**Complaint, ¶¶ 129-130**).

As Defendants in this case, Plaintiffs named nine current or former members of the Board of Directors for the Renaissance Tower Horizontal Property Regime ("Director Defendants"), along with Renaissance Tower's former property management company ("William Douglas"). The basis of this lawsuit is Plaintiffs' allegation that the Director Defendants and William Douglas should have initiated repairs to Renaissance Tower's steel structure sooner. As their specific causes of action, Plaintiffs allege that the Director Defendants breached their fiduciary duties as directors, breached the Regime's covenants and bylaws, and were negligent in the performance of their duties as directors. Plaintiffs also allege that William Douglas was negligent in the performance of its duties as property manager, presumably because William Douglas similarly did not initiate repairs during its time as property manager.

Plaintiffs' alleged damages relate to the expenses necessary for and attendant to the structural repairs at Renaissance Tower. Specifically, Plaintiffs complain of an assessment imposed on all Renaissance Tower homeowners (who are also "Members" of the Regime) to cover the cost of the structural repairs. (*See, e.g.*, **Complaint ¶ 178**). Plaintiffs also complain of their unspecified costs and/or lost profits associated with Members' inability to live in, rent out, and/or convey their units while Renaissance Tower undergoes structural repairs. *Id.*

For the reasons set forth in this memorandum, Plaintiffs' causes of action against the Defendants fail as a matter of law, and the Complaint should be dismissed in its entirety.

**STANDARD OF REVIEW**

The facts in the Complaint are viewed in the light most favorable to the plaintiffs. *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 554 (4th Cir. 2013). However, the court need not accept the plaintiff's legal conclusions regarding those facts. *Id.* To survive a motion to dismiss pursuant to Rule 12(b)(6), FRCP, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [its] claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (internal quotation marks and alterations omitted).

The plausibility standard requires a plaintiff to demonstrate "more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "It requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the plausibility of entitlement to relief.'" *Vitol*, 708 F.3d at 543 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

In evaluating a motion to dismiss, "the court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice." *Hand v. SunTrust Bank, Inc.*, No. 6:11-CV-00501-JMC, 2012 WL 3834859, at *2 (D.S.C. Sept. 4, 2012) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). "[A court] may consider documents attached to the complaint...as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic...." *Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

**ARGUMENT**

I.   *Director Defendants are Immune from Suit*

South Carolina law protects directors of non-profit corporations from liability for their actions or inactions in the performance of their directorial duties in two important ways.

<u>First</u>, under the South Carolina Nonprofit Corporation Act ("Non-Profit Act"), unless the director violates the duty of loyalty, intentionally violates the law, or acts in bad faith, the director is immune from suit for monetary damages. Section 33-31-202(b) of the Non-Profit Act states, unless provided otherwise in the non-profit's articles of incorporation, "no director of the corporation is personally liable for monetary damages for breach of any duty to the corporation or members." S.C. Code Ann. § 33-31-202(b). The immunity in section 33-31-202(b) extends to grossly negligent conduct as well. *See* S.C. Reporter's Comments, S.C. Code Ann. § 33-31-202 ("Grossly negligent conduct is protected by [the immunity in section 33-31-202(b)]."). The South Carolina Reporters' Comments state, "[t]he philosophy behind this protection is that most nonprofit corporate directors are volunteers serving at no or nominal compensation." *Id*. However, the immunity in section 33-31-202(b) does not "eliminate or limit the liability of a director: (1) for any breach of the director's duty of loyalty to the corporation or its members; (2) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law . . . ." *Id.*

<u>Second</u>, decisions of non-profit directors are protected by the Business Judgment Rule ("BJR"). The Non-Profit Act provides that non-profit directors must discharge their duties as director "(1) in good faith; (2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) in a manner the director reasonably believes to be in the best interests of the corporation." S.C. Code Ann. § 33-31-830(a). If a director does not

discharge his duties in conformity with section 830(a), the Court ***only then*** evaluates the director's decisions under the BJR. *See Dockside Ass'n, Inc. v. Detyens*, 291 S.C. 214, 216, 352 S.E.2d 714, 716 (1987) (In an action taken by the governing board of a non-profit, "the governing board is entitled to have the validity of its *intra vires* action tested by the [BJR]"); *Fisher v. Shipyard Vill. Council of Co-Owners, Inc.*, 409 S.C. 164, 180, 760 S.E.2d 121, 129 (Ct. App. 2014), *aff'd as modified*, 415 S.C. 256, 781 S.E.2d 903 (2016) ("In a dispute between the directors of a homeowners association and aggrieved homeowners, the conduct of the directors should be judged by the 'business judgment rule' . . ."); *see also* S.C. REPORTER'S COMMENTS, S.C. Code Ann. § 33-31-830 ("If a director has met the standards of section 8.30, there is no need to apply the business judgment rule."). "Under the [BJR], a court will not review the business judgment of a corporate governing board when it acts within its authority and it acts without corrupt motives and in good faith." *Kuznik v. Bees Ferry Assocs.*, 342 S.C. 579, 599, 538 S.E.2d 15, 25 (Ct. App. 2000).

These provisions of the Non-Profit Act make clear that a non-profit director is immune from judicial review of his or her business decisions and from liability for monetary damages ***unless*** a plaintiff can show that the director acted in bad faith, engaged in intentional misconduct, or violated the duty of loyalty. Here, Plaintiffs do not once allege the Director Defendants acted in bad faith, engaged in intentional misconduct, or violated their duties of loyalty. Plaintiffs allege numerous times that the Director Defendants did not exercise the care that an ordinarily prudent person in a like position would exercise (*see, e.g.*, **Complaint, ¶¶ 169-174**) and that the Director Defendants were grossly negligent (*see, e.g.*, **Complaint, ¶¶ 175, 195**). But these allegations are insufficient to defeat the Director Defendants' BJR protection and immunity from liability under the Non-Profit Act. Accordingly, the Court should dismiss the causes of action against the Director

Defendants for breach of fiduciary duty and negligence in their capacities as directors of the Regime.

Additionally, Plaintiffs attempt to bring a cause of action against the Director Defendants for violating the covenants and bylaws applicable to all Members of the Regime. (**Complaint, ¶¶ 184-188**). But the only allegations Plaintiffs make against the Director Defendants relate to their activities as directors of the Regime. (**Complaint, ¶ 67**). There are no allegations supporting a cause of action against the Director Defendants in their personal capacities as general Members of the Regime. Accordingly, the Director Defendants are protected by the BJR and are immune from liability under this cause of action because there is no allegation that they acted in bad faith or were disloyal in performing their duties as directors.

For these reasons, this Court should dismiss Plaintiffs' three causes of action against the Director Defendants.

## II.     All of Plaintiffs' Claims are Time-Barred under the Applicable Statute of Limitations

Even if the Director Defendants could potentially be liable to Plaintiffs for their actions as directors of the Regime, Plaintiffs failed to bring their claims against the Director Defendants within the necessary timeframe under the Non-Profit Act. Similarly, Plaintiffs failed to bring their claim against William Douglas within the general statute of limitations ("SOL") for negligence actions.

### a.  Director Defendants

Under the Non-Profit Act, an action against a non-profit director for failure to perform his or her duties "must be commenced before the ***sooner of*** (1) three years after the failure complained of **or** (ii) two years after the harm complained of is, or reasonably should have been, discovered." S.C. Code Ann. § 33-31-830(f) (emphasis added) (hereinafter the "Non-Profit Act SOL"). With

regard to the "discovery rule" incorporated into the second prong of the Non-Profit Act SOL, South Carolina courts have found that "a cause of action accrues for purposes of the statute of limitations when a plaintiff ***has notice that he might have a remedy for a harm***." *Rumpf v. Mass. Mut. Life Ins. Co.*, 357 S.C. 386, 394, 593 S.E.2d 183, 187 (Ct. App. 2004) (emphasis added). "The statute runs from the date the injured party either knows or should have known by the exercise of ***reasonable diligence*** that a cause of action arises from the wrongful conduct." *Id.* (emphasis added). The South Carolina Supreme Court has held that "reasonable diligence" means "that the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party might exist." *Id.* at 394-95, 593 S.E.2d at 187. (citing *Dean v. Ruscon Corp.*, 321 S.C. 360, 363-64, 468 S.E.2d 646, 647 (1996)). In other words, "whether the particular plaintiff actually knew he had a claim is not the test." *Rumpf*, 357 S.C. at 395, 593 S.E.2d at 187.

Plaintiffs do not set forth a coherent timeline for the events giving rise to this lawsuit, nor do the Plaintiffs allege with any specificity when the alleged breaches/harms occurred or when Plaintiffs learned of them. Below is a brief recitation of Plaintiffs' relevant allegations:

1) "The Board and William Douglas knew more than five years prior to September 1, 2022, that structural steel components under and supporting the Renaissance Tower were damaged and experiencing ongoing damage, including corrosion and weakening of the steel." (**Complaint, ¶ 92**).

2) "In or around 2018, the Regime and William Douglas obtained bids from contractors for performing the repairs set out in [the engineer's] repair drawings." (**Complaint, ¶ 99**).

3) "At the January 18, 2020 meeting of the Regime's Board and members and as reflected in the approved meeting minutes for that meeting, the Board reported on a 'structural assessment' that was ongoing and that the 'structural assessment' indicated "we have some steel underneath the building that has deteriorated from a previous storm surge" and that repair work on the steel needed to be performed 'in the near future.'" (**Complaint, ¶ 108**).

4) "In August of 2020, the Board sent a newsletter to members stating 'the horizontal steel structure that supports the first floor and the minor structural steel elements that transfer the first-floor loads into the foundation system are in need of repair' and that the 'need for these repairs is a direct result of the structural steel being in a corrosive coastal marine environment . . . .'" (**Complaint, ¶ 109**).

5) "Despite knowing of the damaged structural steel components and that the damage was worsening with the passage of time, the August 2020 newsletter states that the Board decided to delay repairing the damaged steel components . . . ." (**Complaint, ¶ 110**).

Plaintiffs do not allege why the Regime did not move forward with the bids for repairs in 2018. Presumably the Members were aware of the need for repairs, the bids, and the Board's ultimate failure to act in 2018 and that is why these allegations are included in the Complaint. Accordingly, this action accrued in 2018 when the Plaintiffs discovered or should have discovered through reasonable diligence that they may have a remedy for an (alleged) harm. By waiting until October 13, 2022, Plaintiffs filed the action well past the Non-Profit Act SOL.

Even reading Plaintiffs' allegations more charitably, the Members were *at the latest* made aware in the August 2020 newsletter that repairs were needed and that the Board had elected to delay said repairs. (**Complaint, ¶¶ 109-110**). To the extent the delayed repairs constitute an

actionable harm (as Plaintiffs allege), the August 2020 newsletter provided notice to the Members that they might have a remedy for a harm (*e.g.*, disputing the Board's decision by making demand and/or initiating a lawsuit to compel action). Accepting the "theory" of Plaintiffs' lawsuit as true, a person of common experience who exercised reasonable diligence would have known in August 2020 that repairs to Renaissance Tower were necessary at some point in the near future and that there could be some risk of delaying repairs. Accordingly, the Non-Profit SOL of two-years from discovery ran through August 2022 and Plaintiffs were too late in filing this lawsuit.

   **b. *William Douglas***

South Carolina law states that "an action upon a contract, obligation, or liability, express or implied" must be filed within three years. S.C. Code § 15-3-530(1) ("Negligence SOL"). "In determining when a cause of action arose under section 15-3-530, [South Carolina courts] apply the 'discovery rule.'" *Rumpf*, 357 S.C. at 394, 593 S.E.2d at 187; *see supra*, Section II.A. for discussion of relevant discovery rule case law and Plaintiffs' alleged timeline of events.

Plaintiffs filed this lawsuit on October 13, 2022, which means that the action must have accrued against William Douglas no earlier than October 13, 2019 under the Negligence SOL. Plaintiffs allege that William Douglas received a report from the professional engineer "five years prior to September 1, 2022" and that William Douglas obtained bids from contractor to perform the repairs "in or around 2018." (**Complaint, ¶¶ 97, 99**). Again, based on the timeline alleged in the Complaint, Plaintiffs knew or should have known about the need for repairs and William Douglas' failure to move forward with the bids for repairs in 2018 (to the extent William Douglas had any control over whether the Board moved forward with repairs, which William Douglas denies). Accordingly, any potential action against William Douglas for negligence would have

accrued in 2018 and run through 2021. As such, Plaintiffs missed their window to bring an action against William Douglas.

### III.     Plaintiffs' Derivative Claims Fail to Meet the Federal Pleading Requirements

Plaintiffs assert all three causes of action as both direct and derivative claims. Under Rule 23.1, FRCP, shareholders of a corporation may bring a derivative action to "enforce a right that the corporation or association may properly assert but has failed to enforce." Defendants need not address whether any of Plaintiffs' claims are appropriately pled as derivative in nature under South Carolina law because Plaintiffs failed to meet the pleading requirements under Rule 23.1, FRCP.

#### a.   *No Pleading of Demand and Insufficient Pleading of Demand Futility*

Rule 23.1(b)(3), FRCP requires a plaintiff to "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors . . . and, if necessary, from the shareholders or members; and, (B) the reasons for not obtaining the action or not making the effort." "In evaluating a derivative claim, a federal court must determine the adequacy of the pleading under federal law but determine the sufficiency of pre-suit demand under the substantive law of the state of incorporation . . . ." *Star v. TI Oldfield Dev., LLC*, 962 F.3d 117, 134 (4th Cir. 2020) (citing *Kamen v. Kemper Fin. Servs.*, Inc., 500 U.S. 90, 108-109 (1991)). For purposes of evaluating the sufficiency of the pleading under federal law, this Court has stated "when a derivative plaintiff seeks to usurp the board's authority to decide whether the corporation should pursue legal claims, the plaintiff must meet a ***significantly heightened*** pleading standard." *In re World Acceptance Corp. Derivative Litig.*, No. 6:15-cv-02796-MGL, 2017 WL 770539, at *6 (D.S.C. Feb. 28, 2017) (emphasis added).

For purposes of evaluating the pre-suit demand, the Fourth Circuit found that "[u]nder South Carolina law, a demand must at a minimum identify the alleged wrongdoers, describe the

factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief." *Star*, 962 F.3d at 134 (citing *Carolina First Corp. v. Whittle*, 343 S.C. 176, 189, 539 S.E.2d 402, 409-410 (Ct. App. 2000)). If a plaintiff did not issue a demand to the directors, and instead alleges that demand would have been futile, "[t]he South Carolina Supreme Court and South Carolina Court of Appeals have indicated Delaware law is persuasive in assessing demand futility." *In re SCANA Corp. Derivative Litig.*, No. 3:17-3166-MBS, 2018 WL 341813, at *3 (D.S.C. June 27, 2018). Under Delaware law, "a conscious decision to refrain from acting may nonetheless be a valid exercise of business judgment and enjoy the protections of the rule." *Aronson v. Lewis*, 473 A.2d 805, 813 (Del. 1984). In such a situation where "a plaintiff challenges a specific board decision, the court must determine 'whether, under the particularized facts alleged, a reasonable doubt is created that a majority of the directors: (1) are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.'" *In re World Acceptance Corp. Derivative Litig.*, 2017 WL 770539 at *7 (quoting *Aronson*, 473 A.2d at 814) (internal quotations omitted) (hereinafter the "*Aronson* Test").

To determine directorial independence and disinterestedness under the first prong on of the *Aronson* Test, "the court reviews the factual allegations to decide whether they raise a reasonable doubt, as a threshold matter, that the protections of the [BJR] are available to the Board." *Aronson*, 473 A.2d at 815; *see Dockside*, 291 S.C. at 217, 352 S.E.2d at 716 (Under South Carolina's BJR, "a court will not review the business judgment of a corporate governing board when it acts within its authority and it acts without corrupt motives and in good faith."). The *Aronson* court noted "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors, although in **rare** cases a transaction may be ***so egregious*** on its face that the board approval cannot meet the test of

business judgment, and a substantial likelihood of director liability therefore exists." 473 A.2d at 815 (emphasis added). Assuming a plaintiff does not meet the first prong of the *Aronson* Test, the court must assess under the second prong whether "a plaintiff has alleged facts with particularity which, taken as true, support a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment. Only in that context is demand excused." *Id.*

Here, Plaintiffs do not allege making any demand of the Director Defendants, instead alleging that demand would have been futile for two seemingly interrelated reasons: (1) "Defendants . . . suffer from conflicts of interest and divided loyalties which preclude them from exercising independent business judgment in deciding to initiate suit . . .", and (2) "Defendants comprise the majority of the current Board of the Regime, and it would be futile to demand Defendants have the Regime bring claims against themselves." (**Complaint, ¶¶ 145-146**).

As an initial matter, Plaintiffs' allegations of futility do not meet the heightened pleading standard because they do not state ***with particularity*** why the Director Defendants "suffer from conflicts of interest and divided loyalties." (**Complaint, ¶ 145**). Not only does this pleading fail to allege futility with particularity, Plaintiffs' logic also misses the mark.

The necessary pre-suit demand in this case would have been for Plaintiffs to demand that the Board move forward with repairs in or after August 2020 (*i.e.*, the latest date that Plaintiffs were alerted repairs would be necessary based on Plaintiffs' alleged timeline). Plaintiffs do not allege that they ***ever*** demanded the Board take any action, much less that such demand was refused by Director Defendants. And Plaintiffs do not explain why it would have been futile to demand that the Board initiate repairs sooner. Instead, Plaintiffs merely decided ***in their own judgment***, after an engineer recommended evacuating Renaissance Tower on October 7, 2022, that the Board

should have made a different decision at some point years earlier.[1] Of course, hindsight is 20/20. However, Plaintiffs had notice of the Board's decisions to delay commencing repairs in 2018 and 2020 and did not allege why issuing a demand to the Board for action at those times would have been futile.

Additionally, Plaintiffs fail to allege why the Director Defendants' decision to delay repairs was so egregious as to undermine the presumption that the board is entitled to protection under the BJR. Plaintiffs did not allege bad faith or that the Board acted *ultra vires*. Plaintiffs merely repeatedly allege that that the Director Defendants did not "act in the manner an ordinarily prudent director in a position would under similar circumstances." *See, e.g.*, **Complaint ¶¶ 170-175**. While Director Defendants disagree with Plaintiffs' allegations and assert they are inconsistent within the four corners of the Complaint,[2] even if taken as true and viewed in the light most favorable to the Plaintiffs, these conclusory allegations are insufficient under the heightened pleading standard to overcome the presumption that the Director Defendants are entitled to protection under the BJR. As such, Plaintiffs are not excused from making demand prior to initiating a derivative suit.

With regard to William Douglas, Plaintiffs make no allegation as to why a pre-suit demand that the Board initiate a suit against William Douglas for its purported negligence would have been futile. Plaintiffs allege that William Douglas' services terminated in 2020, *see* **Complaint, ¶ 85**, and there is no allegation that any of the Director Defendants had an interest in William Douglas or lacked independence from William Douglas. As such, a pre-suit demand of the Board to initiate

---

[1] Notably, the Board implemented the professional engineer's recommendation to evacuate Renaissance Tower the same day it was given. **Complaint, ¶¶ 128, 130**.

[2] For example, Plaintiffs accuse Director Defendants of failing to inspect the structural steel components at paragraph 170, while referencing several inspections and reports the Board commissioned from a professional engineer in 2018, 2020, 2021, and 2022. *See*, **Complaint, ¶¶ 97 – 99, 108, 114, 127**.

litigation was a necessary predicate to Plaintiffs bringing a derivative suit against William Douglas.

For the aforementioned reasons, each of Plaintiffs' derivative claims should be dismissed for failure to make demand of the Board as required by Rule 23.1, FRCP.

### b. *Complaint Not Verified by All Plaintiffs*

Rule 23.1(b), FRCP requires that a derivative complaint be verified. "Rule 23.1's verification requirement [exists] to ensure that the court will not be used for 'strike suits' and that the plaintiffs have investigated the charges and found them to be of substance." *In re Capital One Derivative S'holder Litig.*, 952 F.Supp.2d 770, 795 (E.D.Va. 2013) (quoting *Levine v. Prudential Bache Props., Inc.*, 855 F.Supp. 924, 942 (N.D.Ill. 1994) (quotations and brackets in original). This Court has noted that "[t]he requirements of Rule 23.1 are to be 'vigorously enforced' and failure to meet them 'requires dismissal of the suit.'" *Strickland v. Flue-Cured Tobacco Coop. Stabilization Corp.*, 643 F.Supp. 310, 316 (D.S.C. 1986) (quoting *Heit v. Baird*, 567 F.2d 1157, 1162 n. 6 (1st Cir. 1977).

Here, only one of the eighteen (18) Plaintiffs verified the Complaint. (**Complaint, pp. 33-34**). The requirement for each Plaintiff to verify the allegations in the Complaint is an important procedural step to prevent lawsuits of questionable merit. This case is no exception, especially as the Plaintiffs purport to represent a large class of similarly situated Members. This Court should enforce Rule 23.1, FRCP's strict pleading requirements and dismiss all of Plaintiffs' derivative claims.

### IV. *Plaintiffs Fail to Plead a Cognizable Negligence Cause of Action*

Plaintiffs assert a direct and derivative cause of action for negligence against all of the Defendants. With regard to William Douglas, Plaintiffs do not plead the source of William

Douglas' alleged duty. Logically, William Douglas' alleged duty only could have arisen from its contractual relationship with the Regime, in which case an action against William Douglas in negligence will not lie. With regard to all Defendants, Plaintiffs do not allege whether or how the Defendants were the proximate cause of the damages claimed by Plaintiffs. For these reasons, Plaintiffs' cause of action for negligence must be dismissed.

### a.  *Plaintiffs Fail to Plead Duty of Care of William Douglas*

"An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." *Huggins v. Citibank, N.A.*, 355 S.C. 329, 332, 585 S.E.2d 275, 276 (2003). Specifically, the parties must have "a relationship recognized by law as providing the foundation for a duty to prevent an injury." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 644 S.E.2d 43, 46 (2007). "An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." *Hendricks v. Clemson Univ.*, 353 S.C. 449, 578 S.E.2d 711, 714 (2003). It is the relationship between the parties, not the potential "foreseeability of injury," that determines whether the law will recognize a duty in a given context. *Charleston Dry Cleaners & Laundry, Inc. v. Zurich American Ins. Co.*, 355 S.C. 614, 586 S.E.2d 586, 588 (2003). This ensures that the concept of duty in tort liability is not extended beyond reasonable limits. *S.C. State Ports Auth. v. Booz–Allen & Hamilton, Inc.*, 289 S.C. 373, 346 S.E.2d 324, 326 (1986). If no duty exists, the defendant in a negligence action is entitled to judgment as a matter of law. *Steinke v. S.C. Dep't of Labor, Licensing, & Regulation*, 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999).

Here, Plaintiffs fail to identify the source of William Douglas' alleged duty of care to Plaintiffs. Instead, Plaintiffs presuppose that a duty of care exists without identifying the source of that duty. A duty of care does not arise out of thin air, and a negligence cause of action cannot

exist without it. *See Snakenberg v. The Hartford Cas. Ins. Co.*, 299 S.C. 164, 174, 383 S.E.2d 2, 7 (Ct. App. 1989) ("The gist of negligence is failure to observe a duty of care owed to the plaintiff by law."). Based on Plaintiffs' failure to properly plead a duty of care, the negligence cause of action should be dismissed against William Douglas.

### b. *Plaintiffs Cannot Sue William Douglas in Tort for Purely Economic Losses*

"In an action alleging negligence, a plaintiff must show (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached the duty by a negligent act or omission, (3) the defendant's breach was an actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered injury or damages." *Wright v. PRG Real Estate Mgmt., Inc.*, 426 S.C. 202, 212, 826 S.E.2d 285, 290 (2019). When a duty is created solely by contract, South Carolina will not allow a plaintiff to recover for purely economic losses in tort (unless a special duty exists independently of the contract). *See Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones, & Goulding, Inc.*, 320 S.C. 49, 54-55, 463 S.E.2d 85, 88 (1995) ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie."); *Kennedy v. Columbia Lumber & Mfg. Co., Inc.*, 299 S.C. 335, 347, 384 S.E.2d 730, 737 (1989).

Plaintiffs allege that William Douglas "as the manager for the Renaissance Tower and the Regime . . . owed duties to the Regime and its members to exercise due care in the management, operations, maintenance, and repair of the Renaissance Tower and the Regime." (**Complaint, ¶ 194**). Plaintiffs' allegation implies (although does not state) that the source of William Douglas' duty is its agreement with the Regime to be property manager of Renaissance Tower from 2015 to 2020.  (**Complaint, ¶ 85**).

Importantly, while the named parties to the Management Agreement are William Douglas and the Regime, Article II.2. of the Master Deed[3] of the Regime states:

> [The] Board of Directors . . . shall be and hereby is authorized to enter into such agreements [sic] and to bind itself and all Co-Owners as it may deem necessary or desirable for the administration and operation of the Regime. Each Co-Owner who acquires an interest in a Unit shall thereby be deemed to agree to be bound by the terms and conditions of all such agreements.

Thus, the relationship between William Douglas and both the Regime ***and*** the Plaintiffs is contractual.

Plaintiffs' alleged direct and derivative damages resulting from William Douglas' alleged negligence are purely economic (*i.e.*, an assessment, expenses, costs, and lost profits/value). Plaintiffs do not allege any special duty owed to Plaintiffs by William Douglas outside of their contractual relationship. As such, an action in negligence against William Douglass by the Plaintiffs cannot lie and must be dismissed.

### c. *Plaintiffs Do Not Sufficiently Allege Proximate Cause*

In South Carolina, "negligence is not actionable unless it is a proximate cause of the injury." *Wright*, 426 S.C. at 222, 826 S.E.2d at 295. "Proximate cause requires proof of both causation in fact and legal cause. Causation in fact is proved by establishing the injury would not have occurred 'but for' the defendant's negligence. Legal cause is proved by establishing foreseeability." *Id.* (internal citations and quotation marks omitted).

---

[3] The Master Deed is a publicly available document and is attached to this Memorandum as **Exhibit A**. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (Courts can take judicial notice of publicly available documents without converting a motion to dismiss into a motion for summary judgment); *see also* Fed.R.Evid. 201 (Courts at any stage of a proceeding may "judicially notice a fact that is not subject to reasonable dispute," provided that the fact is "generally known within the court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

The Complaint spends significant time alleging that Defendants knew "five years prior to September 1, 2022" that Renaissance Tower would require structural repairs. *See*, *e.g.* (**Complaint, ¶¶ 92-94, 96-97**). Plaintiffs allege a confusing timeline of events, wherein a professional engineer (Donohue) advised the Board that repairs would be necessary at some point and that the structural issues would continue to worsen over time. (**Complaint, ¶¶ 96-97**). Importantly, the Complaint alleges that Donahue inspected the structure "five years prior to September 1, 2022" and again in 2021, and thereafter recommended repairs each time but did not recommend evacuation. (**Complaint, ¶¶ 97, 114**). It was only after the company hired to perform the repairs (Procon, Inc.) "removed sufficient materials and exposed sufficient structural steel components" that Donohue determined Renaissance Tower's structural components "present[ed] 'a very dangerous condition,'" warranting evacuation. (**Complaint, ¶ 127**).

Notably missing from Plaintiffs' Complaint are any allegations that *but for* the delay in initiating repairs, Donohue would not have recommended evacuating Renaissance Tower upon being able to view the structural steel components more closely (*i.e.*, the same chain of events may have occurred had repairs commenced in 2018 or 2020). Plaintiffs do not allege that *but for* the delay in initiating repairs, the cost of repairs would have been less expensive. Plaintiffs do not allege that *but for* the delay in initiating repairs, Members would not have needed to pay an assessment to finance the repairs.

Instead of alleging how Defendants were the actual cause of their alleged damages, Plaintiffs summarily claim that they "were damaged as the direct, foreseeable, and proximate result of Defendants' negligence and gross negligence." For purposes of Rule 12(b)(6), FRCP, it is true that the Court must view the facts in the Complaint in the light most favorable to Plaintiffs. *McCauley*, 710 F.3d at 554. But the court need not accept the plaintiff's legal conclusions

regarding those facts. *Id.* Even accepting all of Plaintiffs' allegations as true, they simply did not allege facts that would support a legal conclusion that Defendants were the cause in fact of Plaintiffs' alleged damages. With specific respect to William Douglas, Plaintiffs do not state any facts alleging how William Douglas was involved any decisions related to delaying or initiating repairs, making it impossible to surmise that William Douglas was the actual cause in fact of anything.

Plaintiffs also do not allege facts demonstrating it was foreseeable that delaying repairs would culminate in the damages claimed by Plaintiffs. Plaintiffs allege that Donohue informed the Board "five years prior to September 1, 2022" that the damage to the steel components would "worsen until repairs were performed, and that the failure to *timely* repair the damaged steel components would result in a further compromised structural system." (**Complaint, ¶ 97**) (emphasis added). But Plaintiffs do not allege that Donohue defined what would constitute "timely" repairs.

In an apparent effort to address foreseeability, Plaintiffs several times discuss the collapse of a similar condominium building in Surfside, Florida in 2021 (Champlain Towers), of which the Director Defendants were allegedly aware. *See*, *e.g.*, (**Complaint, ¶¶ 1-4, 113-117**). But Champlain Towers did not collapse until June 2021, after which time Plaintiffs concede that Defendants took immediate action to re-inspect and repair Renaissance Tower. (**Complaint, ¶¶ 113-117**). And of course William Douglas was long gone from Renaissance Tower by the time of the Champlain Towers collapse. Champlain Towers simply does not support a conclusion that the evacuation of Renaissance Tower was foreseeable during the time period in which Defendants were allegedly negligent (*i.e.,* prior to initiating repairs in 2021).

Even viewed in the light most favorable to Plaintiffs, Plaintiffs' allegations simply cannot support a legal conclusion that Plaintiffs' alleged damages caused by Defendants' delay in initiating repairs was foreseeable.

## CONCLUSION

The Complaint suffers from several fatal flaws. The threshold issues include the Director Defendants' immunity from liability for monetary damages and the SOL for Plaintiffs' claims against all Defendants. In addition to those threshold issues that preclude this lawsuit, Plaintiffs failed to meet the requirements for pleading their derivative claims and failed to state a cognizable claim for negligence against any of the Defendants. For any and all of these reasons, the Court should dismiss the Complaint in its entirety.

Dated:  December 13, 2022         **BURR & FORMAN LLP**

By       /s/ James K. Gilliam
James K. Gilliam      (Fed ID 10761)
104 South Main St., Suite 700 (29601)
Post Office Box 447
Greenville, SC  29602
864.271.4940 (Telephone)
864.271.4015 (Facsimile)
jgilliam@burr.com
*ATTORNEY FOR DEFENDANTS*