1994 South Carolina Laws Act 384 (H.B. 4180)

SOUTH CAROLINA 1994 SESSION LAWS

REGULAR SESSION

Additions and deletions are not identified in this document.

Act 384

H.B. No. 4180
NONPROFIT CORPORATIONS

AN ACT TO AMEND CHAPTER 31, TITLE 33, CODE OF LAWS OF SOUTH CAROLINA, 1976, RELATING TO NONPROFIT CORPORATIONS, SO AS TO ENACT THE SOUTH CAROLINA NONPROFIT CORPORATION ACT OF 1994 SO AS TO FURTHER PROVIDE FOR THE MANNER IN WHICH NONPROFIT CORPORATIONS OPERATE AND TRANSACT BUSINESS IN THIS STATE; TO AMEND SECTIONS 15–9–210, AS AMENDED, 15–9–240, 15–9–245, AND 15–9–430, AS AMENDED, RELATING TO SERVICE OF PROCESS, SO AS TO FURTHER PROVIDE FOR THE APPLICABILITY OF THESE SECTIONS TO BUSINESS OR NONPROFIT CORPORATIONS, OR BOTH; TO AMEND SECTION 33–11–101, RELATING TO MERGERS OF BUSINESS CORPORATIONS, SO AS TO MAKE THE PROVISIONS OF THE SECTION APPLICABLE TO NONPROFIT CORPORATIONS; TO AMEND SECTION 33–20–103, RELATING TO THE APPLICABILITY OF THE SOUTH CAROLINA BUSINESS CORPORATION ACT TO NONPROFIT CORPORATIONS, SO AS TO FURTHER PROVIDE FOR THIS APPLICABILITY IN REGARD TO NONPROFIT CORPORATIONS AND ELECTRIC AND TELEPHONE COOPERATIVES; TO ADD SECTION 33–49–690 SO AS TO PROVIDE FOR IMMUNITY FROM LIABILITY FOR DIRECTORS, TRUSTEES, OR MEMBERS OF THE GOVERNING BODIES OF ELECTRIC COOPERATIVES UNDER CERTAIN CONDITIONS; TO AMEND THE 1976 CODE BY ADDING SECTION 62–7–507 SO AS TO PROVIDE THAT CERTAIN STATUTORY PROVISIONS OF LAW SHALL NOT BE CONSTRUED TO CAUSE FORFEITURE OR REVERSION OF TRUST PROPERTY; AND TO REPEAL CHAPTER 33 OF TITLE 33 RELATING TO CHURCH CORPORATIONS.

Be it enacted by the General Assembly of the State of South Carolina:

South Carolina Nonprofit Corporation Act of 1994

SECTION 1. Chapter 31, Title 33 of the 1976 Code is amended to read:

"CHAPTER 31

South Carolina Nonprofit

Corporation Act

Article 1

General Provisions

<< SC ST § 33–31–101 >>

Section 33–31–101. Short title.

This chapter may be cited as the South Carolina Nonprofit Corporation Act of 1994.

OFFICIAL COMMENT

The short title provides a common name for use in referring to the state's nonprofit corporation act.

The Introduction to the Model Act provides a general background and description of the Act, its basic approach, and significant additions and changes from the last revision of the Model Act.

SOUTH CAROLINA REPORTERS' COMMENTS

This act is derived from the Revised Model Nonprofit Corporation Act adopted in 1987 by the Subcommittee on the Model Nonprofit Corporation Law of the Business Law Section of the American Bar Association. The Official Comments following each section were prepared by the Subcommittee on the Model Nonprofit Corporation Law of the Business Law Section of the American Bar Association. They are reproduced with permission. These Official Comments describe the substantive decisions made in the drafting process and in many cases explain the meaning and purpose of the section.

This act was prepared for introduction in South Carolina by a committee of the South Carolina Law Institute. This drafting committee was chaired by Theodore J. Hopkins. The drafting committee members included: Rudolph C. Barnes, Sr., Arthur M. Bjontegard, C.C. Burgess, James R. Burkhard, Preston H. Callison, Shawn M. Flanagan, William L. Ivey, R. Bentz Kirby, E. Crosby Lewis, Andrew B. Marion, Burnett R. Maybank, III, William S. McMaster, Martin C. McWilliams, Jr., C. Pinckney Roberts, Edward C. Roberts, Lester S. Schwartz, Paul J. Ward, Roger A. Way, Jr., David Wheeler, and Mitchell M. Willoughby. References in the South Carolina Reporters' Comments to 'the committee' refer to this committee. The South Carolina Reporters' Comments which follow each section were drafted as part of the preparation of this act by Professors Martin C. McWilliams, Jr., and James R. Burkhard of the University of South Carolina School of Law. These South Carolina Reporters' Comments are primarily intended to explain the differences, if any, between the section and the former law, and any differences between the section and the official text of the Revised Model Nonprofit Corporation Act ('Revised Model Nonprofit Corporation Act').

The Official and South Carolina Reporters' Comments are intended to assist those who use and interpret this act to determine the intention of the drafters and the interrelationship between the various sections. As such, the comments serve the same function and purposes as the comments to the Uniform Commercial Code, Title 36, of the 1976 Code. They can be useful particularly in a state like South Carolina because the State does not have a large body of nonprofit corporation case law. The comments are not, however, part of the statutory law and, therefore, are not binding on any court or other adjudicatory body.

<< SC ST § 33–31–102 >>

Section 33–31–102. Reservation of power of amend or repeal.

The General Assembly of South Carolina has power to amend or repeal all or any part of Chapter 31, Title 33 at any time, and all domestic and foreign corporations subject to Chapter 31 of this title are governed by the amendment or repeal.

OFFICIAL COMMENT

States may amend the Model Act from time to time without violating any rights a corporation has as a result of the Act's statutory provisions. While section 1.02 may not be necessary, it lays to rest concern that cases like Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat) 518 (1819) may have vitality today. That case held that a state could not apply a new statute to an existing corporation and suggested that a reservation of power provision might have allowed the court to uphold the new statute. By setting forth a reservation of power provision might have allowed the court to uphold the new statute. By setting forth a reservation of power provision section 1.02 allows the legislature to amend the Model Act's provisions without concern for the vested rights argument.

SOUTH CAROLINA REPORTERS' COMMENTS

Exhaustive commentary regarding the power of the State to modify its corporate laws is contained in the Reporters' Comments to Section 33–1–102. Those comments are generally applicable to the authority of South Carolina to modify the charter of any nonprofit corporation. However, the South Carolina Business Corporation Act grants to the legislature the specific authority to promulgate regulations. It was the consensus that any regulations for this South Carolina Nonprofit Corporation Act should be proposed by the appropriate state agency and then submitted to the legislature for its approval, all in accordance with the procedures established in Title 1, Chapter 23 of the 1976 Code.

There is at least one case dealing with the state's reserved power. Epworth Orphanage v. Wilson, County Treas., 185 S.C. 243, 253, 193 S.E. 644 (1937), contains the clear statement, "It cannot be denied that the Legislature has constitutional power to

amend and alter charter rights and privileges." In this case, the court indicated that the orphanage's charter, which was granted by an act of the legislature in 1896 was later impliedly amended by additional statutes dealing generally with the taxation of property owned by certain public charities.

However, if the legislature has granted a specific power to a specific corporation by action taken before 1900, nothing in this Chapter 31, Title 33 will specifically modify that power. See Section 33–31–305. There is, of course, a significant difference between a power and the manner in which members act, the board is elected, or other mechanics of the operations of the corporation.

<< SC ST § 33–31–120 >>

Section 33–31–120. Filing requirements.

(a) A document must satisfy the requirements of this section, and of any other section that adds to or varies these requirements, to be entitled to filing by the Secretary of State.

(b) This chapter must require or permit filing the document in the office of the Secretary of State.

(c) The document must contain the information required by this chapter. It may contain other information as well.

(d) The document must be typewritten or printed.

(e) The document must be in the English language. However, a corporate name need not be in English if written in English letters or Arabic or Roman numerals, and the certificate of existence required of foreign corporations need not be in English if accompanied by a reasonably authenticated English translation.

(f) The document must be executed:

(1) by the presiding officer of its board of directors of a domestic or foreign corporation, its president, or by another of its officers;

(2) if directors have not been selected or the corporation has not been formed by an incorporator; or

(3) if the corporation is in the hands of a receiver, trustee, or other court-appointed fiduciary, by that fiduciary.

(g) The person executing a document shall sign it and state beneath or opposite the signature his or her name and the capacity in which he or she signs. The document may, but need not, contain:

(1) the corporate seal;

(2) an attestation by the Secretary or an assistant secretary; or

(3) an acknowledgement, verification, or proof.

(h) If the Secretary of State has prescribed a mandatory form for a document under Section 33–31–121, the document must be in or on the prescribed form.

(i) The document must be delivered to the office of the Secretary of State for filing and must be accompanied by one exact or conformed copy, except as provided in Sections 33–31–503 and 33–31–1509, the correct filing fee, and any franchise tax, license fee, or penalty required by this chapter or other law.

OFFICIAL COMMENT

Section 1.20 standardizes the filing requirements for all documents required or permitted by the Model Act to be filed with the secretary of state. In a few instances, other sections of the Act impose additional requirements which must also be complied with if the document in question is to be filed. Section 1.20 relates only to documents which the Model Act expressly requires or permits to be filed with the Secretary of State; it does not authorize or direct the Secretary of State to accept or reject for filing other documents relating to corporations and does not treat documents required or permitted to be filed under other statues.

The purpose of the filing requirements of chapter 1 are:

(1) to simplify the filing requirements by the elimination of formal or technical requirements that serve little purpose,

(2) to minimize the number of pieces of paper to be processed by the Secretary of State, and

(3) to eliminate all possible disputes between persons seeking to file documents and the Secretary of State as to the legal efficacy of documents.

The requirements of section 1.20 may be summarized as follows:

1. Form

To be eligible for filing, a document must be typed or printed and in the English language (except to the limited extent permitted by section 1.20 (e)). The Secretary of State is not authorized to prescribe forms (except to the extent permitted by section 1.21) and as a result may not reject documents on the basis of form (see section 1.25) if they contain the information called for by the specific statutory requirement and meet the minimal formal requirements of this section.

2. Execution

To be filed a document must simply be executed by a corporate officer.... No specific corporate officer is designated as the appropriate officer to sign though the signing officer must designate his office or the capacity in which he signs the document. Among the officers who are expressly authorized to sign a document is the ... [presiding officer] of the board of directors, a choice that may be appropriate if the corporation has a board of directors but not appointed officers. If a corporation has not been formed or has neither officers nor a board of directors, an incorporator may execute the document.

The requirement in earlier versions of the Model Act and in many state statutes that documents must be acknowledged or verified as a condition for filing has been eliminated. These requirements serve little purpose in connection with documents filed under corporation statutes. (See in this connection section 1.29, which makes it a criminal offense for any person to sign a document for filing with knowledge that it contains false information.) On the other hand, many organizations, like lenders or title companies, may desire that specific documents include acknowledgements, verifications, or seals; section 1.20(g) therefore provides that the addition of these forms of execution does not affect the eligibility of the document for filing.

3. Contents

A document must be filed by the Secretary of State if it contains the information required by the Model Act. The document may contain additional information or statements and their presence is not ground for the Secretary of State to reject the document for filing. These documents must be accepted for filing even though the Secretary of State believes that the language is illegal or unenforceable. In view of this very limited discretion granted to secretaries of state under this section, section 1.25(d) defines the Secretary of State's role as 'ministerial' and provides that no inference or presumption arises from the fact that the Secretary of State accepted a document for filing. See the Official Comments to sections 1.25 and 1.30.

4. Number of Copies

Section 1.20(i) requires that a document filed with the Secretary of State must be accompanied by 'one exact or conformed copy.' The requirement in early versions of the Model Act and in many state statutes that 'duplicate originals' (each being executed as an original document) be submitted has been eliminated. Under section 1.20(i) an 'exact' copy is a reproduction of the executed original document by photographic or xerographic process; a 'conformed' copy is a copy on which the existence of signatures is entered or noted on the copy. The substitution of exact or conformed copies for duplicate originals reflects advances in the art of office copying machines that permit the routine reproduction of exact copies of executed documents. However, a person submitting 'duplicate originals' meets the requirement of this section since the Secretary of State may treat the duplicate original as a 'conformed copy.' The reasons for requiring an exact or conformed copy of a filed document to accompany the signed original, and the processing of these documents by the Secretary of State, are discussed in the Official Comment to Section 1.25.

Official Comment to section 1.20 of the Model Business Corporation Act.


SOUTH CAROLINA REPORTERS' COMMENTS

This provision contains the mechanical requirements for preparing various documents. It is similar to the formerly applicable statute, Section 33–1–200 of the South Carolina Business Corporation Act.

1. Content of forms

This section does not specify the content of any forms. For the substantive requirements of the more commonly used forms please see:

| | |
|---|---|
| Section 33–31–128 | Certificate of existence |
| Section 33–31–202 | Articles of incorporation |
| Section 33–31–402 | Reserved name |
| Section 33–31–403 | Registered name of a foreign corporation |

| Section 33–31–404 | Notice of name change |
|---|---|
| Section 33–31–502 | Change of registered office or registered agent |
| Section 33–31–505 | Notice of change of principal office |
| Section 33–31–1005 | Articles of amendment |
| Section 33–31–1104 | Articles of merger |
| Section 33–31–1404 | Articles of dissolution |
| Section 33–31–1503 | Application for certificate of authority (foreign nonprofit corporation) |
| Section 33–31–1504 | Amended certificate of authority |
| Section 33–31–1508 | Change of registered office or registered agent of foreign corporation |
| Section 33–31–1515 | Notice of change of principal office |
| Section 33–31–1520 | Application for certificate of withdrawal |

Section 33–31–128 Certificate of existence
Section 33–31–202 Articles of incorporation
Section 33–31–402 Reserved name
Section 33–31–403 Registered name of a foreign corporation
Section 33–31–404 Notice of name change
Section 33–31–502 Change of registered office or registered agent
Section 33–31–505 Notice of change of principal office
Section 33–31–1005 Articles of amendment
Section 33–31–1104 Articles of merger
Section 33–31–1404 Articles of dissolution
Section 33–31–1503 Application for certificate of authority (foreign nonprofit corporation)
Section 33–31–1504 Amended certificate of authority
Section 33–31–1508 Change of registered office or registered agent of foreign corporation
Section 33–31–1515 Notice of change of principal office
Section 33–31–1520 Application for certificate of withdrawal

A more comprehensive listing of forms filed with the Secretary of State is found in Section 33–31–122.

  2. Who may execute documents

  The prior law had almost no direction as to who should execute documents that were to be filed for public record. However, prior Section 33–31–20 required the signature of two or more officers or agents to file the "declaration" that a nonprofit corporation was being formed. This new Section 33–31–120 combined with Section 33–31–202(c) modifies this former procedure. Now the articles of incorporation are signed by the incorporators and directors named in the articles.

  3. Verification

  Although not previously required by statute, the former form "declaration" of incorporation provided for a verification. The verification is now an optional provision. A verification, following former procedure, could specify that each signer:

  a. has read and understands the meaning and purport of the statements contained in the document;

b. asserts that the statements are true or he is informed or believes that the statements are true;

c. has signed the document, and, in the case of one signing in a representative capacity, that he has the authority so to sign.

4. Seal

Former Section 33–31–100(7) granted authority for nonprofit corporations to adopt seals. The new law clearly permits a nonprofit corporation to adopt a seal, but its use is purely ceremonial. The use of the seal in no way enhances the efficacy of the document. It has been suggested that out-of-state parties might require that various corporate documents be sealed, but since this is not required by statute, the absence of the seal should cause no problems.

<< SC ST § 33–31–121 >>

Section 33–31–121. Forms.

(a) The Secretary of State may prescribe and furnish on request forms for:

(1) an application for a certificate of existence;

(2) a foreign corporation's application for a certificate of authority to transact business in South Carolina;

(3) a foreign corporation's application for a certificate of withdrawal; and

(4) the notice of change of principal office. If the Secretary of State so requires, use of these forms is mandatory.

The Secretary of State through regulation may prescribe a mandatory form with regard to any other forms required or permitted by Chapter 31, Title 33 to be filed in his office. All mandatory forms must comply with the statutory requirements contained in Chapter 31.

(b) The Secretary of State may prescribe and furnish on request forms for other documents required or permitted to be filed by this chapter, but their use is not mandatory.

OFFICIAL COMMENT

As described in the Official Comment to section 1.20, documents are entitled to filing under the Model Act if they meet the substantive and formal requirements of the Act; they may also contain additional information if the person submitting the document so elects. See the Official Comments to sections 1.20 and 1.25. In these circumstances it is not appropriate to vest the Secretary of State with general authority to establish mandatory forms for use under the Model Act. Certain types of reports and requests for documents may be processed efficiently only if uniform forms are prescribed by the Secretary of State. Certificates of existence, for example, should require specific information located at specific places on the form; similarly, processing of large-volume, largely routine filings is expedited if standardized forms are required. Also, the disclosure requirements of the annual report may be administered on a systematic basis if a standardized form is mandated. Section 1.21(a) recognizes that these considerations for which the Secretary of State is authorized to establish mandatory forms.

Section 1.21(b) authorizes (but does not require) the Secretary of State to prepare forms suitable for use for other documents required or permitted to be filed under the Act. However, the use of these forms is permissive and cannot be required by the Secretary of State. Official Comment to Section 1.21 of the Model Business Corporation Act.

SOUTH CAROLINA REPORTERS' COMMENTS

1. Secretary of State to provide forms

This section provides that the Secretary of State may prescribe certain forms. If he prescribes a form he shall furnish a copy of the form. However, nothing in this section imposes a duty upon the Secretary of State to furnish more than one copy (or a nominal number) upon request therefor.

2. Former law

Although under the prior law of former Chapter 31, Title 33 there was little explicit authority for the Secretary of State to promulgate required or optional forms, the Secretary has developed various forms. Prior law, Section 33–31–20(6) "Written declaration," specifically gave the Secretary of State the authority to require any information he desired to be included in the "declaration" ("articles"). It has been customary to use the forms promulgated by the Secretary of State which formerly included:

a. Declaration and Petition for Incorporation

b. Initial Annual Report of Corporations (Tax Form CL–1)

c. Application for Amendment of Eleemosynary Charter

d. Statement of Dissolution

3. Non–Model Act provision

Different from the Model Act, this Section 33–31–121 permits the Secretary of State to adopt by regulation other mandatory forms. Any such additional form, such as a required articles of incorporation format, will be valid only if it meets all the requirements of this act. The need for standardization is important primarily in regard to simplifying the review process and facilitating the clerical process in the of the various applications. The Secretary of State's office will be able to review more quickly and then file documents if standard forms are used. This will save time for South Carolina nonprofit corporations and make the Secretary of State's office more efficient. There is little risk that any additional forms might not be sufficiently flexible to meet a particularly unique need, since Section 33–31–200(c) says that any document to be filed with the Secretary of State may contain any information so desired by the client. By requiring that any future mandatory forms are promulgated through the regulation process, lawyers and affected nonprofit corporations will have an opportunity to raise any concern that the proposed forms might either not meet statutory requirements or might cause practical problems.

<< SC ST § 33–31–122 >>

Section 33–31–122. Filing, service, and copying fees.

(a) The Secretary of State shall collect the following fees when the documents described in this subsection are delivered for filing:

| | | |
|---|---|---|
| (1) | Articles of incorporation | $25.00 |
| (2) | Application for use of indistinguishable name | $10.00 |
| (3) | Application for reserved name | $10.00 |
| (4) | Notice of transfer of reversed name | $3.00 |
| (5) | Application for registered name | $10.00 |
| (6) | Application for renewal of registered name | $10.00 |
| (7) | Corporation's statement of change of registered agent or registered office or both | $10.00 |
| (8) | Agent's statement of change of registered office for each affected corporation | $2.00 |
| (9) | Agent's statement of resignation | $3.00 |
| (10) | Amendment of articles of incorporation | $10.00 |
| (11) | Restatement of articles of incorporation with amendments | $10.00 |
| (12) | Articles of merger | $10.00 |
| (13) | Articles of dissolution | $10.00 |
| (14) | Articles of revocation of dissolution | $10.00 |
| (15) | Certificate of administrative dissolution | No fee |
| (16) | Application for reinstatement following administrative dissolution | $25.00 |
| (17) | Certificate of reinstatement | No fee |
| (18) | Certificate of judicial dissolution | No fee |
| (19) | Application for certificate of authority | $10.00 |

| (20) | Application for amended certificate of authority | $10.00 |
|------|--------------------------------------------------|--------|
| (21) | Application for certificate of withdrawal | $10.00 |
| (22) | Certificate of revocation of authority to transact business | No fee |
| (23) | Notice of change of principal office | $10.00 |
| (24) | Articles of correction | $10.00 |
| (25) | Application for certificate of existence or authorization | $10.00 |
| (26) | Notification by existing corporation | $10.00 |
| (27) | Irrevocable election to be governed | $25.00 |
| (28) | Any other document required or permitted to be filed by this chapter | $10.00 |

(1) Articles of incorporation $25.00
(2) Application for use of indistinguishable name $10.00
(3) Application for reserved name $10.00
(4) Notice of transfer of reversed name $3.00
(5) Application for registered name $10.00
(6) Application for renewal of registered name $10.00
(7) Corporation's statement of change of registered agent or $10.00
registered office or both
(8) Agent's statement of change of registered office for each $2.00
affected corporation
(9) Agent's statement of resignation $3.00
(10) Amendment of articles of incorporation $10.00
(11) Restatement of articles of incorporation with amendments $10.00
(12) Articles of merger $10.00
(13) Articles of dissolution $10.00
(14) Articles of revocation of dissolution $10.00
(15) Certificate of administrative dissolution No fee
(16) Application for reinstatement following administrative $25.00
dissolution
(17) Certificate of reinstatement No fee
(18) Certificate of judicial dissolution No fee
(19) Application for certificate of authority $10.00
(20) Application for amended certificate of authority $10.00
(21) Application for certificate of withdrawal $10.00
(22) Certificate of revocation of authority to transact business No fee
(23) Notice of change of principal office $10.00
(24) Articles of correction $10.00
(25) Application for certificate of existence or authorization $10.00
(26) Notification by existing corporation $10.00
(27) Irrevocable election to be governed $25.00
(28) Any other document required or permitted to be filed by this $10.00
chapter

(b) The Secretary of State shall collect a fee of ten dollars each time process is served on him under Chapter 31 of this title. The party to a proceeding causing service of process is entitled to recover this fee as costs if he prevails in the proceeding.

(c) The Secretary of State shall collect the following fees for copying and certifying the copy of any filed document relating to a domestic or foreign corporation:

(1) for copying, one dollar for the first page and fifty cents for each additional page; and

(2) two dollars for the certificate.

OFFICIAL COMMENT

Section 1.22 establishes in a single section the filing fees for all documents that may be filed under the Model Act. The dollar amounts for each document should be inserted by each state as it adopts the Act.

The list of documents in section 1.22 includes all documents that are authorized to be filed with the Secretary of State under the Model Act. The catch-all in subdivision (26) will apply to any document for which a state does not establish a specific filing fee plus any document that later amendments to the statute may authorize or direct be filed with the Secretary of State without establishing a specific filing fee.

Subdivision (9) states that no fee is applicable to filing the resignation of a registered agent. This provision permits a person who is named as a registered agent without his consent, or who agrees to serve as registered agent for a fee and the fee is not paid, to eliminate any reference to himself in the records of the Secretary of State without expense.

Subdivision (8) contains a maximum fee for filing a change of address of a registered agent. Since corporation service companies serve as registered agents for thousands of corporations in many jurisdictions, their change of address may require a very large number of filings. Hence, the fee is broadly based on the number of corporations affected but a maximum fee is specified to reflect that as the number of changes increases the cost per change should decrease. Official Comment to Section 1.22 of the Model Business Corporation Act.

SOUTH CAROLINA REPORTERS' COMMENTS

1. Similar to business corporation fees

The new fee schedule is essentially the same as for business corporations. However, the fee for filing the articles, which is the most common fee, has been increased and is a uniform $25.00 charge regardless of the type of corporation. In the past, religious entities paid $3.00 and all others $15.00. Many of these fees are new because there previously had been no statutory authority in the nonprofit laws for the procedures to which the new fees relate.

2. Non–Model Act provisions

South Carolina did not adopt the 1987 Model Act Official Text which recommends a total dollar limit on the fee when an agent who represents multiple corporations changes his office.

<< SC ST § 33–31–123 >>

Section 33–31–123. Effective date of document.

(a) Except as provided in subsection (b), a document is effective:

(1) at the time of filing on the date it is filed, as evidenced by the Secretary of State's endorsement on the original document; or

(2) at the time specified in the document as its effective time on the date it is filed.

(b) A document may specify a delayed effective time and date and if it does so the document becomes effective at the time and date specified. If a delayed effective date but no time is specified, the document is effective at the close of business on that date. A delayed effective date for a document may not be later than the ninetieth day after the date filed.

OFFICIAL COMMENT

Section 1.23(a) provides that documents accepted for filing become effective at the time and date of filing, or at another specified time on that date, unless delayed effective date is selected under section 1.23(b). This section gives express statutory authority to the common practice of most secretaries of state of ignoring processing time and treating a document as effective as of the date it is submitted for filing even though it may not be reviewed and accepted for filing until several days later.

Section 1.23(a) requires secretaries of state to maintain a date and time stamp for recording the receipt of documents and provides that documents become effective at the stamped time on the date of filing. This provision should eliminate any doubt

about situations involving same-day transactions in which documents, for example articles of merger, are filed on the morning of the date the merger is to become effective. Section 1.23(a) contemplates that the time of filing, as well as the date, will be routinely recorded.

  Section 1.23(b) provides an alternative method of establishing the effective date of a document. The document itself may fix as its effective date any date within 90 days after the date it is filed; it may also fix the time it becomes effective on that date. If no time is specified, the document becomes effective as of the close of business on the specified date. The Model Act also allows the effective date fixed in a document to be corrected to a limited extent. See the Official Comment to Section 1.23.

  Section 1.23(b) does not authorize or contemplate the retroactive establishment of an effective date before the date of filing. Official Comment to Section 1.23 of the Model Business Corporation Act.

SOUTH CAROLINA REPORTERS' COMMENTS

  This section has no counterpart in the former nonprofit statutes. The former law required a three-day public notification of an intent to form a nonprofit corporation and then an investigation by the Secretary of State before the nonprofit charter could be issued (former Sections 33–31–20 and 33–31–60). Former Section 33–31–50 did provide that upon filing the Declaration, First Report, and $25 in fees that the Secretary of State was to issue the Certificate of Incorporation for the proposed term. This section is, however, identical to Section 33–1–230 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–124 >>

Section 33–31–124. Correcting filed document.

  (a) A domestic or foreign corporation may correct a document filed by the Secretary of State if the document:
   (1) contains an incorrect statement; or
   (2) was defectively executed, attested, sealed, verified, or acknowledged.
  (b) A document is corrected:
   (1) by preparing articles of correction that:
    (i) describe the document, including its filing date, or attach a copy of it to the articles;
    (ii) specify the incorrect statement and the reason it is incorrect or the manner in which the execution was defective; and
    (iii) correct the incorrect statement or defective execution; and
   (2) by delivering the articles of correction to the Secretary of State.
  (c) Articles of correction are effective on the effective date of the document they correct except as to persons relying on the uncorrected document and adversely affected by the correction. As to those persons, articles of correction are effective when filed.

OFFICIAL COMMENT

  Section 1.24 permits making corrections in filed documents without refiling the entire document or submitting formal articles of amendment. This correction procedure has two advantages: (1) filing articles of correction may be less expensive than refiling the document or filing articles of amendment, and (2) articles of correction do not alter the effective date of the underlying document being corrected. Indeed, under section 1.24(c), event the correction relates back to the original effective date of the document except as to persons relying on the original document and adversely affected by the correction. As to these persons, the effective date of articles of correction is the date the articles are filed.

  A document may be corrected either because it contains an 'incorrect statement' or because it was defectively executed (including defects in optional forms of execution that do not affect the eligibility of the original document for filing). Official Comment to Section 1.24 of the Model Business Corporation Act.

SOUTH CAROLINA REPORTERS' COMMENTS

  This section has no counterpart in the former provisions of Chapter 31, Title 33. Former Section 33–31–90 provided that:

  No irregularity in complying with the provisions of this article shall be held to vitiate the incorporation until a direct proceeding to set aside and annul the charter be instituted by the proper authorities of the State. And all acts done and contracts entered

into shall have the same force and effect as if no irregularity had existed. Any corporation heretofore formed for any of the purposes enumerated in Section 33–31–20 shall be deemed to have qualified under the provisions of Section 33–31–10. This new Section 33–31–124, however, is identical with Section 33–1–240 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–125 >>

Section 33–31–125. Filing duty of the Secretary of State.

 (a) If a document delivered to the office of the Secretary of State for filing satisfies the requirements of Section 33–31–120, the Secretary of State shall file it.

 (b) The Secretary of State files a document by stamping or otherwise endorsing 'filed', together with his name and official title and date and time of receipt, on both the original and document copy, together with a further endorsement that the document is a true copy of the original document. After filing a document, except as provided in Sections 33–31–503 and 33–31–1510, the Secretary of State shall deliver the document copy to the domestic or foreign corporation or its representative and the document copy must be retained as part of the permanent records of the corporation.

 (c) Upon refusing to file a document, the Secretary of State shall return it to the domestic or foreign corporation or its representative within five days after the document was delivered, together with a brief, written explanation of the reason or reasons for the refusal.

 (d) The Secretary of State's duty to file documents under this section is ministerial. His filing or refusing to file a document does not:

   (1) affect the validity or invalidity of the document in whole or in part;

   (2) relate to the correctness or incorrectness of information contained in the document; or

   (3) except as provided in Section 33–31–127, create a presumption that the document is valid or invalid or that information contained in the document is correct or incorrect.

OFFICIAL COMMENT

 1. Filing Duty in General

 Under section 1.25 the Secretary of State is required to file a document if it 'satisfies the requirements of section 1.20.' This language should be contrasted with earlier versions of the Model Act (and many state statutes) that required the Secretary of State to ascertain whether the document 'conformed with law' before filing it. The purpose of this change is to limit the discretion of the Secretary of State to a ministerial role in reviewing the contents of documents. If the document submitted is in the form prescribed and contains the information required by section 1.20 and the applicable provision of the Model Act, the Secretary of State under section 1.25 must file it even though it contains additional provisions the Secretary of State may feel are irrelevant or not authorized by the Model Act or by general legal principles. Consistently with this approach, section 1.25(d) states that the filing duty of the Secretary of State is ministerial and provides that filing a document with the Secretary of State does not affect the validity or invalidity of any provision contained in the document and does not create any presumption with respect to any provision. Persons adversely affected by provisions in a document may test their validity in a proceeding appropriate for that purpose. Similarly, the Attorney General of the state may also question the validity of provisions of documents filed with the Secretary of State in an independent suit brought for that purpose; in neither case should any presumption or inference be drawn about the validity of the provision from the fact that the Secretary of State accepted the document for filing.

 2. Mechanics of Filing

 Section 1.25(b) provides that when the Secretary of State files a document, he stamps or endorses it as filed, retains the signed original document for his records, and returns the exact or conformed copy (which must accompany the document under section 1.20(i) to the corporation or its representative with the Secretary of State's fee receipt or acknowledgement of receipt if no fee is required. This will establish that a document has been filed in the form of the copy. Consideration was given to dispensing with the document copy entirely and providing only for the return of a fee receipt or equivalent document. Several states currently follow this practice with respect to articles of incorporation and other documents. It was felt to be important, however, to continue a practice by which each corporation receives back from the Secretary of State for its records a document that on its face shows that it is an exact or conformed copy of the document that was filed with the Secretary of State. This copy is usually placed in the minute book and is available for informal inspection without requiring a person to examine the records

of the Secretary of State. Of course, a person desiring a certified copy of any filed document may obtain it from the office of the Secretary of State by paying the fee prescribed in section 1.22(c).

3. Elimination of Certificates of Incorporation and Similar Documents

Section 1.25(b) provides that acceptance of articles of incorporation or other documents is evidenced merely by the issuance of a fee receipt or acknowledgement of receipt if no fee is required. Earlier versions of the Model Act and the statutes of many states provided that acceptance by the Secretary of State is evidenced by a 'certificate' (e.g., of incorporation, of merger, or of amendment). This older practice was not retained in the revised Model Act because it was felt desirable to reduce the number of pieces of paper issued by the Secretary of State. Under the older practice most state offices routinely issued both fee receipts and certificates. A single document—the fee receipt or acknowledgement—should sufficiently indicate that the document has been accepted for filing, and in fact many states in recent years have dispensed with the formal certificate.

4. Rejection of Document by Secretary of State

Because of the simplification of formal filing requirements and the limited discretion granted to the Secretary of State by the Model Act it is probable that rejection of documents for filing will occur only rarely. Section 1.25(c) provides that if the Secretary of State does reject a document for filing he must return it to the corporation or its representative within five days together with a brief written explanation of his reason for rejection. This rejection may be the basis of judicial review under section 1.26. Official Comment to Section 1.25 of the Model Business Corporation Act.

SOUTH CAROLINA REPORTERS' COMMENTS

1. Substantial revisions.

This section is a major change from the former provisions of Chapter 31, Title 33. In the past, former Sections 33–31–60, 33–31–70, and 33–31–80 imposed on the Secretary of State's office a duty to investigate whether the proposed corporation was entitled to be formed. In addition, former Section 33–31–170, Filing and recording of papers, provided that:

> All papers required to be filed hereunder and all charters or amendments thereof that may be granted shall be filed under proper numbers and indexed by the Secretary of State. The charter or amendment shall be recorded within thirty days after receipt in the officer of the clerk of court or register of mesne conveyances in the county in which the corporation is organized.

The effect of the new law is to eliminate any duty (or authority) of the Secretary of State's office to make any initial investigations. (Earlier versions of the statute directed the Department of Welfare to review only proposed "charitable" nonprofit corporations, see 1944–45 *Op.S.C. Attorney General,* 166.) It likewise makes clear that the Secretary of State has a mandatory ministerial duty to file all documents proffered in the form prescribed by Section 33–31–120, and deletes any authority or discretion of the Secretary of State to withhold the filing of any document properly completed. There is no longer any requirement that the articles be filed in any county office.

2. Non–Model Act provisions

This section differs from the 1987 Model Act Official Text in four ways:

a. Continuing existing practice, the Secretary of State will endorse on the copy that it is a "true copy" of the original.

b. The Secretary of State has not, and will not, issue a separate receipt of payment. The conformed, stamped copy (and any canceled check) is sufficient verification of payment.

c. Also continuing existing South Carolina practice, subsection (b) requires the corporation to retain the conformed copy of the articles and any document as part if its official records.

d. Although the actual filing of a document does not generally create any presumption that the information contained in the document is correct, a certified document, pursuant to Section 33–31–127 shall be treated as being prima facie evidence of the facts therein stated.

3. Rejection of document within five days

There was debate whether it was reasonable, as is now required in the South Carolina Business Corporation Act, to require the Secretary of State to reject a document within 5 days, or whether he should have a longer time. The conclusion was to require the five-day period.

<< SC ST § 33–31–126 >>

Section 33–31–126. Appeal from Secretary of State's refusal to file document.

(a) If the Secretary of State refuses to file a document delivered for filing to the Secretary of State's office, the domestic or foreign corporation may appeal the refusal to the court of common pleas for Richland County. The appeal is commenced by petitioning the court to compel filing the document and by attaching to the petition the document and the Secretary of State's explanation of the refusal to file.

(b) The court may summarily order the Secretary of State to file the document or take other action the court considers appropriate.

(c) The court's final decision may be appealed as in other civil proceedings.

OFFICIAL COMMENT

1. The Court With Jurisdiction to Hear Appeals From the Secretary of State

The identity of the specific court with jurisdiction to hear appeals from the Secretary of State under section 1.26 must be supplied by each state when enacting this section. It is intended that this should be a court of general civil jurisdiction. It may either be the court located in the corporation's principal business office is located in the state or, if the corporation does not have a principal office in the state, the court located in the county in which its registered office is located. The annual report of the corporation must state where the principal office of the corporation (which need not be within the state) is located. See section 16.22. [South Carolina does not require an annual report.] Other sections of the Model Act also contemplate that the court with jurisdiction over substantive corporate matters will be designated in the statute.... It is expected that jurisdiction over litigation with respect to substantive matters will normally be vested in the court in the county of the corporation's principal or registered office. See the Official Comment to sections 7.03.

2. 'Summary' Orders

In view of the limited discretion of the Secretary of State under the Act, a 'summary' order appears to be appropriate in section 1.26. Throughout the Model Act the term 'summarily order' or similar language is used where courts are authorized to order action taken and the person charged with taking the original action has little or no discretion. The word 'summary' is not used in a technical sense but to refer to a class of cases where the court might appropriately order that action be taken on the face of the pleadings or after an oral hearing but without any need to resolve disputed factual issues.

3. Burden of Proof and Review Standard

The revised Model Act, unlike earlier versions, does not address either the burden of proof or the standard for review in judicial proceedings challenging action of the Secretary of State. It is contemplated that these matters will be governed by general principles of judicial review of agency action in each adopting state.

DERIVATION: Official Comment to Section 1.26 of the Model Business Corporation Act.

SOUTH CAROLINA REPORTERS' COMMENTS

It is anticipated that this section will be used very little. For governmental convenience and to reduce costs, the court of common pleas for Richland County has been designated the appropriate court to hear these actions. In regard to the burden or proof and standard of review, please see the South Carolina Reporters' Comments to Section 33–1–260 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–127 >>

Section 33–31–127. Evidentiary effect of copy of filed document.

A certificate attached to a copy of a document filed by the Secretary of State, bearing his signature, which may be in facsimile, and the seal of this State, is conclusive evidence that the original document is on file with the Secretary of State and must be taken and received in all courts, public offices, official bodies, and in all proceedings as prima facie evidence of the facts therein stated.

OFFICIAL COMMENT

The Secretary of State may be requested to certify that a specific document has been filed with him upon payment of the fees specified in section 1.22(c). Section 1.27 provides that the certificate is conclusive evidence only that the original document is on file. The limited effect of the certificate is consistent with the ministerial filing obligation imposed on the Secretary of State under the Model Act.

DERIVATION: Official Comment to Section 1.27 of the Model Business Corporation Act.

SOUTH CAROLINA REPORTERS' COMMENTS

 This section is identical to the formerly applicable statute, Section 33–31–260 of the South Carolina Business Corporation Act. This section, which goes beyond the Model Act, does two things. First, in keeping with Section 19–5–510 of the 1976 Code, Uniform Photographic Copies of Business and Public Records as Evidence Act, the statute "authenticates" certified copies. Second, this section provides an exception to the hearsay rule. The contents of the document are prima facie evidence of the truth of that stated in the document. This second feature is a non-Model Act provision, but is in conformity with the Federal Rules of Evidence, Rule 803(8), and in conformity with existing South Carolina common law. According to Prof. Walter A. Reiser, Jr. Comparison of the Federal Rules of Evidence With South Carolina Evidence Law, 53 (3rd Ed.1987):

> The leading South Carolina case is State v. Pearson, 223 S.C. 377, 76 S.E.2d 151 (1953), which holds that 'where public officers are under a duty to keep a record of transactions, which occur in the course of their public service, the official records and writings so made by such officers, or under their supervision, are of public nature and are ordinarily admissible in evidence as proof of their contents, even though not proved by the person who actually made the entries.'

 The Secretary of State is routinely subpoenaed to testify in cases where all that is being asked of him is to confirm that a document is on file and does contain the information in the copy, for example, that a corporation was formed and named certain people as its initial directors. This type of information is basically uncontroverted, and thus to require the Secretary to actually testify in these many proceedings truly would be an unreasonable request and policy. There was discussion as to whether the language provided sufficient protection to the Secretary of State from being needlessly required to testify as to the content of various filed forms. The identical language in the South Carolina Business Corporation Act has been effective. This provision should be equally effective.

<< SC ST § 33–31–128 >>

Section 33–31–128. Certificate of existence.

 (a) A person may apply to the Secretary of State to furnish a certificate of existence for a domestic corporation or certificate of authorization for a foreign corporation.

 (b) The certificate of existence or authorization sets forth:

  (1) the domestic corporation's corporate name or the foreign corporation's corporate name used in this State;

  (2) that (i) the domestic corporation is duly incorporated under the law of this State, the date of its incorporation, and the period of its duration if less than perpetual; or (ii) that the foreign corporation is authorized to transact business in this State;

  (3) that all fees, taxes, and penalties owed to the Secretary of State have been paid;

  (4) that the Secretary of State has not mailed notice to the corporation pursuant to either Section 33–31–1421 or 33–31–1531 that the corporation is subject to being dissolved or its authority revoked;

  (5) that articles of dissolution have not been filed; and

  (6) other facts of record in the office of the Secretary of State that may be requested by the applicant.

 (c) Subject to any qualification stated in the certificate, a certificate of existence or authorization issued by the Secretary of State may be relied upon as conclusive evidence that the domestic or foreign corporation is in existence or is authorized to transact business in this State.

OFFICIAL COMMENT

 Section 1.28 establishes a procedure by which anyone may obtain a conclusive certificate from the Secretary of State that a particular domestic or foreign corporation is in existence or is authorized to transact business in the state. The certificate will probably be a standardized form. The Secretary of State is to make the judgment whether or not the corporation is in existence or is authorized to transact business from public records only and is not expected to make a more extensive investigation. In appropriate cases, the Secretary of State may issue a certificate subject to specified qualifications.

 Section 1.28(b)(3) refers only to taxes, fees, or penalties collected by the Secretary of State or collected by other agencies and reported to the Secretary of State. In some states the Secretary of State may ascertain from other agencies that franchise or other taxes have been paid and include this information in the certificate. In states where this procedure does not unduly delay the

issuance of certificates, section 1.28 may be revised appropriately. Section 1.28(b)(3) relates only to taxes, fees, or penalties to the extent their nonpayment affects the existence or authorization to transact business of the corporation.

A certificate of existence or authorization that may be relied on as binding and conclusive is of material assistance to attorneys who may be required to give formal legal opinions in connection with corporate transactions. Official Comment to Section 1.28 of the Model Business Corporation Act.

SOUTH CAROLINA REPORTERS' COMMENTS

1. Former law

Former Section 33–31–160, Certified copy of charter or amendment as evidence of incorporation, provided:

A certified copy of the charter and any amendment thereof from the Secretary of State or from the clerk of the court or register of mesne conveyances of the county in which such charter is required to be recorded shall be sufficient evidence of the incorporation of any corporation chartered under this article and of any amendment to its certificate of incorporation. Obviously, this procedure has been dramatically changed.

2. Warning

The granting of the certificate of existence does not disclose whether there may be grounds which give the Secretary of State the right to begin dissolution proceedings. Nor will it disclose whether the corporation has violated the requirements of sections 33–31–170—33–31–173, and that the Attorney General is in the process of "canceling the corporation's articles of incorporation" for a domestic corporation or causing a foreign corporation to forfeit its right to operate in South Carolina. See section 33–31–174.

3. Certificate does not negate the possibility that other actions are pending to dissolve the corporation

The Attorney General (and in certain instances, the members) has the authority pursuant to Sections 33–31–1430 and 33–31–1431 to request that a nonprofit corporation be dissolved. Likewise, the Attorney General has the power to bring an action to revoke a foreign corporation's certificate of authority. See Section 33–31–1531. The certificate of existence will not negate the possibility that such actions are pending against the corporation or other events not within the jurisdiction of the Secretary of State. If an action has been brought under any of these sections, the corporation (or its officers or directors) will receive notice of the proceeding.

4. Differences from Model Act

Section 1.28(b)(3) of the 1987 Model Act Official Text requires the Secretary of State to provide information on unpaid taxes, fees, and penalties only if such information is available in the Secretary's records. Since the South Carolina nonprofit corporations are not required to pay either income or franchise taxes Model Act subsection (b)(3) has been revised. The South Carolina version specifies that the Secretary of State will only certify the payment of any taxes and fees owed to him.

Section 33–31–128(b)(4) differs from the Model Act in two respects. First, the annual report is not required. Second, subsection (b)(4) has been amended to require the Secretary of State to certify that he has not mailed notice to the corporation that it is subject to being dissolved. The South Carolina Secretary of State will give a "certificate of existence" for South Carolina corporations, and a "certificate of authorization to do business" for foreign corporations. This distinction is not made in the Model Act Official Text.

5. Use of term "transact business" not objectionable

It was determined that there was no real objection to borrowing the language from the South Carolina Business Corporation Act and say that a properly qualified foreign nonprofit corporation is one properly authorized to transact "business" in this State. The word "business" as used in this context is generic enough or broad enough merely to reflect that the entity is authorized to act in South Carolina.

<< SC ST § 33–31–129 >>

Section 33–31–129. Penalty for signing false document

(a) A person commits an offense if he signs a document he knows is false in any material respect, including an omission of a material fact necessary in order to make the statements made in light of the circumstances under which they were made, not misleading, with intent that the document be delivered to the Secretary of State for filing.

(b) An offense under this section is a misdemeanor punishable by a fine of not to exceed five hundred dollars.

(c) A person who violates subsection (a) is liable to any person who is damaged by the violation.

OFFICIAL COMMENT

Section 1.29 makes it a criminal offense for any person to sign a document that he knows is false in any material respect with intent that the document be submitted for filing to the Secretary of State.

Section 1.29(b) is keyed to the classification of offenses provided by the Model Penal Code. If a state has not adopted this classification, the dollar amount of the fine should be substituted for the misdemeanor classification. Official Comment to Section 1.29 of the Model Business Corporation Act.

SOUTH CAROLINA REPORTERS' COMMENTS

The South Carolina Business Corporation Act contains similar language, Section 33–1–290. This provision governed the operation of nonprofit corporations prior to the adoption of this South Carolina Nonprofit Corporation Act. The South Carolina version of this Section 33–31–290 differs from the Model Act Official Text in the following respects:

(1) an intentional omission makes the document false; and

(2) any injured person has a private (civil) cause of action against the wrongdoer.

No remedy is specified for any civil cause of action which may be brought pursuant to subsection (c). This is left to the courts to determine.

<< SC ST § 33–31–130 >>

Section 33–31–130. Powers.

The Secretary of State has the power reasonably necessary to perform the duties required of the Secretary of State's office by this chapter.

OFFICIAL COMMENT

Section 1.30 is intended to grant the Secretary of State the authority necessary for his efficient performance of the filing and other duties imposed on him by the Act but is not intended to give him general authority to establish public policy. The most important aspects of a modern corporation statute relate to the creation and maintenance of relationships among persons interested in or involved with a corporation; these relationships basically should be a matter of concern to the parties involved and not subject to regulation or interpretation by the Secretary of State. Further, even in situations where it is claimed that the corporation has been formed or is being operated for purposes that may violate the public policies of the State, the Secretary of State generally should not be the governmental official that determines the scope of public policy through administration of his filing responsibilities under the Act. Rather, the Attorney General may seek to enjoin the illegal conduct or to dissolve involuntarily the offending corporation.

Section 1.30 is more narrowly drafted than earlier versions of the Model Act and the statutes of many states. Official Comment to Section 1.30 of the Model Business Corporation Act.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is identical to Section 33–1–300 of the South Carolina Business Corporation Act. Certain specific duties required of the Secretary of State under the former nonprofit statutes have been repealed by this South Carolina Nonprofit Act. For example, the Secretary of State no longer has the duty (or the authority) to conduct an investigation of the claimed eligibility or status of the organization (former Section 33–31–60), to obtain the approval of any grand lodge before issuing a charter to a subordinate lodge (former Section 33–31–70), or to refuse a charter if he suspects that the organization will operate in violation of law or will keep a place where alcoholic beverages are stored, kept, given away, or supplied to members (former Section 33–31–80).

<< SC ST § 33–31–140 >>

Section 33–31–140. Definitions.

Unless the context otherwise requires;

(1) 'Approved by the members' or 'approval by the members' means approved or ratified by the members entitled to vote on the issue through either:

  (a) the affirmative vote of a majority of the votes of the members represented and voting at a duly held meeting at which a quorum is present or the affirmative vote of the greater proportion including the votes of any required proportion of the members of any class as the articles, bylaws, or this chapter may provide for specified types of member action; or

  (b) a written ballot or written consent in conformity with this chapter.

(2) 'Articles of incorporation' or 'articles' include amended and restated articles of incorporation and articles of merger.

(3) 'Board' or 'board of directors' means the individual or individuals vested with overall management of the affairs of the domestic or foreign corporation, irrespective of the name by which the individual or individuals are designated, except that no individual or group of individuals is the board of directors because of powers delegated to that individual or group pursuant to Section 33–31–801(c).

(4) 'Bylaws' means the code or codes of rules, other than the articles, adopted pursuant to this chapter for the regulation or management of the affairs of the corporation irrespective of the name or names by which the rules are designated.

(5) 'Class' refers to a group of memberships which have the same rights with respect to voting, dissolution, redemption, and transfer. For the purpose of this section, rights are considered the same if they are determined by a formula applied uniformly.

(6) 'Conspicuous' means so written that a reasonable person against whom the writing is to operate should have noticed it. For example, printing in italics or boldface or contrasting color or typing in capitals or underlined is conspicuous.

(7) 'Corporation' means public benefit, mutual benefit, and religious corporation.

(8) 'Delegates' means those persons elected or appointed to vote in a representative assembly for the election of a director or directors or on other matters.

(9) 'Deliver' includes mail.

(10) 'Directors' means natural persons, designated in the charter or bylaws or elected by the incorporators, and their successors and natural persons elected or appointed to act as members of the board, irrespective of the names or titles by which these persons are described.

(11) 'Distribution' means the direct or indirect transfer of assets or any part of the income or profit of a corporation to its members, directors, or officers. The term does not include:

  (a) the payment of compensation in a reasonable amount to its members, directors, or officers for services rendered;

  (b) conferring benefits on its members in conformity with its purposes; or

  (c) repayment of debt obligations in the normal and ordinary course of conducting activities.

(12) 'Domestic corporation' means a corporation.

(13) 'Effective date of notice' is defined in Section 33–31–141.

(14) 'Employee' includes an officer but not a director. A director may accept duties that make him also an employee.

(15) 'Entity' includes corporation and foreign corporation; business corporation and foreign business corporation; profit and nonprofit unincorporated association; corporation sole; business trust, estate partnership, trust, and two or more persons having a joint or common economic interest; and state, United States, and foreign government.

(16) 'File', 'filed', or 'filing' means filed in the office of the Secretary of State.

(17) 'Foreign corporation' means a corporation organized under a law other than the law of this State which would be a nonprofit corporation if formed under the laws of this State.

(18) 'Governmental subdivision' includes authority, county, district, and municipality.

(19) 'Includes' denotes a partial definition.

(20) 'Individual' includes the estate of an incompetent individual.

(21) 'Internal Revenue Code' means the Internal Revenue Code of 1986, or any future federal tax code or succeeding statute of like tenor and effect, and any reference to a section of the Internal Revenue Code also shall mean the corresponding section of any future federal tax code.

(22) 'Means' denotes a complete definition.

(23)(a) 'Member' means a person entitled, pursuant to a domestic or foreign corporation's articles or bylaws, without regard to what a person is called in the articles or bylaws, to vote on more than one occasion for the election of a director or directors or any other matter which under the terms of this chapter requires approval by the members.

  (b) A person is not a member by virtue of any of the following:

(A) any rights the person has as a delegate;

(B) any rights the person has to designate or appoint a director or directors; or

(C) any rights the person has as a director.

(24) 'Membership' refers to the rights and obligations a member has pursuant to a corporation's articles, bylaws, and this chapter.

(25) 'Mutual benefit corporation' means a domestic corporation which either is formed as a mutual benefit corporation pursuant to Sections 33–31–201 through 33–31–207, is designated a mutual benefit corporation by a statute, or does not come within the definition of public benefit or religious corporation.

(26) 'Notice' is defined in Section 33–31–141.

(27) 'Person' includes any individual or entity.

(28) 'Principal office' means the office, in or out of this State, so designated in the articles of incorporation, application for certificate of authority, or in a notice of change of principal office filed pursuant to either Section 33–31–505 or 33–31–1515 where the principal office of a domestic or foreign corporation is located.

(29) 'Proceeding' includes civil suit and criminal, administrative, and investigatory action.

(30) 'Public benefit corporation' means a domestic corporation which is formed as a public benefit corporation pursuant to Sections 33–31–201 through 33–31–207 or is required to be a public benefit corporation pursuant to Section 33–31–1707.

(31) 'Record date' means the date established under Sections 33–31–601 through 33–31–640 or Sections 33–31–701 through 33–31–730 on which a corporation determines the identity of its members and their membership rights for the purposes of this chapter. The determinations must be made as of the time of close of transactions on the record date unless another time for doing so is specified at the time the record date is fixed.

(32) 'Religious corporation' means a domestic corporation which is formed as a religious corporation pursuant to Sections 33–31–201 through 33–31–207 or is required to be a religious corporation pursuant to Section 33–31–1707.

(33) 'Secretary' means the corporate officer to whom the board of directors has delegated responsibility under Section 33–31–840(b) for custody of the minutes of the directors' and members' meetings and for authenticating the records of the corporation.

(34) 'State', when referring to a part of the United States, includes a state and commonwealth, and their agencies and governmental subdivisions, and a territory, and insular possession, and their agencies and governmental subdivisions of the United States.

(35) 'United States' includes district, authority, bureau, commission, department, and any other agency of the United States.

(36) 'Vote' includes authorization by written ballot and written consent.

(37) 'Voting power' means the total number of votes entitled to be cast on the issue at the time the determination of voting power is made, excluding a vote which is contingent upon the happening of a condition or event which has not occurred at the time. Where a class is entitled to vote as a class for directors, the determination of voting power of the class must be based on the percentage of the number of directors the class is entitled to elect out of the total number of authorized directors.

OFFICIAL COMMENT

With a few exceptions, all the definitions in the Model Act are set forth in section 1.40. A few "special definitions" appear in subchapters or sections to which they apply.

The following is a discussion of some of the more important definitions:

1. Approved by (or Approval by) the Members

This definition sets forth the minimum statutory requirements for having a matter approved by the members. Approval may be by a vote of the members at a membership meeting or by written ballot or written consent. Compare sections 7.01, 7.02, 7.08 and 7.04.

To be approved by the members the following minimum conditions must be met:

1. A quorum must be present. See section 7.22. Presence may be established by physical presence, presence by proxy or by signing a written consent or written ballot.

2. A majority of the votes represented and voting must vote in favor of a proposal. While abstentions may be counted in the quorum, abstentions are not counted as no votes in determining whether a majority of the votes have been cast in favor of approving a proposal.

3. The votes cast for a proposal must constitute a majority of the required quorum.

The following example illustrates the interplay of these requirements. A quorum is a majority of the votes entitled to be cast. Assume the number of votes entitled to be cast is 100, the number of votes present is 60. If 26 votes are cast in favor of a proposal, 17 against the proposal and 17 abstain, the proposal is approved. The 26 votes for the proposal constitute a majority of the required quorum of 51. If, however, there are 25 votes in favor of a proposal, 12 against the proposal and 23 abstain, the proposal is defeated. The 25 votes for the proposal are not a majority of the required quorum. Consequently the proposal is defeated even though the number of affirmative votes is greater than the number of negative votes.

In addition to the minimum requirements, the Model Act or a corporation's articles or bylaws may mandate a higher vote or a vote by class or some other unit or grouping. If so, unless the relevant article or bylaw provision contravenes a Model Act requirements, a matter cannot be approved by the members unless it is approved by the higher vote.

2. Board or Board of Directors

The definition of board of directors distinguishes between the board of directors and the group or groups to which the articles may delegate some or all of the powers of the board. See section 8.01(c). Such groups are not treated as the board for purposes of the Model Act. They do, however, assume the duties and responsibilities of the board insofar as they have been delegated some or all of the powers of the board.

3. Bylaws

The term "bylaws" has a particularly expansive definition. The term refers to the code or codes of rules, other than the articles, adopted for regulation or management of corporate affairs regardless of the name by which such rules are designated.

4. Delegates

Professional associations, churches, political parties and numerous other organizations hold representative assemblies from time to time at which major corporate and policy decisions are made. These representative assemblies may be called conventions, annual meetings or some other name. See sections 1.40(7) and 6.40. The people elected or appointed to vote at these representative assemblies are "delegates" for purposes of the Model Act even if they are called by some other name.

5. Distribution

"Distribution" is defined in section 1.40(10) as "the payment of a dividend or any part of the income or profit of a corporation to its members, directors or officers." The payment of any part of the income or profit of a corporation to its members, directors or officers does not include:

(i) the payment of compensation in a reasonable amount to its members, directors or officers for services rendered; or

(ii) conferring benefits upon its members in conformity with its purposes.

This definition is based on and represents no substantive change from section 26 of the prior version of the Model Nonprofit Corporation Act.

6. Member

A "member" is a person who is given the right under a corporation's articles or bylaws to vote for a director or directors of the corporation. See section 1.40(21). Whenever the Model Act refers to members it is referring to them based on the definition set forth in section 1.40(21). If a person is called a member by a nonprofit corporation, but does not have the right to vote for directors, that person is not a member for the purposes of the Model Act. Persons who cannot vote for directors but are called members, associates, affiliates or some other name may have common law or other rights. The question of what rights they have is left to a state by state determination.

A corporation is not required to have "members." Once it has decided to have such members, these members are afforded basic protections and rights by the Model Act. People who have the right to vote for directors are treated as members for Model Act purposes regardless of the name by which they are called.

As a result of section 1.40(21) three categories of people who select directors are not treated as members by the Model Act. Section 1.40(21) provides that a person is not a member because of any rights that person has as a delegate. Therefore, a delegate who votes for directors is not a member. A person may be a delegate and a member if he or she has the right to vote for directors and that right does not arise out of that person's rights as a delegate.

The Model Act does not treat delegates as members for two reasons. The first reason is practical. The Act provides notice and other rights to members on the assumption that the members can always be identified. Often delegates are not identified until they appear or are accredited at a convention. By that time it is often too late to fulfill notice and other procedural requirements of the Model Act. Moreover there is a question of how long a person remains a delegate and what a delegate's role is between conventions. The law in this area is unclear and in an early stage of development. It would be premature to write statutory

rules when there is no consensus as to what the law should be. See section 6.40 which recognizes and legitimizes the role delegates play.

The fact that the Model Act does not provide specific right to delegates does not mean that delegate are without rights. A corporation's articles or bylaws or a state's common law may prescribe rules governing delegates and their rights and obligations.

Some individuals or public and other entities that want the right to appoint directors do not or legally cannot become members of nonprofit corporations. Therefore, the Model Act provides that the articles or bylaws of a corporation may authorize any person to appoint a director and that the person is not made a member as a result of appointing a director. See sections 1.40(21) and 8.04. Certain protections are provided to people who have the right to appoint directors. See sections 8.09, 8.10 and 10.30. Persons appointing directors may have additional rights as a result of article or bylaw provisions, negotiated agreements with the corporation, or state common law.

Directors are the third category of persons who select directors, but are not members. Directors who select other directors have adequate protection in their capacity as directors and should not be treated as members.

7. Membership

The term "membership" is defined as the totality of rights and obligations a member or members may have arising out of the articles, bylaws or the Model Act. It does not include rights and obligations that may arise out of contractual or other obligations. Two or more persons may hold one membership.

8. Mutual Benefit Corporation

See the Introduction to the Model Act for a discussion of mutual benefit corporations. Section 1.40(23) distinguishes between corporations existing before and those formed on or after the effective date of the Model Act. Corporations formed on or after the effective date as mutual benefit corporations must provide in their articles that they are mutual benefit corporations. Section 17.07 requires certain corporations existing prior to the effective date to be mutual benefit corporations.

9. Principal Office

Section 16.22 requires each nonprofit corporation to designate a principal office. Section 1.40(26) defines a principal office as the office designated in the annual report as the place where the corporation's principal offices are located. [In South Carolina the principal office is designated originally in the articles or application for certificate of authority, and as is changed in a Notice of Change of Principal Office.] The place designed as a principal office should be the place, if any, that is the center of the corporation's activities. For many nonprofit corporations there is no place which is really the center of their activities, so these corporations may designate the officer or home of an officer as their principal office.

10. Public Benefit Corporation

See the Introduction to the Model Act for a discussion of public benefit corporations. Section 1.40(28) distinguishes between corporations existing before and those formed on or after the effective date of the Model Act. Corporations formed on or after the effective date as public benefit corporations must provide in their articles that they are public benefit corporations. Section 17.07 requires certain corporations existing prior to the effective date to be public benefit corporations.

11. Religious Corporation

See the Introduction to the Model Act for a discussion of religious corporations. Section 1.40(30) distinguishes between corporations existing before and those formed on or after the effective date of the Model Act. Corporations formed on or after the effective date as religious corporations must provide in their articles that they are religious corporations. Section 17.07 requires certain corporations existing prior to the effective date to be religious corporations.


SOUTH CAROLINA REPORTERS' COMMENTS

1. Prior statutes

This section has no real counterpart in the former nonprofit statutes. Some of the definitions are similar to those in the South Carolina Business Corporation Act, Section 33–1–400, but particular attention should be paid to the Official Comments to this section.

2. Non–Model Act definitions

The definitions of the following terms are different from the Model Act definitions:

Approved by the members

Board

Directors

Distribution

Employee

Member

Mutual benefit corporation

Principal office

Record date

Voting Power

In addition, this South Carolina section has a definition of the term "conspicuous" which does not appear in the Model Act.

3. Definition of a religious corporation

There was substantial consideration given to whether there should be a limiting definition of "religious corporation." The purpose of such a definition would be to limit the types of entities which could file articles in South Carolina claiming that they are a religious corporation. Consideration was given to incorporating language from Section 33–31–1707, but after significant debate it was determined that this statute should not contain a limiting definition.

For example, this statute does not regulate whether or not a nursing home formed and operated by a religious denomination could be formed as a religious corporation. This decision is left to the parties forming the entity.

It should be noted that the only practical effect of whether or not a corporation is for South Carolina purposes a religious corporation (and not a public benefit corporation) is the degree of monitoring that will be done of that corporation. For example, if a public benefit corporation dissolves, the Attorney General must receive a report of the distribution of its assets. If the same entity were formed as a designated religious corporation and it dissolved, the corporation would not have to report to the Attorney General how it distributed its assets.

It should also be noted that the federal government, through the IRS, is very active in policing entities which claim to exist for religious purposes but do not.

<< SC ST § 33–31–141 >>

Section 33–31–141. Notice.

(a) Notice may be oral or written.

(b) Notice may be communicated in person; by telephone, telegraph, teletype, facsimile transmission (FAX), or other form of wire or wireless communication; or by mail or private carrier. If these forms of personal notice are impracticable, notice may be communicated by a newspaper of general circulation in the area where published; or by radio, television, or other form of public broadcast communications.

(c) Oral notice is permissible if reasonable under the circumstances and is effective when communicated if communicated in a comprehensible manner. Oral notice also includes notice through broadcast transmission.

(d) Written notice, if in a comprehensible form, is effective at the earliest or the following:

(1) when received;

(2) five days after its deposit in the United States mail, if mailed correctly addressed and with first class postage affixed;

(3) on the date shown on the return receipt, if sent by registered or certified mail, return receipt requested, and the receipt is signed by or on behalf of the addressee;

(4) fifteen days after its deposit in the United States mail, if mailed correctly addressed and with other than first class, registered, or certified postage affixed.

(e) Written notice is correctly addressed to a member of a domestic or foreign corporation if addressed to the member's address shown in the corporation's current list of members.

(f) A written notice or report delivered as part of a newsletter, magazine or other publication regularly sent to members constitutes a written notice or report if addressed or delivered to the member's address shown in the corporation's current list of members, or in the case of members who are residents of the same household and who have the same address in the corporation's current list of members, if addressed or delivered to one of such members, at the address appearing on the current list of members.

(g) Written notice is correctly addressed to a domestic or foreign corporation, authorized to transact business in this State, other than in its capacity as a member, if addressed to its registered agent or to its secretary at its principal office shown in its most recent Notice of Change of Principal Office and if none has been filed, in its articles of incorporation or application for certificate of authority.

(h) If Section 33–31–705(b) or any other provision of this chapter prescribes notice requirements for particular circumstances, those requirements govern. If articles or bylaws prescribe notice requirements, not inconsistent with this section or other provisions of this chapter, those requirements govern.

OFFICIAL COMMENT

Section 1.41 sets forth the rules for determining the effective date of notices given under the Model Act.

Unless the Act otherwise provides, notice may be oral or written. Oral notice is effective when communicated in a comprehensible manner. Written notice must be in a comprehensible form to be effective. The effective date of written notice depends on the means used to send the written notice. Written notice is effective when received or at any of the following times if they are earlier:

1. Five days after the notice is deposited in the United States mail correctly addressed with first class postage;

2. On the date shown on the signed return receipt for mail sent by registered or certified mail; or

3. Thirty days [15 in South Carolina] after the notice is deposited in the United States mail correctly addressed with other than first class postage.

As a result of the above rules nonprofit corporations can be sure of the effective date of a mailing even if the mail does not reach the intended person. The Model Act recognizes that many nonprofit corporations have special mailing privileges. These organizations can send their mail at the nonprofit rate; the effective date of any such mailing is thirty days [15 in South Carolina] after the mail is deposited in the United States mail.

Many nonprofit corporations include notices in newsletters, magazines or other publications regularly sent to members. Subsection (f) allows notices or reports contained in such publications to constitute written notice. If more than one member has the same address on the corporation's current records and lives in the same household as other members, notice in a publication delivered or mailed to such member at the correct address serves as written notice to all the members at the same address.

Other provisions of the Act may override the rules set forth in section 1.41. See section 1.41(h). Moreover, if a corporation's articles or bylaws provide different notice requirements, those requirements, if not inconsistent with the Act, are valid. For example, bylaws may provide more stringent notice requirements for a meeting of the board than those set forth in section 8.22.

SOUTH CAROLINA REPORTERS' COMMENTS

There is no comparable provision in the former provisions of Chapter 31, Title 33. This section is not identical to the notice provision for business corporations, although some of the provisions are similar. See Section 33–1–410. Notice is effective after placed in the mail according to the procedures specified in this section or otherwise when given, e.g., when a broadcast is made or someone has been told of a meeting. This section varies from the Model Act in a number of ways. Oral notice is limited. The South Carolina language only permits oral notice if it is "reasonable under the circumstances." Broadcast transmission is specifically defined as oral notice. Section 33–31–141(b) provides that notice may be given by "facsimile transmission." If notice is not mailed by first class (e.g., civic club bulletin) it will be deemed effective 15 days (not 30) after properly being mailed. Section 33–31–141(d)(4) provides for 15 days rather than 30 days. Proof of mailing under this section would be made by affidavit. The Model Act states that proof would be from the postmark which is unavailable to the sender. If the sender provides an affidavit of mailing or other proof of mailing (or other notice), the burden will be on the party who claims that mailing (or other notice) was not made.

<< SC ST § 33–31–150 >>

Section 33–31–150. Private foundations.

Except where otherwise determined by a court of competent jurisdiction, a corporation that is a private foundation as defined in Section 509(a) of the Internal Revenue Code:

(a) shall distribute such amounts for each taxable year at such time and in such manner as not to subject the corporation to tax under Section 4942 of the Internal Revenue Code;

(b) may not engage in any act of self-dealing as defined in Section 4941(d) of the Internal Revenue Code;

(c) may not retain any excess business holdings as defined in Section 4943(c) of the Internal Revenue Code;

(d) may not make any taxable expenditures as defined in Section 4944 of the Internal Revenue Code;

(e) may not make any taxable expenditures as defined in Section 4945(d) of the Internal Revenue Code.

OFFICIAL COMMENT

Under section 508(e)(1) of the Internal Revenue Code, a private foundation (as defined in section 509(a)) is not exempt from federal income tax under section 501(a) unless its governing instrument includes provisions the effects of which are:

(1) to require its income for each taxable year to be distributed at such time and in such manner as not to subject the foundation to tax under section 4942; and

(2) to prohibit the foundation from engaging in any act of self-dealing (as defined in section 4941(d)), from retaining any excess business holdings (as defined in section 4943(c)), from making any investments in such manner as to subject the foundation to tax under section 4944, and from making any taxable expenditures (as defined in section 4945(d)).

Section 1.508.3(d) of the Income Tax Regulations provides that a private foundation's governing instrument is deemed to conform with the requirements of section 508(e) of the Code if valid provisions of state's law have been enacted which either require the foundation to comply with the provisions of section 508(e)(1), or treat the required provisions as contained in the foundation's governing instrument.

Section 508(e)(2) of the code provides that the requirements of paragraph 1 of the section do not apply to a foundation organized before January 1, 1970 which has been excused from complying with the requirements of paragraph 1 by a court order secured in a proceeding begun before January 1, 1972.

Under the applicable Income Tax Regulation (section 1.508(3)(d)), section 1.50 requiring a corporate foundation to comply with the provisions of section 508(e) of the Code satisfies the requirement that a foundation's governing instrument include such provisions. The section applies only to foundations which are corporations, and does not satisfy the requirements of section 508(e) in the case of trusts or other entities which qualify as private foundations under section 509(a) of the Code.

The introductory clause "Except where otherwise provided by a court of competent jurisdiction" incorporates the exception specified under paragraph 2 of section 508(e) for foundations organized prior to January 1, 1970 which have been relieved from the requirements of paragraph 1 by a timely judicial proceeding.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is very similar to former Section 33–31–310. The former statute stated that these provisions are incorporated into the articles—but this new statute simply states that these requirements govern the corporation. No change was intended by this rewording. The former statute also provided that certain acts, such as "taxable expenditures" were only wrongful if they would result in a tax. This proposed Model Act language makes all such acts, whether or not a tax will result, as being impermissible. Again, no substantive change is intended. Non–Model Act language is used to refer to the Internal Revenue Code.

The former statutes also included three provisions related to Section 33–31–310 (namely, former Sections 33–31–320 through 33–31–340). These additional provisions have been retained as Sections 33–31–151, 33–31–152, and 62–7–507.

<< SC ST § 33–31–151 >>

Section 33–31–151. Express amendment excluding application of Section 33–31–150.

A corporation may amend its articles of incorporation expressly to include the application of Section 33–31–150, or any portion of that section.

OFFICIAL COMMENT

None

SOUTH CAROLINA REPORTERS' COMMENTS
  This provision was formerly contained in Section 33–31–320 and has been renumbered as Section 33–31–151 to come within the scheme of this revised act.

<< SC ST § 33–31–152 >>

Section 33–31–152. Rights of State are not impaired.

  Nothing in Sections 33–31–150, 33–31–151, 62–7–506, and 62–7–507 impairs the rights and powers of the courts or the Attorney General of this State with respect to a corporation.

OFFICIAL COMMENT
  None

SOUTH CAROLINA REPORTERS' COMMENTS
  This provision was formerly contained in Section 33–31–340 and has been renumbered as Section 33–31–152 to come within the scheme of this revised act.

<< SC ST § 33–31–160 >>

Section 33–31–160. Judicial relief.

  (a) If for any reason it is impractical or impossible for a corporation to call or conduct a meeting of its members, delegates, or directors, or otherwise obtain their consent, in the manner prescribed by its articles, bylaws, or this chapter, then upon petition of a director, officer, delegate, member, or the Attorney General, the court of common pleas for the county in which the principal office designated on the last filed notice of change of principal office, articles, or application for authority to transact business is located, or if none within South Carolina, then the Richland County Court of Common Pleas, may order that such a meeting be called or that a written ballot or other form of obtaining the vote of members, delegates, or directors be authored, in such a manner as the court finds fair and equitable under the circumstances.
  (b) The court, in an order issued pursuant to this section, shall provide for a method of notice reasonably designed to give actual notice to all persons who would be entitled to notice of a meeting held pursuant to the articles, bylaws, and this chapter, whether or not the method results in actual notice to all such persons or conforms to the notice requirements that would otherwise apply. In a proceeding under this section, the court may determine who the members or directors are.
  (c) The order issued pursuant to this section may dispense with any requirement relating to the holding of or voting at meetings or obtaining votes, including any requirement as to quorums or as to the number or percentage of votes needed for approval, that would otherwise be imposed by the articles, bylaws, or this chapter.
  (d) Whenever practical, any order issued pursuant to this section shall limit the subject matter of meetings or other forms of consent authorized to items, including amendments to the articles or bylaws, the resolution of which will or may enable the corporation to continue managing its affairs without further resort to this section. However, an order under this section may also authorize the obtaining of whatever votes and approvals are necessary for the dissolution, merger, or sale of assets.
  (e) Any meeting or other method of obtaining the vote of members, delegates, or directors conducted pursuant to an order issued under this section and that complies with all the provisions of such order, is a valid meeting or vote, as the case may be, and has the same force and effect as if it complied with every requirement imposed by the articles, bylaws, and this chapter.

OFFICIAL COMMENT
  Section 1.60 provides an escape valve allowing nonprofit corporations to conduct meetings or obtain the consent of members, delegates or directors when it is otherwise impractical or impossible to do so. For example, a corporation may have a high quorum requirement preventing it from holding a meeting of members because the required number of members won't attend a meeting. It may have inaccurate records and be unable to identity its members or directors. The section allows directors, officers, delegates, members or the Attorney General to petition the appropriate court for an order allowing the members or directors to vote or hold a meeting even if the order dispenses with requirements of the Model Act, the articles or bylaws concerning

voting or holding meetings. The court in exercising its discretion should provide a procedure that is fair and equitable under all the circumstances.

Judicial relief should not be granted under this section if the nonprofit corporation has duly adopted a viable method for holding meetings or obtaining consent. In a hierarchical church, for example, the church hierarchy may be empowered to determine the manner of holding meetings or obtaining consent.

Whenever practical the court order should limit the matters considered to those matters which will allow the corporation to continue its activities without further resort to section 1.60. Once the impediment to member or director action is removed, the members and directors can act without court aid.

If the corporation cannot locate or identify the members or directors, the court is empowered to authorize notice by any method reasonably designed to give actual notice even if the method does not result in actual notice or comply with the notice requirements that would otherwise apply. In appropriate cases, notice to members or directors may be by publication. See section 1.41(b).

SOUTH CAROLINA REPORTERS' COMMENTS

This section is entirely new and has no counterpart in the South Carolina Business Corporation Act. Although the language of this Section 33–31–160 grants the court discretionary authority as to whether or not it will hear a petition for judicial relief, it was the clear intent of the legislature that if after two consecutive notices had been given in any manner authorized by Section 33–31–141 calling either a meeting of the members or the directors, and any person certifies that there was no quorum for any such called meeting, the court of common pleas upon a complaint filed by any person identified in Section 33–31–160(a) shall grant a hearing and shall endeavor to provide the relief as specified in this Section 33–31–160. Likewise, if any person who was elected as an officer, director, or delegate (and whose position has not been affirmatively terminated by appropriate action of the corporation) certifies to the court that it is impractical to determine the identity of either a majority of the members or directors of the corporation, and he or she petitions the court for relief as provided in this Section 33–31–160, the court shall grant a hearing and endeavor to provide the relief as specified in this Section 33–31–160. These are merely examples of situations which will trigger the court's obligation to hear a complaint filed under this section and are not the exclusive situations in which the court has a duty to hear a complaint filed pursuant to Section 33–31–160.

<< SC ST § 33–31–170 >>

Section 33–31–170. Attorney General.

(a) The Attorney General must be given notice of the commencement of any proceeding that this chapter authorizes the Attorney General to bring but that has been commenced by another person.

(b) Whenever a provision of this chapter requires that notice be given to the Attorney General before or after commencing a proceeding or permits the Attorney General to commence a proceeding:

(1) if no proceeding has been commenced, the Attorney General may take appropriate action including, but not limited to, seeking injunctive relief;

(2) if a proceeding has been commenced by a person other than the Attorney General, the Attorney General, as of right, may intervene in the proceeding.

OFFICIAL COMMENT

Subsection (a) requires that the Attorney General be given notice of any proceeding that could have been brought by the Attorney General, but is commenced by another person. Subdivision (b)(1) grants the Attorney General independent authority to act when notice is required under subsection (a) or any other provision of the Model Act. This carries out the policy implicit in such notice requirements by specifically empowering the Attorney General to protect the public interest when it may be adversely affected. Subdivision (b)(2) permits the Attorney General to intervene in any proceeding that the Attorney General could have commenced but that was brought by another person, such as a director, or member. To protect the public interest, the Attorney General may either commence a proceeding or intervene in a proceeding commenced by another person who is authorized to do so.

Section 1.70 does not detract from the jurisdiction the Attorney General may otherwise have in states adopting the Model Act.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is entirely new and has no counterpart in the South Carolina Business Corporation Act. Former Sections 33–31–410 through 33–31–450 granted the Attorney General rights to investigate the organization, conduct, and management of any nonprofit corporation. The information obtained was confidential and was obtained upon written request. Failure to comply with an investigation would result in the forfeiture of the corporation's charter. These provisions have been retained as Sections 33–31–171, 33–31–172, and 33–31–173. This new section expands upon these former/retained sections. Other rights are specified in other sections, e.g., the right to dissolve a nonprofit corporation which is abusing its authority is granted in Section 33–31–1430.

<< SC ST § 33–31–171 >>

Section 33–31–171. Investigation by Attorney General authorized.

The Attorney General, or any of his assistants or representatives when authorized by the Attorney General, may make investigations into the organization, conduct, and management of a nonprofit corporation, domestic or foreign, operating in this State. Every such corporation shall permit the Attorney General or any of his authorized assistants or representatives to examine and take copies of all its books, accounts, records, minutes, letters, memoranda, documents, checks, vouchers, telegrams, articles, bylaws, and any and all other records of any such corporation as often as the Attorney General may deem it necessary to show or tend to show that the corporation has been, or is, engaged in acts or conduct in violation of its charter rights and privileges or in violation of any law of this State.

SOUTH CAROLINA REPORTERS' COMMENTS

This is neither a Model Act provision nor similar to any provision in the South Carolina Business Corporation Act. It is essentially identical with the former Section 33–31–410 of the 1976 Code.

<< SC ST § 33–31–172 >>

Section 33–31–172. Requesting permission to make examinations.

A written request must be made to the president or another officer of the nonprofit corporation at the time the Attorney General or his assistants or representatives desire to examine the affairs of the corporation, and it is the duty of the officer or his agent to immediately permit the Attorney General, or his authorized assistants or representatives, to inspect and examine any of the documents of the corporation.

SOUTH CAROLINA REPORTERS' COMMENTS

This is neither a Model Act provision nor similar to any provision in the South Carolina Business Corporation Act. It is essentially identical with the former Section 33–31–420 of the 1976 Code.

<< SC ST § 33–31–173 >>

Section 33–31–173. Use of information is restricted.

The Attorney General, or his authorized assistants or representatives, may not make public or use any document, copy, or other information derived in the course of an examination authorized by Sections 33–31–170 through 33–31–175, except in a judicial proceeding to which the State is a party or in a suit by the State to revoke the certificate of authority or cause the articles of the corporation to be forfeited or to collect penalties for a violation of the laws of this State or for the information of any officer of this State charged with the enforcement of its laws.

SOUTH CAROLINA REPORTERS' COMMENTS

This is neither a Model Act provision nor similar to any provision in the South Carolina Business Corporation Act. It is essentially identical with the former Section 33–31–430 of the 1976 Code.

<< SC ST § 33–31–174 >>

Section 33–31–174. Forfeiture of right to operate for refusing examination.

  A foreign nonprofit corporation operating in this State under certificate of authority granted under the laws of this State, or any officer or agent thereof, or any domestic nonprofit corporation which fails or refuses to permit the Attorney General or his authorized assistants or representatives to examine or take copies of any of its documents as provided in Sections 33–31–170 through 33–31–175, whether they be situated within or without this State, shall forfeit its right to operate in this State and its articles of incorporation or certificate of authority shall be canceled or forfeited.

SOUTH CAROLINA REPORTERS' COMMENTS
  This is neither a Model Act provision nor similar to any provision in the South Carolina Business Corporation Act. It is essentially identical with the former Section 33–31–440 of the 1976 Code.

<< SC ST § 33–31–175 >>

Section 33–31–175. Provisions are cumulative.

  The provisions of Sections 33–31–170 through 33–31–175 are cumulative of all other laws now in force in this State and may not be construed as repealing any other means afforded by law for securing testimony or inquiring into the affairs of domestic or foreign nonprofit corporations.

SOUTH CAROLINA REPORTERS' COMMENTS
  This is neither a Model Act provision or similar to any provision in the South Carolina Business Corporation Act. It is essentially identical with the former Section 33–31–450 of the 1976 Code.

<< SC ST § 33–31–180 >>

Section 33–31–180. Religious corporations; Constitutional protections.

  If religious doctrine governing the affairs of a religious corporation is inconsistent with the provisions of this chapter on the same subject, the religious doctrine controls to the extent required by the Constitution of the United States or the Constitution of South Carolina, or both.

OFFICIAL COMMENT
  As a result of history, policy, and constitutional principles, religious corporations are entitled to protections not available to business or other nonprofit corporations. Courts have been reluctant to interfere with the internal affairs of religious organizations. They will not decide between conflicting religious doctrine or determine the "true" faith. However, courts have often decided internal property disputes by applying neutral principles of contract or corporate law to organizational documents of religious organizations. See Mansfield, "The Religious Clauses of the First Amendment and the Philosophy of the Constitution," 72 Calif.L.Rev. 847 (1984); Ellman, "Driven from the Tribunal: Judicial Resolution of Internal Church Disputes," 69 Calif.L.Rev. 1878 (1981).
  This reluctance is based in part on the First Amendment to the United States Constitution which provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the exercise thereof...." The establishment clause applies to states [Everson v. Board of Education, 330 U.S. 1 (1947) ], as does the free exercise clause [Cantwell v. Connecticut, 310 U.S. 296 (1940). The Model Act attempts to walk the thin line between the establishment clause and the free exercise clause. It allows religious corporations to be formed and gives them the same rights and privileges as other corporations. The Model Act avoids interfering with the free exercise of religion by negating or allowing religious corporations to negate provisions of the Model Act that might result in excessive entanglement in religious activities by the state. By limiting state intrusion the Model Act uses the least restrictive means to provide an orderly structure in which religious corporations can be formed and operate.
  Section 1.80 is based on the recognition that some provisions of the Model Act may conflict with the United States Constitutions or state constitutions. The exact scope of constitutional imitations is less than clear and is subject to debate. Section 1.80

overcomes this difficulty by providing that to the extent religious doctrine applicable to a religious corporation sets forth provisions inconsistent with provisions of the Model Act, the religious doctrine law shall control to the extent required by the United States Constitution or applicable state constitutions. Section 1.80 was derived from 15 Pa.C.S.A. section 7106.

While in one sense section 1.80 simply states the obvious, it is helpful to remind those dealing with the religious corporations that they must consider constitutional mandates. The approach of section 1.80 also allows a case-by-case determination of difficult questions and automatically conforms the Model Act to the opinions of the United States Supreme Court and the applicable state courts.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is entirely new. As noted in Section 33–31–140, there is no limiting definition as to what entities may be incorporated as religious corporations. The main distinction in regard to South Carolina law between a religious corporation and a public benefit corporation is that there is more public monitoring of religious corporations, particularly by the Attorney General. This is in recognition of the separation of church and state.

Article 2

Incorporation

<< SC ST § 33–31–201 >>

Section 33–31–201. Incorporators.

One or more persons may act as the incorporator or incorporators of a corporation by delivering articles of incorporation to the Secretary of State for filing.

OFFICIAL COMMENT

Section 2.01 allows one or more persons to incorporate a corporations by delivering to the Secretary of State the articles of incorporation. The term "person" is broadly defined in section 1.40(25) to allow a wide variety of individuals or entities to serve as incorporators. Anyone serving as an incorporator must sign the original of the articles of incorporation. Sections 1.20(f), (g), and 2.02(c).

Section 1.20(i) requires an original and one exact or conformed copy of the articles to be delivered to the Secretary of State. An "exact" copy is a photographic or similar reproduction of the executed original articles. A "conformed" copy is a copy of the original articles on which the existence of any signature of signatures is noted. The prior law required delivery of "articles of incorporation in duplicate" to the Secretary of State. While this is no longer a requirement, a person submitting duplicate originals to the Secretary of State would meet the requirement of having filed an original and a "conformed" copy.

An exact or conformed copy of the articles is required so that the incorporator(s) will have a record of the incorporation. See the Official Comment to Section 2.03.

In addition to filing the articles, the incorporators are authorized to complete the formation of the corporation as set forth in section 2.05.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is a significant modification from prior practice but in conformity with the South Carolina Business Corporation Act (Section 33–2–101). Note that a corporation may serve as the incorporator since the definition of "person" includes an entity (Section 33–31–140). If desired, the incorporators may verify the filing but this is not required. Note that Section 33–31–129 mandates both criminal penalties and civil liabilities for any wrongful statement in a filed document.

<< SC ST § 33–31–202 >>

Section 33–31–202. Articles of incorporation.

(a) The articles of incorporation must set forth:

(1) a corporate name for the corporation that satisfies the requirements of Section 33–31–401;

(2) one of the following statements:

  (i) This corporation is a public benefit corporation.

  (ii) This corporation is a mutual benefit corporation.

  (iii) This corporation is a religious corporation;

 (3) the street address of the corporation's initial registered office with zip code and the name of its initial registered agent at that office;

 (4) the name, address, and zip code of each incorporator;

 (5) whether or not the corporation will have members;

 (6) provisions not inconsistent with law regarding the distribution of assets on dissolution; and

 (7) the address, including zip code, of the proposed principal office for the corporation which may be either within or outside South Carolina.

 (b) Unless the articles provide otherwise, no director of the corporation is personally liable for monetary damages for breach of any duty to the corporation or members. However, this provision shall not eliminate or limit the liability of a director:

  (1) for any breach of the director's duty of loyalty to the corporation or its members;

  (2) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law;

  (3) for any transaction from which a director derived an improper personal benefit; or

  (4) under Sections 33–31–831 through 33–31–833.

 This provision shall not eliminate or limit the liability of a director for an act or omission occurring before the date when the provision becomes effective.

 (c) The articles of incorporation may set forth:

  (1) the purpose for which the corporation is organized which may be, either alone or in combination with other purposes, the transaction of any lawful activity;

  (2) the names, addresses, and zip codes of the individuals who are to serve as the initial directors;

  (3) provisions not inconsistent with law regarding:

   (i) managing and regulating the affairs of the corporation;

   (ii) defining, limiting, and regulating the powers of the corporation, its board of directors, and members, or any class of members; and

   (iii) the characteristics, qualifications, rights, limitations, and obligations attaching to each or any class of members;

  (4) any provision that under this chapter is required or permitted to be set forth in the bylaws.

 (d) Each incorporator and director named in the articles must sign the articles.

 (e) The articles of incorporation need not set forth any of the corporate powers enumerated in this chapter.


OFFICIAL COMMENT

 1. Introduction

 Section 2.02 allows a simple one- or two-page document to serve as a corporation's articles of incorporation. While there are numerous standard provisions that must be contained in the articles, there is no single standard form of articles.

 Section 2.02 requires certain provisions to be in the articles of incorporation and allows the articles to contain other optional provisions. If no limitation is placed on the duration of the corporation and no optional provisions are contained in the articles, the corporation will have perpetual existence, the purposes set forth in section 3.01 and the broad powers enumerated in section 3.02. However, as a result of sections 2.02(b)(3)(ii) and 3.02, a corporation may limit its duration and corporate powers.

 To meet the requirements of Internal Revenue Code section 501 or equivalent state tax provisions, the articles of many nonprofit corporations must contain limitations on corporate activity and restrictions on the use and distribution of corporate assets. In addition, the articles of all nonprofit corporations must contain provisions dealing with the disposition of corporate assets on dissolution.

 2. Required Provisions

 The articles of incorporation must contain the following information:

 (a) A corporate name that meets the requirements of section 4.01.

 (b) A statement that the corporation is a public benefit, a mutual benefit or a religious corporation. This election requires those forming a nonprofit corporation to choose between public benefit, mutual benefit and religious status at the time of incorporation. See the Introduction to the Model Act for comments on the significance of this distinction. This election will

avoid confusion as to the status of nonprofit corporations under the Model Act. See Los Angeles County Pioneer Society v. Historical Society of Southern California, 40 Cal.2d 852, 257 P.2d 1 (1953); Lynch v. Spilman, 67 Cal.2d 251, 62 Cal.Rptr. 12, 431 P.2d 636 (1967). Assets held by public benefit and religious corporations may not be distributed to members, directors, officers or controlling persons in violation of section 13.01 and may only be distributed on dissolution as set forth in section 14.06. If a mutual benefit corporation holds assets in charitable trust, the same limitations apply to distribution of those assets. Other assets held by mutual benefit corporations may not be distributed to members, directors, officers or controlling persons until the corporation dissolves. See chapter 13 that governs distributions.

(c) The address of the corporation's initial registered office and the name of its initial registered agent.

(d) The name and address of each incorporator.

(e) Whether or not the corporation will have members. The term "members" has a limited meaning which is set forth in section 1.40(17). Many nonprofit corporations do not have members. They operate with a self-perpetuating board of directors, delegates, or some other system. Those corporations that will not have members must so indicate in their articles. Those corporations that will have members must indicate that there will be members. However, the bylaws and not the articles usually set forth the characteristics, qualifications, rights, limitations and obligations of the members. See initial Comment 3(c)(ii) regarding optional provisions setting forth rights and obligations of members.

(f) The disposition of assets on dissolution. A nonprofit corporation, unlike a business corporation, must provide for the distribution of its assets on dissolution. If a business corporation dissolves, its net worth will be distributed to its shareholders. Upon dissolution of a nonprofit corporation, its assets are not necessarily distributed to its members. In fact, the assets of public benefit and religious corporations and organizations that have section 501(c)(3) status generally cannot be distributed to members. See chapter 13 and section 14.06.

Some provision for distribution must be set forth in a corporation's articles. There are a wide variety of dissolution provisions ranging from those specifying a specific organization to those authorizing the directors to choose any organization or to choose among various organizations or types of organizations. A dissolution provision must be consistent with the type of tax exempt status the corporation is seeking.

3. Optional Provisions

Section 2.02(b) allows the article to contain a number of optional provisions. In determining whether to insert an optional provision in the articles, a person forming a corporation should consider the advantages and disadvantages of making the provision subject to public scrutiny, the procedure necessary to amend articles, and the requirements of federal and state income and property tax laws.

Optional provisions include:

(a) A broad or a limited purpose clause. To obtain tax exempt status under federal and state law, many nonprofit corporations will elect to limit their corporate purpose. As the tax laws differ for various types of organizations and change from time to time, it is not feasible to mandate particular limitations. Those forming a corporation, however, should be careful not to limit the purposes or impose more limitations than required by the tax laws unless they have a particular reason to do so. For example, while it may be necessary to irrevocably dedicate assets of a section 501(c)(3) organization to charitable, educational, or certain other activities, it may not be necessary to irrevocably dedicate a corporation's assets to such purposes in order to obtain other exempt status. By irrevocably dedicating assets when such dedication is not required, the incorporators may inadvertently impress the assets of a corporation with unintended restrictions and obligations. While a narrow purpose clause may serve to identify the existence of the corporation, a narrow purpose clause may unduly restrict corporate activity. For example, if the articles limit the corporate purpose to operating a hospital, the corporation may not be able to only operate outpatient clinics. See Queen of Angels Hospital v. Younger, 66 Cal.App.3d 359, 136 Cal.Rptr. 36 (1977).

(b) The names and addresses of the individuals who are to serve as initial directors. Section 2.02(e) requires all individuals named as initial directors to sign the articles to evidence their consent to serving as directors. This requirement prevents people from being named as initial directors without their consent. This problem is more acute in nonprofit corporations than in business corporations. In nonprofit corporations incorporators sometimes name respected or famous individuals as directors in the hope that they will serve as directors.

If initial directors are named in the articles, they have the powers set forth in section 2.05 and may continue to serve as directors subject to being replaced as set forth in the Model Act or the bylaws of the corporation.

(c) Provisions not inconsistent with the law regarding management or regulation of the affairs of the corporation including.

(i) Defining, limiting, and regulating the powers of the corporation, its directors and members. It is not necessary to set forth any corporate powers enumerated in the Act. See section 3.02.

(ii) The characteristics, qualifications, rights, limitations, and obligations of the members. Typically, provisions relating to members' rights and obligations are set forth in the bylaws of a corporation and not in its articles. This is for two reasons. First, it allows membership provisions to be contained in a private or semi-private document and not in the articles that are filed with the Secretary of State. Second, amendments to the article always require a vote of members which may be cumbersome and time consuming. Compare sections 10.01–10.08 with sections 10.20–10.22. Thus, more privacy and greater flexibility are obtained by putting membership provisions in bylaws.

(iii) Any provision that under the Act is required or permitted to be set forth in the bylaws. See the Official Comment to Section 2.06.

## SOUTH CAROLINA REPORTERS' COMMENTS

1. Similarities to former statutes

Although this is a major revision, both the old law (found in prior Chapter 31, Title 33) and this new law require the name of the corporation to be on the articles. Whereas the old law required a specific purpose to be identified, the new law simply requires the corporation to identify whether it is a public benefit, mutual benefit, or religious corporation, and permits the articles to identify the purpose or purposes for which the corporation is organized which may be, either alone or in combination with other purposes, the transaction of any lawful activity. The old law and new law both permit the inclusion of certain "other provisions." The corporation's powers are not specified in the articles; however, in addition to irrevocably dedicating its assets as described in the Official Comments to Section 33–31–202 and as contained in the language in Section 33–31–1406(a)(6), if the organization intends to qualify for exemption within the meaning of Section 501(c)(3) of the Internal Revenue Code, its articles must limit its purposes to those specified in Section 501(c)(3) and must limit its powers to these within the scope of Section 501(c)(3). Since most corporations will not file tax returns and will not file either an initial or subsequent annual reports, different from the Model Act but in keeping with prior South Carolina procedure, each corporation must specify the address of its principal office in the articles.

Some nonprofit corporations such as Rotary clubs, the Kiwanis, and others, will not have an actual permanent location. They will have a usual place of meeting and may maintain a mailbox or a member's address as their mailing address. It is anticipated that the Secretary of State will liberally construe the requirement in this section that the organization list its "street address." In situations where the organization does not actually own or lease property, it is assumed that the filing will be acceptable if it specifies the usual mailing address which the organization uses. The organization, if it desires, could also specify its usual date, time, and place of meeting—or merely its usual place of meeting.

2. Items removed

As noted in the preceding paragraph, the actual purpose of the nonprofit corporation does not have to be specified as was formerly true. (The existence of an additional catch-all "purpose" to engage in any business enterprise was deemed to be uncertain and unclear thus forming one of the reasons to deny a charter to the Ku Klux Klan, 1956–57 Op.S.C. Attorney General, 179 (April 8, 1957.) The old law required the articles to be filed by two or more officers or agents elected or appointed to supervise the corporation whose residence addresses had to be identified. The new law simply provides for execution by at least one incorporator. There is no longer a requirement to specify the names and residences of all officers, managers, trustees, directors, or other officers and agents. (The names and addresses of the directors may be listed on the articles, and if so listed, the directors must sign the articles.)

3. Items added

The name must meet the requirements of Section 33–31–401. The street address and name of the initial registered agent at that office must be identified. The articles must designate whether or not the corporation will have members, and provisions regarding the distribution of assets on dissolution. Various optional items may be included. Provisions not inconsistent with law can be included in regard to (a) managing and regulating the affairs of the corporation; (b) defining, limiting, and regulating the powers of the corporation, its board of directors, and members (or any class of members); and (c) the characteristics, qualifications, rights, limitations and obligations attaching to each or any class of members. Any provision that under the Act is required or permitted to be set forth in the bylaws can be placed in the articles.

A director immunity provision is adopted as paragraph (b). Each corporation automatically includes this provision in its articles unless the incorporator affirmatively elects not to include it. This provision only protects against monetary damages and does

not relate to injunctive or equitable remedies. Likewise, certain wrongful conduct is not protected. However, grossly negligent conduct is protected by this provision. The philosophy behind this protection is that most nonprofit corporate directors are volunteers serving at no or nominal compensation.

Section 33–31–834 also provides a very broad grant of immunity to directors of certain 501(c)(3) organizations and other entities. Section 33–55–210 provides certain immunities to true charitable organizations and possibly to their members. A discussion of these provisions is contained in the South Carolina Reporters' Comments to Section 33–31–204.

In adopting this Section 33–31–202(b), it was the legislative intent that the protections granted by the immunity provisions in these three sections are to be applied cumulatively. If any one of the sections contains an immunity provision which would protect a director (or member) against a claim, that section shall be applied even though the challenged behavior is not immunized under another section. For example, the directors of homeowner mutual benefit corporations are likely not protected by Section 33–31–834. However, if the challenged behavior of the homeowner director is immunized by the provisions of this Section 33–31–202(b), this section would in fact apply and protect the director of the homeowner mutual benefit corporation. Likewise, although grossly negligent conduct is not immunized by Section 33–31–834, it is pursuant to Section 33–31–202(b).

4. Tax exempt status

A public benefit or religious corporation will not be automatically exempt from federal or state income tax. If income tax exemption is desired, the articles should limit the purpose and powers of the corporation and irrevocably dedicate its assets to tax exempt purposes as required by tax laws, especially regulations adopted under Internal Revenue Code Section 501(c)(3). For example, the articles should contain language providing for the distribution of its assets upon dissolution in accordance with section 33–31–1406(6).

5. Provisions in other sections

Each nonprofit corporation is presumed to have perpetual existence. Section 33–31–302. The effective date of a filed document is controlled by Sections 33–31–123 and 33–31–203. Incorporators are described in Section 33–31–201. If the articles (or other controlling document, such as the bylaws) fail to provide how the assets will be distributed at dissolution, default provisions are provided in Section 33–31–1406(6) for public benefit corporations, and in Section 33–31–1406(7) for mutual benefit corporations.

6. Optional provisions

If the members desire, for example, to transfer the authority to appoint officers from the board to themselves, the provisions of subsection (c)(3)(i) and section 33–31–801(c) grant them this power. The members could place a provision in the articles which simply states that the members, instead of the directors, have the exclusive power to appoint all of the corporation's officers. See also the comments to section 33–31–801.


<< SC ST § 33–31–203 >>


Section 33–31–203. Incorporation.


(a) Unless a delayed effective date is specified, the corporate existence begins when the articles of incorporation are filed.

(b) The Secretary of State's filing of the articles of incorporation is conclusive proof that the incorporators satisfied all conditions precedent to incorporation except in a proceeding by the State to cancel or revoke the incorporation or involuntarily dissolve the corporation.


OFFICIAL COMMENT

1. Corporate Existence

Unless a delayed effective date is specified, a de jure corporation is formed when the Secretary of State files the articles. Typically, the articles are stamped and dated as "filed" when they are delivered to the Secretary of State even if internal procedures of the Secretary of State require additional processing time. See section 1.25. Those forming a corporation may, however, request that the corporation's existence begin at a specified time following delivery of the articles to the Secretary of State.

2. Proof of Incorporation

Pursuant to section 2.03(b), the Secretary of State's filing of the articles is conclusive proof that all conditions precedent to incorporation have been met except in a proceeding brought by the State.

SOUTH CAROLINA REPORTERS' COMMENTS

Nonprofit corporations always have enjoyed a delayed effective date in that the "declaration" ("articles") could not be even filed until three newspaper announcements had run (former Section 33–31–20). The prior law, former Section 33–31–60, granted substantial discretion to the Secretary of State who formerly was to investigate the merits of the proposed nonprofit corporation. Together with Section 33–31–125, this new section makes formation of a nonprofit purely mechanical: If promoters comply with the form and mechanics of the statutory filing requirements, the Secretary of State "shall" file proffered articles, which become effective (so that the corporate existence begins) on the date of filing. This eliminates even any nominal discretion the Secretary of State may have previously enjoyed. The new law follows the South Carolina Business Corporation Act, Section 33–2–103, and now states that the corporation is formed when filed with the Secretary of State unless the parties desire a delayed effective date. Note that the delayed effective date cannot be longer than ninety days, Section 33–31–123. Subsection (b) of this section is more precise in its predecessor section (former Section 33–31–90) in providing that, once filed, the corporation is formed even though there is an error in the document.

<< SC ST § 33–31–204 >>

Section 33–31–204. Liability for preincorporation transactions.

All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this chapter, are jointly and severally liable for all liabilities created while so acting except for any liability to any person who knew or reasonably should have known that there was no incorporation.

OFFICIAL COMMENT

There is a wide variety of factual situations in which third parties seek to impose liability on persons purporting to act as or on behalf of a corporation that has not been formed. There are numerous situations in which such liability would lead to an unjust result. This is particularly true in the nonprofit area where corporations are not operated for personal gain and where members are often less sophisticated than shareholders.

At one extreme, section 2.04 by implication protects individuals who erroneously and in good faith believe that a corporation has been formed. At the other extreme, section 2.04 imposes liability on individuals who purport to act as or on behalf of a corporation knowing that it has not been formed and knowing that the party with whom they are dealing believes a corporation exists. In the myriad of factual patterns falling between these extremes, a court may deny recovery when it is equitable to do so after considering all the circumstances. For example, if a third party insisted that a contract be signed on behalf of a corporation knowing that the corporation had not been formed, a court could apply equitable principles and not impose personal liability on the individual who signed the contract.

Even if personal liability is appropriate, it should not be imposed on all members of the corporation. Not all members of nonprofit unincorporated associations are necessarily liable for the obligations of the association. See Libby v. Perry, 311 A.2d 527 (Me.1973); Steuer v. Phelps, 41 Cal.App.3d 468, 116 Cal.Rptr. 61 (1974).

SOUTH CAROLINA REPORTERS' COMMENTS

1. Comparison to South Carolina Business Corporation Act

Section 33–2–104 of the South Carolina Business Corporation Act is the counterpart to this section. (It formerly applied to nonprofit corporations.) There are now significant differences between the two statutes. The South Carolina Business Corporation Act adopts a stringent test that makes it likely that a person acting prior to the formation of a corporation will be held personally liable for the debts of the purported entity. However, many nonprofit corporations will be churches and other bona fide charities. Likely true innocent mistakes will be made in forming these entities. It seems that as a matter of policy that it is not desirable to hold persons liable for the debts of these entities if simple or bona fide mistakes are made. Therefore, the "more liberal" section proposed in the Model Nonprofit Act was adopted for nonprofit corporations.

This section intends to insulate from liability persons who take action as an nonprofit corporation not knowing that the entity has not yet been formed. If there is no entity, those persons purporting to act on behalf of the entity will likely be deemed acting as members (or officers-directors) of an association. Without this section there would be a risk that they would be personally liable for the pre-incorporation activities of the purported nonprofit corporation.

2. Non–Model Act provision

The last phrase of the section, "except for any liability to any person who know or reasonably should have known that there was no incorporation," is a non-Model Act provision. The purpose of this language is to give the organizers additional protection. If the claimant knew that there was no corporation then there is no reason to permit such party to recover against the individuals.

3. Liability of members of an association

a. Common law. Dicta in Crocker v. Barr, 295 S.C. 195, 367 S.E.2d 471 (App.1988), rev'd, 305 S.C. 406, 409 S.E.2d 368 (1991), citing, Elliot v. Greer Presbyterian Church, 181 S.C. 84, 186 S.E. 651 (1936), and Medlin v. Ebenezer Methodist Church, 132 S.C. 498, 129 S.E. 830 (1925) states that "case law in South Carolina generally recognizes that members of any unincorporated association are jointly and severally liable for its obligations." See also, Hall v. Walters, 226 S.C. 430, 437, 85 S.E.2d 729 (1955).

b. Statutory liability. Whatever the status of the common law, there is a very dangerous statute:

Section 15–35–170. Judgments against unincorporated associations.

On judgment being obtained against an unincorporated association under process served as provided in Section 15–9–330 final process may issue to recover satisfaction of such judgment, and any property of the association and the individual property of any copartner or member thereof found in the State shall be liable to judgment and execution for satisfaction of any such judgment.

In addition to Section 15–35–170, Judge Bell recently made it clear that one can bring the members of the association into the action prior to a judgment being rendered by merely suing the association. Service on the individual members is not required. Graham v. Lloyd's of London, 296 S.C. 249, 371 S.E.2d 801 (App.1988).

c. Members liable to their co-members. Not only may a member of an unincorporated association be liable for contracts entered between the association and third parties, for tortious wrongs committed by the association against a non-member, but he may also be liable for injuries suffered by a co-member. The case law in South Carolina on this point is still unclear. For example, church members may be personally liable, but this is somewhat unclear. Crocker v. Barr, 305 S.C. 406, 409 S.E.2d 368 (1991). Union members may lose, and homeowner association members do lose. Murphy v. Yacht Cove Homeowners Association, 289 S.C. 367, 369, 345 S.E.2d 709 (1986).

d. Parent organizations may be liable for tortious acts done by members of a local unit or chapter. Not only may members of the association be personally liable, but there are two significant South Carolina cases which impose an "upstream" liability. In Ballou v. Sigma Nu General Fraternity, the "national organization" (itself an unincorporated association) was held responsible for the wrongful death (hazing) of a pledge at the University of South Carolina chapter of the fraternity (itself likely also another unincorporated association). Likewise in Easler v. Hejaz Temple of Greenville, 285 S.C. 348, 329 S.E.2d 753 (1985) the court found the national masonic organization liable for injuries inflicted during initiation rites conducted by the local unincorporated chapter.

e. Unincorporated charities, their members, and directors are not fully protected by statute. There is a popular misconception that unincorporated "charities," and therefore their members, are protected from claims. There are two protective statutes, Sections 33–55–210 and 33–31–834, but there are serious gaps in both. Section 33–31–834 appeared as Section 33–31–180 in the prior statute.

Although churches and other "true" charities are protected in part by Section 33–55–210, notably not protected at all are country clubs, homeowner associations, and possibly civic clubs. Section 33–55–210 gives no protection at all to members for contract claims and there may be a question whether it protects the members (as contrasted to the "entity") from tort claims. A similar Ohio statute was deemed to grant merely an alternative remedy against the organization and did not replace the plaintiff's right to proceed directly against the members. Lyons v. American Legion Post # 650 Realty Co., 172 Ohio St. 331, 175 N.E.2d 733 (1961). Section 33–55–210 was recently held to be constitutional Lazerson v. Hilton Head Hospital, Inc., et al. ––– S.C. ___, S.E., 2d ___ (1994).

The directors of certain charitable entities are given certain protection by Section 33–31–834. An obvious weakness with Section 33–18–834 is that it does not protect either the members themselves or the entity (in the case of an incorporated body), see 1988 Op.S.C. Attorney General, 158 (# 88–55). The only persons who are protected are the directors or those who function in that capacity. It would seem that high level officers would not be protected. Directors are only protected in cases of negligence. It would seem that if a problem is serious enough to consider a claim against the board, that many times the wrongful conduct would arguably be wanton or grossly negligent. Behavior of this type is not insulated. See, 1988 Op.S.C. Attorney General, 1558 (# 88–55). Directors for various types of nonprofit corporations and associations are not protected by this statute. If the

corporation is not a section 501(c)(3), (6), or (12) entity for tax purposes, the directors receive no help. Missing from this list and thus not protected are again homeowner associations, country clubs, and others. (No opinion was expressed in 1988 Op.S.C. Attorney General, 1558 (# 88–55) as to whether the Directors of the Alumni Association's National Council of Clemson University were within the protected class.)

<< SC ST § 33–31–205 >>

Section 33–31–205. Organization of corporation.

(a) After incorporation:
  (1) if initial directors are named in the articles of incorporation, the initial directors shall hold an organizational meeting, at the call of a majority of the directors, to complete the organization of the corporation by appointing officers, adopting bylaws, and carrying on any other business brought before the meeting;
  (2) if initial directors are not named in the articles, the incorporator or incorporators shall hold an organizational meeting at a call of a majority of the incorporators:
    (i) to elect directors and complete the organization of the corporation; or
    (ii) to elect a board of directors who shall complete the organization of the corporation.
(b) Action required or permitted by this chapter to be taken by incorporators at an organizational meeting may be taken without a meeting if the action taken is evidenced by one or more written consents describing the action taken and signed by each incorporator.
(c) An organizational meeting may be held in or out of this State in accordance with Section 33–31–821.

OFFICIAL COMMENT

Section 2.05 provides alternative ways to complete the process of incorporation.

If initial directors have been named in the articles, they may complete the organization of the corporation at a meeting or by unanimous written consent. See sections 2.05(a) and 8.21. There is no reason to name initial "dummy" directors as the same function can be carried out and privacy maintained by use of incorporators.

The completion of the organization typically includes opening a bank account, applying for federal and state tax-exempt status, electing officers, adopting bylaws, providing for and admitting members, if any, applying for licenses from state and local authorities, obtaining an employer identification number, registering with the Attorney General or other state authorities, and entering into arrangements and contracts for ongoing operations.

If initial directors have not been named in the articles, the incorporators at an organizational meeting may elect directors and complete the organization of the corporation. Section 2.05(a)(2). In completing the organization, incorporators should act with caution as they are responsible for their actions.

If no organizational meeting is held, the incorporators may act by signing a written approval of the actions they take. This procedure should be followed rather than preparing minutes of a meeting that does not take place.

SOUTH CAROLINA REPORTERS' COMMENTS

This section permits the initial directors either to hold an organizational meeting or to act by unanimous written consent as permitted by Section 33–8–210. This section is identical to the formerly applicable statute, Section 33–2–105 of the South Carolina Business Corporation Act. The former nonprofit statutes in Chapter 31, Title 33 had at best only vague references in former Section 33–31–100 as to how the corporation was to be organized.

<< SC ST § 33–31–206 >>

Section 33–31–206. Bylaws.

(a) The incorporators or board of directors of a corporation shall adopt bylaws for the corporation.
(b) The bylaws may contain any provision for regulating and managing the affairs of the corporation that is not inconsistent with law or the articles of incorporation.

OFFICIAL COMMENT

A nonprofit corporation is required to adopt bylaws. The term "bylaws" has a broad meaning. See section 1.40(3). Failure to adopt bylaws will lead to much confusion and uncertainty about the internal structure and organization of the corporation. However, failure to adopt bylaws will not affect the de jure status of a corporation.

The bylaws may contain any provision regulating and managing the affairs of the corporation not inconsistent with law or the articles. If a nonprofit corporation has members, its bylaws frequently contain detailed provisions dealing with their characteristics, qualifications, rights, limitations and obligations. Such provisions may relate to voting rights procedures governing admission, expulsion, suspension and other matters. The bylaws may either specify the exact number of directors or specify that the number of directors may be fixed within a stated range by the board or the members. Additional provisions that may appear in bylaws include: provisions for distribution of assets on dissolution in addition to those required by the articles (see section 2.02(a)(7)); levying dues, fees and assessments; setting the fiscal year; notice and the mechanics of meetings of directors and members; indemnification of officers, directors and agents; conventions and appointing delegates, if any; the authority of the officers and the executive director, if any; procedures to be followed in regard to checks and bank accounts; keeping and inspecting corporate records; and provisions, not inconsistent with the Model Act or articles, for amending the bylaws.

The incorporators or initial directors should adopt the initial bylaws of a corporation prior to the admission of members. The Model Act contains specific procedures that must be followed to amend the bylaws or to repeal them and adopt new bylaws. See sections 10.20–10.22.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is identical to Section 33–2–106 of the South Carolina Business Corporation Act which previously governed nonprofit corporations.

A description of bylaws of the Piedmont Interstate Fair Association is contained in Bean v. Piedmont Interstate Fair Association, 222 F.2d 227 (4th Cir.1955). In 1975–76 Op.S.C. Attorney General, 375 (# 4514) it was determined that under the former law that members of nonprofit corporations could vote by proxy. This 1993 South Carolina Nonprofit Corporation Act specifically authorizes proxy voting in Section 33–31–724.

<< SC ST § 33–31–207 >>

Section 33–31–207. Emergency bylaws and powers.

(a) Unless the articles provide otherwise, the directors of a corporation may adopt, amend, or repeal bylaws to be effective only in an emergency defined in subsection (d). The emergency bylaws, which are subject to amendment or repeal by the members, may provide special procedures necessary for managing the corporation during the emergency, including:

(1) how to call a meeting of the board;

(2) quorum requirements for the meeting; and

(3) designation of additional or substitute directors.

(b) All provisions of the regular bylaws consistent with the emergency bylaws remain effective during the emergency. The emergency bylaws are not effective after the emergency ends.

(c) Corporate action taken in good faith in accordance with the emergency bylaws:

(1) binds the corporation; and

(2) may not be used to impose liability on a corporate director, officer, employee, or agent.

(d) An emergency exists for purposes of this section if a quorum of the corporation's directors cannot readily be assembled because of some catastrophic event.

(e) A corporate director, officer, employee, or agent is not liable for deviation from normal procedures if the conduct was authorized by emergency bylaws adopted as provided in this section.

OFFICIAL COMMENT

In the absence of an article provision to the contrary, the directors may adopt, amend or repeal bylaws to be effective only in the event of an emergency. Emergency bylaws are normally adopted prior to the existence of the emergency as defined in section 2.07(d). An emergency exists if a quorum of a corporation's directors cannot readily be achieved because of a catastrophe. A catastrophe could include an attack upon the United States or a serious fire or flooding that makes it difficult or impossible to

obtain a quorum of the board. The emergency bylaws may provide special procedures necessary for managing the corporation during the emergency.

To provide incentive for adoption of emergency bylaws, section 2.07(c) provides that action taken in good faith in accordance with the emergency bylaws binds the corporation and may protect directors, officers, employees and agents of the corporation from liability.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is intended to apply when the board members cannot meet because of some disaster. Section 33–31–160 provides a method whereby a court can order a meeting held if the entity cannot otherwise function. Section 33–31–160 anticipates the situation where the entity has become inactive or there has been a failure to keep up with the formalities or some other similar event.

This section is comparable to Section 33–2–107 of the South Carolina Business Corporation Act which was the previously applicable statute. A list is provided in the South Carolina Reporters' Comments to Section 33–2–107 of the provisions which might be included in a set of emergency bylaws.

Different from the Model Act, this section includes paragraph (e) which clarifies that a director or agent operating under the emergency bylaws is totally protected.

It should also be noted that nothing in this section implies that the corporation must have members.

Article 3

Purposes

<< SC ST § 33–31–301 >>

Section 33–31–301. Purposes.

(a) Every corporation incorporated under this chapter has the purpose of engaging in any lawful activity unless a more limited purpose is set forth in the articles of incorporation.

(b) A corporation engaging in an activity that is subject to regulation under another statute of this State may incorporate under this chapter only if incorporation under this chapter is not prohibited by the other statute. The corporation is subject to all limitations of the other statute.

OFFICIAL COMMENT

1. Introduction

Public benefit corporations operate for some public or charitable purpose, while religious corporations operate primarily or exclusively for religious purposes. Mutual benefit corporations act on behalf of their members or those they hold themselves out as representing or benefiting. The Model Act requires an election between public benefit, mutual benefit and religious status and allows each type of nonprofit corporation to engage in any lawful activity unless a narrower purpose clause is set forth in its articles. See section 2.02 and the Introduction to the Model Act.

The failure to set forth an explicit limitation on a nonprofit corporation's activities does not mean that an enterprising entrepreneur can improperly and with impunity operate in the nonprofit form. In general, public benefit and religious corporations cannot make distributions to members or controlling persons. Section 13.01. Unreasonable compensation cannot be paid to members or controlling persons. See Official Comment to Section 13.01. In addition, the Attorney General has broad powers to ensure that a public benefit corporation is not operating for the private benefit of any individual. Section 1.70. Religious corporations are subject to minimal Attorney General supervision.

Mutual benefit corporations cannot pay unreasonable compensation, but can make distributions to members or controlling persons upon dissolution, and are subject to less extensive Attorney General supervision than public benefit corporations. An entrepreneur might try to establish a mutual benefit corporation without members and distribute its assets to himself upon dissolution. He should be prevented from doing so if the corporation led those from whom it received funds into believing that the corporation was operating for a public or charitable purpose, or that its assets would only be used for the benefit of those

it represented or those to whom it provided goods or services. A court should find that the assets of the corporation may not be diverted for the personal benefit of a controlling person.

While section 3.01 does not impose any limitations on a corporation's purposes or the use of its assets, those forming nonprofit corporations may limit the corporate purposes in the articles of incorporation. Such limitations may be added to obtain tax exempt status, to attract a significant contribution, or to provide a limited purpose for a corporation. See the Official Comment to section 2.02 for a discussion of the dangers involved in narrowing a corporation's purposes or powers. Also see section 3.04 dealing with the ultra vires concept.

2. Other Statutes

A nonprofit corporation may incorporate pursuant to chapter 2 unless some other state statute or law prohibits incorporation or sets forth some condition to forming the nonprofit corporation. If so, incorporation is prohibited or may only take place after the condition has been met. Section 3.01(b). For example, it may be necessary to obtain the consent of some regulatory body prior to incorporating.

Many nonprofit corporations are subject to regulation as a result of the nature of their activities. Hospitals, colleges, secondary schools and health maintenance organizations, for example, are subject to extensive regulation. Section 3.01(b) provides that nonprofit corporations continue to be subject to applicable statutory provisions even though they have broad corporate purposes.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is comparable to Section 33–3–101 of the South Carolina Business Corporation Act. Some jurisdictions only allow incorporation of activities regulated by another statute if incorporation as a nonprofit corporation is affirmatively "permitted" by the other statute. This South Carolina provision, following the Model Act, permits the incorporation under this statute unless incorporation as a nonprofit corporation is expressly "prohibited" by another statute.

Under the former provisions of Chapter 31, Title 33, the corporation's specific purpose had to be identified. The Attorney General used this requirement as part of his reason for denying a charter to the Ku Klux Klan which had a purpose to deal generally in any business enterprise. The 1956–57 Op.S.C. Attorney General, 179 (April 8, 1957) noted such a purpose is "indefinite and far reaching," and "a charter should not be issued to any corporation to engage in any business enterprises" but its purpose should be stated with greater certainty and clarity.

It is important to remember that there is a difference between a corporation which is "nonprofit" and one which additionally is "charitable" in nature. "Charitable" South Carolina nonprofit corporations at one time enjoyed immunity from tort claims. (Abolished generally in Fitzer v. Young Men's Christian Association, 277 S.C. 1, 282 S.E.2d 230 (1981).) Additionally, charitable nonprofit corporations did and may continue to enjoy certain tax advantages. This South Carolina Nonprofit Corporation Act of 1994 helps clarify this distinction, since likely only "religious" and "public benefit" nonprofit corporations will qualify as charities for federal tax purposes. "Mutual benefit" nonprofit corporations will be true nonprofit entities but not charities.

South Carolinians often refer to nonprofit corporations as "eleemosynary" corporations. As stated in Eiserhardt v. State Fair, 235 S.C. 305, 309, 111 S.E.2d 568 (1959), the word "eleemosynary" has been used, "in a broader sense, to denote an unselfish purpose to advance the common good in any form or manner," and not merely denoting a "purpose to promote the welfare of mankind by works of charity." In the 1961–62 Op.S.C. Attorney General, 182 (# 1406), the Attorney General indicated that the term included anything which would advance the common good of the community and includes the term "benevolent" (which is broader than "charitable") intended for the conferring of benefits rather than for gain or profit.

Prior to abolishing charitable immunity there was substantial litigation in South Carolina to determine if certain entities formed as nonprofit corporations, or similar thereto, were also charitable entities. "The fact that a corporation is not operated for profit is not controlling on the question of whether it is a charitable corporation." Bush v. Aiken Electric Coop, Inc., 226 S.C. 442, 449, 85 S.E.2d 716 (1955), see also, Byrd v. Blue Ridge Electrical Cooperative, 215 F.2d 542 (4th Cir.1954). The Spartanburg fair was deemed not to be such a charitable entity in Bean v. Piedmont Interstate Fair Association, 222 F.2d 227 (4th Cir.1955). (It is interesting that the entity in this case, even though formed as a nonprofit corporation, had issued stock to its members which it sold and transferred on its books. It issued tickets in lieu of dividends.) In these cases, the court went beyond the stated purpose of the incorporating documents and looked to the actual activities of the corporation. The charter for the entity running the state fair was not conclusive of its charitable nature, Eiserhardt v. State Fair Association, 235 S.C. 305, 111 S.E.2d 568 (1959). Even where it seemed likely that the doctrine of charitable immunity should apply, the court was still willing to look beyond the provisions of the incorporation documents, Vermillion v. Woman's College of Due West, 104 S.C. 197, 88 S.E. 649 (1914).

In the past, if the articles did not provide to whom the assets were to be distributed at dissolution, this might have been some indication that the corporation was not in fact eleemosynary, 1963–64 Op.S.C. Attorney General, 271 (# 1759).

In Peden v. Furman University, 155 S.C. 1, 151 S.E. 907 (1930), the university was unable to obtain dismissal of a cause of action claiming that its baseball field was effectively a nuisance notwithstanding that it "might be an eleemosynary corporation."

This Act, like the former provisions of Chapter 31, Title 33, says nothing about whether the nonprofit corporation might be exempt from any South Carolina tax. See e.g., Textile Hall Corporation v. Hill, 215 S.C. 262, 54 S.E.2d 809 (1949). The court in this case found that although the corporation's charter, specially granted by the legislature, purported to exempt the entity from property tax, that the entity, although nonprofit, was not within the class of nonprofit corporations which were generally permitted by the Constitution to be exempt from tax. The court looked beyond the stated purpose in the charter to the actual operation of the textile hall. As noted in 1965–66 Op.S.C. Attorney General, 157 (# 2064), a charitable, social, or fraternal corporation is not as such exempt from payment of any ad valorem property tax. Specific reference must be made to the taxing statutes for a determination as to whether any particular nonprofit corporation is exempt from any tax. See also, 1968–69 Opinion S.C. Attorney General, 252.

<< SC ST § 33–31–302 >>

Section 33–31–302. General powers.

Unless its articles of incorporation provide otherwise, every corporation has perpetual duration and succession in its corporate name and has the same powers as an individual to do all things necessary or convenient to carry out its affairs including, without limitation, power:

(1) to sue and be sued, complain, and defend in its corporate name;

(2) to have a corporate seal, which may be altered at will, and to use it, or a facsimile of it, by impressing or affixing or in any other manner reproducing it;

(3) to make and amend bylaws not inconsistent with its articles of incorporation or with the laws of this State for regulating and managing the affairs of the corporation;

(4) to purchase, receive, lease, or otherwise acquire, and own, hold, improve, use, and otherwise deal with, real or personal property or any legal or equitable interest in property, wherever located;

(5) to sell, convey, mortgage, pledge, lease, exchange, and otherwise dispose of all or any part of its property;

(6) to purchase, receive, subscribe for, or otherwise acquire, own, hold, vote, use, sell, mortgage, lend, pledge, or otherwise dispose of, and deal in and with, shares or other interest in or obligations of any entity;

(7) to make contracts and guaranties, incur liabilities, borrow money, issue notes, bonds, and other obligations, and secure any of its obligations by mortgage or pledge of any of its property, franchises, or income;

(8) to lend money, invest and reinvest its funds, and receive and hold real and personal property as security for repayment, except as limited by Section 33–31–832;

(9) to be a promoter, partner, member, associate, or manager of any partnership, joint venture, trust, or other entity;

(10) to conduct its activities, locate offices, and exercise the powers granted by this chapter within or without this State;

(11) to elect or appoint directors, officers, employees, and agents of the corporation, define their duties, and fix their compensation;

(12) to pay pensions and establish pension plans, pension trusts, and other benefit and incentive plans for any or all of its current or former directors, officers, employees, and agents;

(13) to make donations not inconsistent with law for the public welfare or for charitable, religious, scientific, or educational purposes and for other purposes that further the corporate interest;

(14) to accept gifts, devises, and bequests subject to any conditions or limitations, contained in the gift, devise, or bequest so long as the conditions or limitations are not contrary to this chapter or the purposes for which the corporation is organized;

(15) to impose dues, assessments, and admission and transfer fees upon its members;

(16) to establish conditions for admission of members, admit members, and issue memberships;

(17) to carry on a business;

(18) to do all things necessary or convenient, not inconsistent with law, to further the activities and affairs of the corporation.

OFFICIAL COMMENT

Section 3.02 is an historic anomaly. In the nineteenth and early twentieth centuries corporate charters were granted for limited purposes. As corporation laws began to develop, they listed ad nauseam specific powers to overcome the problem of limited purpose corporations.

There was considerable sentiment on the Committee to simply have section 3.02 provide that corporations have the powers of an individual to do all things necessary or convenient to carry out their activities. However, in light of history, it was feared that a court might improperly conclude that a corporation lacked some power because it was not specifically set forth in the Model Act. In addition, there was some concern that attorneys might revert to the ill-advised practice of enumerating powers in articles of incorporation. Consequently, section 3.02 provides a broad grant of powers and sets forth a nonexclusive list of specific powers.

As a result of section 3.02, it is not necessary for a corporation to provide in its articles or bylaws that it has any particular powers. If nothing is said, a corporation automatically has the powers set forth in section 3.02.

In some instances, it may be desirable or necessary to limit corporate powers. Section 3.02 allows the articles of incorporation to limit the powers of a corporation. Limitations may be imposed to obtain federal or state tax status, because a grantor wishes to limit the activities of a corporation, or for some other reason. Persons forming or operating a nonprofit corporation may want to limit its powers.

A distinction should be drawn between the power of a corporation to do all things necessary or convenient to carry out its activities and the question of whether corporate acts are reasonable or otherwise prohibited. Section 1.50, for example, prohibits private foundations from taking certain actions, even though they have the power to do so. Similarly, unless limited by its articles of incorporation, a corporation has the power to guarantee performance of a contract, enter into a partnership, make political or other noncharitable contributions, but the directors in authorizing such actions may breach their duty of care or loyalty. See sections 8.30–8.33.

The following changes from and clarifications of the prior law should be noted:

(1) Nonprofit corporations can provide pension and other benefits to current and former directors, officers, employees and agents. Section 3.02(11) and (12). Under appropriate circumstances the board of directors may establish or change benefits for former employees.

(2) Nonprofit corporations have the power to make donations for public welfare or for charitable, scientific, or educational purposes and for other purposes, not inconsistent with law, to further the corporate interests. Section 3.02(13). This specific grant of power is not a limitation on the general power of nonprofit corporations to make the same donations individuals can make.

(3) Nonprofit corporations may impose dues, assessments, admission and transfer fees upon their members. Section 3.02(14). The fact that articles or bylaws authorize dues, assessments or fees does not necessarily impose liability on members. See sections 6.13–6.15.

(4) Nonprofit corporations have the power to engage in business. Nonprofit organizations operate hospitals, department stores, consulting firms, book stores, automobile associations, clearing houses and other activities that could be characterized as business. These activities are within a nonprofit corporations' powers as a result of section 3.02(16).

The fact that a nonprofit corporation has the power to operate a business does not mean that the corporation is acting properly in running the business. The business must be consistent with or in aid of the public or charitable purposes of a public benefit corporation, benefit the members of a mutual benefit corporation or be consistent with or in aid of the religious purpose of a religious corporation. A corporation that does not operate a business for those purposes can be challenged in a quo warranto or similar proceeding. See Olsen v. National Memorial Gardens, Inc., 115 N.W.2d 312, 366 Mich. 492 (1962); People v. Society of Good Neighbors, 42 N.W.2d 761, 327 Mich. 620 (1950); People v. White Circle League of America, 97 N.E.2d 811, 408 Ill. 564 (1951). Also see State v. National Ass'n of Angling & Casting Clubs, 51 N.E.2d 662 (1943), where profit from business activities was used for the objects of the organization and the court found no wrongful activity.

(5) Nonprofit corporations may establish conditions for admission to membership, admit members and issue memberships. Section 3.02(15). This provision does not validate all admission requirements but simply provides that a corporation has the power to set conditions. Whether the conditions are legal depends on applicable federal and state law.

SOUTH CAROLINA REPORTERS' COMMENTS

1. Historical information

A major problem with the prior nonprofit statute (former Chapter 31, Title 33) was that it did not grant nonprofit entities the necessary powers to operate efficiently. For example, some lawyers believed that the former statute prevented churches and other nonprofit corporations from investing their excess funds. (Although 1954–55 Op.S.C. Attorney General, 281, stated "the University [of South Carolina] or any other charitable corporation which is given funds for the use of the institution, without any restrictions as to the manner in which the same may be used, that the administrative officials may exercise their own judgment as to the use of such funds, including the investment of same.") In one case, question was raised whether the Porter Academy in Charleston had the power to own and convey real property, the court finding that it did, Pierson v. Porter Academy, 217 S.C. 168, 60 S.E.2d 82 (1950). (The plaintiff's claim that the state legislature's act in chartering the academy was an unconstitutional special legislation was likewise denied on the authority of Epworth Orphanage v. Wilson, Country Treasurer, 185 S.C. 243, 193 S.E. 644 (1937), "unless there is some affirmative showing that the Constitution was not complied with in the enactment of a special legislative act, the charter of the corporation is good.") Attorney General opinions have indicated that a nonprofit corporation may dispose of its assets as it sees fit in the absence of the existence of a charitable trust relationship, 1963–64 Op.S.C. Attorney General, 271 (# 1759), has the right to own, buy and sell real estate in accordance with its bylaws, and if it has none, should likely obtain the members permission before selling any property, 1961–62 Op.S.C. Attorney General, 91 (# 1324), and may accept bequests (e.g., for the promotion of the Boy Scout movement), 1958–59, Op.S.C. Attorney General, 107 (# 612).

The nonprofit corporation is a jural "person" with all of the powers of a person. As the Official Comment makes clear, these powers must be exercised in a way consistent with the statute. The 1994 South Carolina Nonprofit Corporation Act gives a nonprofit corporation the "power" to carry on a business. The headnotes to an earlier Attorney General's opinion indicate that this power would cause the entity not to be a nonprofit corporation, 1956–57 Op.S.C. Attorney General, 179 (April 8, 1957). However, this power appeared in the proposed charter of the Ku Klux Klan. The Attorney General's opinion noted this power is "indefinite and far reaching," and "a charter should not be issued to any corporation to engage in any business enterprises" but its purpose should be stated with greater certainty and clarity.

In Lovering v. Seabrook Island Property Owners Assoc., 289 S.C. 77, 344 S.E.2d 862 (Ct.Appls.1986), aff'd. & mod. 291 S.C. 201, 352 S.E.2d 707 (1987), the board of a nonprofit homeowners association levied a special assessment to repair bridges within the subdivision and renourish the beach. The Court of Appeals held that the board did not have the power to do this and the act was therefore ultra vires.

Although the corporation's bylaws very clearly gave it the power to assess an annual maintenance charge to be levied on the basis of each lot's tax assessment, representations had been made in the Property Report (at time of purchase) that no special assessments would be made.

A corporation may exercise only those powers which are granted to it by law, by its charter or articles of incorporation, and any by-laws made pursuant thereto ... Acts beyond the scope of a corporation's powers as defined by law or its charter are ultra vires ... In determining a corporation's powers, its charter is to be construed strictly; any ambiguity in the terms of a corporate charter must operate against the corporation.... The specification of certain powers operates as a limitation on such objects as are embodied therein and is an implied prohibition of the exercise of other and distinct powers....

The Association contends it may impose special assessments for any corporate purpose pursuant to the general statement of purposes in its by-laws. The Association specifically directs our attention to a provision in the by-laws stating that the purpose of the Association is, among other things, "to engage in such other activities as may be to the mutual benefit of the owners of property on Seabrook Island." This provision, it contends authorizes it to impose special assessments for corporate purposes.

The general statement of corporate purposes relied on is not sufficient, standing alone, to authorize the levying of special assessments on property owners ...

As a matter of general law, a nonprofit corporation has the power to enforce the collection of dues and charges in accordance with the provision of its by-laws. See Section 33–31–100, Code of Laws of South Carolina, 1976. In this case, however, neither the protective covenants nor the bylaws, give the Association power to levy special assessments.

[T]he specification of the power to levy an annual maintenance charge limits the power of the Association to impose other assessments on property owners within the Seabrook Island subdivision. It operates as an implied prohibition against the

levying of special assessments. Therefore, the Association was without power to impose a special assessment even if its object was to carry out a legitimate corporate purpose. A permissible purpose cannot be accomplished by a prohibitive means.

The Court of Appeals also found that the board's action was not a proper amendment of the annual maintenance charge and thus invalid as an annual maintenance charge.

The Supreme Court affirmed as follows:

It is undisputed that the Association had no express power to impose the assessment at issue. The Association and the Company argue, however, that the power to levy this special assessment was an implied or incidental power of the Association's authority under its By-laws to maintain and preserve the amenities and values of the development.

Implied or incidental powers are those which are reasonably necessary to the execution of the corporation's express powers, not those which are merely convenient or useful ...

Assuming, without deciding, that the Association had the responsibility of maintaining the streets and the beach, the By-laws provided the mechanism of an annual maintenance charge to finance the necessary repairs. Furthermore, the Association could have financed the repairs by use of its statutory authority to borrow funds under S.C.Code Ann. Section 33–31–100(2) (1976), a course of action the Association apparently considered and rejected. Since the power to levy a special assessment was not necessary for the Association to carry out its express powers, even if more convenient than the available fund raising methods, it could not be an implied or incidental power.

If the Association has the "power" (using the Supreme Court's term) and thus apparently the "right" to borrow the funds to repair the roads and beaches, who will pay this loan back? The assumption has to be that it will be the Association members. Therefore, other than the wrongful manner of apportioning the cost in the proposed assessment, how is the current assessment any different or less authorized than the borrowing?

It is also troubling that the Court of Appeals states that the corporate "powers" should be narrowly construed. This certainly is not the thrust of the Model Business Corporation or Nonprofit Corporation Acts, and hopefully will not be the way the new statutory powers are construed in the future. In fact, in adopting paragraph (18), it is the intent that the grant of powers is to be very broadly interpreted. It is the intent of this new statute, as specifically required in Section 33–31–302(18), that every nonprofit corporation has the unbridled power to "do all things necessary or convenient, not inconsistent with law, to further the activities and affairs of the corporation." Section 33–31–302 of this Act is not to be narrowly construed.

The court states that in determining the corporation's powers its charter is to be strictly construed. This is confusing. First of all, the corporation's powers are set forth in the statute and not in the charter. Second whether the "use" or "exercise" of a power to accomplish a particular objective should be "narrowly construed" is a different question. The court does not seem to make the distinction between whether a corporation has the "power" to do something generally, as contrasted with whether it has the right to exercise that power for a specific objective—whether the use of the power has been properly authorized. A simple example may help. No one would dispute the fact that a nonprofit corporation has the power to borrow money. However, if no one in the corporation properly approves of a particular loan, the corporation simply cannot borrow the money (even though the corporation has the "power" to borrow money).

2. Modification of former powers

Besides adding to the existing powers, some of the former powers have been modified. The former statute (Section 33–31–100(3)) granted the corporation the power to "expel or suspend" members. The new law states that the corporation shall have the power to establish conditions for admission of members. A separate section, Section 33–31–621, then specifies how members may be terminated, expelled, or suspended. The former statute stated in the list of powers that the corporation could adopt bylaws. Now this "power" is listed in a separate code section, Section 33–31–206.

3. New powers

Paragraph (14) of this section is not a Model Act provision, but will add certainty to the statute. This section specifically authorizes corporations to accept gifts, even if restricted, so long as the restrictions are not contrary to the Act or the purposes of the corporation. Likely, these powers are inherent in any nonprofit corporation, but in order to dispel any uncertainty, the language was added.

4. Interpretation of certain powers and comparison with the South Carolina Business Corporation Act

Some of these powers are very similar to the powers granted to a for-profit corporation. Therefore, the discussion of these powers in the South Carolina Reporters' Comments to Section 33–3–102 may be helpful.

a. Broad interpretation. It is important to note that the final power, Section 33–31–302(18), gives the corporation the power to do all things necessary or convenient, not inconsistent with law, to further the activities and affairs of the corporation. The purpose of item (18) is to ensure that all of the powers granted in this section are broadly interpreted and that there be no limitation imposed on the powers of any nonprofit corporation. As noted above, this specifically modifies the holdings of Lovering v. Seabrook Island Property Owners Assoc., 289 S.C. 77, 344 S.E.2d 862 (Ct.Appls.1986), aff'd. & mod. 291 S.C. 201, 352 S.E.2d 707 (1987).

b. Out-of-state operations. Although not specifically stated, all South Carolina nonprofit corporations, pursuant to the broad language of Section 33–31–302, have the inherent right to operate in other states.

c. Convertible securities. Nonprofit corporations may, if consistent with the type of corporation, their purposes, and this statute, issue convertible securities. Item (16) grants the corporation power to issue "convertible" memberships or memberships having specific or unique terms.

d. Profit sharing plans. Nonprofit corporations may enter into profit sharing plans. "Profit sharing plans" are encompassed within the meaning of the term "benefit and incentive plans" as used in item (12). (However, certain types of nonprofit corporations may because of tax statutes or regulations be prohibited from establishing profit sharing plans.)

<< SC ST § 33–31–303 >>

Section 33–31–303. Emergency powers.

(a) In anticipation of or during an emergency defined in subsection (d), the board of directors of a corporation may:

  (1) modify lines of succession to accommodate the incapacity of any director, officer, employee, or agent; and

  (2) relocate the principal office, designate alternative principal offices or regional offices, or authorize the officer to do so.

(b) During an emergency defined in subsection (d), unless emergency bylaws provide otherwise:

  (1) notice of a meeting of the board of directors need be given only to those directors it is practicable to reach and may be given in any practicable manner, including by publication and radio; and

  (2) one or more officers of the corporation present at a meeting of the board of directors may be deemed to be directors for the meeting, in order of rank and within the same rank in order of seniority, as necessary to achieve a quorum.

(c) Corporate action taken in good faith during an emergency under this section to further the ordinary affairs of the corporation:

  (1) binds the corporation; and

  (2) may not be used to impose liability on a corporate director, officer, employee, or agent.

(d) An emergency exists for purposes of this section if a quorum of the corporation's directors cannot readily be assembled because of some catastrophic event.

(e) Corporate action taken in good faith under this section to further the affairs of the corporation during an emergency binds the corporation. A corporate director, officer, employee, or agent is not liable for deviation from normal procedures if the conduct was authorized by emergency powers provided in this chapter.

OFFICIAL COMMENT

Section 3.03 provides that a corporation has specified powers in the event of an emergency even if emergency bylaws have not been adopted pursuant to section 2.07. The section allows corporations that have not adopted emergency bylaws to continue to operate until the emergency is passed.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is essentially identical to the previously applicable section, Section 33–3–103 of the South Carolina Business Corporation Act. Subsection (e) is not found in the Model Act and also is not part of the South Carolina Business Corporation Act. Subsection (e) provides that the officer, director, agent, or employee will not be liable for deviation form normal procedures if the conduct was authorized by emergency powers provided in the chapter. However, nothing in this provision, and specifically subsection (e) in any manner lessens the fiduciary duties of the directors during the emergency.

<< SC ST § 33–31–304 >>

Section 33–31–304. Ultra vires.

(a) Except as provided in subsection (b), the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act.

(b) A corporation's power to act may be challenged in a proceeding against the corporation to enjoin an act where a third party has not acquired rights. The proceeding may be brought by the Attorney General, a director, or by a member or members in a derivative proceeding.

(c) A corporation's power to act may be challenged in a proceeding against an incumbent or former director, officer, employee, or agent of the corporation. The proceeding may be brought by a director, the corporation, directly, derivatively, or through a receiver, a trustee, or other legal representative, or in the case of a public benefit corporation, by the Attorney General.

OFFICIAL COMMENT

The object of section 3.04 is to do away with the ultra vires doctrine. This long-discredited concept is based on the fiction that third parties dealing with corporations have constructive notice of limitations on corporate purposes and powers appearing in articles of incorporation. In the heyday of the ultra vires doctrine, innocent third persons or not-so-innocent corporations could have corporate acts and contracts declared void or unenforceable on the ground that they were beyond the corporate purposes or that the corporation had no power to enter into the transaction. Ballentine, "Proposed Revision of the Ultra Vires Doctrine," 12 Corn.L.Q. 453 (1927).

Courts developed a number of equitable doctrines to prevent unjust results. Section 3.04(a) directly attacks the problem by providing that, "except as provided in (b), the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act." Consequently, it is not necessary for a third person to check corporate articles for limitations on corporate purposes or powers; not, except as provided in subsection (b), can a corporation avoid an obligation on the ground that the obligation is beyond its purposes or powers.

Under subsection (b) a suit may be maintained by a member in a derivative proceeding, or a director, or the Attorney General against a corporation to enjoin an act where a third party has not acquired rights in regard to the transaction. For example, if a corporation is about to enter into a binding commitment in violation of its articles, a proceeding could be brought to enjoin the corporation if a third party had not acquired any rights. A third party with prior actual knowledge of the limitation in the articles cannot acquire any rights.

If a corporation has entered into or completed an ultra vires transaction, a proceeding can be brought against the present or former directors, officers, employees, or agents who caused the corporation to act in violation of limitations contained in its articles. In such a situation a third party who had acquired rights could enforce the ultra vires action even though it violated a specific provision of the articles. However, a director approving such a contract would be liable if the director breached his or her duty of care or loyalty. The amount of money damages, if any, for violation of this section is left to the sound discretion of the courts. Similarly the circumstances in which an injunction will issue is left to judicially developed equitable principles.

The focus of section 3.04 is narrow. It only validates corporate actions that are attacked on the ground that the corporation had no power to act. It does not address actions that: (i) violate other provisions of the Model Act; (ii violate federal or state laws; (iii) breach duties owed by the directors, officers, employees or agents of the corporation; (iv) have not been approved or authorized as required by the Model Act; or (v) involve a claim by the corporation or a third party seeking to avoid liability on the ground that the person acting on behalf of the corporation was not authorized to do so or was acting beyond the scope of his agency or agency power; or (vi) breach duties owed by the corporation.

Moreover section 3.04 does not deal with the authority of power of a corporation to sell, transfer or otherwise convey assets held in charitable trust or subject to a reversionary or other interest.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is somewhat similar to the formerly applicable statute, Section 33–3–104 of the South Carolina Business Corporation Act. This new nonprofit statute differs from the Business Corporation statute. In the Business Code, an individual shareholder has the power to directly (not derivatively) bring an action to try and stop an action. However, all parties affected by the action must be joined. The court instead of giving injunctive relief may award damages (either to the corporation or the

third party to the transaction). Under this section of the Nonprofit Act, a member of a nonprofit corporation has no right to bring a direct attack against a proposed action. The claim may only be brought derivatively. If an action has been accomplished and the members believe that the directors or others in charge have done something wrong, have acted "ultra vires," the members may bring a derivative action against the alleged wrongdoers.

There was consideration of adopting language more similar to the South Carolina Business Corporation Act. However, the South Carolina Business Corporation Act, as noted, provides for damage actions against the board which was viewed as undesirable in the context of nonprofit corporations. Consideration was also given as to whether the Attorney General should have authority to bring an action against directors of mutual benefit corporations as well as against directors of public benefit corporations. It was determined that the members of these corporations would have sufficient interest in the entity to adequately police any alleged wrongdoing.

There is at least one ultra vires case involving a nonprofit corporation. The Supreme Court in Deborde v. St. Michaels and All Angels Church, 272 S.C. 409, 252 S.E.2d 876 (1979), confirmed that the doctrine of ultra vires cannot be used as a sword by a third party to try and invalidate a corporate action. A third party non-church member argued that a church could not build a cemetery since the church's charter did not grant it the specific power to build a cemetery. The court stated that the third party (although a person affected by the act) had no standing to raise the claim since he was not a member of the church. The court also noted that given the broad purpose of a church, the power to build a cemetery was likely encompassed within its powers. (Should the court more accurately have referred to the "purpose" to operate a cemetery?)

In Lovering v. Seabrook Island Property Owners Assoc., 289 S.C. 77, 344 S.E.2d 862 (Ct.Appls.1986), aff'd. & mod. 291 S.C. 201, 352 S.E.2d 707 (1987), discussed in more detail in the Reporters' Comments to Section 33–31–302, the board of a nonprofit homeowners association levied a special assessment to repair bridges within the subdivision and renourish the beach. The Court of Appeals held that the board did not have the power to do this and the act was therefore ultra vires.

> A corporation may exercise only those powers which are granted to it by law, by its charter or articles of incorporation, and any by-laws made pursuant thereto ... Acts beyond the scope of a corporation's powers as defined by law or its charter are ultra vires.

Although not technically an ultra vires case, the court in Gilbert v. McLeod Infirmary, 219 S.C. 174, 64 S.E.2d 524 (1951), enjoined the sale of some corporation property on the basis that the sale had not been approved by a disinterested board.

<< SC ST § 33–31–305 >>

Section 33–31–305. Powers of corporations created by legislative authority before 1900.

All charitable, social, and religious corporations validly created by legislative authority before 1900, or validly created before 1900 by the act of a city, county government, or other political subdivision, in addition to the powers theretofore granted them, have all the powers enumerated in Section 33–31–302, 'Powers of Corporation'.

## SOUTH CAROLINA REPORTERS' COMMENTS

Prior to 1900 the legislature chartered many nonprofit corporations, sometimes giving them specific or special powers. A number of charitable organizations were also chartered by cities. This section reflects that the original powers are preserved and are not modified by this Chapter 31, Title 33, except to the extent the powers were previously limited, in which case, the original powers are enhanced by Section 33–31–305. The former nonprofit statutes likewise recognized these powers, e.g. former Section 33–31–110 of the 1976 Code. There is, of course, a significant difference between a power and the manner in which members act, the board is elected, or other mechanics of the operations of the corporation. Nothing in Section 33–31–305, or Chapter 31, Title 33 generally, modifies, for example: the governing structure of such special entities; qualification, types, and terms of members, directors (or other managers of the entity), and officers; meetings of, and voting by, members and directors (or others managing the entity); amendments to the charter; or provisions for dissolution. Section 33–31–1701 grants corporations which were specially chartered by special acts of the General Assembly, or were chartered by cities and other governmental agencies, the specific power and authority to either (1) merge into nonprofit corporations formed under this chapter, or to (2) file an irrevocable election agreeing to be governed by this chapter. By merging into a shell corporation formed under this chapter or by filing the irrevocable election, these old legislatively chartered entities may bring themselves under the

control of this chapter. However, nothing in this act requires these entities to do this. Many legislatively chartered corporations will desire to be governed by this chapter since it provides workable provisions governing the operation of corporations.

Article 4

Names

<< SC ST § 33–31–401 >>

Section 33–31–401. Corporate name.

(a) A corporate name may not contain language stating or implying that the corporation is organized for a purpose other than that permitted by Section 33–31–301 and its articles of incorporation.

(b) Except as authorized by subsections (c) and (d), a corporate name must be distinguishable upon the records of the Secretary of State from the name appearing upon the records of the Secretary of State of any other nonprofit or business corporation, professional corporation, or limited partnership incorporated in, formed in, or authorized to do business in South Carolina, or a name reserved, registered, or otherwise filed upon the records of the Secretary of State.

(c) A corporation may apply to the Secretary of State for authorization to use a name that is not distinguishable upon the Secretary of State's records from one or more of the names described in subsection (b). The Secretary of State shall authorize use of the name applied for if:

(1) the other corporation consents to the use in writing and submits an undertaking in form satisfactory to the Secretary of State to change its name to a name that is distinguishable upon the records of the Secretary of State from the name of the applying corporation; or

(2) the applicant delivers to the Secretary of State a certified copy of a final judgment of a court of competent jurisdiction establishing the applicant's right to use the name applied for in this State.

(d) A corporation may use the name, including the fictitious name, of another domestic or foreign business or nonprofit corporation that is used in this State if the other corporation is incorporated or authorized to do business in this State and the proposed user corporation has:

(1) merged with the other corporation;

(2) been formed by reorganization of the other corporation; or

(3) acquired all or substantially all of the assets, including the corporate name, of the other corporation.

(e) Except for allowing foreign corporations to file for a certificate of authority under a fictitious name as provided in Section 33–31–1506, this chapter does not control the use of fictitious names.

OFFICIAL COMMENT

1. No Requirement to Include "Corporation," "Incorporated," "Company," or "Limited" in Name

While the Model Business Corporation Act requires business corporations to use the term "corporation," "incorporated," "company," or "limited," or some abbreviation thereof in their names, the prior Model Nonprofit Corporation Act did not have a similar requirement. Imposition of such a requirement for nonprofit corporations would create two classes of corporations, those formed before and those formed after the effective date of the revised Model Nonprofit Corporation Act. This problem could be solved by imposing a name requirement on all nonprofit corporations. This approach is contrary to nonprofit tradition, would not materially protect the public and would entail considerable effort and cost. Hospitals, colleges, museums, trade associations and other nonprofit institutions usually do not include the words "corporation," "company," "incorporated," or "limited" in their names. Any such addition would sound strange and, particularly in the case of the words "company," and "limited," would not provide any meaningful information. Apart from the basic question of whether any of these words convey the concept of limited liability, nonprofit corporations can effectively undercut any such name requirement by operating under a fictitious name.

2. Names Must Be "Distinguishable Upon the Records of the Secretary of State"

A corporate name must be distinguishable upon the Secretary of State's records from other corporate names that appear in the Secretary of State's records. This requirement is imposed: "(1) to prevent confusion within the Secretary of State's office and the tax office and (2) to permit accuracy in naming and serving corporate defendants in litigation. Thus, confusion in an

absolute or linguistic sense is the appropriate test under the Model Act. ....” Official Comment to Model Business Corporation Act Section 4.01.

The fact that the Secretary of State files a corporation's articles of incorporation does not give that corporation the right to use the name set forth in its articles. Whether it can or cannot use the name depends on general principles of fraud and unfair competition. See American Kennel Club v. American Kennell Club, Inc., 216 F.Supp. 267 (D.La.1963); Lincoln Center for Performing Arts, Inc. v. Lincoln Center Classics, Record Soc., Inc., 25 Misc.2d 686, 210 N.Y.S.2d 275 (1960); McCarthy, Trademarks and Unfair Competition § 9.2 (2d ed. 1984).

A corporation may operate under a fictitious name that is different than the name appearing in its articles of incorporation. Of course, the use of a fictitious name maybe prevented under general principles of fraud and unfair competition.

What is “distinguishable upon the records of the Secretary of State” is left to the discretion of the Secretary of State. This discretion may be challenged pursuant to section 1.26.

3. Consent To Use Name

Subsection 4.01(c) allows the Secretary of State to authorize the use of a name that is not distinguishable upon the Secretary of State's records from the record name of another corporation if that corporation consents in writing and submits a satisfactory undertaking to change its name to one that is distinguishable upon the records of the Secretary of State. The undertaking should be consistent with and no broader than the requirements of section 4.01.


SOUTH CAROLINA REPORTERS' COMMENTS

The prior nonprofit statutes found in Chapter 31, Title 33 had no provisions generally regulating the names of all nonprofit corporations. (However, there were provisions giving special protection to certain nonprofit corporation names.) This section relates to the comparable Business Corporation provisions (Sections 33–4–101 through 33–1–103) which generally were applicable before the adoption of this 1994 South Carolina Nonprofit Corporation Act. Different from the South Carolina Business Corporation Act, the Nonprofit Act does not require that the company names include a designation such as “Inc.” The former “assumed name” statute was repealed which might have an effect on some nonprofit corporations (see the South Carolina Reporters' Comments to Section 33–4–101 of the South Carolina Business Corporation Act). The South Carolina Reporters' Comments to Section 33–4–101 may be helpful in explaining the effect of this section.

Consideration was given as to whether there should be controls on what names could be used both to protect the general public and those entities who have existing names. It was noted that the former statute did give protection to certain entities, e.g., the Masons. Consideration was given as to whether the Secretary of State should be required to make a determination that any national organization had granted a right to a local organization to use a particular name. (Some states have adopted this approach.) However, the Secretary of State does not want to be involved in determining if a national organization has given permission to a local entity to use its name. For various reasons, including efficiency, it was concluded that the Secretary of State should not have the obligation to determine if the entity had received any or all required permissions to use its proposed name.

The suggestion that the incorporator (or merely the corporation) could certify on its articles that the corporation had any required permission needed to use the organizational name—e.g., that it was permissible for the new corporation to use the term “Rotary” in the name, was likewise specifically rejected.

It was further noted that even if there might be some statutory protections provided as to name usage, that most of the protections come from common law doctrine. Further, if the statute granted some limited name protection, this might be wrongly construed as preempting the common law, not a desirable result.

It is important to recognize that any nonprofit corporation may incorporate under any “grammatically distinguishable” name, regardless that the name may be deceptively similar to an existing corporate name. The protections each existing corporation has in its name are derived solely from the common law. The common law, and not this statute, sets the policy as to what names can be used in public and which do not create unfair competition or are not deceptive. Nothing in this statute shall abrogate or limit the law as to unfair competition or unfair trade practice, or abrogate from the common law, the principles of equity, of the statutes of this State or of the United States with respect to the right to acquire and protect trade names and trademarks.

<< SC ST § 33–31–402 >>


Section 33–31–402. Reserved name.

(a) A person may reserve the exclusive use of a corporate name including the corporate name of a foreign corporation or its corporate name with any change required by Section 33–31–1506, by delivering an application to the Secretary of State for filing which shall set forth the name and address of the applicant and the name proposed to be reserved. Upon finding that the corporate name applied for is available, the Secretary of State shall reserve the name for the applicant's exclusive use for a nonrenewable one hundred twenty-day period.

(b) The owner of a reserved corporate name may transfer the reservation to another person by delivering to the Secretary of State a signed notice of the transfer that states the name and address of the transferee.

OFFICIAL COMMENT

Considerable effort is often expended in finding an appropriate name for a nonprofit corporation. Under the Model Act those forming a nonprofit corporation, after determining that a particular name is available, can reserve that name for a nonrenewable one hundred twenty-day period. The one hundred twenty-day period should be more than sufficient to form the corporation.

The ability to reserve a name is available to any person and is not dependent on any particular intent or purpose. The person reserving the name may transfer the reserved name to another person by delivering to the Secretary of State a signed notice of the transfer stating the name and address of the transferee.

While a name reservation is not renewable, after the initial reservation period has lapsed, any person, including a person who held the prior reservation, may reserve the name.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is essentially the same as the formerly applicable statute, Section 33–4–102 of the South Carolina Business Corporation Act. Like the South Carolina Business Corporation Act, this section requires that the "application must set forth the name and address of the applicant and the name proposed to be reserved." This language is not included in the Model Nonprofit Act.

<< SC ST § 33–31–403 >>

Section 33–31–403. Registered name of a foreign corporation.

(a) A foreign corporation may register its corporate name, or its corporate name with any change required by Section 33–31–1506, if the name is distinguishable upon the records of the Secretary of State from the name appearing upon the records of the Secretary of State of any other nonprofit or business corporation, professional corporation, or limited partnership incorporated in, formed in, or authorized to do business in this State, or a name reserved or registered upon the records of the Secretary of State.

(b) A foreign corporation registers its corporate name, or its corporate name with any change required by Section 33–31–1506, by delivering to the Secretary of State an application:

(1) setting forth its corporate name, or its corporate name with any change required by Section 33–31–1506, the state or country and date of its incorporation, a statement that the foreign corporation is not, and has not done business in South Carolina, and a brief description of the nature of the activities in which it is engaged; and

(2) accompanied by a certificate of existence, or a document of similar import, from the state or country of incorporation current within sixty days of delivery, duly authenticated by the official having custody of the corporation records in the state or country under whose law it is incorporated.

(c) The name is registered for the applicant's exclusive use upon the effective date of the application.

(d) A foreign corporation whose registration is effective may renew it for successive years by delivering to the Secretary of State for filing a renewal application, which complies with the requirements of subsection (b), between October first and December thirty-first of the preceding year. The renewal application renews the registration for the following calendar year.

(e) A foreign corporation whose registration is effective may qualify thereafter as a foreign corporation under that name or consent in writing to the use of that name by a corporation thereafter incorporated under this chapter or by another foreign corporation thereafter authorized to transact business in this State. The registration terminates when the domestic corporation is incorporated or the foreign corporation qualifies or consents to the qualification of another foreign corporation under the registered name.

OFFICIAL COMMENT

Section 4.03 allows a foreign corporation that is not qualified to transaction business in a state, to register and thereby reserve its name. In effect, section 4.03 allows a foreign corporation to reserve the right to qualify its name if it subsequently decides to do so. Even if a foreign corporation reserves its name, it may be precluded from using its name in the state under unfair competition or similar concepts. See Official Comment to Section 4.01.

A foreign corporation may renew its registered name yearly. Thus, the registration provisions of section 4.03 allow perpetual renewal while the reservation provisions of section 4.02 allow a single 120–day reservation with the possibility of additional reservations if no one else reserves the name.

A foreign corporation may only register its real corporate name or its corporate name with any change required by section 15.06. A foreign corporation that wishes to register a fictitious name may do so by incorporating an inactive domestic or foreign subsidiary using the desired fictitious name.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is comparable to the formerly applicable section, Section 33–4–103 of the South Carolina Business Corporation Act. A few grammatical modifications have been made to the Model Act format. In addition, different from the Model Act, the South Carolina law requires that in filing the application, the foreign corporation must include a statement that it is not doing business in South Carolina, and that the application must be accompanied by a certificate of existence or a document of similar import current within sixty days of delivery, duly authenticated by the official having custody of the corporation records in the state or country under whose law the foreign corporation is incorporated.

<< SC ST § 33–31–404 >>

Section 33–31–404. Name change filing requirement when real property owned.

(a) When either a domestic or foreign nonprofit corporation which owns real property in South Carolina changes its corporate name by amendment of its articles, by merger, or reorganization, the newly named, surviving, acquiring, or reorganized corporation must file a notice of that name change in the office of the register of mesne conveyances of the county in this State in which the real property is situate. If there is no such office in that county, a notice of name change must be filed with the clerk of court of the county in which that real property is situate.

(b) The filing must be:

(1) by affidavit executed in accordance with the provisions of Section 33–31–120 and containing the old and new names of the corporation, which affidavit also may describe the real property owned by that corporation; or,

(2) by filing a certified copy of the amended articles or articles of merger; or

(3) by a duly recorded deed of conveyance to the newly named, surviving, acquiring, or reorganized corporation.

(c) the affidavit or filed articles must be duly indexed in the index of deeds.

(d) The purpose of this section is to establish record notice under Chapter 7, Title 30. Failure to make the required filing of a corporate name change will not affect the legality, force, effect, or enforceability as between the parties of any conveyance or other transaction involving the real estate owned by the affected corporation that is made subsequent to the change in name.

SOUTH CAROLINA REPORTERS' COMMENTS

This is a non-Model Act provision. It is essentially the same as Section 33–4–104 of the South Carolina Business Corporation Act. The South Carolina Reporters' Comments to that section may be helpful in interpreting this section. This provision also had a counterpart in the earlier nonprofit statutes. Former Section 33–31–170 required that all nonprofit charters and any amendments thereto (regardless if the corporation owned any real property) were to be recorded within thirty days after the charter was issued in the office of the clerk of court or register of mesne conveyances in the county in which the corporation is organized.

Article 5

Office and Agents

<< SC ST § 33–31–501 >>

Section 33–31–501. Registered office and registered agent.

Each corporation must continuously maintain in this State:
(1) a registered office with the same address as that of the registered agent; and
(2) a registered agent, who may be:
  (i) an individual who resides in this State and whose office is identical with the registered office;
  (ii) a domestic business or nonprofit corporation whose office is identical with the registered office; or
  (iii) a foreign business or nonprofit corporation authorized to transact business in this State whose office is identical with the registered office.

OFFICIAL COMMENT

Section 5.01 is particularly important for nonprofit corporations, many of which are small, have no permanent office, and are difficult to locate. Section 5.01, by mandating a registered agent and registered office, provides a place where service of process can be made and notices from governmental entities directed.

Section 5.01 requires all nonprofit corporations to maintain a registered office and a registered agent at the same address. The office may be anywhere in the state. It is a "legal" office and in many cases will not be the same as the real office, if any, of the corporation. Any person who resides in the state, any domestic nonprofit or business corporation or any foreign nonprofit or business corporation authorized to do business in the state may serve as the registered agent. Many nonprofit corporations will designate an officer or their attorney to act as their registered agent. Nonprofit corporations can employ corporation service companies to act as their registered agent and provide their registered office. The office of the agent will become the registered office of the corporation.

SOUTH CAROLINA REPORTERS' COMMENTS

1. Background information

Under the prior nonprofit statutes contained in former Chapter 31, Title 33, it was unclear whether nonprofit corporations were required to have statutory agents. The nonprofit statutes themselves were silent on the matter. However, a provision in the South Carolina Business Corporation Act, Section 33–20–103, stated:

Chapters 1 through 20 of this Title apply to every domestic nonprofit corporation and to every foreign nonprofit corporation which is authorized or transacts business in this State except as otherwise provided in Chapter 1 through 20 of this Title or by the law regulating the organization, qualification, or governance of the nonprofit corporation.

Did this language require nonprofit corporations to have statutory agents? The Secretary of State did not interpret the section as requiring such. This policy of not requiring statutory agents for nonprofit corporations created problems in the context of litigation respecting homeowner associations and incorporated condominium regimes. Whether or not formerly required, it was obvious and logical that nonprofit corporations should also have agents.

2. Operation of new section

This new section is identical to Section 33–5–101 of the South Carolina Business Corporation Act. Although not mentioned in this Section 33–31–501, but mentioned in Sections 33–31–202(a)(3) and 33–31–502, the actual street address (not post office box) must be listed for the office and agent. There is now a separate section, with identical language, which specifies the requirements for a registered office and agent for foreign nonprofit corporations. See Section 33–31–1507.

<< SC ST § 33–31–502 >>

Section 33–31–502. Change of registered office or registered agent.

(a) A corporation may change its registered office or registered agent by delivering to the Secretary of State for filing a statement of change that sets forth:
(1) the name of the corporation;
(2) the street address, with zip code, of its current registered office;
(3) if the current registered office is to be changed, the street address, including zip code, of the new registered office;

(4) the name of its current registered agent;

 (5) if the current registered agent is to be changed, the name of the new registered agent and the new agent's written consent, either on the statement or attached to it, to the appointment; and

 (6) that after the change or changes are made, the street addresses of its registered office and the office of its registered agent which will be identical.

 (b) If the street address of a registered agent's office is changed, the registered agent may change the street address of the registered office of any corporation for which the registered agent is the registered agent by notifying the corporation in writing of the change and by signing, either manually or in facsimile, and delivering to the Secretary of State for filing a statement that complies with the requirements of subsection (a) and recites that the corporation has been notified of the change.

OFFICIAL COMMENT

 Section 5.02 provides an easy method for changing a registered agent or registered office without the need to obtain board or member approval. The section requires a newly designated registered agent to sign a written consent to the appointment. This is to ensure that a nonprofit corporation does not appoint someone to serve as registered agent without informing that person of the appointment and obtaining that person's consent.

 Section 5.02(c) allows a registered agent to change the address of the registered office simply by notifying he corporation and signing and delivering a statement of change to the Secretary of State.

SOUTH CAROLINA REPORTERS' COMMENTS

 This is identical to the previously applicable section, Section 33–5–102 of the South Carolina Business Corporation Act. If a new agent is being appointed he must consent to the appointment. Any authorized officer can appoint a new agent without formal board of directors' approval. If the agent dies or becomes incapacitated, Section 33–31–501 imposes a duty on the nonprofit corporation to appoint a successor. The registered agent, as any other agent, serves at the pleasure of the corporation and the corporation has the right to terminate the agent. If the agent merely moves its office, the agent itself may notify both the corporation and Secretary of State of the move. The notification to the Secretary of State shall contain all the same information as if the corporation were directing the change.

<< SC ST § 33–31–503 >>

Section 33–31–503. Resignation of registered agent.

 (a) A registered agent may resign as registered agent by signing and delivering to the Secretary of State the original and two exact or conformed copies of a statement of resignation. The statement may include a statement that the registered office is discontinued also.

 (b) After filing the statement the Secretary of State shall mail one copy to the registered office, if not discontinued, and the other copy to the corporation at its principal office as shown in its articles or most recently filed notice of change of principal office.

 (c) The agency appointment is terminated, and the registered office discontinued if so provided, on the thirty-first day after the date on which the statement was filed.

OFFICIAL COMMENT

 Under section 5.03 a registered agent may resign by delivering to the Secretary of State a signed original and two copies of a statement of resignation. The Secretary of State will then inform the corporation of the resignation by mailing one copy to the registered office and another copy to the corporation "at its principal office shown on its most recent annual report filed under section 16.22." [In South Carolina, the principal office shown on the most recent Notice of Change of Principal Office.]

SOUTH CAROLINA REPORTERS' COMMENTS

 This section is similar to the formerly applicable provision of the South Carolina Business Corporation Act, Section 33–5–103. The agency does not end for thirty-one days after the agent gives notice. Therefore, resigning agents have a continuing duty during this thirty-one day period. Although there may be overlap if one agent quits and another one is appointed within the thirty-one day grace period, service on either agent would be proper. (Section 33–31–501 mandates the nonprofit corporation to appoint a successor agent.) This is a beneficial option. For example, during ongoing litigation a party will be able to serve

the "old" agent for the thirty-day window period. The party will not have to continuously check the Secretary of State's office to determine if a new agent might have been appointed since the last service was made. Some states have a provision that the agency ends as soon as a new agent is appointed. This prevents an overlap which is possible under the South Carolina Statute. For example, in South Carolina if agent # 1 quits, his resignation is not effective for thirty-one days. If Agent # 2 is appointed one day after agent # 1 quits both will be serving for the thirty-day window period. There is an identical, separate section, Section 33–31–1509 dealing with the resignation of agents for foreign nonprofit corporations.

<< SC ST § 33–31–504 >>

Section 33–31–504. Service on corporation.

  Except as otherwise specifically provided in this chapter, service of process on a nonprofit corporation must be in accord with the applicable provisions of Title 15.

OFFICIAL COMMENT
  [Portions of Model Act section 5.04 are incorporated into section 15–9–210 of the Code of Laws of South Carolina, 1976.] Section 5.04 sets forth two nonexclusive ways of serving a corporation with process. A nonprofit corporation can be served by serving its registered agent if it has one. If it has no registered agent, or the registered agent cannot with reasonable diligence be served, the corporation may be served at its principal office as shown on the most recent annual report filed under section 16.22. [In South Carolina the principal office is designated on the most recently filed Notice of Change of Principal Office.]
  Section 5.04 does not prescribe the only means or necessarily the required means of serving the corporation. A state may have a code of civil procedure or other law providing alternative ways of serving nonprofit corporations.

SOUTH CAROLINA REPORTERS' COMMENTS
  Portions of Model Act section 5.04 are incorporated into section 15–9–210. Extensive comments explaining Section 15–9–210 are contained in the Reporters' Comments to Section 33–5–104 of the South Carolina Business Corporation Act. In adopting the South Carolina Business Corporation Act, it was determined that the service provisions should be retained in Title 15. Since the proposed nonprofit service provisions are similar to the existing provisions in Section 15–9–210, it was reasonable to amend Section 15–9–210. If service is made directly on the corporate secretary as provided in Section 15–9–210(b), the address would be the last filed Notice of Change of Principal Office, or if none has ever been filed, the principal office specified in the articles of incorporation.
  In some instances, if the corporation fails to maintain a statutory agent to receive service of process, the Secretary of State becomes the corporation's statutory agent. See, for example, section 33–31–1707(b).

<< SC ST § 33–31–505 >>

Section 33–31–505. Notice of Change of Principal Office.

  If a corporation changes the location of its principal office, the corporation within thirty days shall file a Notice of Change of Principal Office with the Secretary of State. The Notice of Change of Principal Office shall set forth:
  (a) The name of the corporation; and
  (b) The current street address with zip code of the corporation's principal office and the former principal office address.

SOUTH CAROLINA REPORTERS' COMMENTS
  Historically, not all nonprofit corporations have been required to file an annual report with the Tax Commission. Churches have been exempt. With the adoption of this South Carolina Nonprofit Corporation Act, the Department of Revenue and Taxation desired to exempt all nonprofit corporations from filing an annual report since it was costing more to process the paper than it was worth.
  The annual report as to for-profit corporations functions to advise the public of changes in the entity's principal office. The current directors (with addresses) are listed in the annual report. Therefore, by eliminating the requirement that nonprofit corporations file an annual report an alternative public notice was required.

Therefore, each nonprofit corporation must file a short form with the Secretary of State, much in the nature of a notice of change of statutory agent. This filing is required to be made within thirty days of any change in the corporation's principal office.

Some nonprofit corporations such as Rotary clubs, the Kiwanis, and others, will not have an actual permanent location. They will have a usual place of meeting and may maintain a mailbox or a member's address as their mailing address. It is anticipated that the Secretary of State will liberally construe the requirement in this section that the organization list its "street address." In situations where the organization does not actually own or lease property, it is assumed that the filing will be acceptable if it specifies the usual mailing address which the organization uses. The organization, if it desires, could also specify its usual date, time, and place of meeting—or merely its usual place of meeting.

Different from the requirements applicable to business corporations, nonprofit corporations are not required to report changes in their officers and directors. Different from business corporations, most nonprofit corporations, such as churches, clubs, and homeowner corporations, change their directors and officers at least once a year. It was determined that a filling requirement for director changes would be burdensome, would not be complied with, and would not provide significant information.

This is a non-Model Act provision. The Model Act requires all nonprofit corporations to file an annual report.

It should be noted that other provisions of the South Carolina Revised Code impose other filing requirements. For example, many nonprofit corporations will be required to register with the Secretary of State pursuant to the Charitable Solicitations Act, Sections 33–55–40, 33–55–70, and 33–55–120. The Attorney General pursuant to Section 62–7–502, requires not only trusts, but certain corporations to register with him.

Certain nonprofit corporations are also required, pursuant to Section 33–31–1620 to make reports to their members which reports may also be open to inspection by the Attorney General or Secretary of State.

Article 6

Members and Memberships

Subarticle A

Admission of Members

<< SC ST § 33–31–601 >>

Section 33–31–601. Admission.

(a) The articles or bylaws may establish criteria or procedures for the admission of members.
(b) No person may be admitted as a member without his consent.

OFFICIAL COMMENT

Section 3.02 allows, but does not require, a nonprofit corporation to admit members. Any person may be admitted as a member. See section 1.40(21). As the definition of person contained in section 1.40(25) is all encompassing, minors, corporations, partnerships, governmental subdivisions and any other person without limitation may be admitted to membership. See New York Not-for-Profit Corporation Law § 601.

Section 3.02(15) allows corporations to "establish conditions for admission of members" and "admit members." The requirements for admission are normally set forth in the article, bylaws or a resolution adopted by the board. These requirements will be upheld unless they conflict with some federal or state law.

Subdivision (b) prevents corporations from admitting people as members unless they consent to becoming members. Consent may be express or implied. For example, consent may be implied by acceptance of membership benefits knowing that the benefits are only offered to members.

Corporations sometimes name people as members without knowing or having the ability to identify individual members. For example, a corporation's bylaws may provide that "all poor people within one mile of city hall are members entitled to vote for directors." In many instances there is not way to prepare a list of these "members" or meet the notice or other requirements of the Model Act as to them, unless they identify themselves to the corporation. As a result of section 6.01, the above bylaw provision simply authorizes poor people in the area to become members. Before they became members they would have to

apply for or consent to joining by attending a meeting, voting or otherwise evidencing consent. Until they had manifested this consent they would not be "members" as that term is defined in section 1.40(21).

SOUTH CAROLINA REPORTERS' COMMENTS

  The former act did not address membership directly, but, by analogy to the Business Corporation Act, arguably assumed that nonprofit corporations would have members just as business corporations have shareholders. This argument is strengthened by the former act's reservation to members of significant powers, e.g., the power to amend the corporate charter, Section 33–31–130, and the power to dissolve the corporation, Section 33–31–150. The present act, at Sections 33–31–302 and 33–31–603, permits but does not require nonprofit corporations to have members. This clarity and Section 33–31–601's provision of membership procedures are changes from prior statutory law.

  Consent to membership can be implied from circumstances. For example, one who purchases a real estate interest which is subject to covenants of record making the purchaser a member of a nonprofit corporation would have "consented" to membership.

  "Member" is defined at Section 33–31–140(21) as "any person". "Person" is defined very broadly to include "any entity".

<< SC ST § 33–31–602 >>

Section 33–31–602. Consideration.

  Except as provided in its articles or bylaws, a corporation may admit members for no consideration or for such consideration as is determined by the board.

OFFICIAL COMMENT

  Issuance of a membership, unlike the sale of stock, does not necessarily involve the sale of something of value. Memberships in public benefit and religious corporations have no economic value, but reflect a contribution or a commitment to participate in or support the organization and its objectives. Memberships in mutual benefit corporations may or may not have an economic value depending on the nature of the organization. Nonprofit corporations need the ability to issue memberships for no consideration or such consideration as is set forth in or determined by their articles, bylaws, or board. Section 6.02 provides this flexibility.

  Consideration may take any form including but not limited to promissory notes, intangible property, or past or future services. Payment may be made at such times and upon such terms as are set forth in or authorized by the articles, bylaws or a resolution of the board. It may be a fixed amount or based on a formula. For example, in some trade associations the scot of joining is based on the sales, net worth, or other characteristics of the applicant.

  Provisions regarding the amount, nature and time of payment may be set forth in the articles, bylaws or a resolution adopted by the board. Board members in determining the nature, timing, and amount, if any, of payments are required to fulfill their duty of care and loyalty. The obligation of members to make payments to their corporation is dealt with in section 6.13.

SOUTH CAROLINA REPORTERS' COMMENTS

  This provision had no direct counterpart in the former act but, by analogy to the Business Corporation Act, membership could be issued only upon adequate consideration determined in the discretion of the board of directors, subject to the directors' standard of care and loyalty. See Section 33–6–210. Section 33–31–602 includes no concept of adequacy, but attention is drawn to the Official Comment's observation that the board's duties of loyalty and care are implicated in the determination of consideration for membership.

<< SC ST § 33–31–603 >>

Section 33–31–603. No requirement of members.

  A corporation is not required to have members.

OFFICIAL COMMENT

  Nonprofit corporations are not required to have members. They may operate with designated or appointed directors, self-perpetuating boards or delegates. See sections 6.40 and 8.04(b).

Most mutual benefit corporations have members. The members are those persons for whose benefit the corporation operates. There was some sentiment on the Committee to require all mutual benefit corporations to have members. However, numerous mutual benefit corporations serve or represent individuals or entities who pay for the services or representation but have no right to vote for directors. As they have no right to vote for directors, they are not "members" as that term is used in section 1.40(21) of the Model Act. (The corporation may, however, refer to them as "members.") A majority of the Committee felt that the Model Act should not prevent mutual benefit corporations from operating with self-perpetuating boards. However, by allowing this flexibility, the Model Act does not affect the duties, if any, the board may have toward those for whose benefit the corporation operates and who pay to support its activities. The nature and the extent of these duties, if any, is left to a case-by-case determination.

SOUTH CAROLINA REPORTERS' COMMENTS

See the South Carolina Reporters' Comments to Section 33–31–601.

Subarticle B

Types of Memberships—Members' Rights and Obligations

<< SC ST § 33–31–610 >>

Section 33–31–610. Differences in rights and obligations of members.

All members have the same rights and obligations with respect to voting, dissolution, redemption, and transfer, unless the articles or bylaws establish classes of membership with different rights or obligations. All members have the same rights and obligations with respect to any other matters, except as set forth in or authorized by the articles or bylaws.

OFFICIAL COMMENT

Section 6.10 allows great flexibility and diversity in membership rights. In the absence of an applicable article or bylaw provision, all members have the same rights and obligations with respect to voting, dissolution, redemption and transfer. If some members have different rights or obligations in regard to any of these matters, these rights must be set forth in the articles or bylaws and those members comprise a class of members. See section 1.40(5) which defines class as "a group of memberships that have the same rights with respect to voting, dissolution, redemption and transfer." A class vote may be required to amend voting, dissolution, redemption or transfer rights. See sections 10.04 and 10.22. Unless the differences as to voting, dissolution, redemption or transfer are set forth in the articles, or bylaws, each member has the same rights and obligations in regard to these matters as every other member.

The articles or bylaws may authorize any person, group or committee to establish different rights and obligations for different members unless different rights and obligations would create a separate class of members.

The differences may relate to dues, assessments, transfers of memberships in mutual benefit corporations, use of facilities, termination or suspension of members, voting, distributions on dissolution of mutual benefit corporations and other factors. Distinctions can be made between individual, corporate and other entities that are members of the corporation. These distinctions between members can be based on size, net worth, number of employees, activity and other factors. These distinctions do not necessarily result in classes having the right to vote separately on matters requiring a member vote. See sections 10.04 and 10.22. Federal or state law may prohibit some differences or distinctions. Absent such a law, the underlying philosophy of the Model Act as embodied in section 6.10 is to authorize great diversity in memberships.

Once members have been admitted, a vote of the members may be required to change membership rights and obligations. See sections 10.03, 10.04, 10.21 and 10.22. Members' obligations to the corporation are dealt with in section 6.14.

SOUTH CAROLINA REPORTERS' COMMENTS

Former statutory law permitted classification of members by analogy to the Business Corporation Act. By such analogy, under the former act membership could be classified only in the articles of incorporation. See Section 33–6–101. Accordingly, the ability to classify members in the bylaws is a change from former law.

Classification could be limited to articles provisions by corporations wishing to do so.

<< SC ST § 33–31–611 >>

Section 33–31–611. Transfers.

(a) Except as set forth in or authorized by the articles or bylaws, no member of a mutual benefit corporation may transfer a membership or any right arising therefrom.

(b) No member of a public benefit or religious corporation may transfer a membership or any right arising therefrom.

(c) Where transfer rights have been provided, no restriction on them is binding with respect to a member holding a membership issued before the adoption of the restriction unless the restriction is approved by the members and the affected member.

OFFICIAL COMMENT

Subdivision (a) provides that a membership in a mutual benefit corporation cannot be transferred unless the articles or bylaws provide for transfers. This comports with the reasonable expectations of members of most mutual benefit corporations. A corporation's articles or bylaws may provide for transfers if the members want transferable memberships. The articles or bylaws may impose limitations, conditions, and fees as a condition to transferring memberships.

Subdivision (b) requires the concept that memberships in public benefit and religious corporations are not securities, do not represent a valuable asset, are personal to each member, and should not be sold for value. Moreover, subdivision (b) prohibits a member of a public benefit or religious corporation from giving a membership to another person. This prevents members from passing membership rights to their friends or relatives without regard to their qualifications.

Subdivision (c) is particularly important to members of mutual benefit corporations if their memberships represent a valuable asset. It provides that no restriction on transfer can be imposed after the fact without approval of the members and the affected member. A class vote may be required. See sections 10.04, 10.05, 10.21 and 10.22.

SOUTH CAROLINA REPORTERS' COMMENTS

The statutory prohibition on transfer of memberships and membership rights by members of religious and public benefit corporations is a change from former law.

<< SC ST § 33–31–612 >>

Section 33–31–612. Member's liability to third parties.

A member of a corporation is not, as such, personally liable for the acts, debts, liabilities, or obligations of the corporation.

OFFICIAL COMMENT

Section 6.12 sets forth the general rule that members have no personal liability to third parties for the corporation's acts, debts, liabilities, or obligations. Following incorporation members have limited liability in the absence of: (i) facts allowing a court to pierce the corporate veil; or (ii) a legally enforceable obligation of a member to the corporation. See section 2.04 as to the liability of persons purporting to act as or on behalf of a corporation that has not been formed.

SOUTH CAROLINA REPORTERS' COMMENTS

The protection provided to members of nonprofit corporations by Section 33–31–612 lies at the heart of the nonprofit corporation act. The wording of Section 33–31–612 is intended to give members of nonprofit corporations no less protection than is given to shareholders of business corporations under Section 33–6–210(b). See the Official Comment and the South Carolina Reporter's Comments to Section 33–6–210. Section 33–31–612 appears in the Model Act as Section 6.12. Section 6.13 of the Model Act addresses the circumstances under which a member of a nonprofit becomes "liable" to the corporation for dues or assessments. Section 6.14 provides that judgment creditors of a nonprofit corporation may bring a deficiency action against members for such "liabilities". The committee felt that the provisions of Sections 6.13 and 6.14 modified to an unwarranted degree the present law of South Carolina and, after extensive discussion, the committee agreed not to recommend adoption of Sections 6.13 and 6.14.

Subarticle C

Resignation and Termination

<< SC ST § 33–31–620 >>

Section 33–31–620. Resignation.

(a) A member may resign at any time.

(b) The resignation of a member does not relieve the member from any obligations the member may have to the corporation as a result of obligations incurred or commitments made before resignation.

OFFICIAL COMMENT

Section 6.20(a) sets forth the basic right of a member to resign from a nonprofit corporation at any time. A nonprofit organization cannot force a person to belong to it. However, a person may be liable to the corporation for wrongfully withdrawing in violation of contractual or other obligations to remain as a member. Under section 6.20(b) a person may be liable for obligations incurred or commitments made prior to the resignation. These commitments may extend beyond the time the member resigns.

Resignation from membership will not allow a person to avoid liability for goods or service already provided or for ongoing obligations to which the member agreed prior to resignation. Section 6.20(b). This provision is particularly important to corporations that provide benefits or services to members' businesses. The member in joining the organization may promise to use its facilities or services for a specified period of time. While section 6.20(a) allows a member to resign at any time, section 6.20(b) allows the corporation to enforce or obtain damages for violation of a member's agreement.

SOUTH CAROLINA REPORTERS' COMMENTS

This provision had no counterpart in former statutory law.

<< SC ST § 33–31–621 >>

Section 33–31–621. Termination, expulsion, and suspension.

(a) No member of a public benefit or mutual benefit corporation may be expelled or suspended, and no membership or memberships in such corporations may be terminated or suspended except pursuant to a procedure that is fair and reasonable and is carried out in good faith.

(b) A procedure is fair and reasonable when either:

(1) the articles or bylaws set forth a procedure that provides:

(i) not less than fifteen days prior written notice of the expulsion, suspension, or termination and the reasons therefore; and

(ii) an opportunity for the member to be heard, orally or in writing, not less than five days before the effective date of the expulsion, suspension, or termination by a person or persons authorized to decide that the proposed expulsion, termination, or suspension not take place; or

(2) it is fair and reasonable taking into consideration all of the relevant facts and circumstances.

(c) Any written notice given by mail must be given by first class or certified mail sent to the last address of the member shown on the corporation's records.

(d) A proceeding challenging an expulsion, suspension, or termination, including a proceeding in which defective notice is alleged, must be commenced within one year after the effective date of the expulsion, suspension, or termination.

(e) A member who has been expelled or suspended may be liable to the corporation for dues, assessments, or fees as a result of obligations incurred or commitments made before expulsion or suspension.

OFFICIAL COMMENT

Section 6.21 codifies the judicially developed requirement that expulsions, suspensions and terminations in public benefit and mutual benefit corporations must take place by means of a fair and reasonable procedure. Subsection (b)(1) provides a procedural "safe harbor" for corporations that meet its requirements.

If the "safe harbor" provisions are not met, a court may still uphold the procedural aspects of a termination on the ground that they were "fair and reasonable taking into consideration all the relevant facts and circumstances." Subsection (b)(2).

Section 6.21 does not deal with the question of the substantive grounds for termination. Nor does it negate the requirements that the procedure be carried out in good faith and not conflict with the corporation's internal procedures.

To provide finality subsection (d) requires that a proceeding challenging an expulsion, suspension or termination be commenced within one year after the date of the expulsion, suspension or termination.

A person who has been expelled or suspended is liable for dues, assessments and fees based on commitments made or obligations incurred prior to the expulsion or suspension. If the person has contracted or agreed to make payments to the corporation regardless of his or her status as a member, that obligation continues even though the person is suspended or is no longer a member.

In general, courts have not evaluated the fairness and reasonableness of procedures used by religious corporations to expel or suspend members. Section 6.21 does not expand or contract the rights of members of religious corporations in regard to termination, expulsion or suspension.

SOUTH CAROLINA REPORTERS' COMMENTS

Prior statutory law contained no provisions analogous to this section. To the extent that membership in a nonprofit corporation was a vested right, common-law courts could well have required some form of due process, not dissimilar from that required by this section, to attend expulsion. The due process provided for in Section 33–31–621 is procedural only.

This section is not intended to raise any inference that one expelled from a corporation loses any economic interest which has vested in the member in conformity with statute.

The provisions of this section do not apply to charter or bylaw amendments meeting the requirements of Section 33–31–1031.

<< SC ST § 33–31–622 >>

Section 33–31–622. Purchase of memberships.

(a) A public benefit or religious corporation may not purchase any of its memberships or any right arising therefrom.

(b) A mutual benefit corporation may purchase the membership of a member who resigns or whose membership is terminated for the amount and pursuant to the conditions set forth in or authorized by its articles or bylaws. No payment shall be made in violation of Article 13.

OFFICIAL COMMENT

Section 6.22 distinguishes public benefit and religious corporations from mutual benefit corporations by prohibiting the former from purchasing any of their memberships.

The assets of public benefit and religious corporations are held for a public, charitable or religious purpose and may not be distributed to members upon dissolution or while the corporation is operating. Allowing public benefit and religious corporations to purchase memberships would invite evasion of this rule.

Members in mutual benefit corporations may have an economic interest in the corporation and their memberships may represent a valuable asset. Upon dissolution, any surplus may be distributed to members in the absence of some other distribution provision. Consequently, there is no need for an absolute prohibition on purchase of memberships. In fact there is a need to authorize such purchases under specified conditions. For example, country clubs and other mutual benefit organizations often issue memberships and agree to repurchase them if certain conditions are met.

Certain protections must be provided to the creditors of the corporation to ensure that the assets are not improperly diverted to members thereby rendering the corporation unable to meet its liabilities. Consequently, the provisions of chapter 13 relating to prohibited distributions are specifically referenced in section 6.22.

If a mutual benefit corporation has members, a bylaw provision authorizing purchase of memberships must be approved by the members. See sections 10.21 and 10.22.

SOUTH CAROLINA REPORTERS' COMMENTS

The prohibition on transfers of memberships in religious and public benefit corporations had no direct counterpart in the former act. The limitation of subsection (b) on illegal distributions of mutual benefit corporations is analogous to the limitation on distributions to shareholders of Section 33–6–400 of the Business Corporation Act.

Subarticle D

Derivative Suits

<< SC ST § 33–31–630 >>

Section 33–31–630. Derivative suits.

Derivative suits may be maintained on behalf of South Carolina corporations in federal and state court in accordance with the applicable rules of civil procedure.

OFFICIAL COMMENT
[The Model Act provisions were not adopted in South Carolina.]
1. Who May Bring Derivative Suits
Section 6.30 authorizes any director or members of domestic or foreign corporations holding five percent or more of the voting power or fifty members, whichever is less, to bring a derivative suit on behalf of the corporation. Each complainant must be a member or director at the time of the proceeding, but does not have to have been a member or director at the time of the complained-of act. The five percent or fifty-member test and the discretion a court has to award expenses (including counsel fees) if it finds that the suit was commenced without reasonable cause, should prevent strike suits and suits by a single or insignificant number of members.
2. Prior Demand on Board
In most instances prior demand on a corporation's board is a condition precedent to bringing a derivative suit. The demand allows the directors to investigate the claim and to act on behalf of the corporation if they find that action is warranted. If the corporation's investigation is in progress when the proceeding is filed, the court has discretion to stay the suit until the investigation is completed.
In some instances it is not necessary to make a demand on the directors prior to bringing suit. Where a demand would be useless the person bringing the action need only allege the reasons a demand was not made. A demand would be useless, for example, if the suit was against all the directors for entering into a conflict of interest transaction.
There is no requirement of a demand on a corporation's members.
Section 6.30 does not answer the vexing question of the effect of a determination by an independent majority of the board not to sue. This question is left to a case-by-case determination by the courts.
3. Miscellaneous Procedural Matters
Section 6.30 does not require those bringing a derivative suit to post a bond for expenses of the corporation or its officers or directors. On balance a bond requirement does more to deter meritorious suits by those unable to afford a bond, than to provide protection to the corporation and its officers.
4. Termination of the Proceeding
To ensure that settlement of a derivative suit is fair to the corporation and all its members, common law requires court approval of any settlement or discontinuance of the action. If a court determines that a proposed discontinuance or settlement will substantially affect the interests of a corporation's members, it may require notice of the settlement to be sent to the members. The court has discretion to determine who is to pay for the cost of giving notice. If notice is required, a court should consider the possibility of giving notice by means of a corporate magazine or newsletter See section 1.41.
5. Award of Costs and Counsel Fees
A court has discretion to require the complainants to pay the defendant's reasonable expenses (including counsel fees) if it finds that the proceeding was commenced frivolously or in bad faith. Section 8.30(d). This provision is particularly important in the case of public benefit or religious corporations that may spend funds defending a lawsuit rather than devoting them to their public, charitable or religious purposes.

A court also has discretion to award reasonable expenses (including counsel fees) to complainants if: (1) they were successful in whole or in part (success requires that the corporation take some action that the complainants sought or receive some economic or other benefit); or (2) anything was received by the corporation as a result of a judgment.

If the complainants are members of a public benefit corporation they cannot receive anything of economic value as a result of a derivative suit. Members of mutual benefit or religious corporations may receive something of value so long as that which they receive is not a prohibited distribution.

6. Notice to the Attorney General

The Attorney General must be given notice of any derivative suit involving a public benefit corporation or assets held in charitable trust by a mutual benefit corporations. The notice provides the Attorney General an opportunity to learn of and evaluate the dispute. After an evaluation the Attorney General may, but does not have to, join in any such action. See section 1.70.

7. Exhaustion of Internal Remedies

Some nonprofit corporations have procedures for resolving internal disputes. In general these procedures should be exhausted prior to bringing a derivative suit.

8. Constitutional Limitations

Federal or state constitutional provisions may prohibit courts from considering derivative suits brought on behalf of religious corporations.

SOUTH CAROLINA REPORTERS' COMMENTS

South Carolina Rule of Civil Procedure 23(b)(1) and Federal Rule of Civil Procedure 23(b)(1) apply to South Carolina nonprofit corporations, and this has not been changed. See the South Carolina Reporters' Comments to Section 33–7–400 of the Business Corporation Act.

Rule 23(b)(1) contains the following elements:

— One or more members may bring a derivative action.

— The complaint must be verified.

— The plaintiff must have been a member at the time of the harm complained of.

— The complaint must allege with particularity any effort made to obtain action from the board "and the reasons for his failure to obtain the action or for not making the effort."

— The plaintiff must fairly and adequately represent the interests of the members in enforcing the corporation's right.

— Once begun, a derivative action may not be dismissed without court approval; notice of dismissal must be given to the members.

-- One or more members may bring a derivative action.
-- The complaint must be verified.
-- The plaintiff must have been a member at the time of the harm complained of.
-- The complaint must allege with particularity any effort made to obtain action from the board "and the reasons for his failure to obtain the action or for not making the effort."
-- The plaintiff must fairly and adequately represent the interests of the members in enforcing the corporation's right.
-- Once begun, a derivative action may not be dismissed without court approval; notice of dismissal must be given to the members.

See S.C.R.Civ.Pro. r.23(b)(1). The Model Act would require that a derivative action be brought by no less than five percent of the voting power or by fifty members, whichever is less. Model Act section 6.30. Other states which have adopted versions of

the Model Act have enacted similar requirements; see, e.g., Ore.Rev.Stat.Ann. Section 65.174(1)(a) (two percent of the voting power or twenty members); Miss.Code 1972 Ann.Section 79–11–193(1)(a) (five percent or fifty members). Neither the Model Act nor the cited statutes, however, contain the requirement of rule 23(b)(1) that the plaintiff member be adjudged to represent fairly and adequately the interests of the members in enforcing the corporation's right. This provision of rule 23(b)(1) is intended to accomplish the purpose of the Model Act's higher standing requirement, that is, to minimize strike and nuisance suits.

Subarticle E

Delegates

<< SC ST § 33–31–640 >>

Section 33–31–640. Delegates.

(a) A corporation may provide in its articles or bylaws for delegates having some or all of the authority of members.
(b) The articles or bylaws may set forth provisions relating to:
  (1) the characteristics, qualifications, rights, limitations, and obligations of delegates including their selection and removal;
  (2) calling, noticing, holding, and conducting meetings of delegates; and
  (3) carrying on corporate activities during and between meetings of delegates.

OFFICIAL COMMENT
  Section 6.40 authorizes corporations to operate with delegates rather than or in addition to members or a self-perpetuating board. The law in regard to delegates and their rights is not as well developed as that relating to members or self-perpetuating boards. For this reason section 6.40 does not set forth detailed provisions. It authorizes the articles or bylaws to set forth rules in regard to delegates, and carrying on corporate activities during and between meetings of delegates.
  Once rules have been adopted they must be applied in a reasonable way considering the nature, size, customs and operations of the corporation.
  If the corporation has a board, the board is bound by the provisions set forth in Chapter 8. Insofar as the delegates have been given the powers or some of the powers of members of the board, they have analogous rights, duties and obligations. See section 8.01.

SOUTH CAROLINA REPORTERS' COMMENTS
  Prior statutory law contained no counterpart to this section.

Article 7

Members Meetings and Voting

Subarticle A

Meetings and Action Without Meetings

<< SC ST § 33–31–701 >>

Section 33–31–701. Annual and regular meetings.

(a) A corporation with members shall hold a membership meeting annually at a time stated in or fixed in accordance with the bylaws.
(b) A corporation with members may hold regular membership meetings at the times stated in or fixed in accordance with the bylaws.
(c) Annual and regular membership meetings may be held in or out of this State at the place stated in or fixed in accordance with the bylaws. If no place is stated in or fixed in accordance with the bylaws, annual and regular meetings must be held at the corporation's principal office.

(d) At the annual meeting:

 (1) The president and chief financial officer shall report on the activities and financial condition of the corporation; and

 (2) Unless this chapter or the articles of incorporation or bylaws require otherwise, notice of an annual meeting need not include a description of the purpose for which the meeting is called.

 (e) At regular meetings, the members shall consider and act upon matters as raised consistent with provisions of the articles of incorporation or bylaws and, in addition, with the notice requirements of this chapter.

 (f) The failure to hold an annual or regular meeting at a time stated in or fixed in accordance with a corporation's bylaws does not affect the validity of a corporate action.

OFFICIAL COMMENT

 Section 7.01(a) requires all nonprofit corporations with members to hold annual meetings. The main activity at most annual meetings is the election of directors. However, directors may be elected by written ballot or written consent. See sections 7.04 and 7.08. Even if directors are not to be elected, it is still necessary to have an annual meeting to: (1) serve as a town forum in which the president and officers report on and answer reasonable questions concerning the activities and financial condition of the corporation; and (2) consider matters that may be raised consistent with the requirements of section 7.05 and 7.23(b).

 Some nonprofit corporations hold regular meetings of members in addition to holding an annual meeting of members. In some cases these regular meetings deal with matters that might otherwise be dealt with by the board of directors. Section 7.01(b) recognizes this practice and allows nonprofit corporations to hold regular meetings of members at times stated in or fixed in accordance with their bylaws. The Model Act does not require that any action be taken at these meetings. However, any action taken must be consistent with the notice requirements of sections 7.05 and 7.23(b).

 If an annual or required regular meeting is not held, a member and, in the case of a public benefit corporation, the Attorney General, may sue under section 7.03 to compel the corporation to hold the meeting.

 Many nonprofit corporations operate informally and may not hold an annual or regular meeting required by their bylaws. The failure to hold an annual or regular meeting: (1) "does not affect the validity of any corporate action" (section 7.01(d)); and (2) the directors in office continue to serve until their successors are elected and qualify (section 8.05(b)). The corporation can continue to function. Actions taken by its board, officers and employees will be valid even though the corporation has not complied with he requirements of section 7.0. However, the directors' failure to call an annual or regular meeting might violate the duties set forth in section 8.30.

 The bylaws may state the time and place of annual and regular meetings or may authorize the board or some other person to determine the time and place of annual and regular meetings. If the latter approach is used, the board or person calling the meeting has great discretion in establishing a convenient time and place for the meeting. This discretion must be exercised in good faith consistent with the duties set forth in section 8.30.

 Annual meetings are only required for corporations with members. If a corporation has no members, there is no purpose in mandating an annual meeting of members.

SOUTH CAROLINA REPORTERS' COMMENTS

 The provisions found in Article 7 relating to meetings of corporations with members are closely analogous to those found in the Business Corporation Act relating to shareholders' meetings. See Section 33–7–101, et seq. The statutory provision for permissive regular meetings is not found in the Business Corporation Act although it would appear that a business corporation wishing to establish regular meetings would be free to do so, so that no change is made in the law by this provision.

 Subject to such provisions as section 33–31–705(c)(2) (which requires prior notice before certain matters may be brought before the members at an annual meeting), Section 33–31–701(d)(2) has been varied from the Model Act provision to permit any business to come before a corporation's annual meeting. This is somewhat different from the South Carolina Business Corporation Act.

 Section 33–31–701(e) has been varied from the Model Act to make clear that corporations may specify in the articles or bylaws matters which may be taken up at regular meetings without notice. It is contemplated that corporations could provide that any business could be taken up at a regular meeting without notice.

<< SC ST § 33–31–702 >>

Section 33–31–702. Special meetings.

(a) A corporation with members shall hold a special meeting of members:

(1) on call of its board or the person or persons authorized to do so by the articles or bylaws; or

(2) except as provided in the articles or bylaws of a religious corporation, if the holders of at least five percent of the voting power of any corporation sign, date, and deliver to any corporate officer one or more written demands for the meeting describing the purpose or purposes for which it is to be held.

(b) The close of business on the thirtieth day before delivery of the demand or demands for a special meeting to any corporate officer is the record date for the purpose of determining whether the five percent requirement of subsection (a) has been met.

(c) If a notice for a special meeting demanded under subsection (a)(2) is not given pursuant to Section 33–31–705 within thirty days after the date the written demand or demands are delivered to a corporate officer, regardless of the requirements of subsection (d), a person signing the demand or demands may set the time and place of the meeting and give notice pursuant to Section 33–31–705.

(d) Special meetings of members may be held in or out of this State at the place stated in or fixed in accordance with the bylaws. If no place is stated or fixed in accordance with the bylaws, special meetings must be held at the corporation's principal office.

(e) Only those matters that are within the purpose or purposes described in the meeting notice required by Section 33–31–705 may be conducted at a special meeting of members.

OFFICIAL COMMENT

1. Matters To Be Considered at Special Meeting

Special meetings are called to consider matters that have arisen between annual meetings. Only those matters that are within the purpose or purposes described in the notice of the special meeting may be considered at a special meeting. Section 7.02(e). This is to ensure that members will have adequate notice of all matters to be considered, can decide whether or not to attend the meeting, and cannot be forced to vote on unnoticed matters.

2. Persons Who May Call Special Meetings

Special meetings of all nonprofit corporations may be called by: (1) the board of directors; and (2) a person or persons authorized to do so by the articles or bylaws. The articles or bylaws may authorize the presiding officer of the board, the president, any corporate officer, a member or any other person to call a special meeting of members. Except as provide din the articles or bylaws of a religious corporation a person or persons holding five percent or more of the voting power of any corporation may demand that a special meeting be called.

3. Obligations of Corporation

The corporation has thirty days from receipt of a proper demand for a special meeting to give notice of the meeting. It has discretion to set a convenient time and place for the meeting, but should give due consideration to the time and place suggested by the person demanding a special meeting. The board or person acting on behalf of the corporation must act in good faith consistent with the duties set forth in section 8.30.

4. Wrongful Refusal to Call Special Meeting

In a nonprofit corporation, unlike a business corporation, those seeking a special meeting may have no economic ability or incentive to bring a legal proceeding to compel a special meeting. Requiring those seeking a special meeting to sue may be tantamount to prohibiting special meetings wrongfully opposed by those running the corporation. Consequently, section 7.02(c) allows those seeking a special meeting to resort to self-help if the corporation has wrongfully refused to call a meeting for a thirty-day period. Those seeking the meeting are authorized to call the meeting at a convenient time and place. In setting the time and place they must act reasonably and in good faith. The self-help remedy will be available only if the members seeking the meeting have a membership list or access to a membership list. The provisions of section 7.20 and Chapter 16 allow access to a membership list to communicate with other members concerning a special meeting. However, a corporation that wrongfully refuses to call a special meeting is not likely to voluntarily supply a membership list. Therefore, as a practical matter, the self-help remedy is limited to corporations with a few members or those where the membership list is generally available.

If the members cannot or do not want to notice a meeting, they may sue under section 7.03 to compel the corporation to notice and hold the meeting.

SOUTH CAROLINA REPORTERS' COMMENTS

The provisions of Section 33–31–702 are very similar to those found in Section 33–7–102 of the Business Corporation Act, which governed nonprofit corporations until the passage of the present act. The differences are (i) Section 33–7–102(a)(2) requires ten percent of the voting power to call a special meeting and (ii) Section 33–7–102(b) permits the record date to be set according to the procedures of Section 33–7–107; if the record date is not so set, then it is the date on which the first demand was signed.

<< SC ST § 33–31–703 >>

Section 33–31–703. Court-ordered meeting.

(a) The court of common pleas of the county where a corporation's principal office in this State or, if none in this State, its registered office, is located may summarily order a meeting to be held:

(1) on application of a member or other person entitled to participate in an annual or regular meeting, and in the case of a public benefit corporation, the Attorney General, if an annual meeting was not held within the earlier of six months after the end of the corporation's fiscal year or fifteen months after its last annual meeting; or

(2) on application of a member or other person entitled to participate in a regular meeting, and in the case of a public benefit corporation, the Attorney General, if a regular meeting is not held within forty days after the date it was required to be held; or

(3) on application of a member who signed a demand for a special meeting valid under Section 33–31–702, a person or persons entitled to call a special meeting and, in the case of a public benefit corporation, the Attorney General, if:

(i) notice of the special meeting was not given within thirty days after the date the demand was delivered to a corporate officer; or

(ii) the special meeting was not held in accordance with the notice.

(b) The court may fix the time and place of the meeting, specify a record date for determining members entitled to notice of and to vote at the meeting, prescribe the form and content of the meeting notice, fix the quorum required for specific matters to be considered at the meeting, or direct that the votes represented at the meeting constitute a quorum for action on those matters, and enter other orders necessary to accomplish the purpose or purposes of the meeting.

(c) If the court orders a meeting, it may also order the corporation to pay the member's costs, including reasonable counsel fees, incurred to obtain the order.

OFFICIAL COMMENT

Section 7.03 allows members, persons entitled to participate in an annual or regular meeting or to call a special meting, and the Attorney General in the case of a public benefit corporation, to have a court enforce the provisions of sections 7.01 and 7.02 requiring annual, regular and special meetings. The court may act if (1) the annual meeting has not been held within the earlier of six months after the end of the corporation's fiscal year or fifteen months after its last annual meeting; (2) the regular meeting has not been held within 40 days after the date it was required to be held; or (3) a special meeting is not noticed within thirty days after the date demand was delivered to a corporate officer or was not held within a reasonable time. See section 7.05.

Under section 7.03 a court has discretion to determine whether or not to call an annual, regular or special meeting, when and where it should be held, what the record date will be, and what conditions, if any, should be imposed as a condition to holding the meeting. If it orders a meeting, it also has discretion to determine whether or not attorney's fees and costs should be paid by the corporation. In exercising its discretion the court should consider the good faith of the parties, the reasons the meeting has not been noticed or held, and other relevant factors.

Subsection (b) allows the court to fix the quorum requirement "or direct that the votes represented at the meeting constitute a quorum for" specified matters. This second alternative prevents those opposing the meeting from not attending the meting or withholding sufficient proxies to prevent a meeting from occurring due to lack of a quorum. A court-ordered notice should set forth any special quorum requirements to prevent members from being misled.

SOUTH CAROLINA REPORTERS' COMMENTS

This section follows very closely the analogous provisions of South Carolina Business Corporation Act Section 33–7–103, altered only for purposes of clarity and application to nonprofit corporations. It therefore represents no substantive change from prior law.

<< SC ST § 33–31–704 >>

Section 33–31–704. Action by written consent.

(a) Unless limited or prohibited by the articles or bylaws, action required or permitted by this chapter to be approved by the members may be approved without a meeting of members if the action is approved by members holding at least eighty percent of the voting power. The action must be evidenced by one or more written consents describing the action taken, signed by those members representing at least eighty percent of the voting power, and delivered to the corporation for inclusion in the minutes or filing with the corporate records.

(b) If not otherwise determined under Section 33–31–703 or 33–31–707, the record date for determining members entitled to take action without a meeting is the date the first member signs the consent under subsection (a).

(c) A consent signed under this section has the effect of a meeting vote and may be described as such in any document filed with the Secretary of State.

(d) Written notice of member approval pursuant to this section must be given to all members who have not signed the written consent. If written notice is required, member approval pursuant to this section is effective ten days after the written notice is given.

OFFICIAL COMMENT

Section 7.04 authorizes members holding at least eighty percent of the voting power acting by written consent to take any action that could be taken at a meeting of members. See section 1.40(35) for a definition of voting power. Members, sale of all or substantially all of a corporation's assets, dissolution and other significant corporate actions can be approved by written consent. The articles or bylaws may limit or prohibit action by written consent.

Subsection (d) requires that each member who did not sign the written consent be given written notice of any action approved pursuant to section 7.04. Action authorized pursuant to section 7.04 is effective ten days after such notice is given. See section 1.41 for a definition of the effective date of the notice. This notice provides an opportunity for members to protect their rights.

Corporations with numerous members can usually hold a meeting quicker than they can take action pursuant to section 7.04. Consequently section 7.04 will only be useful to nonprofit corporations with a few members or with a few members who hold at least eighty percent of the voting power.

A member may withdraw his or her consent at any time prior to consents representing eighty percent of the voting power being delivered to the corporation. Any such withdrawal is ineffective if delivered after the requisite consents have been delivered to the corporation. The withdrawing member may bring some court action to annul the consent if it was procured by fraud or some other improper means.

Action by written consent cannot serve as a substitute for a special meeting. If a special meeting is properly demanded, it must be held even though the matter or matters to be considered at the meeting could be voted upon by written consent. Similarly the annual meting requirement of the Model Act may not be circumvented by having a written consent. Even if directors are elected by written consent, the annual meeting must be held as provided in section 7.01.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is very similar to the provisions of Section 33–7–104 of the South Carolina Business Corporation Act, except that under this section the signed writing need not be unanimous (unless so provided by the articles or bylaws).

<< SC ST § 33–31–705 >>

Section 33–31–705. Notice of meeting.

(a) A corporation shall give notice consistent with its bylaws of meetings of members in a fair and reasonable manner.

(b) Any notice that conforms to the requirements of subsection (c) is fair and reasonable, but other means of giving notice also may be fair and reasonable when all the circumstances are considered. However, notice of matters referred to in subsection (c) (2) must be given as provided in subsection (c).

(c) Notice is fair and reasonable if:

  (1) the corporation notifies its members of the place, date, and time of each annual, regular, and special meeting of members no fewer than ten or if notice is mailed by other than first class or registered mail, thirty, nor more than sixty days before the meeting date;

  (2) notice of an annual or regular meeting includes a description of any matter that must be approved by the members under Section 33–31–831, 33–31–856, 33–31–1003, 33–31–1021, 33–31–1104, 33–31–1202, 33–31–1401, or 33–31–1402; and

  (3) notice of a special meeting includes a description of the matter for which the meeting is called.

(d) Unless the bylaws require otherwise, if an annual, regular, or special meeting of members is adjourned to a different date, time, or place, notice need not be given of the new date, time, or place, if the new date, time, or place is announced at the meeting before adjournment. If a new record date for the adjourned meeting is or must be fixed under Section 33–31–707, however, notice of the adjourned meeting must be given under this section to the members of record as of the new record date.

(e) When giving notice of an annual, regular, or special meeting of members, a corporation shall give notice of a matter a member intends to raise at the meeting if:

  (1) requested in writing to do so by a person entitled to call a special meeting; and

  (2) the request is received by the secretary or president of the corporation at least ten days before the corporation gives notice of the meeting.

OFFICIAL COMMENT

Section 7.05 provides alternative ways of complying with the notice requirements of the Model Act. A nonprofit corporation may comply with the "safe harbor" notice requirements contained in subsection (c) or for some matters it may give notice by any means consistent with its bylaws that is "fair and reasonable when all the circumstances are considered." The circumstances include the purpose of the meeting and the nature, size, customs, and operations of the corporation. Section 7.05(b).

The "safe harbor" provisions require notice of the place, date and time of each annual and special meeting of members. This notice must be given no fewer than 10 nor more than 60 days before the meeting date unless the notice is mailed by other than first class or registered mail. To save money, many nonprofit corporations use their nonprofit mailing privileges to send notices. To accommodate this practice, section 7.05(c)91 authorizes mailing by other than first class or certified mail but requires that notice sent by such means be mailed at least 30 days before the meeting date.

The "safe harbor" provisions distinguish between annual, regular and special meetings in one respect. Notice of special meetings must include a description of the matter or matters that will be considered at the meeting. The notice of annual and regular meetings does not require a description of any matters to be considered at the meetings unless there is a proposal to amend the articles or bylaws, to indemnify a director or to approve a merger, sale of assets, dissolution or conflict of interest transaction.

While the "safe harbor" provisions are similar to typical notice requirements for business corporations, they may not be consistent with the practice of small, nontraditional or financially insignificant nonprofit corporations. Therefore, section 7.05(b) provides that except for approval of conflict of interest transactions, indemnification, amendment of article and bylaws and approval of mergers, sale of assets and dissolution, "other means of giving notice may also be fair and reasonable when all the circumstances are considered." Posting notice of a meeting on a bulletin board, an oral announcement at a meeting of members or some other means of providing notice may be sufficient.

In determining whether notice is fair and reasonable past practice is of great significance but is not necessarily controlling. The fact that a corporation has traditionally given notice in a particular way is strong evidence that it is fair and reasonable. To be fair and reasonable, notice must follow provisions set forth in a corporation's bylaws.

Numerous other matters including the following may be important in determining whether notice was given in a fair and reasonable manner: the cost of complying with the "safe harbor" provisions relative to the assets of the corporation, the difficulty in complying with the "safe harbor" provisions, the good faith of those giving the notice, the importance and uniqueness of the matter voted upon, the sophistication and expectations of the members and the historical attitude of the members toward notice of meetings.

Section 1.41 sets forth various ways in which notice can be given. Subsection (f) of section 1.41 may be particularly helpful to nonprofit corporations. It allows a "notice ... mailed or delivered as part of a newsletter, magazine or other publication regularly sent to members to constitute written notice...."

Section 7.22 should be consider when giving notice of annual, regular and special meetings because the quorum requirement of section 7.22 vary depending on the type of notice provided and the number of members attending the meeting in person or by proxy.

SOUTH CAROLINA REPORTERS' COMMENTS

Although this section is very similar to the analogous Section 33–7–105 of the Business Corporation Act, it represents changes from prior law in:

(i) giving greater flexibility to nonprofit corporations than is enjoyed by business corporations; and

(ii) making provision for conveyance to members of members' initiatives, in appropriate circumstances.

<< SC ST § 33–31–706 >>

Section 33–31–706. Waiver of notice.

(a) A member may waive any notice required by this chapter, the articles, or bylaws before or after the date and time stated in the notice. The waiver must be in writing, be signed by the member entitled to the notice, and be delivered to the corporation for inclusion in the minutes or filing with the corporate records.

(b) A member's attendance at a meeting:

(1) waives objection to lack of notice or defective notice of the meeting, unless the member at the beginning of the meeting objects to holding the meeting or transacting business at the meeting;

(2) waives objection to consideration of a particular matter at the meeting that is not within the purpose described in the meeting notice, unless the member objects to considering the matter when it is presented.

OFFICIAL COMMENT

1. Written Waiver

A member may waive any notice requirement imposed by the Model Act or a corporation's articles or bylaws by signing and delivering a written waiver of notice to the corporation. The waiver may be signed and delivered either before or after the meeting or other event the notice of which is being waived. It may be a general waiver of all matters considered at a meeting or a limited waiver of specified actions.

2. Waiver by Attending Meeting

A member waives defective notice or failure to give notice of the date, time and place of a meeting by appearing at the meeting without raising an objection at the beginning of the meeting. If a member objects at the beginning of the meeting, the member preserves the right to object to the defective notice or lack of notice.

"Defects waived by attendance ... include a failure to send the notice altogether, delivery to the wrong address, a misstatement of the date, time or place of the meeting, and a failure to notice the meeting within the time periods specified in section 7.05.... For purposes of this section, 'attendance' at a meeting involves the presence of the [member] in person or by proxy." Official Comment to Section 7.06 of the Model Business Corporation Act.

To meet the "safe harbor" provisions of section 7.05(c), each matter to be considered at special meetings and certain matters to be considered at annual and regular meetings must be set forth in the notice of the meeting. A member who attends a meeting would not necessarily know that these matters would be considered unless the member received proper notice. Mere attendance at a meeting should not, and under the Model Act, does not, waive a member's right to object to consideration of matters not properly notice. A member may object to considering improperly notice matters when they are presented. A member who does not object to consideration of such matters when they are presented, waives the right to object.

In some instances the waiver procedures of the Model Act may be unfair to a nonaggressive or unsophisticated member who learns of a meeting just before it commences or walks into a meeting while it is in progress without knowing what is occurring. On balance, however, the waiver provisions provide certainty to the corporation and prevent members from appearing, losing a vote, and subsequently raising an objection to a lack of notice in a legal proceeding.

SOUTH CAROLINA REPORTERS' COMMENTS

  This section is virtually identical to Section 33–7–106 of the Business Corporation Act, and accordingly represents no change from prior statutory law.

  "Delivered", as used in subsection (a), is defined in Section 33–31–140(8) to include "mail". The affidavit of an appropriate agent of the corporation that delivery has been made should shift the burden of proof to the party alleging failure of delivery.

<< SC ST § 33–31–707 >>

Section 33–31–707. Record date; determining members entitled to notice and vote.

  (a) The bylaws of a corporation may fix or provide the manner of fixing a date as the record date for determining the members entitled to notice of a member's meeting. If the bylaws do not fix or provide for fixing a record date, the board may fix a future date as a record date. If no record date is fixed, members at the close of business on the business day preceding the day on which notice is given or, if notice is waived, at the close of business on the business day preceding the day on which the meeting is held are entitled to notice of the meeting.

  (b) The bylaws of a corporation may fix or provide the manner of fixing a date as the record date for determining the members entitled to vote at a member's meeting. If the bylaws do not fix or provide for fixing a record date, the board may fix a future date as a record date. If no record date is fixed, members on the date of the meeting who are otherwise eligible to vote are entitled to vote at the meeting.

  (c) The bylaws may fix or provide the manner for determining a date as the record date for the purpose of determining the members entitled to exercise any rights in respect of any other lawful action. If the bylaws do not fix or provide for fixing a record date, the board may fix in advance a record date. If no record date is fixed, members at the close of business on the day on which the board adopts the resolution relating thereto, or the sixtieth day before the date of such other action, whichever is later, are entitled to exercise such rights.

  (d) A record date fixed under this section may not be more than seventy days before the meeting or action requiring a determination of members occurs.

  (e) A determination of members entitled to notice of or to vote at a membership meeting is effective for any adjournment of the meeting unless the board fixes a new date for determining the right to notice or the right to vote, which it must do if the meeting is adjourned to a date more than one hundred twenty days after the record date for determining members entitled to notice of the original meeting.

  (f) If a court orders a meeting adjourned to a date more than one hundred twenty days after the date fixed for the original meeting, it may provide that the original record date for notice or voting continues in effect or it may fix a new record date for notice or voting.

OFFICIAL COMMENT

  The concept of a record date is foreign to many nonprofit corporations. Nonprofit corporations often allow people to vote who become members on the day of a meeting. Some corporations use the right to vote as an incentive to join. These corporations have a cutoff day in advance of the meeting to determine who will receive notice of the meeting, but allow members who subsequently join to vote. Other nonprofit corporations, typically large or sophisticated organizations, adopt the record date concept used by business corporations. These corporations use the same record date to determine those entitled to notice and vote at a meeting. To accommodate these diverse practices the Model Act separates the concept of record date for notice from record date for the right to vote.

  If the bylaws do not fix or provide the manner of fixing a record date for notice of a meeting, the board may do so. If no provision is contained in the bylaws and the board does not act, "members at the close of business on the business day preceding the day on which notice is given ... are entitled to notice of the meeting." Section 7.07(a). If a meeting is held without notice and notice is waived, the day for determining who is entitled to waive notice is "the close of business on the business day preceding the day on which the meeting is held." Section 7.07(a).

  If the bylaws do not fix or provide a manner for fixing a record date for voting at a meeting, the board may do so. If no provision is contained in the bylaws and the directors do not act, "members on the date of the meeting who are otherwise eligible to vote are entitled to vote at the meeting." Section 7.07(b).

If the bylaws do not fix or provide the manner for determining the record date for exercising rights other than the right to notice or to vote at a meeting, the board may do so. For example, the directors may set a record date for determining members of a mutual benefit corporation entitled to a distribution on dissolution of the corporation. If the bylaws do not set such a record date and the directors do not act, then the record date is the day on which the board adopts the resolution authorizing he distribution or the 60th day prior to the distribution, whichever is later.

These results comport with the way most nonprofit organizations operate. Corporations that operate in a different manner may adopt a bylaw or a corporate resolution setting forth a different record date.

A record date for determining what members are entitled to notice or vote at a meeting of members may be effective for an adjourned meeting provided the adjourned meeting is no more than 70 days after the record date for determining members entitled to notice of the original meeting. The board may always fix a new date for determining members entitled to notice or vote at an adjourned meeting provided it does so in good faith in a manner consistent with its obligations under section 8.30.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is substantially the same as Section 33–7–107 of the Business Corporation Act, except that (i) it deals with notice, voting, and other rights in three separate subsections; and (ii) it provides for membership action in default of director action.

The one hundred twenty-day time period of subsection (e), which measures the length of adjournment after which a new record date must be set, is a variation from the Model Act. The variation was made so that the time period would match that of Section 33–7–107 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–708 >>

Section 33–31–708. Action by written ballot.

(a) Unless prohibited or limited by the articles or bylaws, any action that may be taken at any annual, regular, or special meeting of members may be taken without a meeting if the corporation delivers a written ballot to every member entitled to vote on the matter.

(b) A written ballot shall:

  (1) set forth each proposed action; and

  (2) provide an opportunity to vote for or against each proposed action.

(c) Approval by written ballot pursuant to this section is valid only when the number of votes cast by ballot equals or exceeds the quorum required to be present at a meeting authorizing the action, and the number of approvals equals or exceeds the number of votes that would be required to approve the matter at a meeting at which the total number of votes cast was the same as the number of votes cast by ballot.

(d) All solicitations for votes by written ballot shall:

  (1) indicate the number of responses needed to meet the quorum requirements;

  (2) state the percentage of approvals necessary to approve each matter other than election of directors; and

  (3) specify the time by which a ballot must be received by the corporation in order to be counted.

(e) Except as otherwise provided in the articles or bylaws, a written ballot may not be revoked.

OFFICIAL COMMENT

Section 7.08 authorizes election of directors and approval of actions by written ballot. The ballots must be distributed to every member, provide specified information and allow a reasonable time for their return.

Most nonprofit corporations do not have sophisticated means of counting ballots. To ease the problem of counting ballots subsection (e) provides that a written ballot cannot be revoked unless revocation is authorized by the articles or bylaws.

Section 7.08 does not prohibit cumulative voting when directors are being elected by written ballot. However, the board of a corporation should think twice before allowing cumulative voting by written ballot. If election is by written ballot, contesting factions cannot sensibly decide how to allocate their votes to maximize the number of directors they can elect.

Action by written ballot may not serve as a substitute for an annual or special meeting of members.

SOUTH CAROLINA REPORTERS' COMMENTS

This section had no counterpart in prior statutory law. Significantly, ballots submitted pursuant to this section are not revocable, unlike proxies under Section 33–31–724.

"Deliver", as used in subsection (a), is defined in Section 33–31–140(8) to include "mail". The affidavit of an appropriate agent of the corporation that delivery has been made should shift the burden of proof to the party alleging failure of delivery.

Subarticle B

Voting

<< SC ST § 33–31–720 >>

Section 33–31–720. Members' list for voting.

(a) After fixing a record date for a notice of a meeting, a corporation shall prepare an alphabetical list of the names of all its members who are entitled to notice of the meeting and shall list the members by classification of membership, if any. The list must show the address and number of votes each member is entitled to vote at the meeting. The corporation shall prepare on a current basis through the time of the membership meeting a list of members, if any, who are entitled to vote at the meeting but not entitled to notice of the meeting. This list must be prepared on the same basis and be part of the list of members.

(b) The list of members must be available for inspection by any member for the purpose of communication with other members concerning the meeting, beginning the day after notice is given of the meeting for which the list was prepared and continuing through the meeting, at the corporation's principal office or at a reasonable place identified in the meeting notice in the city where the meeting will be held. A member, a member's agent, or member's attorney is entitled on written demand to inspect and, subject to the limitations of Sections 33–31–1602(c) and 33–31–1605, to copy the list, at a reasonable time and at the member's expense, during the period it is available for inspection.

(c) The corporation shall make the list of members available at the meeting, and any member, a member's agent, or member's attorney is entitled to inspect the list at any time during the meeting or any adjournment.

(d) If the corporation refuses to allow a member, a member's agent, or member's attorney to inspect the list of members before or at the meeting, or copy the list as permitted by subsection (b), the court of common pleas of the county where a corporation's principal office in this State or, if none in this State, its registered office, is located, on application of the member, may summarily order the inspection or copying at the corporation's expense and may postpone the meeting for which the list was prepared until the inspection or copying is complete and may order the corporation to pay the member's costs, including reasonable counsel fees, incurred to obtain the order.

(e) Unless a written demand to inspect and copy a membership list has been made under subsection (b) before the membership meeting and a corporation improperly refuses to comply with the demand, refusal or failure to comply with this section does not affect the validity of action taken at the meeting.

(f) The articles or bylaws of a religious corporation may limit or abolish the rights of a member under this section.

(g) A member may inspect and copy the membership list only if (i) his demand is made in good faith and for a proper purpose; (ii) he describes with reasonable particularity his purpose; and (iii) the list is directly connected with his purpose.

OFFICIAL COMMENT

1. Rights Provided to Members

A corporation is required to make its membership list available to any member for inspection or copying two days after notice of the meeting is given. The list must include the name and address and number of votes each member is entitled to cast at the meeting and must be updated to and including the date of the meeting. The need to update the list would only occur if members entitled to vote at the meeting join the corporation after the notice of the meeting is given. See section 7.07.

Prior to the meeting the list must be available at the corporation's "principal office" or "at a reasonable place identified in the meeting notice in the city where the meeting is to be held." In addition the list must be available at the meeting of members. Prior to and during the meeting of members the list may be copied at the member's expense by the member or the member's agent or attorney.

The right to inspect a copy of the list pursuant to section 7.20 is separate and independent of the inspection rights contained in Chapter 16. However, the limitations on inspection and copying rights of section 16.02(c) and 16.05 are applicable to inspection and copying under section 7.20.

If a record date notice a meeting is less than two days prior to the meeting because the meeting will be held pursuant to written waivers of notice, the list need only be available for inspection and copying at the meeting.

2. Enforcement of Rights

A court may summarily order inspection and copying of the list at the corporation's expense. In addition it may postpone the meeting for such period of time as it deems reasonable if the list has been wrongfully withheld and may order the corporation to pay the reasonable costs including counsel fees incurred to obtain the orders it makes. The court is not required to make any order, but has broad discretion to do what is appropriate and necessary under the circumstances taking into consideration the good faith of the parties, the reasons the corporation refused to provide the list, and other relevant facts.

3. Effect of Refusal to Comply with Section

With one exception the validity of any action taken at a meeting is not affected by the refusal or failure of the corporation to prepare, identify the location, or make available the list of members. In most instances members will not even ask to look at the membership list. In such cases the failure to follow the requirements of section 7.20 are of no consequence. Where a corporation wrongfully refuses a member's request prior to a meeting to inspect a membership list, a court may invalidate the meeting after consideration of all the equities. If an action is brought prior to the meeting, a court may postpone the meeting until the member has had a reasonable opportunity to copy and use the membership list.

4. Religious Corporations

The rights of inspection set forth in section 7.20 may be limited or abolished in a religious corporation's articles or bylaws. If they are not limited or abolished, members of religious corporations have the rights set forth in section 7.20.

SOUTH CAROLINA REPORTERS' COMMENTS

This section differs from South Carolina Business Corporation Act Section 33–7–200 chiefly in details pertinent to the differences between nonprofit and business corporations. This section has been varied from the Model Act in the following ways:

1. Subsection (a) has been modified to require that the members be listed by classification of membership, if any. This is analogous to the requirement of Section 33–7–200(a) of the South Carolina Business Corporation Act that the shareholders' list be arranged by voting group.

2. Subsection (b) has been altered to require that the list be available on the day notice is given, as is provided in Section 33–7–200(b) of the South Carolina Business Corporation Act. The Model Act suggested that the list be required to be available two days after the date notice is sent.

3. Subsection (d) has been altered to delete a provision permitting courts to require the payment of a member's costs, when the member was refused inspection under this section. This alteration makes subsection (d) analogous to Section 33–7–200(d) of the South Carolina Business Corporation Act.

4. Subsection (g) has been added to make a member's right to inspect and copy the membership list coextensive with a shareholder's right to inspect and copy the record of shareholders under Section 33–16–102 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–721 >>

Section 33–31–721. Voting entitlement generally.

(a) Unless the articles or bylaws provide otherwise, each member is entitled to one vote on each matter voted on by the members.

(b) Unless the articles or bylaws provide otherwise, if a membership stands of record in the names of two or more persons, their acts with respect to voting have the following effect:

(1) if only one votes, the act binds all; and

(2) if more than one votes, the vote must be divided on a pro rata basis.

OFFICIAL COMMENT

Section 7.21 sets forth the basic rule that each member is entitled to one vote on each matter voted on by the members unless the articles or bylaws provide otherwise. Also see section 6.10. Corporations that wish to provide different voting rights may

do so in their articles or bylaws. Different voting rights can be based upon the amount of dues paid or contributions made, the number of hours devoted to the corporation's activities, the net worth, sales volume, or number of outlets of a corporate member or innumerable other factors considered significant by the organization. These distinctions will be upheld by the courts unless they violate some federal or state law or are adopted in violation of some provision of the Model Act.

  Subsection (b) deals with single memberships held by two or more persons. In the absence of a contrary bylaw provision, if only one person votes, that vote binds, the other holds. If more than one person votes, the vote is plit pro rate based on the number of people voting. This rule comports with normal expectations, at least where one membership is held by a family and each member of the family is listed as holding part of the membership. In a mutual benefit organization where a membership is valuable, this rule may not make sense and some alternate approach should be set forth in the bylaws.

SOUTH CAROLINA REPORTERS' COMMENTS

  This section varies from prior statutory law only in providing a default method of counting votes of dual memberships.

<< SC ST § 33–31–722 >>

Section 33–31–722. Quorum requirements.

  (a) Unless this chapter, the articles, or bylaws provide for a higher or lower quorum, ten percent of the votes entitled to be cast on a matter must be represented at a meeting of members to constitute a quorum on that matter.
  (b) A bylaw amendment to change the quorum for a member action may be approved by the members and, if required, be approved as provided in Section 33–31–1030.
  (c) An amendment to the articles of incorporation or bylaws that adds, changes, or deletes a greater quorum must be adopted under the quorum then in effect or proposed to be adopted, whichever is greater.

OFFICIAL COMMENT

  Many nonprofit corporations have a low member turnout and need a low quorum to hold annual, regular or special meetings. In recognition of this need the section does not set a lower limit on a quorum requirement. For example, the bylaws may provide that the quorum is composed of those attending the meeting or those voting upon a matter. This insures a quorum so long as one member attended the meeting or voted on a matter.

  With the low quorum requirement authorized by section 7.22 a few members may plan to take over an annual or regular meeting and vote upon matters that were not noticed. To protect against this possibility section 7.22(d) prohibits members from voting upon a matter that was not noticed unless one third or more of the voting power is represented. When, however, a matter is noticed, a quorum of one member can act upon it. If the matter is not noticed, at least one third of the voting power must be present to take action. At special meetings members may only vote on matters that are noticed. See section 7.02(e).

  Section 7.22(b) allows the members or the board to decrease the quorum. Decreasing the quorum should not be detrimental to the members as member action still requires at least approval by a majority of a quorum. The notice requirements of section 7.05 and voting requirements of section 7.23(a) provide additional protection. The bylaws may provide complete protection, and rigidity, by prohibiting the board from decreasing the quorum.

  A bylaw amendment to increase the quorum may make it difficult for members to act. Consequently section 7.22(c) requires any such amendment to be approved by the members.

  For those corporations whose articles or bylaws do not set a quorum, subsection (a) provides that the quorum shall be ten percent of the votes entitled to be cast on the matter. See section 1.40(35) for a definition of "voting power."

  Quorum requirements may be changed by complying with the provisions of sections 10.01 through 10.05 when amending articles and sections 7.23 and 10.20 through 10.23 when amending bylaws. Section 10.30 may require the consent of a third person when the articles or bylaws are amended.

SOUTH CAROLINA REPORTERS' COMMENTS

  Under prior law, the South Carolina Business Corporation Act provisions relating to quorums, Sections 33–7–250 and 33–7–270, governed nonprofit corporations. Those sections provided that a majority of votes entitled to be cast constituted a quorum unless the articles of incorporation provided differently. Section 33–31–722 sets the default quorum at ten percent, and permits this to be varied in the articles of incorporation or bylaws.

The Model Act version of this section permitted the board to amend the bylaws to decrease a quorum requirement for member action. That provision has been altered so that amendments to decrease and increase quorums for member action must be approved by the members. The articles of some nonprofit corporations may also require the approval of a third party. See Section 33–31–1030.

Subsection (c) has been added to the Model Act version of this section. It is similar to Section 33–7–270(b) of the South Carolina Business Corporation Act. See also Section 33–31–723(c).

The Model Act version of this section provides that unless at least one-third of the voting power is present at an annual or regular meeting, no action can be taken which is not described in the meeting notice. That provision has been deleted. Provisions of this sort can, of course, be included in a corporation's articles or bylaws.

Sections 33–31–1002, et seq. and 33–31–1021, et seq. address amendment of the articles and the bylaws, respectively. Attention is drawn to the notice and other requirements of those sections.

<< SC ST § 33–31–723 >>

Section 33–31–723. Voting requirements.

(a) Unless this chapter, the articles, or the bylaws require a greater vote or voting by class, if a quorum is present, the affirmative vote of the votes represented and voting, which affirmative votes also constitute a majority of the required quorum, is the act of the members.

(b) A bylaw amendment to increase or decrease the vote required for a member action must be approved by the members and, if required, be approved as required in Section 33–31–1030.

(c) An amendment of the articles of incorporation or bylaws adding, changing, or deleting a voting requirement must be adopted by the same vote and classes of members required to take action under the voting requirements then in effect or proposed to be adopted, whichever is greater.

OFFICIAL COMMENT

See section 1.40(1) for the definition of "approved by the members." Also see the Official Comment to section 1.40 for a discussion of the meaning of "approved by the members." The question of the member vote required to approve an action should be within the control of the members. Consequently section 7.23(c) requires member approval to amend the bylaws to increase or decrease a required vote. Of course, the members cannot reduce the vote required for member action below a majority of the required quorum. Section 1.40(1). Nor may they change a vote mandated by the Model Act.

SOUTH CAROLINA REPORTERS' COMMENTS

Under prior statutory law, Section 33–7–250 of the South Carolina Business Corporation Act governed voting requirements. That section provides that the membership has acted where approving votes outnumber dissenting votes, a formulation which ignores abstentions. Section 33–31–723 requires that, for membership action, a majority of votes cast and a majority of a quorum must be cast in favor. Under this formulation, an abstention is effectively a negative vote.

Under prior statutory law, Section 33–7–270(b) of the South Carolina Business Corporation Act governed changes in voting requirements, providing that changes in voting requirements must be approved by the greater of the existing or the proposed new requirement. This provision has been added to Section 33–31–723 as subsection (c). This is a variation from the Model Act. See also Section 33–31–722(c).

Prior statutory law required variations in voting requirements to appear in the articles of incorporation. Section 33–31–723 contemplates that such variations may appear in the bylaws.

<< SC ST § 33–31–724 >>

Section 33–31–724. Proxies.

(a) Unless the articles or bylaws prohibit or limit proxy voting, a member may appoint a proxy to vote or otherwise act for the member by signing an appointment form either personally or by an attorney-in-fact.

(b) An appointment of a proxy is effective when received by the secretary or other officer or agent authorized to tabulate votes. An appointment is valid for eleven months unless a different period is expressly provided in the appointment form. However, no proxy is valid for more than three years from its date of execution.

(c) An appointment of a proxy is revocable by the member.

(d) The death or incapacity of the member appointing a proxy does not affect the right of the corporation to accept the proxy's authority unless notice of the death or incapacity is received by the secretary or other officer or agent authorized to tabulate votes before the proxy exercises authority under the appointment.

(e) Appointment of a proxy is revoked by the person appointing the proxy:

 (1) attending any meeting and voting in person; or

 (2) signing and delivering to the secretary or other officer or agent authorized to tabulate proxy votes either a writing stating that the appointment of the proxy is revoked or a subsequent appointment form.

(f) Subject to Section 33–31–727 and any express limitation on the proxy's authority appearing on the face of the appointment form, a corporation is entitled to accept the proxy's vote or other action as that of the member making the appointment.

OFFICIAL COMMENT

 Section 7.24 authorizes members to vote by proxy, but allows the articles or bylaws to prohibit or limit proxy voting.

 "The word 'proxy' is often used ambiguously, sometimes referring to the grant of authority to vote, sometimes to the document granting the authority, and sometimes to the person to whom the authority is granted ... the word 'proxy' is used only in the last sense; the term 'appointment form' is used to describe the document appointing the proxy; and the word 'appointment' is used to describe the grant of authority to vote." Official Comment to Section 7.22 of the Model Business Corporation Act.

 A member or the member's attorney-in-fact may appoint a proxy by signing an appointment form. No particular type of form is required. A proxy may vote or otherwise act for the member on all matters unless the appointment form contains an express limitation on the proxy's authority. Members wishing to limit the power of a proxy should carefully draft the authorization form to limit the proxy's power.

 The corporation must treat the act of the proxy as the act of the member unless the appointment form limits the power of the proxy or directs the proxy to act in a specified way. Any such limitation or direction must be observed by the corporation.

 The appointment of a proxy may be revoked at any time. See subsection (e) for means of revocation.

 To provide certainty, subsection (d) modifies common law principles and allows a corporation to accept a proxy's authority until it receives notice of the death or incapacity of the member appointing the proxy. A proxy's vote or other action is final and binding, but the proxy may be liable to the appointment member for damage resulting from the proxy's failure to act in accordance with the appointment.

SOUTH CAROLINA REPORTERS' COMMENTS

 Under formerly applicable statutory law, the proxy rules for nonprofit corporations were borrowed from Section 33–7–220 of the South Carolina Business Corporation Act. The proxy rules of Section 33–31–724 differ from former law in the following ways: No provision is now made for irrevocable proxies; three years is established as the maximum duration of a proxy; proxies become effective when received by the officer authorized to tabulate votes and not at a date appearing on the proxy form; and there is no counterpart to the antifraud provision of the Business Corporation Act, Section 33–7–220(i).

 In many nonprofit corporations, the directors are also the "members" for statutory purposes. Directors taking action as directors may not act by proxy, but directors taking action as the members may.

<< SC ST § 33–31–725 >>

Section 33–31–725. Cumulative voting for directors.

 (a) If the articles provide for cumulative voting by members, members may so vote by multiplying the number of votes the members are entitled to cast by the number of directors for whom they are entitled to vote, and cast the product for a single candidate or distribute the product among two or more candidates.

(b) Cumulative voting is not authorized at a particular meeting unless:

 (1) the meeting notice or statement accompanying the notice states that cumulative voting will take place; or

(2) a member gives notice during the meeting and before the vote is taken of the member's intent to cumulate votes and, if one member gives this notice, all other members participating in the election are entitled to cumulate their votes without giving further notice.

(c) A director elected by cumulative voting may be removed by the members without cause if the requirements of Section 33–31–808 are met unless the votes cast against removal, or not consenting in writing to the removal, would be sufficient to elect the director if voted cumulatively at an election at which the same total number of votes were cast or, if such action is taken by written ballot, all memberships entitled to vote were voted and the entire number of directors authorized at the time of the director's most recent election were then being elected.

(d) Members may not cumulatively vote if the directors and members are identical.

OFFICIAL COMMENT

Section 7.25 allows the articles or bylaws to authorize cumulative voting. As a condition to cumulative voting subsection (b) requires that the meeting notice or proxy statement state that cumulative voting will take place or that during the meeting a member gives notice of the member's intent to cumulate votes before the vote is taken. These requirements are imposed as cumulative voting should only be allowed if members know or reasonably should know that the election will be by cumulative voting. Otherwise unfair and unintended results will occur as some members will cumulate their vote and others will not.

Section 7.25 also sets forth the mechanics of cumulative voting and protects a minority that has elected a director from having that director removed by the majority.

Subsection (c) provides that protection by prohibiting the removal of a director if those opposing the removal would have been able to elect the director by cumulative voting.

Subsection (d) prevents potentially unintended and unfortunate results by prohibiting cumulative voting when the directors and members are identical. In such situations directors could perpetuate themselves in office by voting cumulatively. If self-perpetuation is desired, it should be done directly by designation of directors or by some other means, not inadvertently by allowing cumulative voting.

SOUTH CAROLINA REPORTERS' COMMENTS

Former law borrowed the rules for cumulative voting from Section 33–7–280 of the Business Corporation Act. Section 33–31–725 differs from former law in the following respects: It does not specify how directors are to be elected, so that specific provision must be made in the articles or bylaws. It does not contemplate the possibility of advance notice to a corporate officer found in Section 33–7–280(c)(2)(1). It prohibits cumulative voting where the directors and the members are identical.

Section 33–31–725 embodies a presumption that corporations will not have cumulative voting. This is the opposite of the presumption found in Section 33–7–280 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–726 >>

Section 33–31–726. Other methods of electing directors.

A corporation may provide in its articles or bylaws for election of directors by members or delegates:

(1) on the basis of chapter or other organizational unit;

(2) by region or other geographic unit;

(3) by preferential voting; or

(4) by any other reasonable method.

OFFICIAL COMMENT

As there is no valid reason to limit voting for directors to cumulative or straight voting, section 7.26 allows directors to be elected by three other specified methods and any other reasonable basis. The method of electing directors may not, however, be made up on an ad hoc basis, but must be set forth in or authorized by the articles or bylaws. The board in overseeing an election must comply with the fiduciary standards set forth in section 8.30 regardless of the manner in which the election is conducted.

SOUTH CAROLINA REPORTERS' COMMENTS

This section had no counterpart in the formerly applicable statutory law.

<< SC ST § 33–31–727 >>

Section 33–31–727. Corporation's acceptance of votes.

(a) If the name signed on a vote, consent, waiver, or proxy appointment corresponds to the name of a member, the corporation if acting in good faith is entitled to accept the vote, consent, waiver, or proxy appointment and give it effect as the act of the member.

(b) If the name signed on a vote, consent, waiver, or proxy appointment does not correspond to the record name of a member, the corporation if acting in good faith is nevertheless entitled to accept the vote, consent, waiver, or proxy appointment and give it effect as the act of the member if:

(1) the member is an entity and the name signed purports to be that of an officer or agent of the entity;

(2) the name signed purports to be that of an attorney-in-fact of the member and, if the corporation requests, evidence acceptable to the corporation of the signatory's authority to sign for the member has been presented with respect to the vote, consent, waiver, or proxy appointment;

(3) two or more persons hold the membership as cotenants or fiduciaries and the name signed purports to be the name of at least one of the coholders and the person signing appears to be acting on behalf of all the coholders; and

(4) in the case of a mutual benefit corporation:

(i) the name signed purports to be that of an administrator, executor, guardian, or conservator representing the member and, if the corporation requests, evidence of fiduciary status acceptable to the corporation has been presented with respect to the vote, consent, waiver, or proxy appointment;

(ii) the name signed purports to be that of a receiver or trustee in bankruptcy of the member and, if the corporation requests, evidence of this status acceptable to the corporation has been presented with respect to the vote, consent, waiver, or proxy appointment.

(c) The corporation is entitled to reject a vote, consent, waiver, or proxy appointment if the secretary or other officer or agent authorized to tabulate votes, acting in good faith, has reasonable basis for doubt about the validity of the signature on it or about the signatory's authority to sign for the member.

(d) The corporation and its officer or agent who accepts or rejects a vote, consent, waiver, or proxy appointment in good faith and in accordance with the standards of this section are not liable in damages to the member for the consequences of the acceptance or rejection.

(e) Corporate action based on the acceptance or rejection of a vote, consent, waiver, or proxy appointment under this section is valid unless a court of competent jurisdiction determines otherwise.

OFFICIAL COMMENT

Section 7.27 sets forth the rules under which corporations may accept the signature on a vote, consent, waiver, or proxy appointment as that of a member or of someone authorized to act on behalf of the member. Section 7.27 is designed to provide certainty and protect nonprofit corporations and their officers and agents who act in good faith in reliance on its rules. It therefore provides that corporations are entitled to reject a vote, consent, waiver, or proxy appointment if the person authorized to tabulate votes in good faith has reasonable basis for doubt about the validity of the signature or the signatory's authority to sign for the member. Even if the vote is in fact authorized, the corporation and its agents will not be liable. Similarly if a vote, consent, waiver, or proxy appointment is improperly accepted or rejected, there will be no liability to the corporation or its agent if the person making the decision acted in good faith in accordance with the standards of the section.

"The phrase 'reasonable basis for doubt' about the validity of a signature or about the signer's authority creates an objective standard for the exercise of the authority ... to reject proffered instruments. In the absence of a proxy fight or a seriously contested issue, instruments should be rejected only if there seems to be no basis for finding the execution regular on its face. In a proxy fight or other contested issue, the possibility of illegal or unauthorized execution is greatly increased, and a more cautious attitude should therefore be adopted." Official Comment to Section 7.24 of the Model Business Corporation Act.

In most instances instruments proportion to be executed by or on behalf of members will in fact have been executed by and on behalf of the member "and the corporation and its officers should be encouraged to accept them rather than to adopt unduly narrow requirements." Official Comment to Section 7.24 of the Model Business Corporation Act.

SOUTH CAROLINA REPORTERS' COMMENTS

 This section, as it applies to mutual benefit corporations, is very similar to former law, found at Section 33–7–240 of the South Carolina Business Corporation Act. A substantive difference from former law is the exception of religious and public purpose corporations from the provisions of Section 33–31–727(b)(4).

Subarticle C

Voting Agreements

<< SC ST § 33–31–730 >>

Section 33–31–730. Voting agreements.

 (a) Two or more members may provide for the manner in which they will vote by signing an agreement for that purpose. The agreements may be valid for ten years. For public benefit corporations the agreements must have a reasonable purpose not inconsistent with the corporation's public or charitable purposes.
 (b) A voting agreement created under this section is specifically enforceable.

OFFICIAL COMMENT

 Section 7.30 validates a written voting agreement signed by two or more members. For public benefit and religious corporations the agreement must be for a proper purpose not inconsistent with the corporation's purposes. Courts should take into account all relevant facts in determining whether an agreement has a proper purpose.

SOUTH CAROLINA REPORTERS' COMMENTS

 By contrast to formerly applicable statutory law, found at South Carolina Business Corporation Act Sections 33–7–300 and 33–7–310, no provision is made in this Act for voting trusts. Voting agreements are permitted, but limited to a duration of ten years. The special provisions made for voting agreements relating to public purpose corporations had no counterpart in former law.

Article 8

Directors and Officers

Subarticle A

Board of Directors

<< SC ST § 33–31–801 >>

Section 33–31–801. Requirement for and duties of board.

 (a) Each corporation must have a board of directors.
 (b) Except as provided in this chapter or subsection (c), all corporate powers must be exercised by or under the authority of and the affairs of the corporation managed under the direction of its board.
 (c) The articles may authorize a person or persons to exercise some or all of the powers which would otherwise be exercised by a board. To the extent so authorized, the person or persons shall have the duties and responsibilities of the directors, and the directors shall be relieved to that extent from the duties and responsibilities.

OFFICIAL COMMENT

 The Model Act allows considerable flexibility in structuring nonprofit corporations. While every corporation must have a board of directors, the articles may authorize a person or persons to exercise some or all of the powers of the board.
 Insofar as the powers of the board are delegated to some other person or persons, that person or persons assume the duties of the board and must meet the standards set forth in sections 8.30–8.33. If the board had no corporate power it would have no duties under sections 8.30–8.33.

In some organizations corporate authority is exercised by a representative assembly or a convention. The board may have little or no corporate power when the assembly or convention is meeting. Corporate power between assemblies or conventions may reside in a board of directors or some other person or persons. The person or persons under whose authority corporate power is exercised has the responsibilities of the board of directors.

The role played by the boards of nonprofit corporations varies widely due to the nature, size, characteristics and needs of the organizations. Absent a contrary article provision "[a]ll corporate powers shall be exercised by or under the authority of" the board.

In some nonprofit organizations the board is actively involved in the day-to-day activities of the corporation. Board members may carry on all or substantially all of the work of the corporation. In such instances the corporate powers are exercised by the board and the affairs actively managed under the direction of the board.

In other nonprofit corporations the board is significantly involved in fund-raising or other activities and also validates or approves a policy and other decisions made by the corporation's officers and employees. In such instances the corporate powers are exercised under the authority of the board and the affairs are managed under the direction of the board.

In each of the above instances the board has the ultimate authority and responsibility. The authority is exercised and responsibility is carried out in different ways. Each director must meet the standards and is entitled to the protection afforded by sections 8.30–8.33.

Boards of nonprofit corporations are sometimes called boards of trustees, regents, overseers, or by some other name. Section 8.01 applies to the person or group under whose authority corporate powers are exercised and under whose direction the affairs of the corporation are managed, regardless of the name of the person or group.

SOUTH CAROLINA REPORTERS' COMMENTS

This section does not represent a substantial change from previously applicable statutory law, which was found at Section 33–8–101 of the South Carolina Business Corporation Act. The major change is the absence of Section 33–8–101's recognition of a unanimous shareholders' agreement as a corporate governance document.

Similar to the Business Corporation Act, this section authorizes a corporation to include, for example, a provision in the articles which specifies that the members have the authority to appoint all or certain officers of the nonprofit corporation. Note, however, that section 33–31–843(b) gives the board carte blanche authority to remove any officer with or without cause—and possibly this section 33–31–843 would trump an additional simple provision in the articles that the board may not remove an officer appointed by the members. On the other hand, if the articles stated that not only do the members have the exclusive authority to appoint officers but they shall have the exclusive authority to remove officers, this later provision would seem to divest the power of the board to remove the officers appointed by the members.

<< SC ST § 33–31–802 >>

Section 33–31–802. Qualifications of directors.

All directors must be natural persons. The articles or bylaws may prescribe other qualifications for directors.

OFFICIAL COMMENT

Only individuals may serve as directors of nonprofit corporations. The Model Act does not impose qualifications for directors. It does not require directors to be members of the corporation or residents of its state of incorporation. However, articles or bylaws may impose qualifications for election to or service on a board of directors. A corporation may require that each director be a member in good standing of the organization. For example, the Young Republicans may require each director to be under thirty-six and Republican.

An article or bylaw qualification existing at the time an individual is elected a director is valid unless it violates public policy or some law other than the Model Act. If a qualification adopted after the director's term commences would disqualify a director, it cannot be enforced until after the end of the director's term. The procedures for removing a director are set forth in sections 8.08–8.10.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is essentially similar to previously applicable Section 33–8–102 of the South Carolina Business Corporation Act, except that this section requires directors to be natural persons.

<< SC ST § 33–31–803 >>

Section 33–31–803. Number of directors.

 (a) A board of directors must consist of three or more directors, with the number specified in or fixed in accordance with the articles or bylaws.

 (b) The number of directors may be increased or decreased, but to no fewer than three, by amendment to or in the manner prescribed in the articles or bylaws.

OFFICIAL COMMENT

 Section 8.03 requires nonprofit corporations to have a minimum of three directors, but otherwise allows the number of directors to be specified or fixed in accordance with the articles or bylaws. The articles or bylaws may allow the board to set the number of directors without placing any limit on the maximum number of directors. Alternatively, the articles or bylaws may specify a fixed or maximum number of directors or a range within which the board or the members may determine the number of directors.

 The Model Act does not limit the range within which the number of directors may be set. Where control is a factor, the articles or bylaws may appropriately limit the size of the board and the authority of the board to elect directors.

 If the corporation has members, an amendment to the articles or bylaws changing the authorized number of directors must be approved by the members. See sections 10.03 and 10.21. If the corporation does not have members, an amendment must be approved by the board of directors. See sections 10.02(b) and 10.20. In either case approval by a third person may be required. See section 10.30.

SOUTH CAROLINA REPORTERS' COMMENTS

 Board size was previously governed by Section 33–8–103 of the South Carolina Business Corporation Act, which permits boards as small as one. The requirement of a minimum of three directors is a change from former law. Former law also limited the percentage by which the board itself could alter its size, even if authorized by the articles of incorporation to make such changes. Section 33–31–103 contains no such limit.

<< SC ST § 33–31–804 >>

Section 33–31–804. Election, designation, and appointment of directors.

 (a) If the corporation has members entitled to vote for directors, all the directors, except the initial directors, must be elected at the first annual meeting of members, and at each annual meeting thereafter, unless the articles or bylaws provide some other time or method of election, or provide that some of the directors are appointed by some other person or designated.

 (b) If the corporation does not have members entitled to vote for directors, all the directors, except the initial directors, must be elected, appointed, or designated as provided in the articles or bylaws. If no method of designation or appointment is set forth in the articles or bylaws, the directors, other than the initial directors, must be elected by the board.

OFFICIAL COMMENT

 1. Corporations with Members

 If a corporation has members, the members are entitled to elect all the directors in the absence of a contrary provision in the articles or bylaws. The articles or bylaws may set forth a simple one-vote-per-member structure or may provide for election by classes, chapters or other organizational units or by region or other geographic groupings. See sections 2.02 and 2.05 as to appointment of initial directors. see sections 7.04, 7.08, 7.21, 7.25 and 7.26 as to the ways in which members may vote.

 Section 8.04 should be applied in a manner consistent with the concept that an election procedure must be reasonable. See Dozier v. Automobile Club of Michigan, 69 Mich.App. 114 (1976); Braude v. Havenner, 38 Cal.App.2d 526, 113 Cal.Rptr. 386 (1974); Valle v. North Jersey Automobile Club, 125 N.J.Super. 302, 310 A.2d 518 (1973). The Model Act does not specify detailed procedures, but leaves the matter to developing case law.

Even if a corporation has members, the members need not elect all the directors. Some directors may hold office as a result of designation in the articles or bylaws or as a result of being appointed by some person or entity.

Designation occurs when the articles or bylaws name an individual as a director or designate the holder of some office or position as a director. For example, the President of Harvard, the Bishop of New York, or the head of a union may become a director of a corporation pursuant to an article or bylaw provision designating the holder of their position as a director of the corporation. The individual would cease to be a director upon ceasing to hold the designated position.

The articles or bylaws may authorize any person, corporation or entity to appoint a director. A city may want to appoint some or all the directors of a nonprofit corporation without becoming a member of the organization. It could do so by appointing rather than voting for the directors. A person who appoints but does not vote for the directors is not a "member" as that term is used in the Model Act. See section 1.40(21).

2. Corporations Without Members

Section 8.04 authorizes self-perpetuating boards of directors. If a corporation does not have members, the board elects directors in the absence of an article or bylaw provision setting forth some other approach. See sections 2.02 and 2.05 as to appointment of initial directors. See sections 8.21 and 8.24 as to methods by which the board may elect directors.

Section 8.04 also allows all or part of the board to be designated or appointed pursuant to article or bylaw provisions.

SOUTH CAROLINA REPORTERS' COMMENTS

Previously applicable statutory law, found at Sections 33–8–103 and 33–8–104 of the South Carolina Business Corporation Act, provided for annual election of directors with two permitted exceptions: staggering the board (Section 33–8–103(d)) and classifying the board (Section 33–8–104). As to nonprofits with members entitled to vote for directors, Section 33–31–104 permits greater flexibility than did prior law; the articles or bylaws may provide other times or methods of election, or for designation or appointment, without limitation. As the Official Comment points out, classification of the board would fall within this flexibility. Staggering the board is expressly permitted by Section 33–31–806. As to nonprofits without members entitled to vote for directors, subsection (b) provides for boards to elect their own successors, unless another method is prescribed in the articles or bylaws.

For statutory purposes, a director is "elected" only when chosen by vote of members entitled to vote for directors. Directors chosen by any other method are either "appointed" or "designated". As this section indicates, an appointed director is one chosen to be a director by some person designated for the purpose in the articles or bylaws. If corporate governance documents recite that a director shall be "elected" by the corporation's national organization, such a director is not "elected" for purposes of this statute, but appointed. A designated director is one who becomes a director by operation of the articles or bylaws without discretion being exercised by any person. For example, the articles might designate that the elected leader of some other organization be a director of the corporation, or that the minister of a particular church be such a director. Once these positions are filled, the persons filling them would become designated directors without further action on the part of anyone.

<< SC ST § 33–31–805 >>

Section 33–31–805. Terms of directors generally.

(a) The articles or bylaws may specify the terms of directors. Except for designated or appointed directors, the terms of directors may not exceed five years. In the absence of a term specified in the articles or bylaws, the term of each director is one year. Directors may be elected for successive terms.

(b) A decrease in the number of directors or term of office does not shorten an incumbent director's term.

(c) Except as provided in the articles or bylaws:

(1) the term of a director filling a vacancy in the office of a director elected by members expires at the next election of directors by members; and

(2) the term of a director filling another vacancy expires at the end of the unexpired term that such director is filling.

(d) Despite the expiration of a director's term, the director continues to serve until the director's successor is elected, designated or appointed, and qualifies, or until there is a decrease in the number of directors.

OFFICIAL COMMENT

Section 8.04(a) allows the initial directors and directors elected by the members or the board to serve for up to five-year terms.

The members' right to vote is illusory unless it can have an impact on the board. In the case of self-perpetuating boards, five-year terms allow continuity and also provide a graceful way of removing directors who may otherwise think they have life tenure. See section 8.04(b) which allows a self-perpetuating board to elect successor directors.

Designated or appointed directors may serve any term prescribed by the articles or bylaws. See section 8.09 for provisions governing removal of designated or appointed directors.

In the absence of a contrary article or bylaw provision, the term of directors is one year.

The term of a director filling a vacancy of a director elected by members expires at the next election of directors by members. This election may be at the annual meeting or by written ballot. See sections 7.01 and 7.08. The members may elect the director filling the vacancy for the remainder of the unexpired term.

The term of a director filling the vacancy of a designated or appointed director or filling a vacancy on a self-perpetuating board is for the unexpired term of the director being replaced. See section 8.05(c). Section 8.11 sets forth the ways in which vacancies can be filled.

Section 8.05(a) prevents chaos by continuing directors in office until their successors are elected, designated, or appointed, and qualify. Even if successor directors are not elected, or if elected do not qualify, continuity on the board will be provided as the incumbent directors continue until their successors take office.

SOUTH CAROLINA REPORTERS' COMMENTS

Previously applicable statutory law, found at Section 33–8–105 of the South Carolina Business Corporation Act, limited directors to terms of a single year, except for members of staggered boards. Present law extends the permissible term to five years, and imposes no limits on appointed or designated directors' terms.

Subsections (b) and (d) are identical to the analogous subsections of Section 33–8–105, and thus represent no change from prior law. Subsection (c) differs from Section 33–8–105(c) and (d) in making its provisions variable in the articles of incorporation or bylaws.

The word "may" in the first sentence of subsection (a) has replaced the word "must" in the Model Act, for purposes of clarification.

<< SC ST § 33–31–806 >>

Section 33–31–806. Staggered terms for directors.

The articles or bylaws may provide for staggering the terms of directors by dividing the total number of directors into groups. The terms of office of the several groups need not be uniform.

OFFICIAL COMMENT

Nonprofit corporations need to attract and keep qualified directors and provide continuity and experience on their boards of directors. Sections 8.05 and 8.06 address this need by allowing directors to serve staggered terms of up to five years and not imposing a limitation on their reelection.

When there is a fight for control of the corporation, staggered terms may frustrate those trying to oust an incumbent board. This is because not all of the directors will be up for election each year. Section 8.08 provides a safety valve by allowing the members to remove the entire board without cause.

SOUTH CAROLINA REPORTERS' COMMENTS

Previously applicable statutory law was found at Section 33–8–106 of the South Carolina Business Corporation Act, which permitted the staggering of boards into halves or thirds only, with groups as close to equal as possible and serving uniform terms. Section 33–31–106 does not require any uniformity.

<< SC ST § 33–31–807 >>

Section 33–31–807. Resignation of directors.

(a) A director may resign at any time by delivering written notice to the board of directors, its presiding officer, or to the president or secretary.

(b) A resignation is effective when the notice is effective unless the notice specifies a later effective date. If a resignation is made effective at a later date, the board may fill the pending vacancy before the effective date if the board provides that the successor does not take office until the effective date.

OFFICIAL COMMENT

A director may resign at anytime by delivering written notice as set forth in section 8.07. The notice may be effective when delivered, unless it specifies a later effective date. Section 1.41 governs the effective date of a notice. In resigning, directors must meet their obligations under section 8.30.

Under appropriate circumstances a court may find that an oral resignation combined with acts or omissions evidencing an intent to resign results in an effective resignation.

If a director elected by the members resigns or ceases to serve as a director, the vacancy may be filled by the members or the directors.

SOUTH CAROLINA REPORTERS' COMMENTS

This section represents no change from the previously applicable statute, Section 33–8–107 of the South Carolina Business Corporation Act, except for the addition of the second sentence of subsection (b).

<< SC ST § 33–31–808 >>

Section 33–31–808. Removal of directors elected by members or directors.

(a) The members may remove one or more directors elected by them without cause.

(b) If a director is elected by a class, chapter, or other organizational unit or by region or other geographic grouping, the director may be removed only by the members of that class, chapter, unit, or grouping.

(c) Except as provided in subsection (i), a director may be removed under subsection (a) or (b) only if the number of votes cast to remove the director would be sufficient to elect the director at a meeting to elect directors.

(d) If cumulative voting is authorized, a director may not be removed if the number of votes, or if the director was elected by a class, chapter, unit or grouping of members, the number of votes of that class, chapter, unit or grouping, sufficient to elect the director under cumulative voting is voted against the director's removal.

(e) A director elected by members may be removed by the members only at a meeting called for the purpose of removing the director and the meeting notice must state that the purpose, or one of the purposes, of the meeting is removal of the director.

(f) In computing whether a director is protected from removal under subsections (b) through (d), it should be assumed that the votes against removal are cast in an election for the number of directors of the class to which the director to be removed belonged on the date of that director's election.

(g) An entire board of directors may be removed under subsections (a) through (e).

(h) A director elected by the board may be removed without cause by the vote of two-thirds of the directors then in office or such greater number as is set forth in the articles or bylaws. However, a director elected by the board to fill the vacancy of a director elected by the members may be removed without cause by the members, but not the board.

(i) If, at the beginning of a director's term, the articles or bylaws provide that the director may be removed for reasons set forth in the articles or bylaws, the board may remove the director for such reasons. The director may be removed only if a majority of the directors then in office vote for the removal.

(j) The articles or bylaws of a religious corporation may:

(1) limit the application of this section; and

(2) set forth the vote and procedures by which the board or any person may remove with or without cause a director elected by the members or the board.

(k) For purposes of this section, 'members' refers to members entitled to vote for directors.

OFFICIAL COMMENT

1. Removal of Directors Elected by Members

The members are authorized to remove directors elected by them without cause. While cause is not required, the removal may only take place at a meeting and may not take place by written consent or written ballot. A notice of the meeting must state that

the purpose or one of the purposes is removal of the director. The Model Act does not require a director to be removed for cause as the members who elected the director, rather than a court, should determine whether the members wish to remove the director.

A director may only be removed if the number of votes cast to remove the director would be sufficient to elect the director at a meeting to elect directors. Normally this would require a majority of the votes cast at a meeting at which a quorum is present. If the articles or bylaws require a higher vote for election of a director, that higher vote is required to remove the director. If a director was elected by a class or some other grouping of members, the votes cast within that class or grouping to remove the director must also be sufficient to have elected the director at a meeting to elect directors.

If cumulative voting is authorized, even if a director was not elected by cumulative voting, the director may not be removed if there are sufficient votes cast against the director's removal to have elected the director under cumulative voting. In doing this calculation it should be assumed that those voting for and against removal are voting in the most efficient fashion possible for removal or retention.

In any vote to remove a director, the computation of whether the director is removed should be based on the number of directors of the same class elected at the time of the election of the director whose removal is being sought. For example, if there is a vote to remove director Ratner and Ratner was elected by cumulative voting with four other directors, then the number of votes necessary to prevent Ratner form being removed is equal to the number of votes necessary to elect Ratner in an election in which five directors are elected.

2. Removal of Directors Elected by the Board

If a board of directors is self-perpetuating or if it elects some of but not all of its members, it may remove the directors it has elected without cause by a vote of two-thirds of the directors then in office. Of course, the directors in removing a fellow director must meet the duty of care and duty of loyalty set forth in section 8.30. See section 8.22 for applicable notice requirements.

The articles or bylaws may impose a greater vote requirement to remove directors. Unanimity may be required to remove a director. Such a requirement would prevent a director from being removed by the board without his or her consent. Directors may be removed by a judicial proceeding under section 8.10.

3. Removal of Directors for Failing to Attend Meetings

Some nonprofit corporations, particularly those with large boards of directors, may find that some of their directors fail to attend meetings on a regular basis. Section 8.08(i) allows the articles or bylaws to authorize the board to remove any director for failing to attend a specified number of meetings. The exact number of meetings must be specified in the articles or bylaws at the time the director commences serving the term during which he or she is removed as a director. An article or bylaw provision adopted during the term of a director has no effect on that director until the director commences a new term. Removal requires a vote of a majority of the directors in office.

4. Religious Corporations

Religious corporations should not be bound by secular concepts regarding removal of directors, but should have flexibility in setting removal procedures. Subdivision (j) allows the articles or bylaws of a religious corporation to limit the application of section 8.08 and provide alternative ways of removing directors or prohibiting their removal by members or the board. The provisions of section 8.08 apply to religious corporations unless the corporation's articles or bylaws set forth different procedures or rules.


SOUTH CAROLINA REPORTERS' COMMENTS

Those portions of Section 33–31–108 relating to the removal of directors elected by members of a corporation are similar to the provisions of formerly applicable Section 33–8–108 of the South Carolina Business Corporation Act. Major differences, and therefore changes from prior law, include an absolute right in the members to remove directors without cause; the provisions of subsection (c), which would have the effect of protecting directors from being removed at a scantily attended meeting; and the special provisions of subsection (f).

Prior law had no counterpart to the provisions relating to the removal of directors elected by the board or the provisions of subsection (i) or (j).

Subsection (i) has been broadened from the text proposed by the Model Act to permit corporations flexibility in including in articles or bylaws mandatory responsibilities of directors, failure of compliance with which would constitute grounds for termination. The Model Act proposed in this regard only regular attendance at meetings.

<< SC ST § 33–31–809 >>

Section 33–31–809. Removal of designated or appointed directors.

(a) A designated director may be removed by an amendment to the articles or bylaws deleting or changing the designation.

(b) Appointed directors:

(1) Except as otherwise provided in the articles or bylaws, an appointed director may be removed without cause by the person appointing the director.

(2) The person removing the director shall do so by giving written notice of the removal to the director and either the presiding officer of the board or the corporation's president or secretary.

(3) A removal is effective when the notice is effective unless the notice specifies a future effective date.

OFFICIAL COMMENT

1. Removal of Designated Directors

Designated directors hold office as a result of an article or bylaw provision designating them individually or in some representative capacity to serve as directors. Members and directors may not vote to remove designated directors. They may only be removed if the article or bylaw provision designating them is deleted or changed so that they are no longer designated directors. See Chapter 10A and B. Also see section 10.30 which allows any specified person to prevent an amendment to the articles or bylaws.

Designated directors may be removed in a judicial proceeding pursuant to section 8.10.

2. Removal of Appointed Directors

Any person authorized to appoint a director may remove that director without cause except as otherwise provided in the articles or bylaws. The articles or bylaws may limit or completely restrict the right of the appointing person to remove the director. The approval of the appointing person may be required for an amendment to the articles or bylaws, thereby insuring that a limitation on such person's ability to remove a director will not be added to the articles or bylaws without consent of such person. See section 10.30.

The appointing person may remove his or her appointee by giving written notice pursuant to the procedures set forth in section 8.09(b).

Appointed directors may be removed in a judicial proceeding pursuant to section 8.10.

SOUTH CAROLINA REPORTERS' COMMENTS

This section had no counterpart under prior statutory law, which made no provision for any method of choosing directors other than election.

<< SC ST § 33–31–810 >>

Section 33–31–810. Removal of directors by judicial proceeding.

(a) The circuit court of the county where a corporation's principal office in this State, or, if none in this State, its registered office, is located may remove any director of the corporation from office in a proceeding commenced either by the corporation, its members holding at least five percent of the voting power of any class to elect directors, or the Attorney General in the case of a public benefit corporation, if the court finds that:

(1) the director engaged in fraudulent or dishonest conduct, or gross abuse of authority or discretion, with respect to the corporation, or a final judgment has been entered finding that the director has violated a duty set forth in Sections 33–31–830 through 33–31–833; and

(2) removal is in the best interest of the corporation.

(b) The court that removes a director may bar the director from serving on the board for a period prescribed by the court.

(c) If members or the Attorney General commence a proceeding under subsection (a), the corporation must be made a party defendant.

(d) If a public benefit corporation or its members commence a proceeding under subsection (a), they shall give the Attorney General written notice of the proceeding.

(e) The articles or bylaws of a religious corporation may limit or prohibit the application of this section.

OFFICIAL COMMENT

Section 8.10 authorizes members holding 10 percent or more of the voting power of any class to sue to remove a director. The corporation must be made a party to the action. Members holding less than 10 percent of the voting power of a class may bring a derivative suit to remove a director by complying with the provisions of section 6.30.

Section 8.10 also sets forth the grounds for removing an elected, designated or appointed director. A court must find that the director engaged in fraudulent or dishonest conduct, or gross abuse of authority or discretion, or that a final judgment has been entered finding that the director has violated a duty set forth in sections 8.30–8.33, or if section 8.13 has been adopted, that its provisions have been violated. In each case the court also must find that removal is in the best interest of the corporation.

A court may specify a period during which the removed director may not serve on the board or may impose conditions to that person becoming a director. Alternatively the court may bar a person who has been removed as a director from ever serving on the board.

The Attorney General must be given notice of any proceeding under section 8.10 seeking removal of a director of a public benefit corporation. The Attorney General may intervene in the proceeding. Section 1.70.

Section 8.10 allows removal of directors who have engaged in wrongful activity. Absent such wrongful conduct, it should not be used for internal policy disputes or as part of a fight for control.

Subsection (e) allows the articles or bylaws of a religious corporation to prohibit a court from removing corporate directors. Moreover, while subsection (a) authorizes the Attorney General to bring an action to remove a director of a public benefit corporation, no such authorization is set forth in regard to mutual benefit or religious corporations. This is because the Attorney General has broad oversight powers over public benefit corporations, but a much more limited role in regard to mutual benefit and religious corporations.

SOUTH CAROLINA REPORTERS' COMMENTS

Formerly applicable statutory law was found at Section 33–8–109 of the South Carolina Business Corporation Act. The present section changes prior law in several respects. The Attorney General is given standing to bring actions in respect of public benefit corporations. A final judgment that a director has violated a duty under Sections 33–31–830 through 33–31–833 is added to subsection (a)(1). Finally, subsections (d) and (e) are new.

The percentage of a class of members entitled to vote for directors who may bring an action to remove a director has been lowered from ten percent, as proposed by the Model Act, to five percent, to be consistent with the analogous South Carolina Business Corporation Act provision, found in Section 33–8–109.

<< SC ST § 33–31–811 >>

Section 33–31–811. Vacancy on board.

(a) Unless the articles or bylaws provide otherwise, and except as provided in subsections (b) and (c), if a vacancy occurs on a board of directors, including a vacancy resulting from an increase in the number of directors:

(1) the members, if any, may fill the vacancy; if the vacant office was held by a director elected by a class, chapter, or other organizational unit or by region or other geographic grouping, only members of the class, chapter, unit, or grouping are entitled to vote to fill the vacancy if it is filled by the members;

(2) the board of directors may fill the vacancy; or

(3) if the directors remaining in office constitute fewer than a quorum of the board, they may fill the vacancy by the affirmative vote of a majority of all the directors remaining in office.

(b) Unless the articles or bylaws provide otherwise, if a vacant office was held by an appointed director, only the person who appointed the director may fill the vacancy.

(c) If a vacant office was held by a designated director, the vacancy must be filled as provided in the articles or bylaws. In the absence of an applicable article or bylaw provision, the vacancy may not be filled by the board.

(d) A vacancy that will occur at a specific later date, by reason of a resignation effective at a later date under Section 33–31–807(b) or otherwise, may be filled before the vacancy occurs but the new director may not take office until the vacancy occurs.

OFFICIAL COMMENT

Section 8.11 sets forth the procedures for filling vacancies of elected, designated, or appointed directors and vacancies resulting from an increase in the authorized number of directors.

If a director elected by the members ceases to be a director, the vacancy may be filled by the members or the board in the absence of a contrary article or bylaw provision. Similarly vacancies arising when directors named in the original articles cease to be directors and vacancies resulting from an increase in the number of directors may be filled by the members or the board in the absence of a contrary article or bylaw provision.

Where, however, a vacancy occurs in an office held by an appointed director, only the person who appointed the director may fill the vacancy in the absence of an article or bylaw provision providing some other method of filling the vacancy. The underlying assumption is that the person who appoints the director should have the authority to pick the director's successor unless some other approach was considered and set forth in the articles or bylaws.

If the holder of a particular office is designated as a director of a nonprofit corporation and that person dies or resigns from office, a vacancy is created. In the absence of a contrary articles or bylaw provision, the person who succeeds to that office automatically becomes a director of the nonprofit corporation. For example, assume the dean of each law school in Texas is designated as a director of the Texas Law School Association and one dean resigns. The successor dean would automatically become a director of the Texas Law School Association.

Similarly, assume the executive director of a nonprofit corporation is designated as a director of the corporation. That person ceases being a director if he or she is fired as executive director. The new executive director automatically become a director of the corporation.

If the sole remaining director of directors constitute less than a quorum, section 8.11(a)(3) allows the remaining director or directors to fill the vacancy if the board is authorized to fill the vacancy. Assume a corporation has a board of eleven directors and the quorum is six. If five directors resign, section 8.11(a)(3) is not applicable as the directors remaining in office do not constitute less than a quorum. Four of the remaining six directors cannot fill the vacancies at a "meeting" attended by less than six directors. If six directors had resigned, section 8.11(a)(3) would apply and three directors, being a majority of the five directors then in office, would be able to fill the vacancies.

SOUTH CAROLINA REPORTERS' COMMENTS

Previously applicable statutory law was found at Section 33–8–110 of the South Carolina Business Corporation Act. Subsections (a) and (d) represent no significant change from prior law. Subsections (b) and (c) are new.

<< SC ST § 33–31–812 >>

Section 33–31–812. Compensation of directors.

Unless the articles or bylaws provide otherwise, a board of directors may fix the compensation of directors.

OFFICIAL COMMENT

Section 8.12 is intended to overrule the common law doctrine that prohibits directors from setting their own compensation.

Most nonprofit corporations do not compensate individuals for serving as directors. In some nonprofit corporations compensation may be appropriate as a result of the time and effort needed to serve as a director, the responsibilities undertaken, the ability of the corporation to pay and other relevant factors. Section 8.11 allows the board to set directors' compensation for serving as directors. As a result of its power under section 8.01, the board also has the power to set the compensation of directors for serving as officers or in some other capacity. Section 8.12 does not authorize unreasonable levels of compensation. In setting directors' and officers' compensation, the board must comply with the standards contained in sections 8.30–8.33.

SOUTH CAROLINA REPORTERS' COMMENTS

This section represents no change from previously applicable statutory law.

Subarticle B

Meetings and Action of the Board

<< SC ST § 33–31–820 >>

Section 33–31–820. Regular and special meetings.

 (a) If the date, time, and place of a directors' meeting is fixed by the bylaws or the board, the meeting is a regular meeting. All other meetings are special meetings.

 (b) A board of directors may hold regular or special meetings in or out of this State.

 (c) Unless the articles or bylaws provide otherwise, a board may permit any or all directors to participate in a regular or special meeting by, or conduct the meeting through the use of, any means of communication by which all directors participating may hear each other simultaneously during the meeting. A director participating in a meeting by this means is deemed to be present in person at the meeting.

OFFICIAL COMMENT

 Unless the articles or bylaws provide otherwise, section 8.20 authorizes a board meeting to be conducted by any means of communication pursuant to which all participating directors may simultaneously hear each other even though no two directors are present at the same location and the meeting does not take place in any specific location.

SOUTH CAROLINA REPORTERS' COMMENTS

 The distinction between "regular" and "special" meetings was found in formerly applicable statutory law at Section 33–8–220 of the South Carolina Business Corporation Act. Concerning the distinction between "regular" and "special" meetings, see Section 33–31–822.

 Subsections (b) and (c) represent no substantive change from Section 33–8–200.

 The word "date" in the first sentence of subsection (a) does not appear in the Model Act. It was added for clarification. Its addition does not require the use of a calendar date. A reasonable method of ascertaining a date is sufficient; for example, "The third Tuesday in January".

<< SC ST § 33–31–821 >>

Section 33–31–821. Action without meeting.

 (a) Unless the articles or bylaws provide otherwise, action required or permitted by this chapter to be taken at a board of directors' meeting may be taken without a meeting if the action is taken by all members of the board. The action must be evidenced by one or more written consents describing the action taken, signed by each director, and included in the minutes filed with the corporate records reflecting the action taken.

 (b) Action taken under this section is effective when the last director signs the consent, unless the consent specifies a different effective date.

 (c) A consent signed under this section has the effect of a meeting vote and may be described as such in any document.

OFFICIAL COMMENT

 Unless the articles or bylaws provide otherwise, section 8.21 allows a board of directors to take action by unanimous written consent. It allows the board to act quickly when there is a need to do so. Nonprofit corporations can act with the written consent of all the directors whether or not the board has appointed a committee of the board to act between board meetings (see section 8.25). Any director who objects may prevent action by written consent by withholding his or her consent. Thus, it would be impossible to remove a director by written consent if that director does not consent to the removal.

 Many boilerplate forms require the corporate secretary to certify that a specified resolution was duly adopted at a board meeting on a certain date. Subsection (c) allows a corporation to describe an action by written consent as a "meeting vote" and subsection (b) indicates the effective date of the vote and empowers a corporate secretary to sign such a form when an action has been

approved by unanimous written consent. This avoids the necessity of trying to convince a non-lawyer that approval of an action by written consent is really the same as approving an action at a meeting.

SOUTH CAROLINA REPORTERS' COMMENTS

The provisions of this section represent no change from formerly applicable statutory law, found at Section 33–8–210 of the South Carolina Business Corporation Act, except that the procedures of the second sentence of subsection (a) are made mandatory.

<< SC ST § 33–31–822 >>

Section 33–31–822. Call and notice of meetings.

(a) Unless the articles, bylaws, or subsection (c) provides otherwise, regular meetings of the board may be held without notice.

(b) Unless the articles, bylaws, or this chapter provides otherwise, special meetings of the board must be preceded by at least two days' notice to each director of the date, time, and place, but not the purpose, of the meeting.

(c) In corporations without members, a board action to remove a director or to approve a matter that would require approval by the members if the corporation had members, is not valid unless each director is given at least seven days' written notice that the matter will be voted upon at a directors' meeting or unless notice is waived pursuant to Section 33–31–823.

(d) Unless the articles or bylaws provide otherwise, the presiding officer of the board, the president, or at least twenty percent of the directors then in office may call and give notice of a meeting of the board.

OFFICIAL COMMENT

1. Regular Meeting

If the time and place of a board meeting is fixed by the bylaws or by the board it is treated as a regular meeting. See section 8.20. At the beginning of the year nonprofit boards may set the time and place for a series of meetings for the entire year. If so, these meetings are regular meetings. Regular meetings of the board may be held without notice of the purpose of the meeting unless the articles, bylaws or section 8.22(c) provide otherwise. If everything had to be noticed, the ability of the board to deal with matters arising just before the meeting would be limited. In addition, absent a waiver of notice, doubt would be cast on actions taken where the notice was inadvertently omitted. While notice of agenda items is not required, good practice usually results in directors' receiving prior notice of matters that will be considered at a regular directors' meeting. An alert director should anticipate that any matter may be raised at a regular directors' meeting.

2. Special Meeting

If the time and place of a directors' meeting is not fixed by the bylaws or the board, it is a special meeting. Unless the articles, bylaws or subsection (c) applies, special meetings must be preceded by at least two days' notice of the date, time, and place, but not the purpose of the meeting. The underlying policy is the same as that of regular meetings. Directors given notice of the time and location of the meeting should be prepared to discuss any matter that is raised at the meeting. This allows directors to act expeditiously when the need to do so arises.

3. Special Notice Requirements

Nonprofit corporations, unlike business corporations, frequently operate with self-perpetuating board of directors. In many instances the need for speed and flexibility requires directors to consider matters that were not anticipated at the time the meeting was called. However, in corporations without members directors can approve certain fundamental corporate changes that are significant to the corporation. These changes include amendment of articles, amendment of certain bylaws provisions, mergers, sale of all or substantially all of the assets of a corporation, and dissolution. Such corporate changes usually require significant considered action and a period of time during which the directors can reflect on the wisdom of proceeding. Where there are no members, these matters can be approved by the board alone, without subsequent member action. To allow a time for consideration and reflection the Model Act requires that the directors be given at least seven days' written notice that these matters will be voted upon at a directors' meeting.

Nonprofit corporations with self-perpetuating boards differ in another way form nonprofit corporations with members and business corporations. In nonprofit corporations with self-perpetuating boards, the directors can be removed by a vote of the board. Section 8.08(h). (In addition, in the limited circumstances set forth in section 8.08(i), a board may remove a director

elected by the members.) Due process as well as sections 8.08(e) and 8.22(c) require that notice of any proposed removal be given to all directors.

The notice requirements of section 8.22 can be waived pursuant to section 8.23. Moreover, the directors can approve any of these actions by unanimous written consent. See section 8.21.

SOUTH CAROLINA REPORTERS' COMMENTS

Subsections (a) and (b) do not differ in substance from formerly applicable statutory law, which was found at Section 33–8–220 of the South Carolina Business Corporation Act. Subsections (c) and (d) are new.

<< SC ST § 33–31–823 >>

Section 33–31–823. Waiver of notice.

(a) A director may waive any notice required by this chapter, the articles, or bylaws. Except as provided in subsection (b), the waiver must be in writing, signed by the director entitled to the notice, and filed with the minutes or the corporate records.

(b) A director's attendance at or participation in a meeting waives any required notice of the meeting unless the director, upon arriving at the meeting or prior to the vote on a matter not noticed in conformity with this chapter, the articles, or bylaws, objects to lack of notice and does not thereafter vote for or assent to the objected to action.

OFFICIAL COMMENT

A director may waive notice either before or after a meeting. The directors may even waive failure to give a notice. Waiver may not be oral but must be in writing, signed by the director who did not receive notice. A waiver should be delivered to the secretary for inclusion in the corporate records.

A director waives his or her right to object to the required notice by attending a meeting without objecting to the improper notice. A director who wishes to attend a meeting but preserve the right to object to improper notice must object upon arriving at the meeting or prior to voting on a matter improperly noticed and not thereafter vote for or assent to the objected-to matter.

SOUTH CAROLINA REPORTERS' COMMENTS

This section represents no change in substance from formerly applicable statutory law, found at Section 33–8–230 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–824 >>

Section 33–31–824. Quorum and voting.

(a) Except as otherwise provided in this chapter, the articles, or bylaws, a quorum of a board of directors consists of a majority of the directors in office immediately before a meeting begins. In no event may the articles or bylaws authorize a quorum of fewer than the greater of one-third of the number of directors in office or two directors.

(b) If a quorum is present when a vote is taken, the affirmative vote of a majority of directors present is the act of the board unless this chapter, the articles, or bylaws require the vote of a greater number of directors.

(c) A director who is present at a meeting of the board of directors or a committee of the board of directors when corporate action is taken is considered to have assented to the action taken unless:

(1) the director objects at the beginning of the meeting, or promptly upon arrival, to holding the meeting or transacting business at the meeting;

(2) the director votes against the action and the vote is entered in the minutes of the meeting;

(3) the director's dissent or abstention from the action taken is entered in the minutes of the meeting; or

(4) the director delivers written notice of dissent or abstention to the presiding officer of the meeting before its adjournment or to the corporation immediately after adjournment of the meeting. The right of dissent or abstention is not available to a director who votes in favor of the action.

OFFICIAL COMMENT

In the absence of a contrary provision in the articles or bylaws, a quorum of the board of directors consists of a majority of the directors in office immediately before a board meeting begins. Except as otherwise provided in the Model Act, the articles or the bylaws, if a quorum is present, the affirmative vote of a majority of directors present is the act of the board. See section 8.31(e). The articles or bylaws may set a higher quorum or mandate a greater vote to approve an action. The quorum or vote may be set as high as 100 percent of the directors.

The Model Act prohibits the quorum from being fewer than the greater of one-third of the directors in office or two directors. For example, if a corporation has five directors and two resign, the quorum could not be less than two of the remaining three directors.

Some nonprofit corporations have categories of directors. For example, a trade association may have some directors elected by members from different geographic regions of a state. Section 8.24 allow the articles or bylaws to require that a certain number or percent of directors form each region be present and vote for a proposal before it is adopted.

Section 8.24(b) authorizes quorum breaking by requiring a quorum to be present when a vote is taken. Assume, for example, that a corporation has seven directors, the quorum is four, and four directors are present. If a director is about to lose a vote, he or she can leave the meeting before the vote is taken thereby breaking the quorum and preventing the remaining three directors from acting on behalf of the corporation. Prior to breaking a quorum, particularly if serious harm is done to the operations or assets of a corporation, the quorum-breaking director should consider his or her duties of care and loyalty.

The Model Act describes a quorum in terms of the number of directors in office, not the number of directors authorized. This is because nonprofit corporations frequently operate with significantly fewer directors than the number authorized. However, individual nonprofit corporations are free to base their quorum requirements on the authorized number of directors.

SOUTH CAROLINA REPORTERS' COMMENTS

This section simplifies formerly applicable statutory law, which was found at Section 33–8–240 of the South Carolina Business Corporation Act. The rules found in prior law distinguished between fixed and variable boards; this section treats both the same.

Subsection (c), which, with changes in wording not intended to make changes in meaning, is identical to Section 33–8–240(d) of the South Carolina Business Corporation Act, was not a part of the recommendation of the Revised Model Act, but was added to preserve former law.

Corporations making quorum changes should not overlook that Section 33–31–1024 imposes special rules governing bylaw amendments which change either the quorum or voting requirements for directors.

<< SC ST § 33–31–825 >>

Section 33–31–825. Committees.

(a) Unless prohibited or limited by the articles or bylaws, a board of directors may create one or more committees of the board and appoint members of the board to serve on them. Each committee shall have two or more directors who serve at the pleasure of the board.

(b) The creation of a committee and appointment of members to it must be approved by the greater of:

(1) a majority of all the directors in office when the action is taken; or

(2) the number of directors required by the articles or bylaws to take action under Section 33–31–824.

(c) Sections 33–31–820 through 33–31–824, which govern meetings, action without meetings, notice and waiver of notice, and quorum and voting requirements of the board, apply to committees of the board and their members as well.

(d) To the extent specified by the board of directors or in the articles or bylaws, each committee of the board may exercise the board's authority under Section 33–31–801.

(e) A committee of the board, however, may not:

(1) authorize distributions;

(2) approve or recommend to members dissolution, merger, or the sale, pledge, or transfer of all or substantially all of the corporation's assets;

(3) elect, appoint, or remove directors or fill vacancies on the board or on any of its committees; or

(4) adopt, amend, or repeal the articles or bylaws.

(f) The creation of, delegation of authority to, or action by a committee does not alone constitute compliance by a director with the standards of conduct described in Section 33–31–830.

OFFICIAL COMMENT

Section 8.25 deals with committees of the board of directors that exercise the powers of the board. The provisions of sections 8.20–8.24 govern action and procedures of board committees as these committees are exercising the powers of the board.

The board may delegate non-board functions to committees or individuals apart from the provisions of section 8.25. As these committees and individuals are not exercising board powers, the provisions of section 8.25 do not apply to them. The directors must meet their duties under sections 8.30 and 8.31 when delegating board or non-board functions.

Board committees may be established in the absence of an article or bylaw provision prohibiting them or limiting their scope. To ensure there is a broad consensus in appointing a board committee and its members, section 8.25(b) requires a greater vote than would normally be required for board action. The vote required is the greater of the majority of the directors in office or such higher number as the articles or bylaws require to take action under section 8.24.

Except as limited by the articles, bylaws or subsection (e), a board committee may exercise the board's authority under section 8.01 to the extent specified by the board in the resolution establishing the committee or to the extent set forth in the articles or bylaws. Nonprofit corporations frequently make use of committees and delegate responsibility to them for developing long-term plans, supervising investments, raising money, making grants, and evaluating management. Section 8.30 recognizes the diverse purposes that committees may serve and provides that a board member may rely on information and reports of these committees if the director is not a member of the committee and if the director reasonably believes the committee merits confidence.

Section 8.25(f) makes clear that although the board of directors may delegate to a committee the authority to take action, the designation of the committee, the delegation of authority to it, and action by the committee will not alone constitute compliance by a non-committee board member with his responsibility under section 8.30. On the other hand, a non-committee director also will automatically incur liability should the action of the particular committee fail to meet the standard of care set out in section 8.30. The non-committee member's liability in these cases will depend upon whether he failed to comply with section 8.30(b) (3). Factors to be considered in this regard will include the care used in the delegation to and supervision over the committee, and the amount of knowledge regarding the particular matter which the non-committee director has available to him. Care in delegation and supervision includes appraisal of the capabilities and diligence of the committee directors in light of the subject and its relative importance and receipt of other reports concerning committee activities. The enumeration of these factors is intended to emphasize that directors may not abdicate their responsibilities and secure exoneration from liability simply by delegating authority to board committees. Rather, a director against whom liability is asserted based upon acts of a committee of which he is not a member avoids liability if the standards contained in section 8.30 are met.

Section 8.25(f) has no application to a member of the committee itself. The standard applicable to a committee member is set forth in section 8.30(a). Official Comment to Model Business Corporation Act Section 8.25.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is as similar as possible to formerly applicable statutory law, found at Section 33–8–250 of the South Carolina Business Corporation Act, omitting only provisions relating to mergers and share issuance inapplicable to nonprofit corporations. This section is not intended to prevent creation by the board of, or provision in the articles or bylaws for, committees not complying with subsections (a) and (b) of this section. Such noncomplying committees would not, however, be empowered to exercise board's authority, nor would they be "committees of the board" for purposes of other provisions of this Chapter. An example of a permissible, non-complying committee would be a board-appointed planning committee including as members non-director consultants and staff.

Subarticle C

Standards of Conduct

<< SC ST § 33–31–830 >>

Section 33–31–830. General standards for directors.

(a) A director shall discharge his duties as a director, including his duties as a member of a committee:

  (1) in good faith;

  (2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

  (3) in a manner the director reasonably believes to be in the best interests of the corporation.

 (b) In discharging his or her duties, a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by:

  (1) one or more officers or employees of the corporation who the director reasonably believes is reliable and competent in the matters presented;

  (2) legal counsel, public accountants, or other persons as to matters the director reasonably believes are within the person's professional or expert competence;

  (3) a committee of the board of which the director is not a member, as to matters within its jurisdiction, if the director reasonably believes the committee merits confidence; or

  (4) in the case of religious corporations, religious authorities and ministers, priests, rabbis, or other persons whose position or duties in the religious organization the director believes justify reliance and confidence and who the director believes is reliable and competent in the matters presented.

 (c) A director is not acting in good faith if the director has knowledge concerning the matter in question that makes reliance otherwise permitted by subsection (b) unwarranted.

 (d) A director is not liable to the corporation, a member, or any other person for any action taken or not taken as a director, if the director acted in compliance with this section.

 (e) A director shall not be deemed to be a trustee with respect to the corporation or with respect to any property held or administered by the corporation, including without limit, property that may be subject to restrictions imposed by the donor or transferror of the property.

 (f) An action against a director asserting the director's failure to act in compliance with this section and consequent liability must be commenced before the sooner of (i) three years after the failure complained of or (ii) two years after the harm complained of is, or reasonably should have been, discovered. This limitations period does not apply if the failure to act in compliance with this section has been fraudulently concealed.


OFFICIAL COMMENT

 1. General Standards of Conduct

 Section 8.30(a) sets forth the general standards of conduct for directors of nonprofit corporations. It settles the dispute as to whether directors of nonprofit corporations should meet the general business standards or the trustee standards. See "Duties of Charitable Trust, Trustee and Charitable Corporation Directors," Real Property, Probate and Trust Journal 545 (1967); Stern v. Lucy Webb Hayes National Training School for Deaconesses and Missionaries, 381 F.Supp. 1003 (D.D.C.1974). Also see Official Comment to Section 8.30 of the Model Business Corporation Act.

 Depending on the status of state law, section 8.30 will replace, modify, clarify or set forth the basic standards that govern the conduct of directors of nonprofit corporations. The standards set forth in section 8.30 are the exclusive standards that govern such conduct. While the exact meaning and application of these standards is left to court decisions, section 8.30 provides the basis upon which these decisions can be made. Except in subsection (e), the Model Act adopts the language used in the Model Business Corporation Act.

 States adopting the Model Act may have statutory or common law rules that might apply a trust rule to director conduct covered by section 8.30. Section 8.30 preempts these rules even though the corporation, as distinguished from its director, may hold or be deemed to hold property in trust or subject to restrictions.

 While the same language is used, the language is so broad and the differences between public benefit, mutual benefit, religious and business corporations so significant that different factors are relevant in determining whether the standards have been met. A business corporation operates to maximize profits and to economically benefit shareholders. The object of mutual benefit corporations is to provide benefits to and services for members, not to maximize profits. Members may have an economic or noneconomic interest in mutual benefit corporations. Public benefit and religious corporations are quite different. They operate for a public, charitable or religious purpose, not to maximize profits. Their members' interest is not economic but directed toward the corporations' public, charitable or religious purposes. Due to the different nature and objectives of nonprofit corporations,

directors of public benefit, mutual benefit, religious and business corporations are not in like positions or operating under similar circumstances.

2. Duty of Care

Section 8.30(a) requires that a director in discharging his or her duties act with the care of an ordinarily prudent person in a like position under similar circumstances. This familiar language allows directors of nonprofit corporations to exercise their judgment with due regard to the nature, operations, finances, and objectives of their organizations. The "ordinarily prudent person" concept is used in various contexts. In the context of nonprofit corporations it applies to directors who balance potential risks and rewards in exercising their duties as directors. It is intended to protect directors who innovate and take informed risks to carry out the corporate goals and objectives. The directors need not be right, but they must act with common sense and informed judgment. The duty of care recognizes that directors are not guarantors of the success of investments, activities, programs or grants. It allows leeway and discretion in exercising judgment.

Directors must spend enough time on the corporation's affairs to be reasonably acquainted with matters demanding their attention. Such attention involves attendance at meetings and review and understanding of material submitted to the board. It also requires directors to request and receive sufficient information so that they may carry out their responsibilities as directors.

In appropriate circumstances the duty of care requires reasonable inquiry. Where a problem exists or a report on its face does not make sense, a director has a duty to inquire into the surrounding facts and circumstances. The inquiry required is the inquiry an ordinarily prudent person in a like position would make under similar circumstances.

The concept of "in a like position" takes into account the fact that directors of nonprofit and business corporations are not in like positions, but have different goals, objectives and resources. For example, many nonprofit corporations operate with little financial backing. Their directors might reasonably conclude that more risks or less risks were justified due to the precarious financial condition of the corporation. Similarly, foundation directors could reasonably conclude that all or a certain percent of the foundation's grants should go to untried and innovative programs with little chance of success, but that would result in significant benefits if successful.

Two distinguishing factors of nonprofit corporations are that their directors may be serving without compensation and are attempting to promote the public good. Courts may take these factors into consideration in determining whether directors are liable with respect to performance of their duties. This does not mean that directors can ignore their responsibilities because they are volunteers or have no economic interest in the corporation or its operations.

The concept of "under similar circumstances" relates not only to the circumstances of the corporation but to the special background, qualifications, and management experience of the individual director and the role the director plays in the corporation. In many public benefit corporations an important role of directors is fund-raising. Many directors are elected to the board to raise money or because of financial contributions they have made to the corporation. These individuals may have no particular skill or background that otherwise would be helpful to the corporation. No special skill or expertise should be expected from such directors unless their background or knowledge evidences some special ability. Such individuals upon becoming directors are obligated to act as directors and may not simply act as figureheads ignoring problems. However, their role should be considered in determining whether they have met their obligations under section 8.30.

Similarly the role of employee-directors should be considered in determining liability under section 8.30. They are the individuals upon whom volunteer directors should be able to rely. See discussion of "Reliance" infra. Their role is crucial to the functioning of many nonprofit corporations. They should be expected to have a more complete grasp of the corporation's activities and should be expected to play an active role in monitoring, problem solving, and decision-making.

A court should not be harsh in second-guessing directors who in good faith make a judgment that proves incorrect. "Although some decisions turn out to be unwise or the result of a mistake of judgment, it is unreasonable to reexamine these decisions with the benefit of hindsight. Therefore, a director is not liable for injury or damage caused by his decision, no matter how unwise or mistaken it may turn out to be, if in performing his duties he met the requirements of section 8.30." Official Comment to Section 8.30 of the Model Business Corporation Act.

3. The Business Judgment Rule

Although it may seem anomalous to apply the business judgment rule to nonprofit corporations, a few courts have so applied it. Yarnall Warehouse & Transfer Inc. v. The Three Ivory Brothers Moving Company, 226 So.2d 887 (Fla.Dist.Ct.App.1969). See Beard v. Achenbach Memorial Hospital, 170 F.2d 859 (10th Cir.1948).

While the application of the business judgment rule to directors of nonprofit corporations is not firmly established by the case law, its use is consistent with section 8.30. Moreover, in the nonprofit context the business judgment rule should apply to discretionary matters voted upon by the board of directors and not just those that can be characterized as "business" decisions. Decisions relating to funding a project or organization, determining what play to produce or what animals to have in a zoo could all fall within the business judgment rule.

If a director has met the standards of section 8.30, there is no need to apply the business judgment rule. If the rule applies it would be operative only if compliance with section 8.30 has not been established.

4. Duty of Loyalty

The general duty of loyalty of directors of nonprofit corporations is set forth in the mandate of section 8.30 that directors act in good faith in a manner they reasonably believe to be in the best interests of the corporation. Development of standards in this area is left to judicial resolution. See Mile–O–Mo Fishing Club, Inc. v. Noble, 62 Ill.App.2d 50, 210 N.E.2d 12 (1965).

Sections 8.31–8.33 deal with particular aspects of the general duty of loyalty. In setting forth the general standards in section 8.30 and particular standards in sections 8.31–8.33, it is the intent of the Model Act to reject the strict trustee standards and to set forth the exclusive standards under which courts should resolve duty of loyalty questions. In some states it may be necessary to negate the application of various code sections that might otherwise improperly be applied to nonprofit corporations.

5. Good Faith

A precondition to a director discharging his or her duties is that the director act in good faith. While this is a subjective requirement, a court will look to objective facts and circumstances to determine whether the good faith requirement is met. A court generally will look to the director's state of mind to see if it is evidenced honesty and faithfulness to the director's duties and obligations, or whether there was an intent to take advantage of the corporation. A director of a religious corporation in making a good faith determination may consider what the director believes to be: (1) the religious purpose of the corporation; and (2) applicable religious tenets, canons, laws, policies and authority.

6. Reasonable Belief That Action Is in the Best Interests of the Corporation

The requirement that the director act in a manner the director reasonably believes is in the best interests of the corporation is both objective and subjective. It is objective in that the director must reasonably believe the action is in the best interests of the corporation. It is subjective in that the director must in fact believe the action is in the best interests of the corporation. As with the good faith requirement, a court is likely to look to objective facts to determine whether a director's state of mind appears unreasonable and whether the director really believed that the action was in the best interests of the corporation.

7. Reliance

So long as a director does not have knowledge that would make reliance unwarranted, a director may rely on information, opinions, reports, and statements prepared and presented by the individuals and committees specified in section 8.30(b). The right to rely is based on the practical need of directors of nonprofit corporations to rely on experts, staff, committees composed in whole or part of non-board members and committees of the board. With one exception a director may only rely on information from individuals or committees who the director believes to be competent. See section 8.30(b)(1) and (2). Under section 8.30(b)(3) in relying on committees of the board of which the director is not a member, the director must believe that the committee merits "confidence," not that it is "competent." "In section 8.30(b)(3), the concept of 'confidence' is substituted for 'competence' in order to avoid any inference that technical skills are a prerequisite." Official Comment to Section 8.30 of the Model Business Corporation Act. The requirement that a director must not have knowledge that would cause reliance to be unwarranted means that a director cannot rely on that which he or she knows to be unreliable.

In most circumstances a director is entitled to rely on reports prepared by the individuals or committees specified in subsection (b). Where, however, a director has a reasonable basis to be suspicious or is in fact suspicious, the general duty of care set forth in section 8.30 requires the director to make further inquiry. In addition to the requirement that a director must reasonably believe that the material is reliable, the director must in fact rely on the material. In order to rely on a report a director must have read it, been present at a meeting where it was presented or otherwise have evaluated it.

8. Delegation

Directors of a nonprofit corporation may delegate authority to officers, employees or agents of the corporation so long as the affairs of the corporation are managed under the direction of the board. See section 8.01(b). "Since the board may delegate or assign to appropriate officers of the corporation the authority or duty to exercise powers that section 8.01 does not require the board to retain, directors are not personally responsible under section 8.30 for actions or omissions of officers, employees,

or agents of the corporation so long as the directors, complying with the standard of care set forth in section 8.30, have acted reasonably in delegating responsibility." Official Comment to Section 8.30 of the Model Business Corporation Act.

9. Exoneration

Section 8.30(d) is based in part upon section 8.30(d) of the Model Business Corporation Act which was based on section 35 of the prior Model Business Corporation Act. Section 8.30(d) is "self-executing, and the individual director's exoneration from liability is automatic....

Section 8.30(d) makes clear that the section will apply whether or not affirmative action was in fact taken. If the board of directors or a committee considers an issue (such as a recommendation of independent auditors concerning the corporation's internal accounting controls) and determines not to take action, the determination not to act is protected by section 8.30. Similarly, if the board of directors or committee delegates responsibility for handling a matter to subordinates, the delegation constitutes 'action' under section 8.30. Section 8.30(d) applies (assuming its requirements are satisfied) to any conscious consideration of matters involving the affairs of the corporation. It also applies to the determination by the board of directors of which matters to address and which not to address. Section 8.30(d) does not apply only when the director has failed to consider taking action which under the circumstances he is obliged to consider taking." Official Comment to Section 8.30 of the Model Business Corporation Act.

Subsection (d) deals with one area of potential liability that is not explicitly dealt with by section 8.30 of the Model Business Corporation Act. It provides that a director who has acted in compliance with section 8.30 "is not liable to the corporation, any member or any other person for any action taken or not taken as a director...." This provision protects directors from claims by third persons. It rejects the holding in Frances T. v. Village Green Owners Ass'n., 43 Cal.3d 490 (1986). However, a director who personally commits a tort is not protected by the provisions of section 8.30.

Subsection (e) deals with another area of potential liability that is not explicitly dealt with by section 8.30 of the Model Business Corporation Act. Subsection (e) provides that a director is not a trustee with respect to the corporation or any property held by it. Absent subsection (e), it would be possible to argue that a director meeting his or her duties under section 8.30 was liable for a breach of trust by improperly using, disposing of, or otherwise dealing with assets held by the corporation in trust. As a result of subsection (e) this argument has no vitality. A director who meets the standard of section 8.30, but improperly acts or fails to act in regard to property held in trust, will not be liable. Depending on state law, the corporation may be liable for breach of trust. However, the corporation may not seek indemnification or contribution from the director.

10. Investments

Numerous states have adopted the Uniform Management of Institutional Funds Act. That act deals with the way in which nonprofit organizations hold, manage, and invest their assets. In adopting the Model Act states should consider the applicability of the Uniform Management of Institutional Funds Act to the standards set forth in sections 8.30–8.33.

SOUTH CAROLINA REPORTERS' COMMENTS

This section replaces formerly applicable statutory law found at Section 33–8–300 of the South Carolina Business Corporation Act and changes prior law in several ways.

Subsection (a)(3) omits the words "and its shareholders" found in the Business Corporation Act. The function of this section is solely to establish the standard of care with which directors must act in fulfilling their duties, in order to avoid personal liability. To whom duties are owed by directors is a matter of common law. That directors owe duties to shareholders and members of corporations is well established in South Carolina by common law, reviewed in the South Carolina's Reporter's Comments to Section 33–8–300.

Subsection (b)(3) differs slightly in wording from the analogous provision of Section 33–8–300. This difference is intended for clarification and not to make any substantive change in meaning.

Subsection (b)(4) is new, adding an additional category of reliable expert for religious organizations.

Subsection (d) differs slightly in wording from the analogous provision of Section 33–8–300. The new wording is intended to make clear that directors who, acting as directors, comply with the standard of care of this section, are shielded from liability to any person to whom a court might find that the director, acting as a director, owed a duty. See paragraph 9 of the Official Comment. Subsection (d) is not intended to create any duty which did not previously exist or to suggest that such a duty should exist.

Subsection (e) is new. Its intent is to make clear that directors are not trustees by virtue of their directorships alone. This is true even if corporate governance documents refer to the directors as trustees. Directors may otherwise be made trustees

in connection with their directorships, however. Concerning the statutory duty of a trustee versus that of a director, compare Section 62–7–302(a) with Section 33–8–300.

This section does not address the business judgment rule. The business judgment rule would be available to a director as a defense notwithstanding such director's inability to establish a defense under this section. In South Carolina, the business judgment rule has been applied to nonprofit corporations. See Dockside Association, Inc., v. Detyens, 291 S.C. 214, 352 S.E.2d 714, (Ct.App.1987), aff'd, 294 S.C. 86, 362 S.E.2d 874 (1987).

Subsection (f), which was not proposed in the Model Act, was added to correspond to former law found at Section 33–8–300(d) of the South Carolina Business Corporation Act. Subsection (f) is intended to provide for limitations periods similar to those found in Section 33–8–300(d), but has been altered in substance to reflect the absence of the concept of duty from this section.

Concerning the power of corporations to limit the personal liabilities of their directors, see Section 33–31–202(b).

<< SC ST § 33–31–831 >>

Section 33–31–831. Director conflict of interest.

(a) A conflict of interest transaction is a transaction with the corporation in which a director of the corporation has a direct or indirect interest. A conflict of interest transaction is not voidable or the basis for imposing liability on the director if the transaction was fair to the corporation at the time it was entered into or is approved as provided in subsections (b) or (c).

(b) A transaction in which a director of a public benefit or religious corporation has a conflict of interest may be:

(1) authorized, approved, or ratified by the vote of the board of directors or a committee of the board if:

(i) the material facts of the transaction and the director's interest are disclosed or known to the board or committee of the board; and

(ii) the directors approving the transaction in good faith reasonably believe that the transaction is fair to the corporation; or

(2) approved before or after it is consummated by obtaining approval of the:

(i) Attorney General; or

(ii) the circuit court for Richland County in an action in which the Attorney General is joined as a party; or

(c) A transaction in which a director of a mutual benefit corporation has a conflict of interest may be approved if:

(1) the material facts of the transaction and the director's interest were disclosed or known to the board of directors or a committee of the board and the board or committee of the board authorized, approved, or ratified the transaction; or

(2) the material facts of the transaction and the director's interest were disclosed or known to the members and they authorized, approved, or ratified the transaction.

(d) For purposes of this section, a director of the corporation has an indirect interest in a transaction if:

(1) another entity in which the director has a material interest or in which the director is a general partner is a party to the transaction; or

(2) another entity of which the director is a director, officer, or trustee is a party to the transaction.

(e) for purposes of subsections (b) and (c) a conflict of interest transaction is authorized, approved, or ratified if it receives the affirmative vote of a majority of the directors on the board or on the committee who have no direct or indirect interest in the transaction, but a transaction may not be authorized, approved, or ratified under this section by a single director. If a majority of the directors on the board who have no direct or indirect interest in the transaction vote to authorize, approve, or ratify the transaction, a quorum is present for the purpose of taking action under this section. The presence of, or a vote cast by, a director with a direct or indirect interest in the transaction does not affect the validity of any action taken under subsections (b)(1) or (c)(1) if the transaction is otherwise approved as provided in subsection (b) or (c).

(f) For purposes of subsection (c)(2), a conflict of interest transaction is authorized, approved, or ratified by the members if it receives a majority of the votes entitled to be counted under this subsection. Votes cast by or voted under the control of a director who has a direct or indirect interest in the transaction, and votes cast by or voted under the control of an entity described in subsection (d)(1), may not be counted in a vote of members to determine whether to authorize, approve, or ratify a conflict of interest transaction under subsection (c)(2). The vote of these members, however, is counted in determining whether the transaction is approved under other sections of this chapter. A majority of the voting power, whether or not present, that are

entitled to be counted in a vote on the transaction under this subsection constitutes a quorum for the purpose of taking action under this section.

(g) The articles, bylaws, or a resolution of the board may impose additional requirements on conflict of interest transactions.

OFFICIAL COMMENTS

1. Applicability of Section 8.31

Section 8.31 applies to a limited category of conflict of interest transactions. Section 8.31 applies to a transaction if a director: (1) has a direct interest in the transaction; (2) is a general partner in a partnership or a director, officer or trustee of another entity that has an interest in the transaction; or (3) has a material interest in an entity that has an interest in the transaction. A director has an interest in a transaction if his or her immediate family members have an interest in the transaction.

Even if section 8.31 does not apply to a transaction, section 8.30 may be applicable. For example, a director of a nonprofit corporation may have an immaterial interest in an entity that has a contract with the director's nonprofit corporation. Section 8.31 would not apply as the director's only interest in the transaction is an immaterial interest. However, the general duty of loyalty set forth in section 8.30 would apply. The director would have to act "in good faith ... in a manner the director reasonably believes to be in the best interests of the corporation." Section 8.30(a)(1) and (3).

Section 8.31, like section 8.30, rejects the trust standard. That standard prohibits any transaction between a trust and a trustee. Section 8.31 also rejects the concept that director may not obtain any profit from a transaction involving his or her corporation. If the requirements of section 8.31 are met, a director can make a profit from a transaction involving his or her corporation.

The Model Act recognizes that many individuals are elected to nonprofit boards because of their ability to enter into or cause an affiliate to enter into a transaction with and for the benefit of the corporation. Often landlords, lawyers, bankers, and suppliers are added to a board so the corporation can obtain reduced rent, free or low-cost legal services, loans, and bargain purchases. Ideally, nonprofit corporations would have sufficient money to carry out their purposes and would not have to rely on or plead for favorable treatment. As a practical matter this does not often concur. Therefore the Model Act attempts to provide a tolerable accommodation between the needs of nonprofit organizations and the potential abuses of directors or officers.

2. Ways to Comply With Section 8.31

a. Public Benefit and Religious Corporations

There are four ways in which a transaction involving a public benefit or religious corporation may meet the requirements of section 8.31.

First, a transaction that is fair to the corporation at the time it is authorized or is entered into does not violate the provisions of section 8.31. Consequently an interested director may always defend a claim that a transaction violates section 8.31 by showing it was fair to the corporation.

The essence of the fairness test is set forth in *Pepper v. Litton,* 308 U.S. 295, 306 (1939), where the Court stated that in evaluating the fairness of transactions entered into by a corporation and its directors or controlling persons:

Their dealings with the corporation are subjected to rigorous scrutiny ... The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain.

Second, if a transaction is approved in advance by the vote of the board of directors or a committee of the board the transaction will not violate section 8.31 if:

(a) the material facts of the transaction and the director's interest in the transaction were disclosed or known to the board or committee. Although not required, good practice would result in a written record of the facts disclosed or known to the directors. Even if there are no such records and no disclosure was made, this information requirement can be met if the directors at the time they approved the transaction knew the material facts of the transaction and the director's interest in the transaction; and

(b) the directors approving the transaction reasonably believed the transaction was fair to the corporation. It is not necessary to prove that the transaction was in fact fair to the corporation, just that the directors believed it was fair and had a reasonable basis upon which to form this opinion. See discussion of Reasonable Belief, Good Faith, and Reliance in Official Comment to Section 8.30. Even if the directors were wrong in believing that it was fair, the transaction will not violate section 8.31 so long as the directors approved it in conformity with section 8.31; and

(c) the transaction was approved before it was consummated.

Third and fourth, court or Attorney General approval of the transaction may be obtained before or after the transaction was consummated. The Model Act does not specify the method of obtaining Attorney General approval. This matter is left to the

individual states. Nor does the Model Act specify the grounds upon which a court should approve a transaction. Presumably, however, a court will evaluate the fairness of the transaction after consideration of all relevant facts. If court or Attorney General approval is obtained, the transaction cannot be challenged on the ground that it violates section 8.31.

   b. Mutual Benefit Corporations

  There are three ways in which a conflict of interest transaction may meet the requirements of section 8.31 for a mutual benefit corporation.

  First, a transaction that is fair at the time it is entered into meets the requirements of section 8.31. Second and third, the board of directors or members may approve the transaction either before or after it is consummated. If it is approved by the board or members in conformity with section 8.31, the person seeking to uphold the transaction does not have to prove it was fair. In each case the directors or members must know or there must have been disclosure of all material facts including the director's interest in the transaction. Member approval is not available to public benefit corporations as members of public benefit corporations have no economic interest in their corporation and in this respect are not analogous to shareholders of business corporations.

   3. Vote and Quorum

  Subsection (e) sets a special quorum and vote requirement when the board votes on a conflict of interest transaction. A quorum is present and a transaction is approved by the board when a majority of the directors on the board who have no direct or indirect interest in the transaction vote to authorize the transaction. The articles or bylaws may impose a higher quorum or vote requirement. See sections 7.22 and 7.23. In no event may one director approve a conflict of interest transaction.

  An interested director may be present when the vote is taken. In some instances good practice requires the director's presence at a meeting to answer questions about the transaction. While it might be desirable to request an interested director to leave prior to the vote, the Model Act does not require the director or officer to leave during the discussion or the vote. In fact the interested director may vote on the transaction if the transaction is otherwise approved as provided in subsection (b) or (c).

   4. Materiality

  Section 8.31 applies to transactions between a nonprofit corporation and an entity in which the director of the nonprofit corporation has a "material" interest.

  Not every transaction in which a director has an interest will involve a material interest. Some transactions will involve an immaterial interest. An interest is material if there is a substantial likelihood that a reasonable person would consider it important in deciding what action to take. See TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438 (1976). The richer the director and the smaller the transaction the less likely it is that the transaction will be material.

  Section 8.31(c) requires disclosure or knowledge of the "material" facts of a conflict of interest transaction prior to approval of the transaction by the directors or members. A fact is material if there is a substantial likelihood that a reasonable person would consider it important in deciding how to vote. See TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438 (1976).

   5. Additional Requirements

  Nonprofit corporations may prohibit or impose additional requirements for approval of transactions involving interested directors or officers. A supermajority vote, board and not just committee approval, and other specified procedures may be required. Subsection (g) allows these additional requirements to be set forth in the articles, bylaws or a resolution of the board.

   6. Remedies

  Section 8.31 does not specify remedies for a violation of section 8.31. However the underlying philosophy of sections 8.30 and 8.31 is contrary to the strict trust concept that interested directors can never obtain a profit when dealing with their corporation.

  A court should enter an order that provides an equitable and fair remedy to the corporation taking into account any benefits the corporation received. A court should determine whether the breach of section 8.31 was technical or substantive, whether there was an attempt to deal openly and fairly with the corporation and to act in good faith in furthering the corporation's best interests. In particularly egregious cases involving fraudulent and malicious conduct, a court may grant exemplary damages.

  Courts may wish to distinguish between transactions that only involve an interested director and transactions in which an interested director or officer has an indirect material interest. In the latter case it may be unfair to invalidate a transaction between a nonprofit corporation and a third party or to order the third party to pay damages. The nature of the remedy is left to the discretion of the courts.


SOUTH CAROLINA REPORTERS' COMMENTS

  Formerly applicable statutory law relating to director conflicts of interest was found at Section 33–8–310 of the South Carolina Business Corporation Act. Present law works several changes, described below.

Section 33–8–310 refers to officers in its title. Its provisions, however, make no reference to officers. Similarly, this section makes no reference to officers. Rules of conflicts of interest of officers are found in the common law of agency.

Prior statutory law addressed only whether a conflict-of-interest transaction was voidable "by the corporation". The present statute omits the reference to the corporation, and provides instead that a conflict-of-interest transaction complying with the section "is not voidable" (without limitation as to by whom) "or the basis for imposing liability upon the director".

Under prior statutory law, conflict-of-interest transactions were not wrongful if (i) approved by the board while in possession of all material facts, (ii) approved by the shareholders while in possession of all material facts or (iii) regardless of (i) or (ii), fair to the corporation. Under subsection (a) of the present section, a conflict-of-interest transaction is not wrongful so long as it was "fair at the time it was entered into", or is approved as provided elsewhere in the section. Prior law is changed in subsection (a) only as to the clear timing of the fairness inquiry ("at the time it was entered into"). The Model Act proposed deleting from this subsection the words, "fair to the corporation", but these words have been retained to preserve prior law so far as possible.

Except as described above, the present statute preserves the tests of the formerly applicable statute virtually unchanged as to mutual benefit corporations. As to religious and public benefit corporations, the alternative tests to fairness are quite different. They are found at subsections (b)(1) and (2).

The Model Act proposed that transactions in which directors of public interest or religious corporations were interested could be approved only in advance. This has been changed to permit ratification by the board.

Subsections (d), (e) and (f), which are definitional and administrative, are substantially similar to the analogous provisions of the formerly applicable statute, and therefore represent no significant change, with one exception: Subsection (d) omits the qualifying words, "and the transaction is or should be considered by the board of directors of the corporation." These words substantially narrow the scope of prior law. Their omission from subsection (d) indicates that every conflict-of-interest transaction falls within the section.

Subsection (g) explicitly permits corporations to do something probably permissible by implication under prior law—adopt conflict-of-interest requirements more stringent than those of the statute.

<< SC ST § 33–31–832 >>

Section 33–31–832. Loans or guarantees for directors and officers.

(a) A public benefit or religious corporation may not directly or indirectly lend money to or guarantee the obligation of a director or officer of the corporation.

(b) A mutual benefit corporation may not directly or indirectly lend money to or guarantee the obligation of a director of the corporation unless:

(1) the loan or guarantee is approved by a majority of all classes of members, except the votes of the affected director, if a member, and any votes controlled directly or indirectly by the affected director shall not be counted; or

(2) the corporation's board of directors determines that the loan or guarantee benefits the corporation and either approves the specific loan or guarantee or a general plan authorizing loans and guarantees or either of them; and

(3) the approving action taken pursuant to (1) or (2) is authorized by the corporation's articles or bylaws.

(c) The fact that a loan or guarantee is made in violation of this section does not affect the borrower's liability on the loan.

OFFICIAL COMMENT

Section 8.32 prohibits all loans to and guaranties for officers and directors. As potential abuse in this area is great and statutorily distinguishing between appropriate and inappropriate loans is difficult, the Model Act continues the policy of the prior Model Act by prohibiting loans and guaranties. Advances of money from petty cash and for travel and other corporate purposes are not loans within the meaning of section 8.32 and consequently are not prohibited.

SOUTH CAROLINA REPORTERS' COMMENTS

The formerly applicable statute, Section 33–8–320 of the South Carolina Business Corporation Act, permitted loans to officers and directors when approved under certain circumstances by the board or the membership. As to religious and public purpose corporations, the present section constitutes a flat prohibition, representing a distinct change from prior law. As to mutual benefit corporations, the prior law has been retained to the extent permitted by a corporation's articles or bylaws. This constitutes a

change from the recommendation of the Model Act. Actions taken pursuant to this section are subject to the standard of Section 33–31–830.

As mentioned in the Official Comment, this section is not intended to make unlawful such practices as travel loans or split-dollar life insurance policies.

This section applies only to transactions taking place on or after the effective date of this statute.

There was strong backing on the committee for omitting religious corporations from the prohibition of subsection (1). Religious corporations were retained within the prohibition largely on the basis of their essential nonfinancial nature. Permitting religious corporations to serve, in effect, as lending institutions appeared to the majority of the committee to be inconsistent with the many privileges accorded to such organizations. Again, attention is drawn to the Official Comment to this section, and to Section 33–31–180.

<< SC ST § 33–31–833 >>

Section 33–31–833. Liability for unlawful distributions.

(a) Unless a director complies with the applicable standards for conduct described in Section 33–31–830, a director who votes for or assents to a distribution made in violation of this chapter or the articles of incorporation is personally liable to the corporation for the amount of the distribution that exceeds what could have been distributed without violating this chapter.

(b) A director held liable for an unlawful distribution under subsection (a) is entitled to contribution:

(1) from every other director who voted for or assented to the distribution without complying with the applicable standards of conduct described in Section 33–31–830; and

(2) from each person who received an unlawful distribution for the amount of the distribution whether or not the person receiving the distribution knew it was made in violation of this chapter.

OFFICIAL COMMENT

Section 13.01 prohibits distributions except those authorized by section 13.02. See section 1.40(10). Section 8.33(a) provides that a director who votes for or assents to a prohibited distribution is not liable for such action if the director complies with the standards of conduct set forth in section 8.30. Of course, a director who receives a distribution prohibited by section 13.01 is obligated to return the distribution to the corporation.

A director who breaches his or her duties under section 8.30 in voting for or assenting to a prohibited distribution is liable to the corporation for the amount of the improper distribution.

Section 8.33(b) allows a director who is liable for an unlawful distribution to receive contribution from the directors, if any, who voted for or assented to the distribution without complying with section 8.30 and from each person who received the unlawful distribution. These persons may include members, directors, officers and controlling persons of the corporation. See section 13.01. The exact amount each will have to contribute is left to the equitable powers of the courts.

SOUTH CAROLINA REPORTERS' COMMENTS

Previously applicable statutory law was found at Section 33–8–330 of the South Carolina Business Corporation Act. As does the present statute, Section 33–8–330 makes clear that directors are not personally liable for an unlawful distribution unless there is established, in addition to the unlawfulness of the distribution, the director's failure to comply with the standards of Section 33–31–300.

This section applies to distributions which are in violation of the articles of incorporation, as well as those which are in violation of law. This is a change from the proposal of the Model Act, intended to provide uniformity with the analogous provision of the South Carolina Business Corporation Act.

<< SC ST § 33–31–834 >>

Section 33–31–834. Immunity from suit.

(a) All directors, trustees, or members of the governing bodies of not-for-profit cooperatives, corporations, associations, and organizations described in subsection (b) are immune from suit arising from the conduct of the affairs of these cooperatives,

corporations, associations, or organizations. This immunity from suit is removed when the conduct amounts to wilful, wanton, or gross negligence. Nothing in this section may be construed to grant immunity to the not-for-profit cooperatives, corporations, associations, or organizations.

  (b) Subsection (a) applies to the following:

    (1) electric cooperatives organized under Chapter 49, Title 33;

    (2) not-for-profit corporations, associations, and organizations, as recognized in and exempted from taxation under Federal Income Tax Code Section 501(c)(3), (c)(6), or (c)(12).

OFFICIAL COMMENT

  None

SOUTH CAROLINA REPORTERS' COMMENTS

  This provision relating to immunity from liability was formerly contained in Section 33–31–180 and has been renumbered as Section 33–31–834 to come within the scheme of this revised act.

Subarticle D

Officers

<< SC ST § 33–31–840 >>

Section 33–31–840. Required officers.

  (a) Unless otherwise provided in the articles or bylaws, a corporation shall have a president, a secretary, a treasurer, and such other officers as are appointed by the board.

  (b) The bylaws or the board shall delegate to one of the officers responsibility for preparing minutes of the directors' and members' meetings and for authenticating records of the corporation.

  (c) The same individual may simultaneously hold more than one office in a corporation.

OFFICIAL COMMENT

  Unless otherwise provided in the articles or bylaws, a corporation shall have a president, secretary, treasurer and such other officers as are appointed by the board. The bylaws may do away with the traditional titles for officers and provide a series of unique titles for those who serve as corporate officers. The board shall appoint all corporate officers. Even if an individual is not designated as "secretary" of the corporation, section 8.40(b) requires the bylaws or the board to delegate to an officer responsibility for preparing minutes of the directors' and members' meetings and for authenticating corporate records. The Model Act treats this individual as the "secretary" of the corporation regardless of his or her corporate title. See Section 1.40(31).

  In many instances nonprofit corporations are run by and day-to-day responsibility is vested in an employee who is an officer of the corporation, whether called executive director, administrator, chief administrator or by some other name. The president, if any, is a volunteer who is given the title of president in recognition of the significant contributions he or she has made or is making to the organization. The president is not involved in the day-to-day activities of the organization, and may or may not be the most significant member of its board of directors. Under these circumstances the title of "president" may be misleading. The term is certainly not analogous to the president of a business corporation.

  In many nonprofit organizations substantial authority rests in an executive director, a full-time officer who runs the day-to-day activities of the corporation and makes basic decisions relating to corporate activities. In such instances the bylaws or a resolution of the board should specify the power and authority of the executive director consistent with the requirement that the affairs of the corporation be managed under the director of the board.

SOUTH CAROLINA REPORTERS' COMMENTS

  Unlike previously applicable statutory law, found at Section 33–8–400 of the South Carolina Business Corporation Act, this section requires each corporation to have traditional officers. Otherwise, there is no significant change from prior law.

<< SC ST § 33–31–841 >>

Section 33–31–841. Duties and authority of officers.

 Each officer has the authority and shall perform the duties set forth in the bylaws or, to the extent consistent with the bylaws, the duties and authority prescribed in a resolution of the board or by direction of an officer authorized by the board to prescribe the duties and authority of other officers.

OFFICIAL COMMENT

 Section 8.41 deals with the authority (sometimes called "actual authority") of corporate officers. It provides that these officers shall have the authority set forth in the bylaws, in the resolutions of the board, or that which is delegated to them by an officer authorized to do so by the board.

 In addition, certain officers may have limited authority as a result of a particular office they hold. For example, the executive director of a nonprofit organization may have considerable authority as a result of being executive director. Cases dealing with the inherent authority of the president or other officers of a business corporation are not necessarily consistent with the nature of these offices in the nonprofit context. For example, in some nonprofit organizations the president may not be involved in the day-to-day activities or decision-making. If not, the president's role is different than that of the president of a business corporation.

 Officers may also have the power to bind the corporation. See Section 8 of the Restatement of the Law of Agency, Second. Also see section 8.45.

SOUTH CAROLINA REPORTERS' COMMENTS

 This section makes no change from previously applicable statutory law, found at Section 33–8–410 of the South Carolina Business Corporation Act.

 Organizations which at the time of adoption of this section prescribed officers' duties in some document other than the bylaws (or the equivalent, regardless of name; see the definition of bylaws at Section 33–31–140(4)) should restate those duties in a manner consistent with this section.

<< SC ST § 33–31–842 >>

Section 33–31–842. Standards of conduct for officers.

 (a) An officer with discretionary authority shall discharge his duties under that authority:
  (1) in good faith;
  (2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
  (3) in a manner the officer reasonably believes to be in the best interests of the corporation, and its members, if any.
 (b) In discharging his duties, an officer is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by:
  (1) one or more officers or employees of the corporation who the officer reasonably believes to be reliable and competent in the matters presented;
  (2) legal counsel, public accountants, or other persons as to matters the officer reasonably believes are within the person's professional or expert competence; or
  (3) in the case of religious corporations, religious authorities and ministers, priests, rabbis, or other persons whose position or duties in the religious organization the officer believes justify reliance and confidence and who the officer believes to be reliable and competent in the matters presented.
 (c) An officer is not acting in good faith if the officer has knowledge concerning the matter in question that makes reliance otherwise permitted by subsection (b) unwarranted.
 (d) An officer is not liable to the corporation, any member, or other person for any action taken or not taken as an officer, if the officer acted in compliance with this section.
 (e) An action against an officer asserting the officer's failure to act in compliance with this section and consequent liability must be commenced before the sooner of (i) three years after the failure complained of or (ii) two years after the harm complained

of is, or reasonably should have been, discovered. This limitations period does not apply if the failure to act in compliance with this section has been fraudulently concealed.

OFFICIAL COMMENT

  Section 8.42 provides that nondirector officers with discretionary authority have the same general duty of care and loyalty as that of directors set forth in section 8.30. In nonprofit corporations, particularly public benefit or religious corporations where the board of directors is usually composed of volunteers, full-time paid officers have important and significant duties and responsibilities. Nondirector officers with more limited discretionary authority may be judged by a narrower standard, though every corporate officer or agent owes duties of fidelity, honesty, good faith, and fair dealing to the corporation. Official Comment to Model Business Corporation Act Section 8.42.

  Section 8.42 allows nondirector officers to rely on certain information, opinions, reports and statements when they do not have knowledge concerning the matter that would make that reliance unwarranted. In the absence of actual knowledge that records presented by the secretary are not truthful or accurate, third persons may rely on the truthfulness and accuracy of such records.

  Officers, particularly those who are paid, have a responsibility to actively carry out their duties and obtain information relevant to their position. This information may require the officers to make further inquiries and prevent them from relying on reports that could be relied upon by directors.

  In general, the Official Comment to Section 8.30 is applicable to nondirector officers.

SOUTH CAROLINA REPORTERS' COMMENTS

  With the exception of new subsection (b)(3), this section represents no substantive change from previously applicable statutory law, found at Section 33–8–420 of the South Carolina Business Corporation Act. With respect to the statute of limitations of subsection (e), see the South Carolina Reporters' Comment to Section 33–31–830.

<< SC ST § 33–31–843 >>

Section 33–31–843. Resignation and removal of officers.

  (a) An officer may resign at any time by delivering notice to the corporation. A resignation is effective when the notice is effective unless the notice specifies a future effective date. If a resignation is made effective at a future date and the corporation accepts the future effective date, its board of directors may fill the pending vacancy before the effective date if the board provides that the successor does not take office until the effective date.

  (b) A board may remove an officer at any time with or without cause.

OFFICIAL COMMENT

  Section 8.43 allows an officer to resign by giving written or oral notice to the corporation and specifies when the resignation is effective.

  Section 8.43(b) provides that the board may remove any officer, at any time, with or without cause. An officer so removed may not sue for specific performance of any contract or agreement to be employed as an officer. Such removal is without prejudice to the former officer's right to bring an action for damages for breach of contract. See section 8.44.

SOUTH CAROLINA REPORTERS' COMMENTS

  Previously applicable statutory law, found at Section 33–8–430 of the South Carolina Business Corporation Act, contemplated that officers might be appointed by the shareholders pursuant to provisions in shareholder agreements or the articles. Such officers are protected under Section 33–8–430 from removal by the board without cause. No such protection exists in the present section, which permits the board to remove any officer without cause. However, as noted in the South Carolina Reporters' Comments to section 33–31–801, if the articles also give the members the exclusive power to remove officers, this article provision would divest the board of its power to remove officers. Although the board has the authority so to remove officers, removal might violate officers' contract rights, for which they could have an action. See Section 33–31–844.

<< SC ST § 33–31–844 >>

Section 33–31–844. Contract rights of officers.

  (a) The appointment of an officer does not itself create contract rights.
  (b) An officer's removal does not affect the officer's contract rights, if any, with the corporation. An officer's resignation does not affect the corporation's contract rights, if any, with the officer.

OFFICIAL COMMENT

  Section 8.43 makes clear that the appointment of an officer does not itself create contract rights in the officer. The removal of an officer with contract rights is without prejudice to his later enforcement of contract rights in a suit for damages for breach of contract. See the Official Comment to section 8.43. Similarly, an officer with an employment contract. The mere appointment of an officer for a term does not create a contractual obligation on his part to complete the term. Official Comment to Model Business Corporation Act Section 8.44.

SOUTH CAROLINA REPORTERS' COMMENTS

  This section represents no change from previously applicable statutory law, found at Section 33–8–440 of the South Carolina Business Corporation Act.

Subarticle E

Indemnification

<< SC ST § 33–31–850 >>

Section 33–31–850. Definitions.

  In this subarticle:
  (1) 'Corporation' includes any domestic or foreign predecessor entity of a corporation in a merger or other transaction in which the predecessor's existence ceased upon consummation of the transaction.
  (2) 'Director' means an individual who is or was a director of a corporation or an individual who, while a director of a corporation, is or was serving at the corporation's request as a director, officer, partner, trustee, employee, or agent of another foreign or domestic business or nonprofit corporation, partnership, joint venture, trust, employee benefit plan, or other enterprise. A director is considered to be serving an employee benefit plan at the corporation's request if the director's duties to the corporation also impose duties on, or otherwise involve services by, the director to the plan or to participants in or beneficiaries of the plan. 'Director' includes, unless the context requires otherwise, the estate or personal representative of a director.
  (3) 'Expenses' include counsel fees.
  (4) 'Liability' means the obligation to pay a judgment, settlement, penalty, fine, including an excise tax assessed with respect to an employee benefit plan, or reasonable expenses actually incurred with respect to a proceeding.
  (5) 'Official capacity' means: (i) when used with respect to a director, the office of director in a corporation; and (ii) when used with respect to an individual other than a director, as contemplated in Section 33–31–856, the office in a corporation held by the officer or the employment or agency relationship undertaken by the employee or agent on behalf of the corporation. 'Official capacity' does not include service for any other foreign or domestic business or nonprofit corporation or any partnership, joint venture, trust, employee benefit plan, or other enterprise.
  (6) 'Party' includes an individual who was, is, or is threatened to be made a named defendant or respondent in a proceeding.
  (7) 'Proceeding' means a threatened, pending, or completed action, suit, or proceeding whether civil, criminal, administrative, or investigative and whether formal or informal.

SOUTH CAROLINA REPORTERS' COMMENTS

  This section makes no substantive change from the previously applicable statute, Section 33–8–500 of the South Carolina Business Corporation Act. Subsection (2) has been altered slightly to make clear that this section applies to directors of nonprofit corporations.

<< SC ST § 33–31–851 >>

Section 33–31–851. Authority to indemnify.

(a) Except as provided in subsection (d), a corporation may indemnify an individual made a party to a proceeding because the individual is or was a director against liability incurred in the proceeding if the individual:
  (1) conducted himself in good faith; and
  (2) reasonably believed:
    (i) in the case of conduct in his official capacity with the corporation, that his conduct was in its best interests; and
    (ii) in all other cases, that his conduct was at least not opposed to its best interest; and
  (3) in the case of a criminal proceeding, had no reasonable cause to believe his conduct was unlawful.
(b) A director's conduct with respect to an employee benefit plan for a purpose the director reasonably believed to be in the interests of the participants in and beneficiaries of the plan is conduct that satisfies the requirements of subsection (a)(2)(ii).
(c) The termination of a proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent is not, of itself, determinative that the director did not meet the standard of conduct described in this section.
(d) A corporation may not indemnify a director under this section:
  (1) in connection with a proceeding by or in the right of the corporation in which the director was adjudged liable to the corporation; or
  (2) in connection with any other proceeding charging improper personal benefit to the director, whether or not involving action in his official capacity, in which the director was adjudged liable on the basis that personal benefit was improperly received by the director.
(e) Indemnification permitted under this section in connection with a proceeding by or in the right of the corporation is limited to reasonable expenses incurred in connection with the proceeding.

SOUTH CAROLINA REPORTERS' COMMENTS
  This section is in substance identical to the previously applicable statute, Section 33–8–510 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–852 >>

Section 33–31–852. Mandatory indemnification.

  Unless limited by its articles of incorporation, a corporation shall indemnify a director who was wholly successful, on the merits or otherwise, in the defense of a proceeding to which the director was a party because he is or was a director of the corporation against reasonable expenses actually incurred by the director in connection with the proceeding.

SOUTH CAROLINA REPORTERS' COMMENTS
  This section made no change from the previously applicable statute, Section 33–8–520 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–853 >>

Section 33–31–853. Advances for expenses.

(a) A corporation may pay for or reimburse the reasonable expenses incurred by a director who is a party to a proceeding in advance of final disposition of the proceeding if:
  (1) the director furnishes the corporation a written affirmation of his good faith belief that he has met the standards of conduct described in Section 33–31–851;
  (2) the director furnishes the corporation a written undertaking, executed personally or on the director's behalf, to repay the advance if it is ultimately determined that the director did not meet the standard of conduct; and

(3) a determination is made that the facts then known to those making the determination would not preclude indemnification under this chapter.

(b) The undertaking required by subsection (a)(2) must be an unlimited general obligation of the director but need not be secured and may be accepted without reference to financial ability to make repayment.

(c) Determinations and authorizations of payments under this section must be made in the manner specified in Section 33–31–855.

SOUTH CAROLINA REPORTERS' COMMENTS

This section does not change previously applicable statutory law, found at Section 33–8–530 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–854 >>

Section 33–31–854. Court-ordered indemnification.

Unless limited by a corporation's articles of incorporation, a director of the corporation who is a party to a proceeding may apply for indemnification to the court conducting the proceeding or to another court of competent jurisdiction. On receipt of an application, the court after giving any notice the court considers necessary may order indemnification in the amount it considers proper if it determines:

(1) the director is entitled to mandatory indemnification under Section 33–31–852, in which case the court also shall order the corporation to pay the director's reasonable expenses incurred to obtain court-ordered indemnification; or

(2) the director is fairly and reasonably entitled to indemnification in view of all the relevant circumstances, whether or not the director met the standard of conduct set forth in Section 33–31–851(a) or was adjudged liable as described in Section 33–31–851(d), but if the director was adjudged so liable indemnification is limited to reasonable expenses incurred.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is very similar to the previously applicable statute, Section 33–8–540 of the South Carolina Business Corporation Act. The first phrase of Section 33–8–540 reads: "Unless a corporation's articles of incorporation provide otherwise". The change from prior law makes clear that, as to nonprofit corporations, the articles are not permitted to provide greater scope for court-ordered indemnification than does the statute.

<< SC ST § 33–31–855 >>

Section 33–31–855. Determination and authorization of indemnification.

(a) A corporation may not indemnify a director under Section 33–31–851 unless authorized in the specific case after a determination has been made that indemnification of the director is permissible in the circumstances because the director has met the standard of conduct set forth in Section 33–31–851.

(b) The determination must be made:

(1) by the board of directors by majority vote of a quorum consisting of directors not at the time parties to the proceeding;

(2) if a quorum cannot be obtained under item (1), by majority vote of a committee duly designated by the board of directors, in which designation directors who are parties may participate, consisting solely of two or more directors not at the time parties to the proceeding;

(3) by special legal counsel:

(i) selected by the board of directors or its committee in the manner prescribed in item (1) or (2); or

(ii) if a quorum of the board cannot be obtained under item (1) and a committee cannot be designated under item (2), selected by majority vote of the full board, in which selection directors who are parties may participate; or

(4) by the members of a mutual benefit corporation.

Directors who are at the time parties to the proceeding may not vote on the determination.

(c) Authorization of indemnification and evaluation as to reasonableness of expenses must be made in the same manner as the determination that indemnification is permissible, except that if the determination is made by special legal counsel, authorization

of indemnification and evaluation as to reasonableness of expenses must be made by those entitled under subsection (b)(3) to select counsel.

(d) A director of a public benefit corporation may not be indemnified until twenty days after the effective date of written notice to the Attorney General of the proposed indemnification.

SOUTH CAROLINA REPORTERS' COMMENTS

This section makes two changes from the previously applicable statute, Section 33–8–550 of the South Carolina Business Corporation Act. The first is to limit the operation of item (4) to mutual benefit corporations only, and to take account in item (4) of the absence of shareholders and directors elected by shareholders. The second change is the addition of subsection (d).

<< SC ST § 33–31–856 >>

Section 33–31–856. Indemnification of officers, employees, and agents.

Unless limited by a corporation's articles of incorporation:

(1) an officer of the corporation who is not a director is entitled to mandatory indemnification under Section 33–31–852 and is entitled to apply for court-ordered indemnification under Section 33–31–854 in each case, to the same extent as a director;

(2) the corporation may indemnify and advance expenses under this chapter to an officer, employee, or agent of the corporation who is not a director to the same extent as to a director; and

(3) a corporation also may indemnify and advance expenses to an officer, employee, or agent who is not a director to the extent, consistent with public policy, that may be provided by its articles of incorporation, bylaws, general or specific action of its board of directors, or contract.

SOUTH CAROLINA REPORTERS' COMMENTS

This section retains the previously applicable statutory law found at Section 33–8–560, except that the first phrase of that section is as follows: Unless a corporation's articles of incorporation provide otherwise. The change was made to make clear that the articles cannot provide for indemnification of officers more generous than that found in the statute.

<< SC ST § 33–31–857 >>

Section 33–31–857. Insurance.

A corporation may purchase and maintain insurance on behalf of an individual who is or was a director, officer, employee, or agent of the corporation, or who, while a director, officer, employee, or agent of the corporation, is or was serving at the request of the corporation as a director, officer, partner, trustee, employee, or agent of another foreign or domestic business or nonprofit corporation, partnership, joint venture, trust, employee benefit plan, or other enterprise, against liability asserted against or incurred by him in that capacity or arising from his status as a director, officer, employee, or agent, whether or not the corporation would have power to indemnify the person against the same liability under Section 33–31–851 or 33–31–852.

SOUTH CAROLINA REPORTERS' COMMENTS

This section made no change from the previously applicable statute, Section 33–8–560 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–858 >>

Section 33–31–858. Application of article.

(a) A provision treating a corporation's indemnification of or advance for expenses to directors that is contained in its articles of incorporation, bylaws, a resolution of its members or board of directors, or in a contract or otherwise, is valid only if and to the extent the provision is consistent with this subchapter. If articles of incorporation limit indemnification or advance for expenses, indemnification and advance for expenses are valid only to the extent consistent with the articles.

(b) This chapter does not limit a corporation's power to pay or reimburse expenses incurred by a director in connection with appearing as a witness in a proceeding at a time when the director has not been made a named defendant or respondent to the proceeding.

SOUTH CAROLINA REPORTERS' COMMENTS

This section represents no substantive change from the previously applicable statute, Section 33–8–580 of the South Carolina Business Corporation Act.

Article 10

Amendment of Articles

<< SC ST § 33–31–1001 >>

Section 33–31–1001. Authority to amend articles of incorporation.

(a) A corporation may amend its articles of incorporation to add or change a provision that is required or permitted in the articles or to delete a provision not required in the articles. Whether a provision is required or permitted in the articles is determined as of the effective date of the amendment.

(b) A corporation either designated on the records of the Office of the Secretary of State as a public benefit or religious corporation, or which qualifies as such pursuant to Section 33–31–1707, may amend or restate its articles of incorporation so that it becomes designated as a mutual benefit corporation only if notice, including a copy of the proposed amendment or restatement, has been delivered to the Attorney General at least twenty days before consummation of the amendment or restatement.

(c) Except as provided in Section 33–31–611(c), a member of the corporation does not have a vested property right resulting from any provision in the articles of incorporation or bylaws.

OFFICIAL COMMENT

Section 10.01 authorizes amendments to a corporation's articles of incorporation. The amendments may modify, delete, change or add provisions to a corporation's articles.

An amendment may be adopted if it: (1) results in provisions permitted in the articles (see sections 2.02 and 2.06(b)); (2) does not contravene or delete provisions the Model Act requires the articles to contain (see section 2.02(a)); and (3) is adopted pursuant to the provisions of chapter 10.

Whether the first two tests are met is determined as of the effective date of the amendment. The third test is determined as of the time the amendment is adopted.

Members' rights are protected by: (1) the right to vote on amendments, including the right to vote by class in appropriate cases (sections 10.03 and 10.04); (2) the duty of the board to approve amendments consistent with its obligations under section 8.30; and (3) contractual commitments made by the corporation.

A corporation may have entered into some oral or written contractual relationship with its members. A person may, for example, have joined an organization based in part on the representation that certain benefits would be provided under specified conditions. If so, the corporation's obligations may be enforced apart from any provisions contained in the articles. The articles may require an amendment to be approved by a specified person or persons. See section 10.30. If so, that approval must be obtained prior to amending the articles.

As section 10.01 provides broad power to amend a corporation's articles, the Model Act does not enumerate the myriad of possible amendments or require the articles to include an express power of amendment.

SOUTH CAROLINA REPORTERS' COMMENTS

1. Compared to former law

This section has a counterpart in the former Chapter 31, Title 33. Prior Section 33–31–130 provided that the Secretary of State could amend the charter of the corporation if notice had been given by newspaper publication or directly to the members and there was a majority vote of the members present at a meeting. A "corporation sole's" charter could be similarly amended; however, this required a three-week public notice. This new provision places the responsibility for amendment with the corporation. The

Secretary of State merely files the change. This nonprofit section is similar, other than paragraph (b), to Section 33–10–101 of the South Carolina Business Corporation Act.

2. Non–Model Act provisions

Paragraphs (b) and (c) of the section are not Model Act provisions. Paragraph (b) helps protect against a wrongful privatization of a public benefit corporation. If, after notice, the Attorney General is concerned about a "public" charity "going private" he can take appropriate action pursuant to Section 33–31–170. Both a corporation formally designated as, or one which merely qualifies as, either a public benefit or religious corporation must notify the Attorney General before amending the articles.

Paragraph (c) is comparable to Section 33–10–101(b) of the South Carolina Business Corporation Act. The exemption of Section 33–31–611(c) relates to transfer rights. The articles of a mutual benefit corporation (only) may permit a member to transfer his membership rights. If these rights exist they cannot be deleted without the holder's consent.

<< SC ST § 33–31–1002 >>

Section 33–31–1002. Amendment of articles by directors.

(a) Unless the articles provide otherwise, a corporation's board of directors may adopt one or more amendments to the corporation's articles without member approval:

(1) to extend the duration of the corporation if it was incorporated at a time when limited duration was required by law;

(2) to delete the names and addresses of the initial directors;

(3) to delete the name and address of the initial registered agent or registered office, if a statement of change is on file with the Secretary of State;

(4) to change the corporate name by substituting the word 'corporation', 'incorporated', 'company', 'limited', or the abbreviation 'corp.', 'inc.', 'co.', or 'ltd.', for a similar word or abbreviation in the name, or by adding, deleting, or changing a geographical attribution to the name; or

(5) to make any other change expressly permitted by this chapter to be made by director action;

(6) with respect to a corporation incorporated before the effective date of this chapter, to include, consistent with its purpose, a statement of whether the corporation is a public benefit, mutual benefit, or religious corporation.

(b) If a corporation has no members, or has no members entitled to vote on the amendment to the articles, its incorporators, until directors are chosen, and thereafter its board of directors, may adopt one or more amendments to the corporation's articles subject to any approval required pursuant to Section 33–31–1030. The corporation shall provide notice of any meeting at which an amendment is to be voted upon. The notice must be in accordance with Section 33–31–822(c). The notice also must state that the purpose, or one of the purposes, of the meeting is to consider a proposed amendment to the articles and contain or be accompanied by a copy or summary of the amendment or state the general nature of the amendment. The amendment must be approved by a majority of the directors in office at the time the amendment is adopted.

OFFICIAL COMMENT

Section 10.02 distinguishes between corporations with members and those without members. If a corporation has members, subsection (a) allows directors to approve specified amendments, as the amendments do not adversely affect members' substantive rights.

If a corporation does not have members, subsection (b) allows the board to amend the articles by a vote of a majority of the directors in office at the time the amendment is adopted. The notice of the meeting to approve the amendment must be in accordance with section 8.22 and state that one purpose of the meeting is to consider an amendment to the articles.

It is not necessary that the directors be provided with a copy or summary of the amendment prior to the meeting so long as the meeting notice states the general nature of the amendment. Failure to give proper notice may be waived under the conditions set forth in section 8.23.

Even if a corporation does not have members, an amendment to the articles may require the approval of a specified person or persons. Section 10.30. The articles may, for example, require the approval of a related organization, governmental entity, specified individual or group of delegates.

If a corporation does not have members, its incorporators, until directors have been chosen, may exercise the power of the directors in amending articles. The incorporators must follow the rules applicable to directors.

Amendments may be adopted by incorporators or by the directors by unanimous written consent. See section 8.21.

SOUTH CAROLINA REPORTERS' COMMENTS

1. Prior law

Subsection (a) is similar to Section 33–10–103 of the South Carolina Business Corporation Act. (However, the provision for adding perpetual existence and the type of corporation do not exist in the Business Corporation Act.)

2. Non–Model Act provisions

The first non-Model Act provision is subparagraph (a)(6) which permits the directors (but only in respect to corporations formed before the effective date of this Act) to adopt amended articles specifying the type of nonprofit corporation. Note that this does not give the directors the right to change the purpose of the corporation. They must be careful to correctly determine which type of corporation the entity is and only list this on the articles. (Any person filing a false certificate with the Secretary of State is subject to the liabilities set forth in Section 33–31–129.) The first sentence of subsection (b) gives directors the exclusive right to amend the articles if the corporation has members but the members are prohibited from voting on the amendment.

<< SC ST § 33–31–1003 >>

Section 33–31–1003. Amendment of articles by directors and members.

(a) If the corporation has members entitled to vote on the amendment, unless this chapter, the articles, or bylaws require a greater vote or voting by class, an amendment to a corporation's articles to be adopted must be approved:

(1) by the board if the corporation is a public benefit or religious corporation and the amendment does not relate to the number of directors, the composition of the board, the term of office of directors, or the method or way in which directors are elected or selected;

(2) except as provided in Section 33–31–1002(a), by the members by two-thirds of the votes cast or a majority of the voting power, whichever is less; and

(3) in writing by any person or persons whose approval is required by a provision of the articles authorized by Section 33–31–1030.

(b) If the board or the members seek to have the amendment approved by the members at a membership meeting, the corporation shall give notice to its members of the proposed membership meeting in writing in accordance with Section 33–31–205. The notice must state that the purpose, or one of the purposes, of the meeting is to consider the proposed amendment and contain or be accompanied by a copy or summary of the amendment.

(c) If the board or the members seek to have the amendment approved by the members by written consent or written ballot, the material soliciting the approval shall contain or be accompanied by a copy or summary of the amendment.

OFFICIAL COMMENT

If a corporation has members, section 10.03 requires that an amendment to its articles be approved by the members by two-thirds of those voting or a majority of the voting power, whichever is less. See section 1.40(1). Section 10.04 may require a class vote.

An amendment may be approved by the members at a membership meeting, by written ballot or by written consent. See sections 7.01, 7.02, 7.04 and 7.08. The notice of the meeting or the materials soliciting the approval must contain or be accompanied by a copy or summary of the amendment. This is to insure that the members will be informed prior to voting on the amendment.

While the board may propose an amendment for adoption by members, board approval is not required for certain amendments. Board approval is not required for amendments relating to the number of directors, the composition of the board, the terms of office of directors, or the method by which directors are elected or selected. When board approval is not required, the board may propose amendments to the articles.

Subdivision (b) allows adoption of an amendment to be conditioned on some higher vote than would normally be reburied or upon the happening of an event or events. This ability to conditionally approve amendments provides flexibility to the corporation and allows more than the simple alternative of approving or disapproving.

An amendment must also receive any approval required by section 10.30. Section 10.30 may, for example, require an amendment to be approved by a related organization, governmental entity, specified individual, or group of delegates.

If the board initiates an amendment, it will normally recommend the amendment to the members. However, in some instances the board may have a conflict of interest and be unable to make a recommendation or for some reason believe it is inappropriate to do more than present the amendment to the members for their approval. If so, the board may simply submit the amendment to the members for their approval. The board may indicate why it is unable to present a recommendation, but this is not required.

SOUTH CAROLINA REPORTERS' COMMENTS

1. Comparison to former statute

In voting on amendments to the articles, this section normally requires the approval of both the directors and shareholders for public benefit and religious corporations (unless one of the exceptions applies). In contrast, only member approval is required to amend the articles of mutual benefit corporations. As to religious and public benefit corporations, if so required by Section 33–31–1030, the approval of a third party may be required. The former statute, found in the prior provisions of Chapter 31, Title 33, did not categorize the types of nonprofit corporations and put the power to amend the articles exclusively in the hands of the members. The former statute provided:

Any corporation organized for the purposes aforesaid [nonprofit] may have its charter amended in any particular by the Secretary of State by a majority vote of its members present at a meeting held after notice stating the time, place and purposes thereof, given by publication one time in newspaper published in the county in which the corporation is located or be sending by registered mail such notice to each members not less than five days before the meeting.

Substantial consideration was given to whether there were existing nonprofit corporations which at the effective date of this Act would not formally have directors. Was there a risk that by not having formal directors any such existing corporations would be unable to amend their articles? The answer is "no." The definition of directors in Section 33–31–140 is broad enough so that someone in every nonprofit corporation will meet the definition of a "director" and thus will be able to vote on an amendment. It should also be noted that a key policy of this Act is to require all nonprofit corporations to have someone who will fulfill the role of directors, regardless that they might be called deacons, trustees, managers, etc. Therefore, the vote of directors is required for most all amendments to the articles. (To the extent that the Official Comments suggest that in some instances the vote of the directors would not be required, this would only apply in the limited circumstances set forth in subsection (a)(1).)

Under the former statute special rules applied to "corporations sole".

Any corporation sole may have the charter of the corporation of such corporation amended in any particular by the Secretary of State after publishing notice of such proposed amendment in any newspaper in the county in which the holder of the charter resides once a week for three weeks.

This procedure is not continued in the new law. However, the new law does require notice to the Attorney General before any public benefit or religious corporation converts to a mutual benefit corporation.

2. Comparison to South Carolina Business Corporation Act

This section is consistent with the philosophy of the South Carolina Business Corporation Act, Section 33–10–103. (Because of the prior specific provisions in Chapter 31, Title 33, this section did not apply to nonprofit corporations.) In the South Carolina Business Corporation Act, the directors and shareholders likewise both are usually required to approve any article amendment. However, if ten percent of any class of shareholders so demands, a proposed change must be put to the vote of the shareholders. The South Carolina Business Corporation Act also requires a greater vote to approve the amendment.

3. Comparison to Model Act

This South Carolina provision differs from the Model Act. Any increase in the vote required to amend the articles must be specified in the articles or bylaws. In order to increase the vote of either directors or members, consideration must also be given to Sections 33–31–1023 and 33–31–1024. These provisions require that before raising the vote required to adopt certain issues, the resolution to increase the vote must pass by the same greater quorum or vote.

<< SC ST § 33–31–1004 >>

Section 33–31–1004. Class voting by members on amendments.

(a) The members of a class in a public benefit corporation are entitled to vote as a class on a proposed amendment to the articles if the amendment would change the rights of that class as to voting in a manner different than such amendment affects another class or members of another class.

(b) The members of a class in a mutual benefit corporation are entitled to vote as a class on a proposed amendment to the articles if the amendment would:

  (1) affect the rights, privileges, preferences, restrictions, or conditions of that class as to voting, dissolution, redemption, or transfer of membership in a manner different than such amendment would affect another class;

  (2) change the rights, privileges, preferences, restrictions, or conditions of that class as to voting, dissolution, redemption, or transfer of membership in a manner different than such amendment would affect another class;

  (3) increase or decrease the number of memberships authorized for that class;

  (4) increase the number of memberships authorized for another class;

  (5) effect an exchange, reclassification, or termination of the memberships of that class; or

  (6) authorize a new class of memberships.

(c) The members of a class of a religious corporation are entitled to a vote as a class on a proposed amendment to the articles only if a class vote is provided for in the articles or bylaws.

(d) If a class is to be divided into two or more classes as a result of an amendment to the articles of a public benefit or mutual benefit corporation, the amendment must be approved by the members of each class that would be created by the amendment.

(e) Except as provided in the articles or bylaws of a religious corporation, if a class vote is required to approve an amendment to the articles of a corporation, the amendment must be approved by the members of the class by two-thirds of the votes cast by the class or a majority of the voting power of the class, whichever is less.

(f) A class of members of a public benefit or mutual benefit corporation is entitled to the voting rights granted by this section although the articles and bylaws provide that the class may not vote on the proposed amendment.

OFFICIAL COMMENT

 Section 10.04 distinguishes between public benefit, religious and mutual benefit corporations. It requires a class vote to amend articles of incorporation of public benefit and mutual benefit corporations regardless of a contrary provision in the articles if the amendment would make any of the changes specified in subsection (a) or (b).

 Subsection (a) deals with public benefit corporations. A membership in a public benefit corporation does not represent a valuable economic right. It represents the right to vote for directors and thereby participate in the decision as to who will control the corporation and what policies it will follow. Consequently, class voting in regard to public benefit corporations is only mandated for amendments that would change the rights of members to vote. Apart from amendments that would directly affect the right to vote, an amendment may indirectly affect the right to vote by terminating a class of members or amending the articles to add more members to an existing class of members or to create a new class of members.

 Where, however, the amendment would not affect the class in a manner different than it affects another class, class voting is not required. For example, if class A and class B each elected four directors, the proposal to have each class elect three directors normally would not affect either class differently and would not require class voting. However, if the articles required a vote of three class A directors to approve any action, a class vote would be required if the number of class A and class B directors were reduced by one.

 Subsection (b) relates to mutual benefit corporations. Members in mutual benefit corporations, in addition to their voting rights, may have a valuable economic interest in the corporation. Consequently, subsection (b) specifies six types of changes that require a class vote. These changes are more extensive than the changes that would require a class vote in public benefit corporations and are designed to protect the rights of class members. See section 1.40(5) for a definition of class.

 Subsection (a) dealing with public benefit corporations and subsection (b) dealing with mutual benefit corporations require class voting if certain changes are made. There is no requirement that the change adversely affect or directly or indirectly burden the class. If the amendment results in the specified changes, a class vote is required. Requiring a class vote for any change eliminates the subject and sometimes difficult question of what is adverse and what is beneficial. If any of the specified changes occur, a class vote is required even if the board or members believe the change is advantageous or of no consequence.

 The Model Act does not require a class vote for members of a religious corporation. The articles or bylaws of a religious corporation may, however, require a class vote. See section 10.04(c) and (e). A class vote is required for members of a religious corporation only and to the extent required by the corporation's articles or bylaws.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is similar to the previously controlling statute, Section 33–10–104 of the South Carolina Business Corporation Act. Consideration was given to granting each type of nonprofit corporation the same class voting rights. This was rejected. The State of South Carolina should not dictate how religious corporations operate. Therefore, if a religious corporation desires to establish class voting, this needs to be included in the articles.

<< SC ST § 33–31–1005 >>

Section 33–31–1005. Articles of amendment.

A corporation amending its articles shall deliver to the Secretary of State articles of amendment setting forth:

(1) the name of the corporation;

(2) the text of each amendment adopted;

(3) the date of each amendment's adoption;

(4) if approval of members was not required, a statement to that effect and a statement that the amendment was approved by a sufficient vote of the board of directors or incorporators;

(5) if approval by members was required:

(i) the designation, number of memberships outstanding, number of votes entitled to be cast by each class entitled to vote separately on the amendment, and number of votes of each class indisputably voting on the amendment; and

(ii) either the total number of votes cast for and against the amendment by each class entitled to vote separately on the amendment or the total number of undisputed votes cast for the amendment by each class and a statement that the number cast for the amendment by each class was sufficient for approval by that class;

(6) if approval of the amendment by some person or persons other than the members, the board, or the incorporators is required pursuant to Section 33–31–1030, a statement that the approval was obtained;

(7) if an amendment provides for an exchange, reclassification, or cancellation of memberships, provisions for implementing the amendment if not contained in the amendment itself must be included in the articles.

OFFICIAL COMMENT

Section 10.05 sets forth the contents of the articles of amendment that must be delivered to the Secretary of State to effectuate an amendment to the articles of incorporation. The articles of amendment must specify that the conditions required for a valid amendment to be adopted have been met. In some nonprofit corporations only the approximate vote in favor of an amendment is known. Therefore section 10.05 does not require that the exact vote be set forth in the articles of amendment. It does require that the approximate vote be set forth together with a statement that the number of votes cast for the amendment to the articles was sufficient for approval. Consequently, the person submitting the articles of amendment must be sure that the number of votes for the amendment at least meets the minimum vote required to approve the amendment.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is similar to the formerly applicable statute, Section 33–10–106 of the South Carolina Business Corporation Act. Item (7) is a non-Model Act provision but similar to Section 33–10–106(3) of the South Carolina Business Corporation Act. Consideration was given to whether the actual vote on the amendment should be filed with the Secretary of State. It was decided that filling this information would keep corporations honest and was a desirable provision. Therefore, the same detailed voting information required by the Model Act and by Section 33–10–106(6) of the 1976 Code is required of nonprofit corporations.

<< SC ST § 33–31–1006 >>

Section 33–31–1006. Restated articles of incorporation.

(a) A corporation's board of directors may restate its articles of incorporation with or without approval by members or any other person.

(b) The restatement may include one or more amendments to the articles. If the restatement includes an amendment requiring approval by the members or any other person, it must be adopted as provided in Section 33–31–1003.

(c) If the restatement includes an amendment requiring approval by members, the board must submit the restatement to the members for their approval.

(d) If the board seeks to have the restatement approved by the members at the membership meeting, the corporation shall notify each of its members of the proposed membership meeting in writing in accordance with Section 33–31–705. The notice must also state that the purpose, or one of the purposes, of the meeting is to consider the proposed restatement and contain or be accompanied by a copy or summary of the restatement that identifies any amendments or other change it would make in the articles.

(e) If the board seeks to have the restatement approved by the members by written ballot or written consent, the material soliciting the approval shall contain or be accompanied by a copy or other change it would make in the articles.

(f) A restatement requiring approval by the members must be approved by the same vote as an amendment to articles under Section 33–31–1003.

(g) If the restatement includes an amendment requiring approval pursuant to Section 33–31–1030, the board must submit the restatement for such approval.

(h) A corporation restating its articles shall deliver to the Secretary of State articles of restatement setting forth the name of the corporation and the text of the restated articles of incorporation together with a certificate setting forth:

(1) whether the restatement contains an amendment to the articles requiring approval by the members or any other person other than the board of directors and, if it does not, that the board of directors adopted the restatement; or

(2) if the restatement contains an amendment to the articles requiring approval by the members, the information required by Section 33–31–1005; and

(3) if the restatement contains an amendment to the articles requiring approval by a person whose approval is required pursuant to Section 33–31–1030, a statement that the approval was obtained.

(i) Duly adopted restated articles of incorporation supersede the original articles of incorporation and all amendments to them.

(j) The Secretary of State may certify restated articles of incorporation, as the articles of incorporation currently in effect, without including the certificate information required by subsection (h).

(k) If the restatement provides for an exchange, reclassification, or cancellation of memberships, provisions for implementing the restatement if not contained in the restatement itself must be included in the restated articles.

(l) Restated articles of incorporation shall include all statements required to be included in original articles of incorporation except that no statement is required to be made with respect to the names and addresses of the incorporators or the initial or present registered office or agent.

OFFICIAL COMMENT

Section 10.06 allows a corporation to restate its articles of incorporation without a member vote. Such restate articles are often useful, particularly where numerous amendments have been adopted over a period of years.

Where the restated articles involve a change other than a change authorized by section 10.02(a), they should be submitted to the members, if any, for their approval.

In some instances, it may be necessary to make grammatical and other minor changes between the original articles and the restated articles of incorporation. In these instances, the restated articles of incorporation should be submitted to the members for their approval. This approval may also require class voting and approval by third persons. See sections 10.04 and 10.30. Any such approval should follow the requirements of this chapter for approving amendments to articles of incorporation. The material seeking approval of the members should contain or be accompanied by a copy or summary restatement of the articles that identifies any amendments or other changes the restatement would make in the articles. While it is not necessary to restate matters that are, or may reasonably be viewed as, mere changes in form, other changes should be brought to the attention of the members.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is similar to Section 33–10–107 of the South Carolina Business Corporation Act which was previously applicable. The South Carolina section improves on the Model Act by specifying what the restated articles must contain.

<< SC ST § 33–31–1007 >>

Section 33–31–1007. Amendment pursuant to judicial reorganization.

  (a) A corporation's articles may be amended without board approval or approval by the members or approval required pursuant to Section 33–31–1030 to carry out a plan of reorganization ordered or decreed by a court of competent jurisdiction under federal statute if the articles after amendment contain only provisions required or permitted by Section 33–31–202.

  (b) A corporation's articles may be amended in a proceeding brought by the Attorney General in the court of common pleas for Richland County to correct the statement in the articles of incorporation with regard to whether the corporation is a public benefit or mutual benefit corporation or, subject to the provisions of Section 33–31–180, a religious corporation.

  (c) Any individual designated by the court shall deliver to the Secretary of State articles of amendment setting forth:

    (1) the name of the corporation;

    (2) the text of each amendment approved by the court;

    (3) the date of the court's order or decree approving the articles of amendment;

    (4) the title of the reorganization proceeding in which the order or decree was entered; and

    (5) a statement that the court had jurisdiction of the proceeding under federal statute.

  (d) Subsection (a) does not apply after entry of a final decree in the reorganization proceeding even though the court retains jurisdiction of the proceeding for limited purposes unrelated to consummation of the reorganization plan.

OFFICIAL COMMENT

  Section 10.07 is based on section 10.08 of the Model Business Corporation Act. Section 10.08 "provides a simplified method of conforming corporate documents filed under state law with the federal statutes relating to corporate reorganization. If a federal court confirms a plan of reorganization that requires articles of amendment to be filed, those amendments may be prepared and filed by the persons designated by the court and the approval of neither directors nor [members] is required ...

  This section only applies to amendments in articles of incorporation approved prior to the entry of a final decree in the reorganization plan." Official Comment to Section 10.08 of the Model Business Corporation Act.

SOUTH CAROLINA REPORTERS' COMMENTS

  Subsection (a), (b), and (d) of this section are essentially identical to formerly applicable statute, Section 33–10–108 of the South Carolina Business Corporation Act. Subsection (b) is not a Model Act provision and has no counterpart in the South Carolina Business Corporation Act. This provision gives the Attorney General some limited policing power to change a corporation from one type to another if the corporation has wrongly designated itself. For example, a corporation which in actuality is a mutual benefit corporation might designate itself as a public benefit corporation. In such a situation, the Attorney General can ask that the articles be amended to properly designate the corporation as a mutual benefit corporation.

<< SC ST § 33–31–1008 >>

Section 33–31–1008. Effect of amendment and restatement.

  An amendment to articles of incorporation does not affect a cause of action existing against or in favor of the corporation, a proceeding to which the corporation is a party, any requirement or limitation imposed upon the corporation, or any property held by it by virtue of any trust upon which such property is held by the corporation or the existing rights of persons other than members of the corporation. An amendment changing a corporation's name does not abate a proceeding brought by or against the corporation in its former name.

OFFICIAL COMMENT

  An amendment or restatement of the article does not affect an existing cause of action involving the corporation even if the amendment changes the corporate name. Moreover, an amendment does not affect any requirement or limitation imposed upon the corporation or any property held by it by virtue of any trust upon which such property is held by the corporation. If a public benefit or religious corporation amends its articles to change its purposes, property held by the corporation immediately prior to the effective date of the amendment may remain subject to a limitation based on the prior articles or to restrictions imposed by the donor of the property.

Members may have contract or other legal rights that cannot be altered or eliminated by amendments to the articles.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is identical to Section 33–10–109 of the South Carolina Business Corporation Act. Prior to the adoption of this South Carolina Nonprofit Corporation Act, this Business Corporation Act section was applicable to nonprofit corporations and thus there is no change.

<< SC ST § 33–31–1020 >>

Section 33–31–1020. Amendment of bylaws by directors.

If a corporation has no members, or has no members entitled to vote on an amendment to the bylaws its incorporators, until directors have been chosen, and thereafter its board of directors, may adopt one or more amendments to the corporation's bylaws subject to any approval required pursuant to Section 33–31–1030. The corporation shall provide notice of any meeting of directors at which an amendment is to be approved. The notice shall be in accordance with Section 33–31–822(c). The notice also must state that the purpose, or one of the purposes, of the meeting is to consider a proposed amendment to the bylaws and contain or be accompanied by a copy or summary of the amendment or state the general nature of the amendment. The amendment must be approved by a majority of the directors in office at the time the amendment is adopted.

OFFICIAL COMMENT

Section 10.20 allows directors in a corporation without members to amend the corporate bylaws subject to any approval required of third persons pursuant to section 10.30. The section also sets forth certain notice requirements that must be met to adopt an amendment to the bylaws.

If a corporation does not have members, its incorporators, until directors have been chosen, may exercise the power of the directors in amending articles or bylaws. The incorporators must follow the rules applicable to directors.

Amendments may be adopted by incorporators or by the directors by unanimous written consent. See section 8.21. Notice of a directors' meeting may be waived pursuant to section 8.23.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is entirely new. There is no similar provision in the South Carolina Business Corporation Act since all South Carolina business corporations must have shareholders.

<< SC ST § 33–31–1021 >>

Section 33–31–1021. Amendment of the bylaws by directors and members.

(a) A corporation's board of directors may amend or repeal the corporation's bylaws unless:

  (1) the articles of incorporation or this chapter reserves this power exclusively to the members in whole or part or requires the consent of someone pursuant to Section 33–31–1030; or

  (2) the members in adopting, amending, or repealing a particular bylaw provide expressly that the board of directors may not adopt, amend, or repeal that bylaw or any bylaw on that subject.

(b) A corporation's members may amend or repeal the corporation's bylaws even though the bylaws also may be amended or repealed by its board of directors.

(c) A notice of a meeting for members at which bylaws are to be adopted, amended, or repealed shall state that the purpose, or one of the purposes, of the meeting is to consider the adoption, amendment, or repeal of bylaws and contain or be accompanied by a copy or summary of the proposal.

(d) Unless otherwise provided in the articles, an amendment to the bylaws which relates solely to the dues required for membership and which establishes or changes an amount for, or method of computation of, dues, must be approved by the members.

OFFICIAL COMMENT

Bylaws of nonprofit corporations, like bylaws of business corporations, govern and regulate the activities and affairs of the corporation. Bylaw provisions often parrot provisions of state statutes governing a myriad of matters from the corporate seal to voting and quorum requirements. They serve as a roadmap for members and directors who want to know what procedures to follow or what rules are applicable to the board or the members.

The bylaws of a nonprofit corporation serve an additional function that is not analogous to the bylaws of a business corporation. The bylaws of a nonprofit corporation set forth the rights and duties of members. They are analogous to provisions of preferred stock which set forth the rights, privileges and preferences of preferred shareholders. As the basic rights of members are usually set forth in a nonprofit corporation's bylaws and not its articles, the Model Act requires the same vote to amend bylaws as to amend articles. See Official Comment to Section 10.03.

SOUTH CAROLINA REPORTERS' COMMENTS

In place of the proposed Model Act form, this section has been adopted in a form similar to that of Section 33–10–200 of the South Carolina Business Corporation Act, the previously applicable statute, with the addition of subparagraph (d).

Note that there are restrictions on the power of the directors to adopt bylaws. Section 33–31–1023 provides that if the bylaw amendment is to increase the voting requirement or quorum of members that a very special procedure must be followed in approving the bylaw. Only the members may approve such a bylaw. Section 33–31–1023(b) specifically says that directors have no power to adopt or modify such a bylaw.

<< SC ST § 33–31–1022 >>

Section 33–31–1022. Class voting on bylaw amendment by members.

(a) The members of a class in a public benefit corporation are entitled to vote as a class on a proposed amendment to the bylaws if the amendment would change the rights of that class as to voting in a manner different than such amendment affects another class or members of another class.

(b) The members of a class in a mutual benefit corporation are entitled to vote as a class on a proposed amendment to the bylaws if the amendment would:

(1) affect the rights, privileges, preferences, restrictions, or conditions of that class as to voting, dissolution, redemption, or transfer of membership in a manner different than such amendment would affect another class;

(2) change the rights, privileges, preferences, restrictions, or conditions of that class as to voting, dissolution, redemption, or transfer of membership in a manner different than such amendment would affect another class;

(3) increase or decrease the number of memberships authorized for that class;

(4) increase the number of memberships authorized for another class;

(5) effect an exchange, reclassification, or termination of the memberships of that class; or

(6) authorize a new class of memberships.

(c) The members of a class of a religious corporation are entitled to a vote as a class on a proposed amendment to the bylaws only if a class vote is provided for in the articles or bylaws.

(d) If a class is to be divided into two more classes as a result of an amendment to the bylaws of a public benefit or mutual benefit corporation, the amendment must be approved by the members of each class that would be created by the amendment.

(e) If a class vote is required to approve an amendment to the bylaws, the amendment must be approved by the members of the class by two-thirds of the votes cast by the class or a majority of the voting power of the class, whichever is less.

(f) A class of members is entitled to the voting rights granted by this section although the articles and bylaws provide that the class may not vote on the proposed amendment.

OFFICIAL COMMENT

See Official Comment to Comment 10.04.

SOUTH CAROLINA REPORTERS' COMMENTS

This section follows the provision for class voting on amendments to the articles, Section 33–31–1004. It is essentially the same as that section.

<< SC ST § 33–31–1023 >>

Section 33–31–1023. Bylaw increasing quorum or voting requirement for members.

 (a) The members may adopt or amend a bylaw that fixes a greater quorum or voting requirement for the members, or any class of members, than is required by this chapter. The adoption or amendment of a bylaw that adds, changes, or deletes a greater quorum or voting requirement for members, if required, must be approved as provided in Section 33–31–1030 and must meet the same quorum requirement and be adopted by the same vote and class vote required to take action under the quorum and voting requirement then in effect or proposed to be adopted, whichever is greater.

 (b) A bylaw that fixes a greater quorum or voting requirement for members under subsection (a) may not be adopted, amended, or repealed by the board of directors.

SOUTH CAROLINA REPORTERS' COMMENTS

 This is not a Model Act provision. However, it is essentially the same as the formerly applicable statute, Section 33–10–210 in the South Carolina Business Corporation Act.

<< SC ST § 33–31–1024 >>

Section 33–31–1024. Bylaw increasing quorum or voting requirement for directors.

 (a) Subject to any additional approval required by Section 33–31–1030, a bylaw that fixes a greater quorum or voting requirement for the board of directors may be amended or repealed:

  (1) if originally adopted by the members, only the members;

  (2) if originally adopted by the board of directors, either by the members or by the board of directors.

 (b) A bylaw adopted or amended by the members that fixes a greater quorum or voting requirement for the board of directors may provide that it may be amended or repealed, subject to any additional approval required by Section 33–31–1030, only by a specified vote of either the members or the board of directors.

 (c) Action by the board of directors under subsection (a)(2) to adopt or amend a bylaw that changes the quorum or voting requirement for the board of directors must meet the same quorum requirement and be adopted by the same vote required to take action under the quorum and voting requirement then in effect or proposed to be adopted, whichever is greater.

SOUTH CAROLINA REPORTERS' COMMENTS

 This is not a Model Act section. It is, however, essentially identical to the formerly applicable statute, Section 33–10–220 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–1030 >>

Section 33–31–1030. Approval of the articles of incorporation and bylaws by third persons.

 The articles of only a religious corporation or public benefit corporation may require an amendment to the articles or bylaws to be approved in writing by a specified person or persons other than the board. The article provision may be amended only with the approval in writing of such person.

OFFICIAL COMMENT

 Section 10.30 validates an article provision that requires a specified person or persons to approve changes in the articles or bylaws. Section 10.390 provides flexibility in control over article and bylaws amendments by allowing parent or affiliated corporations, governmental bodies and others to exercise a veto power over such amendments. It also allows corporations with delegates to require that article or bylaw amendments be approved by the delegates. Due to the broad definition of the word "person" even a member or members may be given the right to disapprove an amendment to the articles or bylaws.

 The Model Act also provides that a person whose approval must be obtained to amend articles or bylaws must consent to a merger, or a sale of all, or substantially all, of the property of a corporation other than in the regular course of its activities. Sections 11.01, 11.03 and 12.02.

SOUTH CAROLINA REPORTERS' COMMENTS

  This provision permits the articles of religious corporations and public benefit corporations to include a provision which grants a veto power to a third party over future bylaws or article amendments. There are various nonprofit corporations, particularly church related, where a bishop or other authority is given certain veto powers.

  Consideration was given to the fact that similar provisions have caused problems in the mutual benefit corporate area. Real estate developers have given themselves veto powers over homeowner corporations which they set up to manage developments. If the developer goes bankrupt or merely vanishes before he is out of the project and relinquishes his rights, there may be substantial confusion as to how the corporation is to act.

  Consideration was given to providing that mutual benefit corporations could adopt non-member veto powers which would be null and void if the appointed person could not be found, or was bankrupt and did not appoint a successor. However, such a provision was deemed to create more problems than it might solve.

  Therefore, it was ultimately determined that the best solution was to prohibit mutual benefit corporations from being able to grant a veto power to a third party.

<< SC ST § 33–31–1031 >>

Section 33–31–1031. Amendment terminating members or redeeming or canceling memberships.

  (a) An amendment to the articles or bylaws of a public benefit or mutual benefit corporation that would terminate all members or a class of members or redeem or cancel all memberships or a class of memberships must meet the requirements of this chapter.

  (b) Before adopting a resolution proposing the amendment, the board of a mutual benefit corporation shall give notice of the general nature of the amendment to the members.

  (c) After adopting a resolution proposing such an amendment, the notice to members proposing the amendment shall include one statement of up to five hundred words opposing the proposed amendment if the statement is submitted by any five members or members having three percent or more of the voting power, whichever is less, not later than twenty days after the board has voted to submit the amendment to the members for their approval. In public benefit corporations, the production and mailing costs must be paid by the requesting members. In mutual benefit corporations, the production and mailing costs must be paid by the corporation.

  (d) Any such amendment must be approved by the members by two-thirds of the votes cast by each class.

  (e) The provisions of Section 33–31–621 do not apply to any amendment meeting the requirements of this chapter.

OFFICIAL COMMENT

  Section 10.31 sets forth the procedures that must be followed to amend articles or bylaws to terminate all members or any class of members or redeem or cancel all memberships or any class of memberships. The procedures are in addition to the normal requirements for amending articles or bylaws and are required due to the extraordinary nature of the amendment. See section 1.40(5) for the definition of "class."

  Some public benefit corporations may decide that the benefits of having members are outweighed by the costs, possible harassment, or lack of contribution by members. If so, section 10.31 provides a method of amending articles or bylaws to convert from a membership corporation to a corporation with a self-perpetuating board of directors. The board in proposing such an amendment must meet its fiduciary obligations under section 8.30. While there is no requirement that the board notify the members before it adopts such a resolution, some boards may wish to do so to avoid conflict and determine the attitude of members at an early stage. After adopting the proposed amendment, the board must wait twenty days before sending a notice to the members proposing the amendment. If during the twenty-day period a written statement of up to 500 words opposing the proposed amendment is submitted by any five members or members having three percent or more of the voting power, whichever is less, and the members pay the production and mailing costs of the statement, the board must mail the statement with the notice to members proposing the amendment. The board is only obligated to mail one statement. If more than one statement is proposed, the board usually should use the statement presented by the most members.

  An amendment proposing to convert from a membership corporation to a corporation with a self-perpetuating board has a different significance in a mutual benefit corporation. Mutual benefit corporations should operate for the benefit of their members. While there was considerable sentiment on the Committee to require mutual benefit corporations to have members,

on balance it was believed that the disadvantages of such a rigid requirement outweighed its advantages. Once a mutual benefit corporation has members, the Committee believed that it should be required to provide the fullest and fairest forum possible before terminating those members. Therefore, mutual benefit corporations must inform their members of a proposed amendment to eliminate members or any class of members prior to the time the board adopts a resolution proposing such an amendment. In addition, the production and mailing costs of a statement in opposition submitted by members must be paid for by the corporation. Of course, if the terminated members have any contractual rights, these rights continue and are not terminated by the amendment. If the memberships in a mutual benefit corporation have some economic value, it is almost impossible for an amendment to terminate the members without providing adequate compensation. The result of an amendment terminating members would be to shift the economic benefits of the terminated members to the directors or some other person or persons. If the benefits were shifted to the board, the directors would have an inherent conflict of interest in proposing an amendment to terminate the members. If the benefits were shifted to some other person, the board might not have a conflict of interest, but the members could still complain of the inherent unfairness.

The provisions of section 10.31 are not applicable to situations in which the board desires to terminate a certain person or a small group of persons without affording them their rights under sections 6.21 and 6.22. An amendment proposed for such a reason would breach the board's duties under section 8.30.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is entirely new and has no counterpart in either the former Chapter 31, Title 33 or the South Carolina Business Corporation Act.

Article 11

Merger

<< SC ST § 33–31–1101 >>

Section 33–31–1101. Approval of plan of merger.

(a) Subject to the limitations set forth in Section 33–31–1102, one or more nonprofit corporations may merge into a business or nonprofit corporation, and one or more business corporations may merge into a nonprofit corporation to the extent permitted in Section 33–11–101, if the plan of merger is approved as provided in Section 33–31–1103.

(b) The plan of merger must set forth:

(1) the name of each corporation planning to merge and the name of the surviving corporation into which each plans to merge;

(2) the terms and conditions of the planned merger;

(3) the manner and basis, if any, of converting the members of each public benefit or religious corporation into members of the surviving corporation;

(4) if the merger involves a mutual benefit corporation, the manner and basis, if any, of converting membership of each merging corporation into membership, obligations, or securities of the surviving or any other corporation or into cash or other property in whole or part.

(c) The plan of merger may set forth:

(1) any amendments to the articles of incorporation or bylaws of the surviving corporation to be effected by the planned merger; and,

(2) other provisions relating to the planned merger.

OFFICIAL COMMENT

Chapter 11 authorizes mergers involving nonprofit corporations if specified conditions are met. In a merger one or more corporations merge and disappear into a surviving corporation. The surviving corporation continues and owns all the property of each party to the merger and is liable for the liabilities and obligations of each party to the merger. See sections 11.05 and 11.07.

As it is usually more advantageous for one of the parties to a merger to survive, the Model Act does not provide for "consolidations" in which all the parties merge and disappear into a new corporation. If two or more corporations desire to

merge their activities, but do not desire to continue one of the existing corporations, a new corporation can be incorporated and the existing corporations merged into it. By following this approach a "consolidation" of existing corporations can be achieved.

  The Model Act does not provide for dissenters' rights. As members of a public benefit or religious corporation have no economic interest in their corporation they cannot be given cash as the result of a merger. Therefore they cannot have dissenters' rights. While members of a mutual benefit corporation may have an economic interest in their corporation, the concept of dissenters' rights seems inappropriate in the nonprofit context. While memberships in mutual benefit corporations may be valuable, most memberships do not represent an investment that will generate a profit on their sale. Consequently it is inappropriate to give a member an automatic right to cash by exercising dissenters' rights and in effect "selling" a membership.

  A member of a nonprofit corporation may file a proceeding to enjoin or rescind a merger. A member of a mutual benefit corporation may also sue for damages. Where the provisions of this chapter have been complied with and the board has met its statutory duties of care and loyalty, a court should uphold a merger. Where a merger is improperly approved, the Model Act does not specify the remedy, if any. A court may consider all relevant facts including the good faith of the parties, the fairness of the merger, the effect of the merger, the nature of any omission or misstatement of fact, whether the failure to comply with the provisions of this chapter was serious and substantive or technical and unimportant, the reasons and need for the merger, and whether the merger would have been approved in any event. After considering all relevant facts a court may rescind the merger, order the payment of damages or other remedy or find that a remedy is inappropriate and uphold a merger even though the provisions of this chapter have not been met.

  The Model Act does not authorize short form mergers or the nonprofit equivalent of a reorganization by share exchange. These procedures are appropriate in the business, but not the nonprofit, context.

SOUTH CAROLINA REPORTERS' COMMENTS

  Except as to churches, the former nonprofit statute, Chapter 31, Title 33 made no specific provision for the merger of nonprofit corporations. The former Chapter 33 did provide that churches could consolidate:

  Any two or more church corporation, having no capital stock, existing under the laws of this State for religious purposes may consolidate into a single corporation which may be any one of such consolidated corporations or a new corporation to be formed by means of such consolidation. (Former Section 33–33–10)

  Although the language in part differs, much of this section is identical with Section 33–11–101 of the South Carolina Business Corporation Act which was previously applicable to non-church mergers.

  If the nonprofit corporation intends to merge with a business corporation, Sections 33–1–400(5), 33–20–103, and 33–11–101 likewise permit the business corporation to be a party to the merger. However, if a nonprofit and business corporation merge, the plan must include the requirements of both Sections 33–31–1101 and 33–11–101.

  The terms and conditions of the planned merger shall include the manner and basis, if any, of converting the securities of each business corporation into membership or obligations of the surviving or any other corporation or into cash or other property in whole or in part.

  Under certain limited circumstances, Section 33–31–1104(a)(4) permits a public benefit corporation (or religious corporation) to merge into either a business corporation or a mutual benefit corporation. Section 33–31–1101(a)(3) does not seem to specify what interest the members of the public benefit or religious corporation would receive in such a merger with a business corporation. This "omission" is intentional. The members are not permitted to receive anything in such a merger. Section 33–31–1104(c) provides that no member of a public benefit or religious corporation may receive anything other than another membership. To permit otherwise would be to provide a method whereby public or religious assets might be diverted to private uses.

  Since the members of the public benefit and religious corporations cannot receive anything from the merger and since the value of all the nonprofit corporation's assets must be transferred to another charity prior to the merger, the "merging-in" nonprofit corporation will merely be the corporate shell. It is likely that this will rarely, if ever, happen. However, it is noted that if the former nonprofit corporation had franchise rights, owned favorable leases, had long-term employees, had favorable insurance, or compensation ratings, that it might be desirable to actually merge the shell thereby transferring these operational rights into the business corporation (assuming, of course, that full value for these rights had previously been distributed by the acquiring corporation to another charity).

Assume this example. A hospital is operated at a particular location by a public benefit corporation. The hospital corporation has a very favorable lease which runs only to the corporation and cannot be sublet or assigned. The hospital wants to move to a different location. A for-profit corporation desires to obtain the old location for a store. If as part of the merger, the hospital receives full value for the value of the lease it would be profitable for the hospital to merge and be able to transfer the valuable lease to the business corporation. If merger were not allowed, the hospital could not transfer this valuable leasehold and thus would not get as much money when it moves to the new location. It is desirable to maximize the dollar value which is available for the charitable work, and the merger in this situation permits the hospital to realize more value.

<< SC ST § 33–31–1102 >>

Section 33–31–1102. Limitations on mergers by public benefit or religious corporations.

(a) Without the prior approval of the court of common pleas of Richland County in a proceeding in which the Attorney General has been given written notice, a public benefit or religious corporation may merge only with:

(1) a public benefit or religious corporation;

(2) a foreign corporation that would qualify under this chapter as a public benefit or religious corporation;

(3) a foreign or domestic business; mutual benefit corporation; or a corporation chartered directly by special act of the General Assembly, a city, county, or other governmental unit other than the Secretary of State, provided the public benefit or religious corporation is the surviving corporation and continues to be a public benefit or religious corporation after the merger; or,

(4) a foreign or domestic business or mutual benefit corporation, provided that:

(i) on or before the effective date of the merger, assets with a value equal to the greater of the fair market value of the net tangible and intangible assets, including goodwill, of the public benefit corporation or religious corporation or the fair market value of the public benefit corporation or religious corporation if it were to be operated as a business concern are transferred or conveyed to one or more persons who would have received its assets under Section 33–31–1406(a)(5) and (6) had it dissolved;

(ii) it shall return, transfer, or convey any assets held by it upon condition requiring return, transfer, or conveyance, which condition occurs by reason of the merger, in accordance with such condition; and

(iii) the merger is approved by a majority of directors of the public benefit or religious corporation who are not and will not become members or shareholders in or officers, employees, agents, or consultants of the surviving corporation.

(b) At least twenty days before consummation of a merger of a public benefit corporation or a religious corporation pursuant to subsection (a)(4), notice, including a copy of the proposed plan of merger, must be delivered to the Attorney General.

(c) No member of a public benefit or religious corporation may receive or keep anything as a result of a merger other than a membership or membership in the surviving public benefit or religious corporation.

(d) Where approval or consent is required by this section, it must be given if the transaction is consistent with the purposes of the public benefit or religious corporation or is otherwise in the public interest.

OFFICIAL COMMENT

The provisions of section 11.02 are designed to prevent the assets of public benefit or religious corporations from being diverted from their intended charitable or public purposes as a result of a merger. Consequently section 11.02 provides that public benefit and religious corporations can merge only under specified conditions with specified types of corporations without court approval in a proceeding in which the Attorney General has been given written notice. In addition, members of public benefit and religious corporations may only receive or keep memberships in the surviving corporation unless they obtain court or Attorney General approval.

If the requirements of section 11.02(a)(4) are met, a public benefit or religious corporation may merge with a business or mutual benefit corporation that is the surviving entity. However, those in control of the public benefit or religious corporation may not enter into a sweetheart merger in which they acquire the assets of the corporation for less than its fair market value. Two requirements of subsection (a)(4) address this problem. The first is that the fair market value of the public benefit or religious corporation must be established and paid for the assets of the corporation. Fair market value is defined as the greater of the value of the net tangible and intangible assets (including goodwill) of the public benefit corporation or its value if it were an ongoing business concern. These figures could be different. A public benefit or religious corporation might have a small net worth, but

significant earning potential if it were operated as a business corporation. Consequently the ongoing concern value would be higher than the net asset value. To avoid any dispute, the Model Act requires that the higher "value" be paid for the corporation.

The second requirement deals with the fact that value is often subjective and difficult to determine. Subdivision (a)(4)(iii) requires that the merger must be approved by a majority of the public benefit or religious corporation's directors who will not be shareholders in or officers, employees, agents or consultants of the surviving corporation. This diminishes a possible conflict of interest with the attendant pressure on the directors to value the public benefit or religious corporation at less than its true fair market value.

Apart from the specific limitations of subdivision (a)(4), the directors and officers must meet their duties of care and loyalty under sections 8.30, 8.31 and 8.40. They must determine that the merger is in the best interest of the public benefit corporation. Moreover the directors and officers cannot engage in any side deals or receive any incentives to favor or not to object to the merger if the incentives violate their duty of loyalty.

Once the value of the public benefit or religious corporation has been determined, that value must be transferred to an appropriate entity. The distributee must be an entity or entities that would have received the assets under section 14.06(a)(5) and (6) had the corporation dissolved. See the Official Comment to Section 14.06. Any assets held upon condition requiring return, transfer or conveyance, which condition occurs by reason of the merger, must be returned in accordance with such condition. See section 14.06(a)(4) and Official Comment to Section 14.06.

A court in approving a merger may allow members of a public benefit or religious corporation to receive something of value only if it is in the public interest for them to do so. For example, the members may invest in a business corporation that is the surviving corporation in a merger with the public benefit corporation. A court should closely scrutinize the merger to make sure the conditions of section 11.02 have been met. In addition, it must find that the merger is in the public interest.

SOUTH CAROLINA REPORTERS' COMMENTS

This section has no counterpart in the former provisions of Chapter 31, Title 33 nor in the formerly applicable South Carolina Business Corporation Act. Certain technical additions were made to the Model Act, including a clarification that if a religious corporation merges with a business or mutual benefit corporation that its assets must be distributed pursuant to its articles or to another charitable entity. The Model Act provision permitting distributions to members from a public benefit or religious corporation with court or Attorney General approval was deleted. Consideration was given as to whether the twenty-day period was too short and a determination was made that this was reasonable in these circumstances. This section also permits existing old legislatively chartered corporations to merge into new public benefit or religious corporations. This will permit these corporations to be governed by the provision of this chapter. See also section 33–31–1701 which specifically grants such entities the authority to merge.

<< SC ST § 33–31–1103 >>

Section 33–31–1103. Action on plan by board, members, and third persons.

(a) Unless this chapter, the articles, or bylaws require a greater vote or voting by class, a plan of merger to be adopted must be approved:

(1) by the board;

(2) by the members, if any, by two-thirds of the votes cast or a majority of the voting power, whichever is less; and

(3) in writing by any person whose approval is required by a provision of the articles authorized by Section 33–31–1030 for an amendment to the articles or bylaws.

(b) If the corporation does not have members, or does not have members entitled to vote on the merger, the merger must be approved by a majority of the directors in office at the time the merger is approved. In addition, the corporation shall provide notice of any directors' meeting at which such approval is to be obtained in accordance with Section 33–31–822(c). The notice also must state that the purpose, or one of the purposes, of the meeting is to consider the proposed merger.

(c) If the board seeks to have the plan approved by the members at a membership meeting, the corporation shall give notice to its members of the proposed membership meeting in accordance with Section 33–31–705. The notice also must state that the purpose, or one of the purposes, of the meeting is to consider the plan of merger and contain or be accompanied by a copy or summary of the plan. The copy or summary of the plan for members of the surviving corporation shall include any provision

that, if contained in a proposed amendment to the articles of incorporation or bylaws, would entitle members to vote on the provision. The copy or summary of the plan for members of the disappearing corporation shall include a copy or summary of the articles and bylaws that will be in effect immediately after the merger takes effect.

(d) If the board seeks to have the plan approved by the members by written consent or written ballot, the material soliciting the approval shall contain or be accompanied by a copy or summary of the plan. The copy or summary of the plan for members of the surviving corporation shall include any provision that, if contained in a proposed amendment to the articles of incorporation or bylaws, would entitle members to vote on the provision. The copy or summary of the plan for members of the disappearing corporation shall include a copy or summary of the articles and bylaws that will be in effect immediately after the merger takes effect.

(e) Approval by a class of members is required on a plan of merger if the plan contains a provision that, if contained in a proposed amendment to articles of incorporation or bylaws, would entitle the class of members to vote as a class on the proposed amendment under Section 33–31–1004 or 33–31–1022. The plan is approved by a class of members by two-thirds of the votes cast by the class or a majority of the voting power of the class, whichever is less.

(f) After a merger is adopted, and at any time before articles of merger are filed, the planned merger may be abandoned, subject to any contractual rights, without further action by members or other persons who approved the plan in accordance with the procedure set forth in the plan of merger or, if none is set forth, in the manner determined by the board of directors.

(g) A plan of merger involving either a public benefit or mutual benefit corporation that would terminate all members or any class of members or redeem or cancel all memberships or any class of memberships must meet all the requirements of this chapter and specifically this subsection (g):

(i) Before adopting a resolution proposing a plan of merger, the board of a mutual benefit corporation shall give notice of the general nature of the amendment to the members.

(ii) After adopting a resolution proposing such a plan of merger, the notice to members proposing the merger shall include one statement of up to five hundred words opposing the proposed plan of merger if the statement is submitted by any five members or members having three percent or more of the voting power, whichever is less, not later than twenty days after the board has voted to submit such to the members for their approval. In public benefit corporations, the production and mailing costs must be paid by the requesting members. In mutual benefit corporations, the production and mailing costs must be paid by the corporation.

(iii) Any such plan of merger must be approved by the members by two-thirds of the votes cast by each class.

(iv) The provisions of Section 33–31–621 do not apply to any amendment meeting the requirements of this chapter.

OFFICIAL COMMENT

Section 11.03 sets forth the requirements for approving a merger.

If a corporation does not have members, unless the Model Act, the articles or bylaws require a greater vote, the plan of merger must be approved by a majority of the directors in office at the time the merger is approved. While it is usually not necessary to give directors notice of matters that will be considered at directors' meetings, subdivision (b)(4) requires that corporations without members not only notify the directors of the meeting but that the notice indicate that one of the matters to be considered at the meeting is the proposed merger.

If a corporation has members, the board must adopt the plan of merger and submit it to the members for their approval. Unless the Model Act, the articles or bylaws require a greater vote or voting by class, voting by class is required if the plan contains a provision that would require a class vote if it were contained in amendment to the articles or bylaws. The members must approve the plan of merger by a two-thirds vote of the votes cast or a majority of the voting power, whichever is less. The affirmative votes must also constitute a majority of the required quorum. See section 1.40(1). Class voting is required if the plan contains a provision that would require a class vote if it were contained in a bylaw or article amendment.

The notice of the meeting or material soliciting the approval must set forth the material facts concerning the merger. For example, if the members of the surviving corporation become subject to an article or bylaw provision that would normally require a vote of the members, they must be given a copy or summary of the provision prior to voting on the proposed merger. See subsections 12.03(d) and (e). Members of the disappearing corporation must receive a copy or summary of the complete articles and bylaws of the surviving corporation prior to voting on the merger. See subsections 12.03(d) and (e). Members of the disappearing corporation are entitled to the additional material because they were not subject to the articles and bylaws of the surviving corporation prior to the merger.

If a plan of merger contains a provision that, if contained in an amendment to articles or bylaws, would entitle members of that class to vote as a class, the merger is not approved unless it is approved by that class of members. Each class entitled to vote must approve the plan by two-thirds of the votes cast or a majority of the voting power of the class, whichever is less. The affirmative votes also must constitute a majority of the required quorum. See section 1.40(1).

To provide flexibility, subsection (c) allows the board or the members in approving the merger to condition approval of the merger upon its receiving a higher percent of votes than would normally be required or on any other basis.

If the consent of a person is required pursuant to section 10.30 to approve an amendment to the articles or bylaws of a constituent corporation, that person's consent is also needed to approve a plan of merger. This requirement prevents the corporation from eliminating the person's right to approve an amendment by merging with a wholly owned subsidiary.

SOUTH CAROLINA REPORTERS' COMMENTS

1. Compared to former sections

Previously applicable law included provisions for the consolidation of churches. The former Sections 33–33–20 and 33–33–30 provided:

Whenever a consolidation of two or more such [church] corporations is proposed, identical plans for consolidation, which must include the name of the proposed consolidated corporation, shall be submitted to the congregations of such church corporations proposed to be consolidated at separate meetings of each congregation, held after being called upon notice in the manner customary under the practice, bylaws, rules or regulation of the respective church corporations for the calling of business meetings. Such notices of the calling of such meetings shall advise the members of the respective congregations that a consolidation of the church corporations shall be considered and passed upon at the meeting.

If at the meetings of the respective congregations so held, two thirds of the members present at each meeting eligible to vote at business meetings under the practice, bylaws, rules or regulations of the respective church corporations vote in favor of the consolidation, the consolidation shall become effective upon the filing with the Secretary of State of a written copy of the plan of consolidation adopted, certified under oath by an officer of each corporation as a copy of the plan of consolidation adopted by the congregation of each of such corporations at meetings thereof called and held as provided herein, and upon the filing for record of a copy of the plan, certified to by the Secretary of State, in the office of the register of mesne conveyances or of the clerk of court in counties which do not have a register of mesne conveyances of the county of this State in which the principal office of the consolidated corporation is to be established and of the counties in which the respective corporations so consolidating shall have their original charters recorded, or, if any of the corporations shall have been created by special act of the General Assembly, in the county in which such corporation shall have had its principal office.

The present statute is different from the merger procedures required of business corporations in Section 33–11–103. (Prior to the adoption of this South Carolina Nonprofit Corporation Act, this section would have applied to nonprofit corporations.) South Carolina subsection (b) also differs slightly from the Model Act. Action is taken under (b) even if the corporation has members but they are not entitled to vote on the merger. Any modification to what votes are required to approve the merger must be provided in the bylaws (or articles). This differs from the Model Act.

2. Non–Model Act provisions

This section differs from Model Act in the following manner:

a. The directors have the sole power to approve the merger as provided in subsection (b) if the corporation does not have members or, different from the Model Act, if the members do not have voting rights regarding the merger. This change is in conformity with changes made in other sections. A nonprofit corporation might have members but the articles might specify that they do not vote on mergers.

b. The Model Act includes a provision which permits both the board and members to condition this approval on the receipt of a higher vote. Although this language does not appear in the South Carolina section, South Carolina corporations have the power to condition the approval on a higher vote but must do so in the articles or bylaws. This change is in keeping with the changes to Sections 33–31–1003 and 33–31–1202. It was determined that all voting modifications belong in the articles or bylaws. In increasing the vote required of either directors or members, consideration also must be given to Sections 33–31–1023 and 33–31–1024. These provisions require that before raising the vote required to adopt certain issues, the resolution to increase the vote must pass by the same greater quorum or vote.

c. Section 33–31–1103(g) is not a Model Act provision. However, it is essentially the same as Section 33–31–1031. This paragraph prevents a corporation from eliminating all or a class of members through a merger without complying with the same rigorous requirements imposed in Section 33–31–1031 relating to an amendment to the articles which eliminates all or a class of members. See the Official Comments following Section 33–31–1031 for an explanation of this paragraph (g).

<< SC ST § 33–31–1104 >>

Section 33–31–1104. Articles of merger.

After a plan of merger is approved by the board of directors of each merging corporation and if required by Section 33–31–1103 by the members and any other persons, the surviving corporation shall deliver to the Secretary of State articles of merger setting forth:

(1) the plan of merger;

(2) if approval of members was not required, a statement to that effect and a statement that the plan was approved by a sufficient vote of the board of directors of each corporation;

(3) if approval by the members of one or more corporations was required:

  (i) the designation, number of memberships outstanding, number of votes entitled to be cast by each class entitled to vote separately on the plan, and number of votes of each class indisputably voting on the plan; and

  (ii) either the total number of votes cast for and against the plan by each class entitled to vote separately on the plan or the total number of undisputed votes cast for the plan by each class and a statement that the number cast for the plan by each class was sufficient for approval by that class;

(4) If approval of the plan by some person or persons other than the members of the board is required pursuant to Section 33–31–1103(a)(3), a statement that the approval was obtained;

(5) Unless a delayed effective date is specified, a merger takes effect when the articles of merger are filed.

OFFICIAL COMMENT

Upon filing the articles of merger with the Secretary of State, the transaction becomes a matter of public record as the articles of merger set forth the plan of merger. A merger becomes effective when the articles of merger are filed with the Secretary of State unless a delayed effective date is requested. See section 1.23.

SOUTH CAROLINA REPORTERS' COMMENTS

Other than with respect to church corporations, this provision has no counterpart in the former Chapter 31, Title 33 (see the South Carolina Reporters' Comments to Section 33–31–1103). This section is very similar to Section 33–11–105 in the South Carolina Business Corporation Act which previously governed non-church nonprofit corporations. The Model Act language has been clarified in certain respects. Paragraph (5) is not a Model Act provision and paragraph (3) notes that approval of one corporation's members may be required but not of the other one.

<< SC ST § 33–31–1105 >>

Section 33–31–1105. Effect of merger.

When a merger takes effect:

(1) every other corporation party to the merger merges into the surviving corporation and the separate existence of every corporation except the surviving corporation ceases;

(2) the title to all real estate and other property owned by each corporation party to the merger is vested in the surviving corporation without reversion or impairment, subject to any and all conditions to which the property was subject before the merger;

(3) the surviving corporation has all liabilities and obligations of each corporation party to the merger;

(4) a proceeding pending against a corporation party to the merger may be continued as if the merger did not occur or the surviving corporation may be substituted in the proceeding for the corporation whose existence ceased;

(5) the articles of incorporation and bylaws of the surviving corporation are amended to the extent provided in the plan of merger; and

(6) the memberships or shares of each nonprofit or business corporation party to the merger that are to be converted into memberships, obligations, shares or other securities of the surviving or any other corporation or into cash or the other property are converted and the former holders of the memberships or shares are entitled only to the rights provided in the articles of merger.

OFFICIAL COMMENT

Section 11.05 sets forth the legal effects of a merger. On the effective date of the merger the disappearing corporation merges and disappears into the surviving corporation. The surviving corporation owns all the property owned by each constituent corporation and is liable for all liabilities and obligations (contingent or otherwise) of each constituent corporation. Trust obligations on property of a disappearing corporation are limited to the property affected thereby immediately prior to the time the merger is effective. If the surviving corporation receives property that would have gone to a disappearing corporation, the property is subject to the same restrictions that would have applied had the property been received by the disappearing corporation. Where the property is given on the condition that it be used for specified purposes, that condition is not removed as a result of the merger. See section 11.07.

SOUTH CAROLINA REPORTERS' COMMENTS

Other than as to church consolidations, the former Chapter 33, Title 33 had no provisions for mergers. The former church statutes found in the former Chapter 33 read as follows:

When the plan of consolidation adopted is certified to, filed and recorded as in Section 33–33–30 required, the separate existence of the constituent corporations shall cease and the consolidating corporations shall become a single corporation, in accordance with the plan, possessing all of the powers of church corporations provided in Section 33–31–100, and all property, real, personal and mixed, all debts due on whatever account and all other things in action belonging to each of such corporations shall be vested in the consolidated corporation. And all property, rights, privileges and powers and every other interest shall be thereafter as effectually the property of the consolidated corporation as they were of the several and respective former corporations and the title to any real estate, whether by deed or otherwise under the laws of this State vested in either of such corporations, shall not revert or be in any way impaired by reason of the provisions herein. But all rights of creditors and all liens upon the property of either of such former corporations shall be preserved unimpaired, limited in lien to the property affected by such liens at the time of the consolidation, and all debts, liabilities and duties of the respective former corporations shall thenceforth attach to the consolidated corporation and may be enforced against it to the same extent as if such debts, liabilities and duties had been incurred or contracted by it.

Any action or proceeding pending by or against either of the corporations consolidated may be prosecuted to judgment, as if such consolidation had not taken place, or the new corporation may be substituted in its place.

The existing South Carolina Business Corporation Act contains a provision that is very similar to this new Section 33–31–1105. It is Section 33–11–106 and was applicable to non-church nonprofit corporations prior to the adoption of this South Carolina Nonprofit Corporation Act. Note that any trust obligations upon property of a disappearing corporation shall be limited to the property affected thereby immediately prior to the time the merger is effective. A version of paragraph (6), a non-Model Act paragraph, appears in the South Carolina Business Corporation Act as Section 33–11–106(b).

<< SC ST § 33–31–1106 >>

Section 33–31–1106. Merger with foreign corporation.

(a) Except as provided in Section 33–31–1102, one or more foreign business or nonprofit corporations may merge with one or more domestic nonprofit corporations if:

(1) the merger is permitted by the law of the state or country under whose law each foreign corporation is incorporated and each foreign corporation complies with that law in effecting the merger;

(2) the foreign corporation complies with Section 33–31–1104 if it is the surviving corporation of the merger; and

(3) each domestic nonprofit corporation complies with the applicable provisions of Sections 33–31–1101 through 33–31–1103 and, if it is the surviving corporation of the merger, with Section 33–31–1104.

(b) Upon the merger taking effect, the surviving foreign business or nonprofit corporation is deemed to have irrevocably appointed the Secretary of State as its agent for service of process in any proceeding brought against it.

OFFICIAL COMMENT

Section 11.06 authorizes foreign nonprofit and business corporations to merge with nonprofit corporations if there is an applicable law in their respective states of incorporation and the law's provisions are met. Of course, the provisions of the Model Act must also be complied with in carrying out the merger.

If the surviving corporation is a foreign corporation, the merger results in its irrevocably appointing the Secretary of State as its agent for service of process in any proceeding brought against it. This appointment is not limited to matters arising out of or relating to the merger, but applies to any and all claims that might be made against the foreign corporation.

SOUTH CAROLINA REPORTERS' COMMENTS

The formerly applicable statute, Section 33–11–107 of the South Carolina Business Corporation Act, is parallel to this provision, although the language and mechanics are very different.

<< SC ST § 33–31–1107 >>

Section 33–31–1107. Bequests, devises, and gifts not affected by merger.

Any bequest, devise, gift, grant, or promise contained in a will or other instrument of donation, subscription, or conveyance, that is made to a constituent corporation and that takes effect or remains payable after the merger, inures to the surviving corporation unless the will or other instrument otherwise specifically provides.

OFFICIAL COMMENT

Bequests, devise, gifts and grants to a disappearing corporation that take effect or remain payable after a merger inure to the benefit of the surviving corporation in a merger. Where, however, the will or other instrument otherwise specifically provides, the specific provisions will control.

A provisions in a will or other instrument requiring that a bequest or gift be used for a specified purpose is not negated by a merger even if the surviving corporation is not engaged in the same activities as the disappearing corporation. It can only use the property for the specified purposes. If the surviving corporation cannot or does not want to use the bequest or gift for the purposes specified, it must seek court approval for a variance. The question of whether a variance will be granted is left to the cy pres doctrine or other applicable state law.

Section 11.07 only applies to bequests, devises, gifts and grants that take effect or remain payable after a merger. Section 11.05 applies to transfers that take effect prior to the merger.

SOUTH CAROLINA REPORTERS' COMMENTS

This is an entirely new provision. It has no counterpart in the former Chapter 31, Title 33 or in the South Carolina Business Corporation Act.

Article 12

Sale and Distribution of Assets

<< SC ST § 33–31–1201 >>

Section 33–31–1201. Sale of assets in regular course of activities and mortgage of assets.

(a) A corporation, on the terms and conditions and for the consideration determined by the board of directors, may:

(1) sell, lease, exchange, or otherwise dispose of all, or substantially all, of its property in the usual and regular course of its activities; or

(2) mortgage, pledge, dedicate to the repayment of indebtedness, whether with or without recourse, or otherwise encumber any or all of its property whether or not in the usual and regular course of its activities.

(b) Unless the articles require it, approval of the members or any other person of a transaction described in subsection (a) is not required.

OFFICIAL COMMENT

Section 12.01 deals with two types of transactions. In the first type a nonprofit corporation sells or otherwise disposes of all, or substantially all, of its property in the usual and regular course of its activities. While such a sale or disposition would normally not be in the regular course of its activities, if it is, it may be approved by the board alone unless the articles require approval of the members or some other person.

The second type of transaction is one in which a nonprofit corporation mortgages pledges or dedicates to the repayment of indebtedness any or all of its property whether or not in the usual and regular course of its activities. This type of transaction would normally arise when a bank or some other lender requires a corporation to pledge its property as collateral for a loan. Subject to a contrary provision in a corporation's articles, such a mortgage, pledge or dedication can be authorized by the board alone.

The question of what is "substantially all" of a corporation's property is a factual question to be determined after an examination of all relevant facts. "The phrase 'substantially all' is synonymous with 'nearly all' and was added merely to make it clear that the statutory requirements could not be avoided by retention of some minimal or nominal residue of the original assets. A sale of all the corporate assets other than cash or cash equivalents is normally the sale of 'all or substantially all' of the corporation's property." Official Comment to Section 12.01 of the Model Business Corporation Act. Moreover, a series of related transactions that in total amount to the sale of all, or substantially all, of a corporation's property may be treated as a single transaction if they are part of an overall plan to dispose of all, or substantially all, of the corporation's property.

The board in approving a transaction under section 12.01 must meet its fiduciary obligations under sections 8.30 and 8.31.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is almost identical to Section 33–12–101 of the South Carolina Business Corporation Act, the formerly applicable statute. It has no counterpart in the former Chapter 31, Title 33.

<< SC ST § 33–31–1202 >>

Section 33–31–1202. Sale of assets other than in regular course of activities.

(a) A corporation may sell, lease, exchange, or otherwise dispose of all, or substantially all, of its property, with or without the goodwill, other than in the usual and regular course of its activities on the terms and conditions and for the consideration determined by the corporation's board if the proposed transaction is authorized by subsection (b).

(b) Unless this chapter, the articles, or bylaws, require a greater vote or voting by class, the proposed transaction to be authorized must be approved:

(1) by the board;

(2) by the members by two-thirds of the votes cast or a majority of the voting power, whichever is less; and

(3) in writing by any person whose approval is required by a provision of the articles authorized by Section 33–31–1030 for an amendment to the articles or bylaws.

(c) If the corporation does not have members, or does not have members entitled to vote on the transaction, the transaction must be approved by a vote of a majority of the directors in office at the time the transaction is approved. In addition, the corporation shall provide notice of any directors' meeting at which such approval is to be obtained in accordance with Section 33–31–822(c). The notice also must state that the purpose, or one of the purposes, of the meeting is to consider the sale, lease, exchange, or other disposition of all, or substantially all, of the property or assets of the corporation and contain or be accompanied by a copy or summary of a description of the transaction.

(d) If the corporation seeks to have the transaction approved by the members at a membership meeting, the corporation shall give notice to its members of the proposed membership meeting in accordance with Section 33–31–705. The notice also must state that the purpose, or one of the purposes, of the meeting is to consider the sale, lease, exchange, or other disposition of

all, or substantially all, of the property or assets of the corporation and contain or be accompanied by a copy or summary of a description of the transaction.

(e) If the board needs to have the transaction approved by the members by written consent or written ballot, the material soliciting the approval shall contain or be accompanied by a copy or summary of a description of the transaction.

(f) A public benefit or religious corporation must give written notice to the Attorney General twenty days before it sells, leases, exchanges, or otherwise disposes of all, or substantially all, of its property if the transaction is not in the usual and regular course of its activities unless the Attorney General has given the corporation a written waiver of this subsection.

(g) After a sale, lease, exchange, or other disposition of property is authorized, the transaction may be abandoned, subject to any contractual rights, without further action by the members or any other person who approved the transaction in accordance with the procedure set forth in the resolution proposing the transaction or, if none is set forth, in the manner determined by the board of directors.

OFFICIAL COMMENT

A sale or other disposition of all, or substantially all, of a corporation's property other than in the usual and regular course of its activities must meet the requirements set forth in section 12.02. See the Official Comment to Section 12.01 for a discussion of the meaning of the phrase "all or substantially all". The notice requirements are similar to the approval and notice requirements for a merger. See the Official Comment to Section 11.03.

Unless the resolution proposing the transaction provides to the contrary, the board acting alone may abandon a sale or other disposition of property after the transaction has been authorized. The abandonment, however, does not negate contractual rights of third persons.

SOUTH CAROLINA REPORTERS' COMMENTS

1. New provision, similar to Section 33–12–102

This is an entirely new provision for Chapter 31, Title 33, but it is similar to the language of the previously applicable Section 33–12–102 in the South Carolina Business Corporation Act.

2. Non–Model Act provisions

This South Carolina section differs from Model Act in the following manner:

a. The directors have the sole power to sell the assets as provided in subsection (c) if the corporation does not have members or, different from the Model Act, if the members do not have voting rights regarding the sale of assets. This change is in conformity with changes made in other sections. A nonprofit corporation might have members but the articles might specify that they do not vote on the sale of assets.

b. The Model Act includes a provision which permits both the board and members to condition this approval on the receipt of a higher vote. Although this language does not appear in the South Carolina section, the corporation still reserves this power to condition the approval on the receipt of a higher vote, but must do so in the articles or bylaws. This change is in keeping with the changes to Section 33–31–1003 and other sections. It was determined that all voting modifications belong in the articles or bylaws. In increasing the vote required of either directors or members, consideration must also be given to Sections 33–31–1023 and 33–31–1024. These provisions require that before raising the vote required to adopt certain issues, the resolution to increase the vote must pass by the same greater quorum or vote.

Note that in the Business Corporation Section 33–12–102 the following language is found:

(c) The board of directors may condition its submission of the proposed transaction on any basis.

(e) Unless the articles of incorporation require a different vote or the board of directors (acting pursuant to subsection (c)) requires a greater vote than that specified by this subsection or the articles of incorporation or a vote by voting groups, the transaction to be authorized must be approved by two-thirds of all the votes entitled to be cast on the transaction.

c. Consideration was given to whether churches and other religious corporations should be required to notify the Attorney General before selling or otherwise disposing of all, or substantially all, of their property other than in the usual and regular course of their activities. For example, if a church were to sell its building in order to move to a new location, it is likely that this Section 33–31–1202 would require it to notify the Attorney General. If notification were not given, the buyer or later owner of the property might question whether it was receiving, or had received, good title. It was determined that requiring notification is

not a significant obligation to place on legitimate religious organizations, particularly since a waiver could be routinely obtained when the corporation is formed or at any later time. See subsection (g). Retaining this notification requirement will prevent public benefit corporations from organizing as religious corporations in order to get around the reporting requirement and will be a good check on entities whose religious orientation is questionable.

Article 13

Prohibited Distributions

<< SC ST § 33–31–1301 >>

Section 33–31–1301. Prohibited distributions.

Except as authorized by Section 33–31–1302, a corporation may not make any distributions.

OFFICIAL COMMENT

Section 13.01 sets forth the basic rule that a corporation is prohibited from making any distributions. The term "distributions" is defined in section 1.40(10) as the "payment of a dividend or of any part of the income or profit of a corporation to its members, directors or officers." See Official Comment to Section 1.40, Comment 5.

Section 13.01 does not prohibit the transfer of property to members of nonprofit corporations under any and all circumstances. However, the prohibition on payment of dividends is quite broad. If a transfer is a direct payment to a member as a result of his or her interest in the nonprofit corporation, it is prohibited. Cash dividends from whatever source are the clearest example of prohibited dividends. See *Kubik v. American Alliance, Inc.,* 54 N.Y.S.2d 764 (1945).

The question arises as to what a corporation can do with profits it generates as it cannot use the profits to pay dividends. Public benefit and religious corporations typically use profits to further their public, charitable or religious purposes. Mutual benefit corporations usually use profits to improve their facilities and services. In *Burton Potter Post No. 185, American Legion v. Epstein,* 219 N.Y.S.2d 224 (1961), a nonprofit club generated profits from its activities. The funds were used to improve the club facilities. The court found that the corporation was "not organized for pecuniary profit as long as it devotes its income to club purposes." Id. at 227.

While the members benefit from the use of funds for club purposes, that benefit is not a dividend and is not considered a distribution because the corporation is conferring benefits upon its members in conformity with its purposes.

A payment that is not derived from "any part of the income or profit of a corporation to its members, directors or officers" is not a distribution. Thus the return of an overcharge or the providing of services for which members have paid is not a distribution. Nor is the payment of reasonable compensation for services rendered.

SOUTH CAROLINA REPORTERS' COMMENTS

This provision has no counterpart in the former Chapter 31, Title 33 nor does it have any direct counterpart in the South Carolina Business Corporation Act.

South Carolina does have a non-Model Act definition of the term "distribution" found in Section 33–31–140 which reads:

Distribution means the direct or indirect transfer of assets or any part of the income or profit of a corporation, to its members, directors, or officers. The term does not include:
  (A) the payment of compensation in a reasonable amount to its members, directors, or officers for services rendered;
  (B) conferring benefits on its members in conformity with its purposes; or,
  (C) repayment of debt obligations in the normal and ordinary course of conducting activities.

<< SC ST § 33–31–1302 >>

Section 33–31–1302. Authorized distributions.

(a) A mutual benefit corporation may purchase its memberships if after the purchase is completed:
  (1) the corporation would be able to pay its debts as they become due in the usual course of its activities; and

(2) the corporation's total assets would at least equal the sum of its total liabilities.

(b) Corporations may make distributions upon dissolution in conformity with Sections 33–31–1401 through 33–31–1440 of this chapter.

(c) The board of directors may base a determination that a distribution is not prohibited under subsection (a) either on financial statements prepared on the basis of accounting practices and principals that are reasonable in the circumstances or on a fair valuation or other method that is reasonable in the circumstances.

OFFICIAL COMMENT

Section 13.02(a) is new, but is not inconsistent with section 26 of the prior version of the Model Nonprofit Corporation Act. It is based in part on section 6.40 of the Model Business Corporation Act. Section 13.02(b) is based upon and represents no substantive change from section 26.

1. Purchase of Memberships

Mutual benefit corporations may purchase their memberships if the two test of section 13.02(a) are met. Each test is designed to protect creditors.

The first test is that after the purchase of a membership the corporation "would be able to pay its debts as they become due in the usual course of its activities." Section 13.02(a)(1). A determination of whether this test is met requires the directors to form "a conclusion that known obligations of the corporation can reasonably be expected to be satisfied over the period of time that they will mature. It is not sufficient simply to measure current assets against current liabilities, or determine that the present estimated 'liquidation' value of the corporation's assets would produce sufficient funds to satisfy the corporation's existing liabilities." Official Comment to Section 6.40 of the Model Business Corporation Act.

In determining whether the first test is met the directors must exercise their duty of care under section 8.30, and are entitled to rely on information or reports they receive. See section 8.30(b).

The second test requires that after the purchase of a membership the corporation's "total assets would at least equal the sum of its total liabilities." Section 13.02(a)(2). If the corporation uses generally accepted accounting principles and the directors rely on corporate officers or accountants under section 8.30(b), it should be easy to determine if the second test is met. If generally accepted accounting principles are not used, the corporation should use practices and principles that are reasonable under the circumstances.

2. Payments Upon Dissolution

Section 13.02 allows public benefit, mutual benefit and religious corporations to make distributions to their members if the provisions of Chapter 14 are met.

Chapter 14 sets forth provisions governing the disposition of assets upon dissolution. Normally the members of a mutual benefit corporation will receive its "net worth" upon dissolution. Members of a public benefit or religious corporation normally will not share in its "net worth" upon dissolution. This is because they do not have any economic interest in its assets. However, under the very limited circumstances set forth in section 14.06, a public benefit or religious corporation may distribute its assets to its members if those members are recognized as exempt under section 501(c)(3) of the Internal Revenue Code or its members are themselves public benefit or religious corporations.

SOUTH CAROLINA REPORTERS' COMMENTS

1. New provision similar to Section 33–6–400

This section has no counterpart in the former Chapter 31, Title 33 but is similar to formerly applicable statute, Section 33–6–400(b) of the South Carolina Business Corporation Act. Both statutes prohibit distributions if the corporation thereafter would be unable to pay its debts or if the assets would be less that its liabilities.

2. Distributions do not include "contributions"

It should be noted that the term "distributions" does not include "conferring benefits on its members in conformity with its purposes." See Section 33–31–140. Therefore, if the corporation has members who themselves are nonprofit corporations, the "parent" corporation might be permitted to make a payment to one of its members. For example, if the Boy Scouts as a corporate entity is deemed to be a member of United Way, United Way could make a payment to the Boy Scouts.

3. Non–Model Act provision

Paragraph (c) is not a Model Act provision. However, identical language is found in the previously applicable statute, South Carolina Business Corporation Act, Section 33–6–400.

Article 14

Dissolution

<< SC ST § 33–31–1401 >>

Section 33–31–1401. Dissolution by incorporators.

(a) The incorporators of a corporation that has no members and that does not yet have initial directors, upon written consents signed by a majority of the incorporators, or through a vote of a majority of the incorporators at a meeting of the incorporators, subject to any approval required by the articles or bylaws, may dissolve the corporation by delivering to the Secretary of State articles of dissolution.

(b) The incorporators in approving dissolution shall adopt a plan of dissolution indicating to whom the assets owned or held by the corporation will be distributed after all creditors have been paid.

OFFICIAL COMMENT

Section 14.01 allows a majority of the incorporators or directors of corporations that have no members to dissolve the corporation by delivering articles of dissolution to the Secretary of State. [In South Carolina, this section only applies to incorporators.] See section 14.04 which specifies the information that must be contained in articles of dissolution.

When approving dissolution, the incorporators or directors must adopt a plan of dissolution indicating to whom the assets owned or held by the corporation will be distributed after creditors have been paid. This requirement allows corporate assets to be traced to the individuals or entities to whom they have been distributed. A record that is sufficient to satisfy this purpose will meet the requirements of section 14.01(c).

Section 14.01 requires a majority of the incorporators or directors to vote for dissolution, not just a majority of a quorum. This higher-than-normal vote is required because dissolution is a basic corporate change. The articles, bylaws or some other state law may require an even higher vote or approval of a third person or governmental entity. See sections 14.01(a) and 8.24.

As dissolution is a fundamental corporate change, subsection (b) requires the corporation to notify each director or incorporator of a meeting at which dissolution will be approved. The notice must state that dissolution will be considered at the meeting.

SOUTH CAROLINA REPORTERS' COMMENTS

1. Comparable statutes

This section is similar to Section 33–14–101 of the South Carolina Business Corporation Act which governed nonprofit corporations prior to the adoption of this South Carolina Nonprofit Corporation Act.

2. Differences from Model Act

Different from the Model Act, this section only provides for dissolution by incorporators. (The Model Act also permits directors to dissolve under this section.) Director dissolution in South Carolina is dealt with in Section 33–31–1402(b).

<< SC ST § 33–31–1402 >>

Section 33–31–1402. Dissolution by directors, members, and third persons.

(a) Unless this chapter, the articles, or bylaws require a greater vote or voting by class, dissolution is authorized if it is approved:

(1) by the board;

(2) by the members, if any, by two-thirds of the votes cast or a majority of the voting power, whichever is less; and

(3) in writing by any person whose approval is required by a provision of the articles authorized by Section 33–31–1030 for an amendment to the articles or bylaws.

(b) If the corporation does not have members or has no members entitled to vote on dissolution, dissolution must be approved by a vote of a majority of the directors in office at the time the transaction is approved. In addition, the corporation shall provide notice of any directors' meeting at which approval is to be obtained in accordance with Section 33–31–822(c). The notice also must state that the purpose, or one of the purposes, of the meeting is to consider dissolution of the corporation and contain or be accompanied by a copy or summary of the plan of dissolution.

(c) If the board seeks to have dissolution approved by the members at a membership meeting, the corporation shall give notice to its members of the proposed membership meeting in accordance with Section 33–31–705. The notice also must state that the purpose, or one of the purposes, of the meeting is to consider dissolving the corporation and contain or be accompanied by a copy or summary of the plan of dissolution.

(d) If the board seeks to have dissolution approved by the members by written consent or written ballot, the material soliciting the approval shall contain or be accompanied by a copy or summary of the plan of dissolution.

(e) The plan of dissolution shall indicate to whom the assets owned or held by the corporation will be distributed after all creditors have been paid.

OFFICIAL COMMENT

Section 14.02 allows the board to propose and the members to authorize dissolution of a nonprofit corporation. The board in proposing dissolution must submit a plan of dissolution to the members. The plan must indicate to whom the assets owned or held by the corporation will be distributed after creditors have been paid. If the assets will be distributed to the members, it should be sufficient to so indicate without setting forth the name of each member. If the board has determined that assets will be distributed to other organizations and the names of the organizations are known, the names should be specified. If the board has discretion in distributing the assets, the board should indicate that the assets shall be distributed to such individuals and entities as it subsequently decides.

In seeking member approval, the board must give written notice of a membership meeting pursuant to section 7.05 and indicate that dissolution will be considered at the meeting. In the alternative, the board may seek member approval by written consent pursuant to section 7.04 or written ballot pursuant to section 7.08. If approval by written consent or written ballot is sought, the material soliciting the approval must contain or be accompanied by a copy or summary of the plan of dissolution.

Approval of dissolution at a membership meeting normally requires two-thirds of the votes cast or a majority of the voting power, whichever is less. The articles, bylaws, board or members may require a greater vote or voting by class. If approval is sought by written consent pursuant to section 7.04 or written ballot pursuant to section 7.08, any additional requirements of those sections must be met.

Public benefit corporations must give the Attorney General the written notice required by section 14.03(a). The Attorney General is authorized to take appropriate action to protect the public interest and assets held in trust. See section 1.70.

SOUTH CAROLINA REPORTERS' COMMENTS

1. Comparable sections

This provision is comparable to both Sections 33–31–1103 (dealing with mergers of nonprofit corporations) and 33–31–1202 (dealing with sale of assets). The similar provision in the South Carolina Business Corporation Act is Section 33–14–102.

2. Non–Model Act provisions

This is the only section which provides for directors by themselves to dissolve a corporation. (Section 14.01 of the Model Act also includes director dissolution.) This section notes that the corporation might have members who are not entitled to vote on dissolution. If so, the directors dissolve the corporation. This is left unclear in the Model Act. The shareholders or directors may condition their approval on a higher percentage of votes but only if so provided in the articles or bylaws.

The Model Act also includes a provision which permits both the board and members to condition this approval on the receipt of a higher vote or any other basis. Although this language does not appear in this South Carolina section, the board or members could reserve the power to condition this approval on the receipt of a higher vote, but must do so in the articles or bylaws. This change is in keeping with the changes to Sections 33–31–1003 and 33–31–1202. It was determined that all voting modifications belong in the articles or bylaws. In increasing the vote required of either directors or members, consideration also must be given to Sections 33–31–1023 and 33–31–1024. These provisions require that before raising the vote required to adopt certain issues, the resolution to increase the vote must pass by the same greater quorum or vote.

<< SC ST § 33–31–1403 >>

Section 33–31–1403. Notices to the Attorney General.

(a) A public benefit or religious corporation shall give the Attorney General written notice that it intends to dissolve at or before the time it delivers articles of dissolution to the Secretary of State. The notice shall include a copy or summary of the plan of dissolution.

(b) No assets may be transferred or conveyed by a public benefit or religious corporation as part of the dissolution process until twenty days after it has given the written notice required by subsection (a) to the Attorney General or until the Attorney General has consented in writing to the dissolution, or indicated in writing that he will take no action in respect to the transfer or conveyance, whichever is earlier.

(c) When all or substantially all of the assets of a public benefit corporation have been transferred or conveyed following approval of dissolution, the board shall deliver to the Attorney General a list showing those, other than creditors, to whom the assets were transferred or conveyed. The list shall indicate the addresses of each person, other than creditors, who received assets and indicate what assets each received.

OFFICIAL COMMENT

Section 14.03 requires public benefit and religious corporations to give the Attorney General written notice that they intend to dissolve at the same time as or before delivering articles of dissolution to the Secretary of State. The notice must include a copy or summary of the plan of dissolution. The corporation may not transfer any assets as part of the dissolution process until twenty days after it has given this notice to the Attorney General. The Attorney General may waive this twenty-day period by consenting in writing to the dissolution or indicating in writing that he or she will take no action in respect to the transfer. The prohibition on transfers applies only to transfers made as part of the dissolution process. Transfers in the regular course of a corporation's activities are not affected by the notice requirement of section 14.03.

Subsection (c) requires the board of a public benefit corporation to deliver to the Attorney General a list of those to whom the corporate assets have been transferred. The list must show the name and address of each person (other than creditors) who received assets and state what assets each received. The list must be given to the Attorney General when substantially all of the assets have been transferred. This list provides a record should there be a question as to the propriety of any transfer. No such requirement is imposed on mutual benefit or religious corporations.

SOUTH CAROLINA REPORTERS' COMMENTS

This section has no counterpart in the former nonprofit statutes and no counterpart in the South Carolina Business Corporation Act.

In keeping with the provisions dealing with sale of assets, this section requires even religious corporations (along with public benefit corporations) to notify the Attorney General before dissolving. Consideration was given as to whether twenty days was too long or too short. It was determined that this was an appropriate time.

<< SC ST § 33–31–1404 >>

Section 33–31–1404. Articles of dissolution.

(a) At any time after dissolution is authorized, the corporation may dissolve by delivering to the Secretary of State articles of dissolution setting forth:

(1) the name of the corporation;

(2) the date dissolution was authorized;

(3) a statement that dissolution was approved by a sufficient vote of the board, or incorporators if dissolution is pursuant to Section 33–31–1401;

(4) if approval of members was not required, a statement to that effect and a statement that dissolution was approved by a sufficient vote of the board of directors or incorporators;

(5) if approval by members was required:

(i) the designation, number of memberships outstanding, number of votes entitled to be cast by each class entitled to vote separately on dissolution, and number of votes of each class indisputably voting on dissolution; and

(ii) either the total number of votes cast for and against dissolution by each class entitled to vote separately on dissolution or the total number of undisputed votes cast for dissolution by each class and a statement that the number cast for dissolution by each class was sufficient for approval by that class;

(6) if approval of dissolution by some person or persons other than the members, the board, or the incorporators is required pursuant to Section 33–31–1402(a)(3), a statement that the approval was obtained; and

(7) if the corporation is a public benefit or religious corporation, that the notice to the Attorney General required by Section 33–31–1403(a) has been given.

(b) A corporation is dissolved upon the effective date of its articles of dissolution.

OFFICIAL COMMENT

Unless the articles of dissolution specify a later effective date a corporation is dissolved upon filing articles of dissolution with the Secretary of State. Thereafter the corporation is a "dissolved corporation," although its corporate existence continues for purposes of winding up under section 14.06.

The articles of dissolution may be filed at any time after dissolution is authorized. A corporation may file articles of dissolution immediately after dissolution is authorized so that dissolution becomes a matter of public record. Alternatively, it may wait and file articles at or near the end of the winding up process. After dissolution is authorized, the corporation may commence the winding up process even though it has not filed the articles of dissolution.

SOUTH CAROLINA REPORTERS' COMMENTS

1. Comparable provisions

This section is similar to the formerly applicable statute, Section 33–14–103 of the South Carolina Business Corporation Act.

2. Non–Model Act provisions

Subsection "(a)(3)" was reworded to define the contents of the articles of dissolution if dissolution is pursuant to Section 33–31–1401, dissolution by the incorporators.

3. Delayed effective date

The articles of dissolution are permitted to provide a delayed effective date. This is provided in Section 33–31–123.

<< SC ST § 33–31–1405 >>

Section 33–31–1405. Revocation of dissolution.

(a) A corporation may revoke its dissolution within one hundred twenty days of its effective date.

(b) Revocation of dissolution must be authorized in the same manner as the dissolution was authorized unless that authorization permitted revocation by action of the board of directors alone, in which event the board of directors may revoke the dissolution without action by the members or any other person.

(c) After the revocation of dissolution is authorized, the corporation may revoke the dissolution by delivering to the Secretary of State for filing articles of revocation of dissolution, together with a copy of its articles of dissolution, that set forth:

(1) the name of the corporation;

(2) the effective date of the dissolution that was revoked;

(3) the date that the revocation of dissolution was authorized;

(4) if the corporation's board of directors, or incorporators, revoked the dissolution, a statement to that effect;

(5) if the corporation's board of directors revoked a dissolution authorized by the members alone or in conjunction with another person, a statement that revocation was permitted by action by the board of directors alone pursuant to that authorization; and

(6) if member or third person action was required to revoke the dissolution, the information required by Section 33–31–1404(a)(5) and (6).

(d) Revocation of dissolution is effective upon the effective date of the articles of revocation of dissolution.

(e) When the revocation of dissolution is effective, it relates back to and takes effect as of the effective date of the dissolution and the corporation resumes carrying on its activities as if dissolution had never occurred.

OFFICIAL COMMENT

Section 14.05 allows the corporation to revoke dissolution within 120 days after its effective date. Normally revocation must be authorized in the same manner as the dissolution was authorized. Consequently if member or third person approval was required for dissolution, member or third person approval is required for revocation. Where, however, those authorizing the

dissolution authorize the directors acting alone to revoke the dissolution, the directors may revoke the dissolution without the consent of any other person.

  Dissolution is revoked when the corporation delivers articles of revocation of dissolution together with a copy of its articles of dissolution to the Secretary of State. The winding up process ceases upon filing the articles of revocation of dissolution; the corporation is no longer a "dissolved corporation," and normal corporate activities recommence.

SOUTH CAROLINA REPORTERS' COMMENTS

  This section is very similar to Section 33–14–104 of the South Carolina Business Corporation Act. The South Carolina Business Corporation Act requires reporting the votes of any voting group, and this nonprofit statute requires disclosure as to the approval required of any third party.

<< SC ST § 33–31–1406 >>

Section 33–31–1406. Effect of dissolution.

  (a) A dissolved corporation continues its corporate existence but may not carry on any activities except those appropriate to wind up and liquidate its affairs, including:

  (1) preserving and protecting its assets and minimizing its liabilities;

  (2) discharging or making provision for discharging its liabilities and obligations;

  (3) disposing of its properties that will not be distributed in kind;

  (4) returning, transferring, or conveying assets held by the corporation upon a condition requiring return, transfer, or conveyance, which condition occurs by reason of the dissolution, in accordance with such condition;

  (5) transferring, subject to any contractual or legal requirements, its assets as provided in or authorized by its articles of incorporation or bylaws;

  (6) if the corporation is a public benefit or religious corporation, and no provision has been made in its articles or bylaws for distribution of assets on dissolution, transferring, subject to any contractual or legal requirement, its assets:

    (i) to one or more entities described in Section 501(c)(3) of the Internal Revenue Code, to the United States, to a state, or to a political subdivision of the United States or a state, for a public purpose, or pursuant to court order to another organization to be used in such manner as in the judgment of the court will accomplish the general purposes for which the dissolved corporation was organized, for one or more exempt purposes; or

    (ii) if the dissolved corporation is not described in Section 501(c)(3) of the Internal Revenue Code, to one or more public benefit or religious corporations or to one or more of the entities described in (i) above;

  (7) if the corporation is a mutual benefit corporation and no provision has been made in its articles or bylaws for distribution of assets on dissolution, transferring its assets to its members or, if it has no members, to those persons whom the corporation holds itself out as benefiting or serving; and

  (8) doing every other act necessary to wind up and liquidate its assets and affairs.

  (b) Dissolution of a corporation does not:

  (1) transfer title to the corporation's property;

  (2) subject its directors or officers to standards of conduct different from those prescribed in Sections 33–31–801 through 33–31–858;

  (3) change quorum or voting requirements for its board or members; change provisions for selection, resignation, or removal of its directors or officers or both; or change provisions for amending its bylaws;

  (4) prevent commencement of a proceeding by or against the corporation in its corporate name;

  (5) abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution; or

  (6) terminate the authority of the registered agent.

OFFICIAL COMMENT

  Section 14.06 spells out the effect of filing articles of dissolution. A corporation is a "dissolved corporation" after it has filed articles of dissolution. It continues its existence, but may only carry on activities necessary or desirable to wind up and liquidate its affairs. Subsection (a) spells out some, but not all, of the activities in which a dissolved corporation may engage.

NONPROFIT CORPORATIONS, 1994 South Carolina Laws Act 384 (H.B. 4180)

In general, the corporation is charged with preserving and protecting its assets and discharging or making provision for discharging its liabilities and obligations. In some instances it may not be possible or desirable to discharge obligations immediately. For example, if a debt is due over a period of time it may be desirable to set up a fund that will pay the debt as it matures. When all corporate debts and obligations have been discharged or adequately provided for, a nonprofit corporation may dispose of its remaining assets in an orderly fashion.

If it holds assets on a condition requiring their return, the assets must be returned pursuant to the condition. For example, some charities hold assets that they may use so long as they operate. Upon dissolution these charities may have to return the assets to their donor or transfer the assets to another charity.

Where a corporation has an article or bylaw specifying the distribution of assets upon dissolution, that article or bylaw should be followed subject to any legal or contractual limitations.

All nonprofit corporations formed under the present version of the Model Act are required to indicate in their articles how they assets will be distributed upon dissolution. See section 2.02(a)(7). However, the articles may simply authorize the board to distribute the assets to an organization recognized as exempt under section 501(c)(3) of the Internal Revenue Code. The articles may not specify the particular organization that is to receive the assets, but leave the ultimate decision to the discretion of the board. The articles and bylaws of nonprofit organizations formed before the present version of the Model Act may not specify the disposition of assets upon dissolution.

Where there is no article or bylaw provision specifying to whom assets should be distributed upon dissolution, section 14.06 distinguishes among public benefit, mutual benefit and religious corporations. For public benefit and religious corporations section 14.06(a)(6) requires assets to be distributed to one or more persons described in section 501(c)(3) of the Internal Revenue Code [or a governmental entity] or, if the dissolved corporation is not described in section 501(c)(3), to one or more public benefit or religious corporations. In no event may the assets be distributed to members of a public benefit or religious corporation unless they are entities authorized to receive assets by section 14.06. They might, for example, be recognized as exempt under section 501(c)(3) of the Internal Revenue Code. All distributions are subject to contractual and other legal requirements upon the corporation.

The limitations on distributions by public benefit and religious corporations are essential elements of the nondistribution constraint. It assures that the assets of a public benefit or religious corporation cannot be accumulated and then distributed for the private benefit of members upon the corporation's dissolution.

While members of a mutual benefit corporation are not entitled to distributions while their corporation is operating, they may receive corporate assets upon dissolution. Consequently, if no provision has been made in a mutual benefit corporation's articles or bylaws for distribution of assets on dissolution, section 14.06(a)(7) provides that the assets shall be distributed to its members. (Contractual or other legal requirements may prevent the members from receiving the assets.) In those rare instances in which the articles or bylaws do not specify the individuals to whom the assets of a mutual benefit corporation will be distributed and the mutual benefit corporation has no members, the assets should be distributed to those persons whom the corporation holds itself out as benefitting or serving. While this may present some practical problems, these problems can be avoided by amending the articles or bylaws prior to dissolution to specify the individuals or entities to whom the assets will be distributed upon dissolution. The directors must meet their duties under sections 8.30 and 8.31 in adopting any such article or bylaw provision.

As a result of section 14.06(b) the rights, powers and obligations of the directors and members of a dissolved corporation do not change during the winding up process and suits involving the corporation are not affected by the dissolution.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is only somewhat similar to the formerly applicable statute, Section 33–14–105 of the South Carolina Business Corporation Act.

If a corporation intends to be a public benefit or religious corporation that comes within the exemptions provided by Section 501(c)(3) of the Internal Revenue Code, it must make provision in its governance documents, normally in its articles or bylaws, that upon dissolution its assets will be distributed for one or more exempt purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code, or to the federal, state, or local government, for a public purpose.

The class of entities to which assets may be distributed on dissolution has been expanded to negate any implication in Section 33–31–1406 that only Section 501(c)(3) organizations are eligible recipients of liquidating distributions. An organization wishing to be recognized as tax exempt should include specific provisions in its articles to meet the requirements of tax exemption. See South Carolina Reporters' Comment 4 to Section 33–31–202.

<< SC ST § 33–31–1407 >>

Section 33–31–1407. Known claims against dissolved corporation.

 (a) A dissolved corporation may dispose of the known claims against it by following the procedure described in this section.

 (b) The dissolved corporation shall notify its known claimants in writing of the dissolution at any time after its effective date. The written notice must:

   (1) describe information that must be included in a claim;

   (2) provide a mailing address where a claim may be sent;

   (3) state the deadline, which may not be fewer than one hundred twenty days from the effective date of the written notice, by which the dissolved corporation must receive the claim; and

   (4) state that the claim will be barred if not received by the deadline.

 (c) A claim against the dissolved corporation is barred:

   (1) if a claimant who was given written notice under subsection (b) does not deliver the claim to the dissolved corporation by the deadline;

   (2) if a claimant whose claim was rejected by the dissolved corporation does not commence a proceeding to enforce the claim within ninety days from the effective date of the rejection notice and the rejection notice stated that a proceeding to enforce the claim must be commenced within ninety days.

 (d) For purposes of this section 'claim' does not include a contingent liability or a claim based on an event occurring after the effective date of dissolution.

OFFICIAL COMMENT

 Section 14.07 and 14.08 provide a new and simplified system for handling known and unknown claims against a dissolved corporation, including claims based on events that occur after the dissolution of the corporation. Section 14.07 deals solely with known claims while section 14.08 deals with unknown or subsequently arising claims. A claim is a 'known' claim even if this is unliquidated (see section 14.07(d)); a claim that is contingent or has not matured so that there is no immediate right to bring suit is not a 'known' claim.

 Known claims are handled in section 14.07 through a process of written notice to claimants; the written notice must contain the information described in section 14.07(b). Section 14.07(c) then provides fixed deadlines by which claims are barred under various circumstances, as follows:

 (1) If a claimant receives written notice satisfying section 14.07(b) but fails to file the claim by the deadline specified by the corporation, the claim is barred by section 14.07(c)(1).

 (2) If a claimant receives written notice satisfying section 14.07(b) and files the claim as required:

   (i) if the corporation rejects the claim, the claimant must commence a proceeding to enforce the claim within the ninety days of the rejection or the claim is barred by section 14.07(c)(2); or

   (ii) if the corporation does not act on the claim or fails to notify the claimant of the rejection, the claimant is not barred by section 14.07(c) until the corporation notifies the claimant.

 (3) If the corporation publishes notice under section 14.08, a claimant who was not notified in writing is barred unless he commences a proceeding within five years after publication of the notice.

 (4) If the corporation does not publish notice, a claimant who was not notified in writing is not barred by section 14.07(c) from pursuing his claim.

 These principles, it should be emphasized, do not lengthen statutes of limitation applicable under general state law. Thus claims that are not barred under the foregoing rule—for example, if the corporation does not act on a claim—will nevertheless be subject to the general statute of limitations applicable to claims of that type. Official Comment to Section 14.06 of the Model Business Corporation Act.

SOUTH CAROLINA REPORTERS' COMMENTS

 1. Similar provisions

 This section is identical with Section 33–14–106 of the South Carolina Business Corporation Act. This section governed nonprofit corporations prior to the adoption of this South Carolina Nonprofit Corporation Act.

2. Non–Model Act provisions

This South Carolina provision notes that before a claim can be barred for failure of the claimant to bring a law suit, the notice to the claimant must warn the claimant that the lawsuit must be filed. This identical language appears in the South Carolina Business Corporation Act, Section 33–14–106(c)(2).

3. Claims against members

If a corporation does not pay, or properly make provision for paying the known creditors whose claims are properly presented, the individual members are liable for such claims up to the amount of the distribution they receive. Such a distribution would be a wrongful distribution in violation of Section 33–31–833 and as provided in Section 33–31–833, through subrogation to the wrongful director's rights, the creditor may recover from "each person who received ... [the] distribution for the amount of the distribution whether or not the person receiving the distribution knew it was made in violation of this Act." It is therefore unnecessary to have in this Section 33–31–1407 language similar to Section 33–31–1408(d) and no implication should be drawn that a "known creditor" is in any manner barred from going against the members if the corporation is unable to pay simply because this section does not include wording similar to Section 33–31–1408(d). In fact, the "known creditor" would not have to proceed "pro rata" against all the members which is required of "unknown" creditors. The "known creditor" could satisfy his claim from only one member. All of this, of course, assumes that the claim cannot be satisfied from the corporation or the wrongfully distributing directors.

<< SC ST § 33–31–1408 >>

Section 33–31–1408. Unknown claims against dissolved corporation.

(a) A dissolved corporation also may publish notice of its dissolution and request that persons with claims against the corporation present them in accordance with the notice.

(b) The notice must:

  (1) be published one time in a newspaper of general circulation in the county where the dissolved corporation's principal office, or, if none in this State, its registered office, is or was last located;

  (2) describe the information that must be included in a claim and provide a mailing address where the claim may be sent; and

  (3) state that a claim against the corporation will be barred unless a proceeding to enforce the claim is commenced within two years after publication of the notice.

(c) If the dissolved corporation publishes a newspaper notice in accordance with subsection (b), the claim of each of the following claimants is barred unless the claimant commences a proceeding to enforce the claim against the dissolved corporation within two years after the publication date of the newspaper notice:

  (1) a claimant who did not receive written notice under Section 33–31–1407;

  (2) a claimant whose claim was timely sent to the dissolved corporation but not acted on; and

  (3) a claimant whose claim is contingent or based on an event occurring after the effective date of dissolution.

(d) A claim may be enforced under this section:

  (1) against the dissolved corporation, to the extent of its undistributed assets; or

  (2) if the assets have been distributed in liquidation, against any person, other than a creditor of the corporation, to whom the corporation distributed its property to the extent of the distributee's pro rata share of the claim or the corporate assets distributed to such person in liquidation, whichever is less, but the distributee's total liability for all claims under this section may not exceed the total amount of assets distributed to the distributee.

OFFICIAL COMMENT

"Earlier versions of the Model Act did not recognize the serious problem created by possible claims that might arise long after the dissolution process was completed and the corporate assets distributed to [members] ...

The solution adopted in section 14.08 is to continue the liability of a dissolved corporation for subsequent claims for a period of five years after it publishes notice of dissolution. It is recognized that a five year cut-off is itself arbitrary, but it is believed that the great bulk of post dissolution claims will arise during this period. This provision is therefore believed to be a reasonable compromise between the competing considerations of providing a remedy to injured plaintiffs and providing a period of repose after which dissolved corporations may distribute remaining assets free of all claims....

Directors must generally discharge or make provisions for discharging all of the corporation's liabilities before distributing the remaining assets.... But section 14.08 does not contemplate that liquidating distributions.... will be deferred until all possible claims are barred under section 14.08. Many claims covered by this section are of a type for which provision may be made by the purchase of insurance or by the setting aside of a portion of the assets, thereby permitting prompt distributions in liquidation. Claimants, of course, may always have recourse to the remaining assets of the dissolved corporation. See section 14.08. Further, where unexpected claims arise after distributions have been made to [persons other than creditors] in liquidation, section 14.08(2) authorizes recovery against the [persons] receiving the earlier distributions. The recovery, however, is limited to the smaller of the recipient [member's] pro rata share of the claim or the total amount of assets received as liquidating distributions by the [member] from the corporation. The provision ensures that claimants seeking to recover distributions from [members] will try to recover from the entire class of [members] rather than concentrating only on the larger [members]...." Official Comment to section 14.07 of the Model Business Corporation Act.

SOUTH CAROLINA REPORTERS' COMMENTS

  This section is very similar to Section 33–14–107 of the South Carolina Business Corporation Act. However, the Business Act does not bar a contingent claim or a claim occurring after dissolution even if newspaper notice is given and no filing is made within two years. These are barred under this nonprofit provision. Different from the Model Act, all filings must be made within two years rather than five years. There was no comparable provision to this section in the former nonprofit corporate statutes.

<< SC ST § 33–31–1420 >>

Section 33–31–1420. Grounds for administrative dissolution.

  The Secretary of State may commence a proceeding under Section 33–31–1421 to administratively dissolve a corporation if the:
   (1) corporation does not deliver a report of change of principal office when due;
   (2) corporation is without a registered agent or registered office in this State;
   (3) corporation does not notify the Secretary of State that its registered agent or registered office has been changed, that its registered agent has resigned, or that its registered office has been discontinued;
   (4) corporation's period of duration, if any, stated in its articles of incorporation expires; or
   (5) corporation has been adjudicated bankrupt pursuant to Chapter 7 of the United States Bankruptcy Code.

OFFICIAL COMMENT

  Section 14.20 sets forth the limited circumstances in which a nonprofit organization may be dissolved administratively. The Secretary of State is authorized but is not required to commence dissolution proceedings for the reasons set forth in section 14.20. The Secretary of State may commence the proceedings immediately or may give additional notices or time to the offending corporation. An administrative dissolution saves the time, money, and effort that might otherwise be required for a judicial dissolution. This is particularly important in the nonprofit area as numerous corporations with insignificant funds may fade into oblivion without any responsible person following the formalities required for a voluntary dissolution. The notice provisions of section 14.21 are designed to give the offending corporation an opportunity to avoid dissolution. Where, however, the corporation has been administratively dissolved it still has two years to be reinstated. See section 14.22.

  When a corporation has been administratively dissolved, its corporate name is available for use by other corporations.

SOUTH CAROLINA REPORTERS' COMMENTS

  1. New section is comparable to Section 33–14–200

  This section is very similar to Section 33–14–200 of the South Carolina Business Corporation Act. Although the South Carolina Business Corporation Act requires the Secretary of State to commence dissolution if the corporation has failed to take the required actions, this nonprofit section gives the Secretary of State discretion. It was determined that nonprofit corporations may often inadvertently overlook various filing requirements and it would be preferable to grant more discretion on the part of the Secretary of State to allow the nonprofit corporations time to correct any errors.

  Business corporations which fail to file a tax return or pay taxes due may also be administratively dissolved. Since nonprofit corporations do not pay income or franchise taxes there is no provision to dissolve a nonprofit corporation for failing to pay a tax or file a return.

2. Differences from Model Act

In keeping with the South Carolina Business Corporation Act, immediately upon the occurrence of a disqualifying act, e.g., the failure to have a statutory agent, the Secretary of State may begin the process of administratively dissolving the corporation. The Model Act grants various grace periods not found in this South Carolina provision. Paragraph (a)(5) is not a Model Act provision and permits the Secretary of State to dissolve a corporation which pursuant to Chapter 7 has been adjudicated as bankrupt. Failure to file a tax return is not grounds for dissolution.

<< SC ST § 33–31–1421 >>

Section 33–31–1421. Procedure for and effect of administrative dissolution.

  (a) Upon determining that one or more grounds exist under Section 33–31–1420(a) for dissolving a corporation, the Secretary of State may serve the corporation with written notice of that determination under Section 33–31–504, and in the case of a public benefit corporation shall also notify the Attorney General in writing.

  (b) If the corporation does not correct each ground for dissolution or demonstrate to the reasonable satisfaction of the Secretary of State that each ground determined by the Secretary of State does not exist within at least sixty days after service of the notice is perfected under Section 33–31–504, the Secretary of State shall administratively dissolve the corporation by signing a certificate of dissolution that recites the ground or grounds for dissolution and its effective date. The Secretary of State shall file the original of the certificate and serve a copy on the corporation under Section 33–31–504, and in the case of a public benefit or religious corporation shall notify the Attorney General in writing.

  (c) A corporation administratively dissolved continues its corporate existence but may not carry on any activities except those necessary to wind up and liquidate its affairs under Section 33–31–1406 and notify its claimants under Sections 33–31–1407 and 33–31–1408.

  (d) The administrative dissolution of a corporation does not terminate the authority of its registered agent.

OFFICIAL COMMENT

  Section 14.21 requires the Secretary of State to give corporations 60 days' notice before it is administratively dissolved for one of the reasons set forth in section 14.20. During this time the corporation has an opportunity to correct the failure and avoid administrative dissolution. if the corporation does not respond within the 60–day period, the Secretary of State may dissolve the corporation. The corporation will be sent notice of the dissolution and have an opportunity to reinstate its corporate status within two years after the effective date of the dissolution. See section 14.22.

SOUTH CAROLINA REPORTERS' COMMENTS

  This section is comparable to the formerly applicable statute, Section 33–14–210 of the South Carolina Business Corporation Act. However, different from the Business Corporation Act, (1) the Secretary of State under this section has discretion whether to begin administrative dissolution procedures, and (2) a nonprofit corporation will not be dissolved for failing to pay an income or franchise tax or failing to file a return since nonprofit corporations do not pay an income or franchise tax. Different from the Model Act is the requirement in subsection (b) that if the corporation does not cure the defect once formal administrative proceedings have been commenced, that the Secretary of State shall dissolve the corporation. The Model Act grants additional discretion to the Secretary of State whether to complete the once-started proceedings.

<< SC ST § 33–31–1422 >>

Section 33–31–1422. Reinstatement following administrative dissolution.

  (a) A corporation administratively dissolved under Section 33–31–1421 may apply to the Secretary of State for reinstatement within two years after the effective date of dissolution. The application must:
  (1) recite the name of the corporation and the effective date of its administrative dissolution;
  (2) state that the ground or grounds for dissolution either did not exist or have been eliminated;
  (3) state that the corporation's name satisfies the requirements of Section 33–31–401.

(b) If the Secretary of State determines that the application contains the information required by subsection (a) and that the information is correct, the Secretary of State shall cancel the certificate of dissolution and prepare a certificate of reinstatement reciting that determination and the effective date of reinstatement, file the original of the certificate, and serve a copy on the corporation under Section 33–31–504.

(c) When reinstatement is effective, it relates back to and takes effect as of the effective date of the administrative dissolution and the corporation shall resume carrying on its activities as if the administrative dissolution had never occurred.

OFFICIAL COMMENT

Section 14.22 provides a two-year period after the effective date of an administrative dissolution to apply to the Secretary of State for reinstatement. No court proceeding is needed. The Secretary of State may cancel the dissolution and prepare a certificate of reinstatement that relates back to the effective date of the administrative dissolution. The Secretary of State should issue the certificate of reinstatement if the application for reinstatement meets the requirements set forth in section 14.22. If the Secretary of State refuses to reinstate the corporation an appeal may be taken under section 14.23.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is essentially identical to the South Carolina Business Corporation Act, Section 33–14–220. Therefore, there has been no change in the law since this Business Corporation Act provision governed nonprofit corporations prior to the adoption of this South Carolina Nonprofit Corporation Act.

<< SC ST § 33–31–1423 >>

Section 33–31–1423. Appeal from denial of reinstatement.

(a) The Secretary of State, upon denying a corporation's application for reinstatement following administrative dissolution, shall serve the corporation by registered or certified mail addressed to its registered agent at its registered office or to the office of the secretary of the corporation at its principal office with a written notice that explains the reason or reasons for denial.

(b) The corporation may appeal the denial of reinstatement to the court of common pleas for Richland County within thirty days after service of the notice of denial is perfected. The corporation appeals by petitioning the court to set aside the dissolution and attaching to the petition copies of the Secretary of State's certificate of dissolution, the corporation's application for reinstatement, and the Secretary of State's notice of denial.

(c) The court may summarily order the Secretary of State to reinstate the dissolved corporation or may take other action the court considers appropriate.

(d) The court's final decision may be appealed as in other civil proceedings.

OFFICIAL COMMENT

Section 14.23 allows a corporation that has been administratively dissolved to appeal the Secretary of State's denial of reinstatement. States adopting this Model Act should indicate which court will have jurisdiction over the appeal, which party has the burden of proof on appeal, and a standard for judicial review. See Official Comment to Section 1.26.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is similar to Section 33–14–230 of the South Carolina Business Corporation Act, but different from the Model Nonprofit Act. This section gives the corporation only thirty days (and not ninety days) within which to file an appeal.

<< SC ST § 33–31–1430 >>

Section 33–31–1430. Grounds for judicial dissolution.

(a) The court of common pleas may dissolve a corporation:

(1) in a proceeding by the Attorney General if it is established that:

(i) the corporation obtained its articles of incorporation through fraud;

(ii) the corporation has continued to exceed or abuse the authority conferred upon it by law;

(iii) the corporation is a public benefit corporation and the assets are being misapplied or wasted;

(iv) the corporation is a public benefit corporation and it is no longer able to carry out its purposes;

(v) the corporation has improperly solicited money or has fraudulently used the money solicited; or

(vi) has carried on, conducted, or transacted its business or affairs in a persistently fraudulent or illegal manner.

The enumeration of these grounds for dissolution, (i) through (vi), shall not exclude actions or special proceedings by the Attorney General or other state official for the dissolution of a corporation for other causes as provided in this chapter or in any other statute of this State;

(2) except as provided in the articles or bylaws of a religious corporation, in a proceeding by fifty members or members holding five percent of the voting power, whichever is less, or by a director or any person specified in the articles, if it is established that:

(i) the directors are deadlocked in the management of the corporate affairs and the members, if any, are unable to break the deadlock;

(ii) the directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent, or unfairly prejudicial either to the corporation or to any member, whether in his capacity as a member, director, or officer of the corporation;

(iii) the members are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have, or would otherwise have, expired;

(iv) the corporate assets are being misapplied or wasted;

(v) the corporation is a public benefit or religious corporation and is no longer able to carry out its purposes;

(vi) the corporation has abandoned its business and has failed within a reasonable time to dissolve, to liquidate its affairs, or to distribute its remaining property among its members; or

(vii) the corporation's period of duration stated in its articles of incorporation has expired;

(3) in a proceeding by a creditor if it is established that:

(i) the creditor's claim has been reduced to judgment, the execution on the judgment returned unsatisfied, and the corporation is insolvent; or

(ii) the corporation has admitted in writing that the creditor's claim is due and owing and the corporation is insolvent;

(4) in a proceeding by the corporation to have its voluntary dissolution continued under court supervision.

(b) Before dissolving a corporation the court shall consider whether:

(1) there are reasonable alternatives to dissolution;

(2) dissolution is in the public interest, if the corporation is a public benefit corporation; and

(3) dissolution is the best way of protecting the interests of members, if the corporation is a mutual benefit corporation.

The court may order any other form of relief which it deems proper in the circumstances.


OFFICIAL COMMENT

Section 14.30 specifies the people who can seek a court-ordered dissolution and the grounds for dissolution. A court has wide discretion in determining whether dissolution will be granted and may refuse to order dissolution even if it finds that the grounds for dissolution are present. Before ordering dissolution a court must consider the matters set forth in subdivision (b).

1. Involuntary Dissolution by State

Section 14.30 preserves the right of the State to file a proceeding to involuntarily dissolve a corporation. The Attorney General has the duty of protecting the public interest. This duty is particularly important in regard to public benefit corporations. The Attorney General must determine whether there is unfairness or fraud in regard to the public, whether the corporation is carrying out its legitimate purposes, or whether assets are being diverted to the personal benefit of officers, directors, members, or controlling persons.

Members of mutual benefit corporations are more likely to protect their own interests than members of public benefit corporations. In addition, mutual benefit corporations do not hold themselves out as operating for the public good. Therefore, the Attorney General's oversight role in regard to these corporations is less than in regard to public benefit corporations. Consequently, subsection (a) draws a distinction between public benefit and mutual benefit corporations and gives the Attorney General and courts greater leeway in regard to public benefit corporations.

The Attorney General can use subdivision (a)(1) to test the legality of any actions the corporation has taken or intends to take. This duty has been shifted to the Attorney General and away from the Secretary of State who has limited authority in regard to filing articles. See Official Comment to Section 1.25.

2. Involuntary Dissolution by Members, a Director, or a Person Specified in a Corporation's Articles

Subdivision (a)(2) allows fifty members or members who hold 5% of the voting power, whichever is less, a director, or any person specified in the corporation's articles to bring a proceeding for involuntary dissolution of the corporation. The articles or bylaws of a religious corporation may prevent members or directors from bringing an action to dissolve the corporation. Subdivision (a)(2) sets forth the grounds upon which a court may order dissolution. In determining whether to grant dissolution a court should act with caution. In the case of public benefit corporations the primary matter of concern is the public or charitable purposes of the corporation. In the case of mutual benefit corporations the main consideration is whether the corporation can be operated for the benefit of its members. Courts should be particularly cautious in the case of religious corporations not to order dissolution if there is an appropriate alternative.

3. Dissolution by Creditors

Creditors can bring a proceeding for dissolution only if the grounds specified in subdivision (a)(3) have been met. Creditors may seek dissolution as an alternative to a federal bankruptcy proceeding.

4. Dissolution by Corporation

A corporation that has commenced a voluntary dissolution proceeding may seek protection in a court-supervised dissolution proceeding under subdivision (a)(4). The directors of the corporation may be concerned with personal liability or may face numerous suits or other actions that should be dealt with in one court-supervised dissolution proceeding.

5. Factors to Be Considered by Court Before Ordering Dissolution

Subsection (b) sets forth matters that a court should consider before ordering dissolution. As dissolution is a remedy of the last resort, a court should consider reasonable alternatives. For example, if the directors are misapplying or wasting corporate assets, the court may give the directors an opportunity to resign or, if the requirements of section 8.10 have been met, may remove the offending directors. In the case of a public benefit corporation the court should attempt to fashion a remedy that is in the public interest. In the case of a mutual benefit corporation the remedy should be the best way of protecting the interests of members.


SOUTH CAROLINA REPORTERS' COMMENTS

This section contains a number of non-Model Act provisions. For example, subsections (a)(1)(v) through (vi) have been added to clarify those actions which are not permitted. Subsections (a)(2)(ii) has been modified, and subsections (a)(2)(vi) and (vii) are entirely new.

In an action filed by a shareholder to dissolve the corporation on the grounds enumerated in this section the court may make such order or grant such relief, other than dissolution as in its discretion is appropriate, including without limitation an order:

  (1) canceling or altering any provision contained in the articles of incorporation or any amendment to the articles, or in the bylaws of the corporation;

  (2) canceling, altering, or enjoining any act or resolution for the corporation;

  (3) directing or prohibiting any act of the corporation or of shareholders, directors, officers, or other persons party to the action; or

(4) providing for the purchase at their fair value of shares of a shareholder, by the corporation or by other shareholders.

Merely because there has not been an election of directors for two years, subsection (c)(2)(iii) will not apply automatically. The members also must be deadlocked for the provision to apply.


<< SC ST § 33–31–1431 >>

Section 33–31–1431. Procedure for judicial dissolution.

(a) Venue for a proceeding by the Attorney General to dissolve a corporation lies in the county where the corporation's principal office is located, and if the corporation has failed to maintain a principal office or failed to report any change of the office, in the court of common pleas for Richland County. Venue for a proceeding brought by any other party named in Section 33–31–1430 lies in the county where a corporation's principal office or, if none in this State, its registered office is or was last located.

(b) It is not necessary to make directors or members parties to a proceeding to dissolve a corporation unless relief is sought against them individually.

(c) A court in a proceeding brought to dissolve a corporation may issue injunctions, appoint a receiver or custodian pendente lite with all powers and duties the court directs, take other action required to preserve the corporate assets wherever located, and carry on the activities of the corporation until a full hearing can be held.

(d) A person other than the Attorney General who brings an involuntary dissolution proceeding for a public benefit or religious corporation shall forthwith give written notice of the proceeding to the Attorney General who may intervene.

OFFICIAL COMMENT

Section 14.31 sets forth procedures to be followed in a judicial dissolution. States adopting this Model Act should determine the place where venue lies for proceedings brought by the Attorney General to dissolve a corporation.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is similar to the previously applicable statute, Section 33–14–310 of the South Carolina Business Corporation Act. Venue for actions brought by the Attorney General is stated as where the corporation has its principal office, but a default provision lists Richland County as being a proper court. It should be noted that in any action brought by a private party to dissolve the corporation, the Attorney General must be notified and he shall have the right to intervene in the action.

<< SC ST § 33–31–1432 >>

Section 33–31–1432. Receivership or custodianship.

(a) A court in a judicial proceeding brought to dissolve a public benefit or mutual benefit corporation may appoint one or more receivers to wind up and liquidate or one or more custodians to manage the affairs of the corporation. The court shall hold a hearing, after notifying all parties to the proceeding and any interested persons designated by the court, before appointing a receiver or custodian. The court appointing a receiver or custodian has exclusive jurisdiction over the corporation and all of its property wherever located.

(b) The court may appoint an individual, or a domestic or foreign business or nonprofit corporation authorized to transact business in this State as a receiver or custodian. The court may require the receiver or custodian to post bond, with or without sureties, in an amount the court directs.

(c) The court shall describe the powers and duties of the receiver or custodian in its appointing order, which may be amended from time to time. Among other powers:

(1) the receiver may:

(i) dispose of all or any part of the assets of the corporation wherever located, at a public or private sale, if authorized by the court; however, the receiver's power to dispose of the assets of the corporation is subject to any trust and other restrictions that would be applicable to the corporation; and

(ii) sue and defend in the receiver's or custodian's name as receiver or custodian of the corporation in all courts of this State;

(2) the custodian may exercise all of the powers of the corporation, through or in place of its board of directors or officers, to the extent necessary to manage the affairs of the corporation in the best interests of the corporation, its members, and creditors.

(d) The court during a receivership may redesignate the receiver a custodian, and during a custodianship may redesignate the custodian a receiver, if doing so is in the best interests of the corporation, its members, and creditors.

(e) The court during the receivership or custodianship may order compensation paid and expense disbursements or reimbursements made to the receiver or custodian and the receiver or custodian's counsel from the assets of the corporation or proceeds from the sale of the assets.

OFFICIAL COMMENT

Section 14.32 authorizes a court to appoint a receiver or custodian in a judicial dissolution proceeding involving a public benefit or mutual benefit corporation. Section 14.32 is designed to supplement provisions found in most states dealing with the power of courts to appoint receivers and custodians.

SOUTH CAROLINA REPORTERS' COMMENTS

The only difference between this section and the previously controlling South Carolina Business Corporation Act Section 33–14–320 is that this section:

a. allows for nonprofit corporations to be appointed; and

b. specifies in subsection (c)(1) that the assets may be subject to conditions of trust.

<< SC ST § 33–31–1433 >>

Section 33–31–1433. Decree of dissolution.

(a) If after a hearing the court determines that one or more grounds for judicial dissolution described in Section 33–31–1430 exist, it may enter a decree dissolving the corporation and specifying the effective date of the dissolution, or may order any other form of relief which it deems proper in the circumstances, and the clerk of the court shall deliver a certified copy of the decree to the Secretary of State, who shall file it without charging a fee.

(b) After entering the decree of dissolution, the court shall direct the winding up and liquidation of the corporation's affairs in accordance with Section 33–31–1406 and the notification of its claimants in accordance with Sections 33–31–1407 and 33–31–1408.

OFFICIAL COMMENT

Section 14.33 provides that the court order dissolving a corporation shall be filed with the Secretary of State. The filing of the order of dissolution has the same effect as the filing of the articles of dissolution. After the decree of dissolution has been entered, the corporation pursuant to court order must wind up and liquidate in accordance with the provisions of sections 14.06–14.08.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is essentially identical to Section 33–14–330 in the South Carolina Business Corporation Act.

<< SC ST § 33–31–1440 >>

Section 33–31–1440. Deposit with Department of Revenue and Taxation.

Assets of a dissolved corporation that should be transferred to a creditor, claimant, or member of the corporation who cannot be found or who is not competent to receive them, must be reduced to cash subject to known trust restrictions and deposited with the Department of Revenue and Taxation or other appropriate state official for safekeeping in accordance with the Uniform Disposition of Unclaimed Property Act. However, in the Department of Revenue and Taxation or other appropriate officials discretion, property may be received and held in kind. When the creditor, claimant, or member furnishes satisfactory proof of entitlement to the amount deposited, the department or the appropriate state official shall pay him or his representative that amount.

OFFICIAL COMMENT

Section 14.40 provides for the deposit of unclaimed assets with the [Department of Revenue and Taxation] State Treasurer. State escheat or other laws provide for the ultimate disposition of these assets.

Section 14.40 provides that assets deposited with the state treasurer shall be reduced to cash unless they are subject to known trust restrictions or the treasurer decides it is in the public interest to hold the assets in kind. The treasurer may decide to hold the assets in kind when they are unique from an artistic or historical perspective.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is similar to previously applicable statute, Section 33–14–400 of the South Carolina Business Corporation Act. However, under this new section property may be retained in kind.

Article 15

Foreign Corporations

<< SC ST § 33–31–1501 >>

Section 33–31–1501. Authority to transact business required.

(a) A foreign corporation may not transact business in this State until it obtains a certificate of authority from the Secretary of State.

(b) The following activities, among others, do not constitute transacting business within the meaning of subsection (a):

(1) maintaining, defending, or settling any proceeding;

(2) holding meetings of the board of directors or members or carrying on other activities concerning internal corporate affairs;

(3) maintaining bank accounts;

(4) maintaining offices or agencies for the transfer, exchange, and registration of memberships or securities or maintaining trustees or depositaries with respect to those securities;

(5) selling through independent contractors;

(6) soliciting or obtaining orders, whether by mail or through employees or agents or otherwise, if the orders require acceptance outside this State before they become contracts;

(7) creating or acquiring indebtedness, mortgages, and security interests in real or personal property;

(8) securing or collecting debts or enforcing mortgages and security interests or any other rights in property securing the debts;

(9) owning, without more, real or personal property;

(10) conducting an isolated transaction that is completed within thirty days and that is not one in the course of repeated transactions of a like nature;

(11) transacting business in interstate commerce;

(12) soliciting those contributions as are defined in Section 33–55–20(3) or any succeeding statute of like tenor and effect.

(c) The list of activities in subsection (b) is not exhaustive.

OFFICIAL COMMENT

A state may prescribe the terms and conditions upon which a foreign corporation is permitted to transact business within the state, subject, of course, to the restrictions of the United States Constitution. Chapter 15 requires that a foreign corporation seeking to transact business within the state must (1) obtain a certificate of authority from the Secretary of State and (2) maintain a registered office and appoint a registered agent within the state....

The Model Act does not attempt to formulate an inclusive definition of what constitutes the transaction of business. Rather, the concept is defined in a negative fashion by section 15.01(b), which states that certain activities do not constitute the transaction of business. In general terms, any conduct more regular, systematic, or extensive than that described in section 15.01(b) constitutes the transaction of business and requires the corporation to obtain a certificate of authority. Typical conduct requiring a certificate of authority includes maintaining an office to conduct local intrastate business, selling personal property not in interstate commerce, entering into contracts relating to the local business or sales, and owning or using real estate for general corporate purposes. But the passive owing of real estate for investment purposes does not constitute transacting business. See section 15.01(b)(9).

The test of "transacting business" defined in a negative way in section 15.01(b) applies only to the question of whether the corporation's contacts with the state are such that it must obtain a certificate of authority. It is not applicable to other questions such as whether the corporation is amenable to service of process under state "long-arm" statutes or liable for state or local taxes. A corporation that has obtained (or is required to obtain) a certificate of authority to transact business under chapter 15 will generally be subject to suit and state taxation in the state, while a corporation that is subject to service of process or state taxation in a state will not necessarily be required to obtain a certificate of authority under chapter 15.

The list of activities set forth in section 15.01(b) is not exhaustive. See section 15.01(c). The list excludes several different types of activities from the definition of "transacting business" which are discussed below. Official Comment to Model Business Corporation Act Section 15.01.

A corporation is not "transacting business" by "maintaining, defending or settling any proceeding" in a state. Section 15.01(b)(1). The term "proceeding" is broadly defined in section 1.40(27) to include civil suits and criminal, administrative and investigatory actions.

A corporation may carry on activities concerning its internal corporate affairs and hold directors' and members' meetings without transacting business within a state. Section 15.01(b). "Other activities relating to the internal affairs of the corporation

that do not constitute the transaction of business under section 15.01(b) including having officers or representatives of a corporation who reside within or are physically present in the state ... make executive decisions relating to the affairs of the corporation without imposing on the corporation the requirement that it obtain a certificate of authority in the state, provided these activities are not so regular and system[at]ic as to cause the residence to be viewed as a business office." Official Comment to Model Business Corporation Act Section 15.01.

"A corporation is not 'transacting business' ... if it is transacting business in interstate commerce ... or soliciting or obtaining orders that must be accepted outside the state before they become contracts.... These limitations reflect the provisions of the United States Constitution that grant to the United States Congress exclusive power over interstate commerce, and preclude states from imposing restrictions or conditions upon this commerce. These sections should be construed in a manner consistent with judicial decisions under the United States Constitution." Official Comment to Model Business Corporation Act Section 15.01.

SOUTH CAROLINA REPORTERS' COMMENTS

There is no analogous section to this in former Chapter 31, Title 33. However, other than subsection (b)(12), this section is essentially identical with Section 33–15–101 of the South Carolina Business Corporation Act. This section governed South Carolina nonprofit corporations prior to the adoption of this Act. There is a small deviation from the Model Act in item (8) which permits a foreign corporation to enforce any rights which it has in any property in South Carolina, not merely mortgages and deeds of trust.

In regard to subsection (b)(12), a non-Model Act provision, it was the drafters intention that this section would protect out-of-state colleges and similar entities from being required to register in South Carolina merely because they had isolated fund raising activities in South Carolina or held alumni meetings within the State.

It should be noted that there is a separate statute which deals with charitable solicitations, Section 33–55–10, et seq. A foreign nonprofit corporation which is not required to qualify under this section might be required to register under this Charitable Solicitations Act (and even if not required to register, might be required to comply with certain provisions of that act). Conversely, corporations which are not required to register under the Charitable Solicitations Act may still be required to qualify to do business in South Carolina under this section. If a foreign nonprofit corporation is not required to qualify to do business in South Carolina, then many of the sections in this part of the chapter will not apply. Sections 33–31–1502 through 33–31–1509, and 33–31–1520 through 33–31–1532 would not apply.

<< SC ST § 33–31–1502 >>

Section 33–31–1502. Consequences of transacting business without authority.

(a) A foreign corporation transacting business in this State without a certificate of authority may not maintain a proceeding in a court in this State until it obtains a certificate of authority.

(b) The successor to a foreign corporation that transacted business in this State without a certificate of authority and the assignee of a cause of action arising out of that business may not maintain a proceeding on that cause of action in any court in this State until the foreign corporation or its successor obtains a certificate of authority.

(c) A court may stay a proceeding commenced by a foreign corporation, its successor, or assignee until it determines whether the foreign corporation or its successor requires a certificate of authority. If it so determines, the court may further stay the proceeding until the foreign corporation or its successor obtains the certificate.

(d) A foreign corporation is liable for a civil penalty of ten dollars for each day it transacts business in this State without a certificate of authority, but not to exceed a total of one thousand dollars. The Attorney General may collect all penalties due under this subsection.

(e) Notwithstanding subsections (a) and (b), the failure of a foreign corporation to obtain a certificate of authority does not impair the validity of its corporate acts or prevent it from defending any proceeding in this State.

OFFICIAL COMMENT

Section 15.02 is designed to compel foreign corporations to qualify to transact business in a state by obtaining a certificate of authority but not to impose Draconian penalties on those who fail to qualify. The failure to qualify does not impair the validity of corporate acts or prevent a corporation from defending itself in any proceeding. Section 15.01(e).

A corporation that is required to qualify, but has not qualified, may not bring suit or seek an affirmative recovery in an action in which it is a defendant until it has qualified. A court may stay a proceeding commenced by a foreign corporation until it determines whether the corporation should have qualified to transact business. If it concludes that qualification is necessary, it may grant a further stay until the foreign corporation obtains a certificate of authority. A foreign corporation that is required to but has not obtained a certificate of authority may do so and is not required to refile the suit.

Subsection (d) provides a specified dollar amount per day with a maximum yearly total penalty for each year in which a foreign corporation fails to qualify. Each state adopting the Model Act should determine the appropriate daily and yearly amounts and insert them in subsection (d).

SOUTH CAROLINA REPORTERS' COMMENTS

This section is identical to the formerly applicable statute, Section 33–15–102 of the South Carolina Business Corporation Act. This section does not specify whether or not the bar to bringing an action in South Carolina also applies to actions brought in federal court. This question was intentionally left up to the determination of the particular federal court.

<< SC ST § 33–31–1503 >>

Section 33–31–1503. Application for certificate of authority.

(a) A foreign corporation may apply for a certificate of authority to transact business in this State by delivering an application to the Secretary of State. The application must set forth:

  (1) the name of the foreign corporation or, if its name is unavailable for use in this State, a corporate name that satisfies the requirements of Section 33–31–1506;

  (2) the name of the state or country under whose law it is incorporated;

  (3) the date of incorporation and period of duration;

  (4) the street address, including zip code, of its principal office;

  (5) the street address, including zip code, of its proposed registered office in this State and the name of its proposed registered agent at that office;

  (6) the names and usual business addresses, including zip codes, of its current directors and officers;

  (7) whether the foreign corporation has members; and

  (8) whether the corporation, if it had been incorporated in this State, would be a public benefit, mutual benefit or religious corporation.

(b) The foreign corporation shall deliver with the completed application a certificate of existence, or a document of similar import, duly authenticated by the Secretary of State or other official having custody of corporate records in the state or country under whose law it is incorporated within sixty days of the date that it is filed in this State.

OFFICIAL COMMENT

Section 15.03 requires corporations to submit specified information to obtain a certificate of authority. "The purposes of these disclosure requirements are: (1) to ensure that citizens of the State have adequate information about foreign corporations in their transactions with them; (2) to put them in a status of equality with domestic corporations with respect to information required to be furnished; (3) to facilitate their subjection to the jurisdiction of the state's courts, thereby removing any disadvantage citizens of the state may have when dealing with them; and (4) to provide readily accessible evidence of their existence." Official Comment to Model Business Corporation Act Section 15.03. Each application for a certificate of authority must be accompanied by a certificate of existence (or document of similar import) and the filing fee set forth in section 1.22.

Section 16.22 requires qualifying corporations to file annual reports with the Secretary of State. [This provision was not adopted in South Carolina.] They may also have to make other filings pursuant to sections 15.04, 15.06, and 15.07, and regulatory and tax statutes.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is very similar to Section 33–15–103 of the South Carolina Business Corporation Act which was applicable prior to the adoption of this South Carolina Nonprofit Corporation Act. Different from the Model Act, this section requires zip codes on all addresses and requires that only the business addresses of the officers and directors be listed. As to the certificate of

existence which must be filed with the application, this section, different from the Model Act, requires the certificate to be current within sixty days of filing. Different from the South Carolina Business Corporation Act, there is no requirement that a South Carolina lawyer certify that the document has been properly prepared.

<< SC ST § 33–31–1504 >>

Section 33–31–1504. Amended certificate of authority.

  (a) A foreign corporation authorized to transact business in this State must obtain an amended certificate of authority from the Secretary of State if it changes:
    (1) its corporate name;
    (2) the period of its duration; or
    (3) the state or country of its incorporation.
  (b) The requirements of Section 33–31–1503 for obtaining an original certificate of authority apply to obtaining an amended certificate under this section.

OFFICIAL COMMENT
  A foreign corporation must file an amended certificate of authority if it changes its corporate name, the period of its duration or the state or country of its incorporation. A change in registered office or registered agent requires an immediate filing pursuant to section 15.07. Changes in principal office, officers or directors only have to be reported in the annual report filed yearly with the Secretary of State pursuant to section 16.22.

SOUTH CAROLINA REPORTERS' COMMENTS
  This section is essentially identical to the previously applicable statute, Section 33–15–104 of the South Carolina Business Corporation Act. If the foreign corporation changes its principal office it must file a Notice of Change of Principal Office. Section 33–31–1515.

<< SC ST § 33–31–1505 >>

Section 33–31–1505. Effect of certificate of authority.

  (a) A certificate of authority authorizes the foreign corporation to which it is issued to transact business in this State subject, however, to the right of the State to revoke the certificate as provided in this chapter.
  (b) A foreign corporation with a valid certificate of authority has the same, but no greater rights, and enjoys the same, but no greater privileges, as, and except as otherwise provided by this chapter is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character.
  (c) This chapter does not authorize this State to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this State.

OFFICIAL COMMENT
  Foreign corporations that have a valid certificate of authority have the same but no greater rights, and the same but no greater privileges, as domestic corporations of a like character. Similarly qualified foreign corporations, except as otherwise provided in the Model Act, are subject to the same duties, restrictions, penalties and liabilities as domestic corporations of a like character. As the Model Act draws distinctions between public benefit, mutual benefit and religious corporations, foreign corporations should determine in which category they would fall if they were domestic corporations. See sections 15.03(a)(8) and 17.07.
  While the Model Act does not authorize a state to regulate the "organization or internal affairs" of a foreign corporation, the exact meaning of "organization and internal affairs" is left to court determination. Section 15.05, however, is not intended to preempt regulatory statutes that would otherwise be applicable to a foreign nonprofit corporation.
  The common law in some states may give a state jurisdiction over assets held in trust by a foreign nonprofit corporation. The extent of this jurisdiction, if any, is not set forth in the Model Act.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is very similar to Section 33–15–105 of the South Carolina Business Corporation Act which was controlling prior to the adoption of this South Carolina Nonprofit Corporation Act. The section varies from the Model Act only by clarifying that the foreign corporation enjoys no greater rights or privileges than the domestic corporation.

<< SC ST § 33–31–1506 >>

Section 33–31–1506. Corporate name of foreign corporation.

(a) If the corporate name of a foreign corporation does not satisfy the requirements of Section 33–31–401, the foreign corporation, to obtain or maintain a certificate of authority to transact business in this State, may use a fictitious name to transact business in this State if its real name is unavailable and it delivers to the Secretary of State for filing a copy of the resolution of its board of directors, certified by its secretary, adopting the fictitious name.

(b) Except as authorized by subsections (c) and (d), the corporate name, including a fictitious name, of a foreign corporation must be distinguishable upon the records of the Secretary of State from the name appearing upon the records of the Secretary of State of any other nonprofit corporation, business corporation, professional corporation, or limited partnership incorporated in, formed in, or authorized to do business in this State, or a name reserved, registered, or otherwise filed upon the records of the Secretary of State.

(c) A foreign corporation may apply to the Secretary of State for authorization to use in this State the name of another corporation, incorporated or authorized to transact business in this State, that is not distinguishable upon the records of the Secretary of State from the name applied for. The Secretary of State shall authorize use of the name applied for if:

(1) the other corporation consents to the use in writing and submits an undertaking in form satisfactory to the Secretary of State to change its name to a name that is distinguishable upon the records of the Secretary of State from the name of the applying corporation; or

(2) the applicant delivers to the Secretary of State a certified copy of a final judgment of a court of competent jurisdiction establishing the applicant's right to use the name applied for in this State.

(d) A foreign corporation may use in this State the name, including the fictitious name, of another domestic or foreign business or nonprofit corporation that is used in this State if the other corporation is incorporated or authorized to transact business in this State and the foreign corporation:

(1) has merged with the other corporation;

(2) has been formed by reorganization of the other corporation; or

(3) has acquired all or substantially all of the assets, including the corporate name, of the other corporation.

(e) If a foreign corporation authorized to transact business in this State changes its corporate name to one that does not satisfy the requirements of Section 33–31–401, it may not transact business in this State under the changed name until it adopts a name satisfying the requirements of Section 33–31–401 and obtains an amended certificate of authority under Section 33–31–1504.

OFFICIAL COMMENT

Section 15.06 requires qualified foreign corporation to have names distinguishable from other corporate names on the records of the Secretary of State. Section 15.06 requires the Secretary of State to evaluate names based on the Secretary of State's records. It does not require the Secretary of State to decide issues relating to unfair competition. See section 4.01.

If the true corporate name of a foreign corporation is unavailable, the foreign corporation may use a fictitious name to transact business if it delivers a certified copy of a board resolution adopting the fictitious name together with its application for a certificate of authority. The fictitious name must be one that is otherwise available. States adopting the Model Act may have registration, filing or other requirements applicable to the use of fictitious names.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is very similar to the formerly applicable statute, Section 33–15–106 of the South Carolina Business Corporation Act. Subsection (b) varies in form, but not in substance, from the Model Act. There is no counterpart to this section in former Chapter 31, Title 33.

<< SC ST § 33–31–1507 >>

Section 33–31–1507. Registered office and registered agent of foreign corporation.

Each foreign corporation authorized to transact business in this State must continuously maintain in this State:
(1) a registered office with the same address as that of its registered agent; and
(2) a registered agent, who may be:
  (i) an individual who resides in this State and whose office is identical with the registered office;
  (ii) a domestic business or nonprofit corporation whose office is identical with the registered office; or
  (iii) a foreign business or nonprofit corporation authorized to transact business in this State whose office is identical with the registered office.

OFFICIAL COMMENT

  Section 15.07 requires each foreign corporation authorized to transact business in a state to maintain continually a registered office and registered agent in the State so it will be amenable to suit within the State. Section 15.07 is based on section 5.01. See Official Comment to Section 5.01 for an explanation of the policies upon which section 15.07 is based.

SOUTH CAROLINA REPORTERS' COMMENTS

  This section is identical with Section 33–31–501, the Registered Office and Agent for a South Carolina nonprofit corporation, and essentially the same as Section 33–15–107 of the South Carolina Business Corporation Act.
  Section 33–31–1508 requires that the agent's actual street address must be specified.

<< SC ST § 33–31–1508 >>

Section 33–31–1508. Change of registered office or registered agent of foreign corporation.

  (a) A foreign corporation authorized to transact business in this State may change its registered office or registered agent by delivering to the Secretary of State for filing a statement of change that sets forth:
  (1) the name of the corporation;
  (2) the street address of its current registered office;
  (3) if the current registered office is to be changed, the street address of its new registered office;
  (4) the name of its current registered agent;
  (5) if the current registered agent is to be changed, the name of its new registered agent and the new agent's written consent, either on the statement or attached to it, to the appointment; and
  (6) that after the change or changes are made, the street addresses of its registered office and the office of its registered agent will be identical.
  (b) If the street address of a registered agent's office is changed, the registered agent may change the street address of the registered office of any corporation for which the registered agent is the registered agent by notifying the corporation in writing of the change and by signing, either manually or in facsimile, and delivering to the Secretary of State for filing a statement that complies with the requirements of subsection (a) and recites that the corporation has been notified of the change.

OFFICIAL COMMENT

  Section 15.08(a) requires foreign corporations upon changing their registered office or registered agent to file a statement with the Secretary of State containing the information required by section 15.08(a). If the office of the registered agent is changed, the agent may change the registered office by notifying the Secretary of State and complying with the provisions of section 15.08(b) rather than section 15.08(a). Section 15.08 is based on section 5.02. See Official Comment to Section 5.02 for an explanation of the policies upon which section 15.08 is based.

SOUTH CAROLINA REPORTERS' COMMENTS

  This section is identical with Section 33–31–502, Change of Office or Registered Agent, applicable to South Carolina nonprofit corporations. It is also very similar to Section 33–15–108 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–1509 >>

Section 33–31–1509. Resignation of registered agent of foreign corporation.

 (a) The registered agent of a foreign corporation may resign as agent by signing and delivering to the Secretary of State the original and two exact or conformed copies of a statement of resignation. The statement may include a statement that the registered office is also discontinued.

 (b) After filing the statement, the Secretary of State shall mail one copy to the registered office, if not discontinued, and the other copy to the corporation at its principal office as shown in its application for certificate of authority or most recent notice of change of principal office.

 (c) The agency appointment is terminated, and the registered office discontinued if so provided, on the thirty-first day after the date on which the statement was filed.

OFFICIAL COMMENT

 Section 15.09 permits a registered agent of a foreign corporation to resign upon fulfilling the requirements set forth in the section. See Official Comment to Section 5.03 for an explanation of the policies underling section 15.09.

SOUTH CAROLINA REPORTERS' COMMENTS

 This section is identical with Section 33–31–503, Resignation of the Registered Agent of a South Carolina nonprofit corporation, and essentially identical to Section 33–15–109 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–1510 >>

Section 33–31–1510. Service on foreign corporations.

 Except as specifically provided in this chapter, service of process on a foreign nonprofit corporation must be in accord with the applicable provisions of Title 15.

OFFICIAL COMMENT

 Section 15.10 sets forth nonexclusive ways of serving foreign corporations. Section 15.10(a) allows service to be made upon a registered agent of a qualified foreign corporation. Section 15.10(b) authorizes service on the secretary of the foreign corporation in the manner and at the places specified if the foreign corporation does not have a registered agent, the registered agent cannot be found at the registered office, the corporation has withdrawn from the state or the foreign corporation's certificate of authority has been revoked. Section 15.10 is based on section 5.04. See Official Comment to Section 5.04 for an explanation of the policies underlying Section 15.10.

SOUTH CAROLINA REPORTERS' COMMENTS

 The service of process provisions for foreign nonprofit corporations are found in Sections 15–9–240 and 15–9–245. This section, as does Section 33–31–504, applicable to South Carolina nonprofit corporations, merely cross references the service provision found in Chapter 15. Certain additional information is available in the South Carolina Reporters' Comments to Section 33–15–110 which deals with serving foreign business corporations.

<< SC ST § 33–31–1515 >>

Section 33–31–1515. Notice of change of principal office.

 If a foreign corporation changes the location of its principal office, then within thirty days of the date of the change the corporation shall file a notice of change of principal office with the Secretary of State. The notice of change shall set forth:
 (1) the name of the corporation; and
 (2) the current street address, with zip code, of the corporation's principal office and the address of the former principal office.

SOUTH CAROLINA REPORTERS' COMMENTS

As discussed in detail in the South Carolina Reporters' Comments to Section 33–31–505, nonprofit corporations are not required to file an annual report. Since the annual report would advise the Secretary of State of any change in principal office, it was determined that like domestic nonprofit corporations, foreign nonprofit corporations must notify the Secretary of State as to any change of office. Each foreign nonprofit corporation therefore must file a short form with the Secretary of State, much in the nature of a notice of change of statutory agent. This filing is required to be made within thirty days of any change in the corporations principal office. This is not a Model Act provision. The Model Act requires all nonprofit corporations to file an annual report.

<< SC ST § 33–31–1520 >>

Section 33–31–1520. Withdrawal of foreign corporation.

 (a) A foreign corporation authorized to transact business in this State may not withdraw from this State until it obtains a certificate of withdrawal from the Secretary of State.

 (b) A foreign corporation authorized to transact business in this State may apply for a certificate of withdrawal by delivering an application to the Secretary of State for filing. The application must set forth:

   (1) the name of the foreign corporation and the name of the state or country under whose law it is incorporated;

   (2) that it is not transacting business in this State and that it surrenders its authority to transact business in this State;

   (3) that it revokes the authority of its registered agent to accept service on its behalf and appoints the Secretary of State as its agent for service of process in any proceeding based on a cause of action arising during the time it was authorized to do business in this State;

   (4) a mailing address to which the Secretary of State may mail a copy of any process served on him under item (3); and

   (5) a commitment to notify the Secretary of State during the six years following the delivery of the certificate of withdrawal of any change in the mailing address.

 (c) After the withdrawal of the corporation is effective, service of process on the Secretary of State under this section is service on the foreign corporation. Upon receipt of process, the Secretary of State shall mail a copy of the process to the foreign corporation at the post office address set forth in its application for withdrawal.

OFFICIAL COMMENT

 A foreign corporation authorized to transact business in a state must file an application for a certificate of withdrawal to withdraw from the State. The application must appoint the Secretary of State as agent for service of process in any proceeding based on a cause of action arising during the time the corporation was authorized to transact business in the State. If the Secretary of State is served as agent for the foreign corporation, the Secretary of State must mail a copy of the process to the foreign corporation at the address set forth in the application for withdrawal.

 Subsection 15.20(b) sets forth the information that must be contained in the application for a certificate of withdrawal. The application for withdrawal must be on the form prescribed by the Secretary of State. See section 1.21. This insures that the appointment of the Secretary of State as agent for service of process is unqualified and not limited in a way inconsistent with the requirements of section 15.20.

SOUTH CAROLINA REPORTERS' COMMENTS

 This section is similar to Section 33–15–200 of the South Carolina Business Corporation Act which formerly was the applicable statute. The South Carolina Reporters' Comments to that section may be helpful in interpreting this section. Different from Section 33–15–200, this section only requires the withdrawing corporation to notify the South Carolina Secretary of State of any change in address for the first six years after it withdraws. Six years was selected because as of the date this section was adopted, the general tort statute of limitations was six years.

<< SC ST § 33–31–1530 >>

Section 33–31–1530. Grounds for revoking a foreign corporation's authority to transact business in this State.

(a) The Secretary of State may commence a proceeding under Section 33–31–1531(a) to revoke the certificate of authority of a foreign corporation authorized to transact business in this State if:

(1) the foreign corporation does not deliver a notice of change of principal office when due;

(2) the foreign corporation is without a registered agent or registered office in this State;

(3) the foreign corporation does not inform the Secretary of State that its registered agent or registered office has been changed, that its registered agent has resigned, or that its registered office has been discontinued;

(4) the corporation's period of duration, if any, stated in its articles of incorporation expires;

(5) the Secretary of State receives a duly authenticated certificate from the Secretary of State or other official having custody of corporate records in the state or country under whose law the foreign corporation is incorporated stating that it has been dissolved or disappeared as the result of a merger; or

(6) that the corporation has been adjudicated bankrupt pursuant to Chapter 7 of the United States Bankruptcy Code.

(b) The Richland County Court of Common Pleas under Section 33–31–1531(b) may revoke the certificate of authority of a foreign corporation authorized to transact business in this State in a proceeding by the Attorney General if it is established that:

(1) the corporation obtained its articles of incorporation through fraud;

(2) the corporation has continued to exceed or abuse the authority conferred upon it by law;

(3) the corporation is a public benefit corporation and the assets are being misapplied or wasted;

(4) the corporation is a public benefit corporation and it is no longer able to carry out its purposes;

(5) the corporation has improperly solicited money or has fraudulently used the money solicited; or,

(6) the corporation has carried on, conducted, or transacted its business or affairs in a persistently fraudulent or illegal manner.

The enumeration of the grounds in items (1) through (6) revoking the authority shall not exclude actions or special proceedings by the Attorney General or other state official for revoking the authority of a foreign nonprofit corporation for other causes as provided in this chapter or in any other statute of this State.

OFFICIAL COMMENT

Section 15.30 authorizes the Secretary of State or Attorney General to commence an administrative proceeding under section 15.31 to revoke a foreign corporation's certificate of authority. This revocation may take place for the reasons specified in section 15.30 pursuant to the procedures set forth in section 15.31. See Official Comment to Section 14.20 for an explanation of the policies underlying section 15.30.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is similar in part to Section 33–15–300 of the South Carolina Business Corporation Act and thus does not represent any significant change in the law. Likewise, it is very similar to the grounds for dissolving a domestic South Carolina nonprofit corporation. Subsection (a) is essentially identical with Section 33–31–1420(a), and subsection (c) is essentially identical with Section 33–31–1420(b). Subsection (b) of this section is essentially identical with Section 33–31–1430(a)(1). A provision essentially identical with Section 33–31–1430(b), which relates to alternative remedies, other than revoking the authority of the foreign corporation, is found in Section 33–31–1531(b). Section 33–31–1430, dealing with dissolving a domestic nonprofit corporation, also contains provisions whereby creditors and members may request the court order dissolution. These provisions are not applicable to the question whether or not a foreign corporation should be permitted to do business in South Carolina. If either creditors or members believe that the foreign corporation is improperly acting, their recourse is to exercises those rights which the statutes of the state of incorporation grant to them.

See also nonmodel act section 33–31–174 which grants to the Attorney General the authority to cause the foreign nonprofit corporation to "forfeit" its right to operate in South Carolina.

<< SC ST § 33–31–1531 >>

Section 33–31–1531. Procedure and effect of revocation.

(a) Upon determining that one or more grounds exist under Section 33–31–1530(a) to revoke a certificate of authority of a foreign nonprofit corporation, the Secretary of State may serve the foreign corporation with written notice of that determination pursuant to Section 33–31–1510.

If the foreign corporation does not correct each ground for revocation or demonstrate to the reasonable satisfaction of the Secretary of State that each ground for revocation determined by the Secretary of State does not exist within sixty days after service of the notice is perfected under Section 33–31–1510, the Secretary of State shall revoke the foreign corporation's certificate of authority by signing a certificate of revocation that recites the ground or grounds for revocation and its effective date. The Secretary of State shall file the original of the certificate and serve a copy on the foreign corporation under Section 33–31–1510 and, in the case of a public benefit corporation, shall notify the Attorney General in writing.

(b) If the court of Common Pleas of Richland County determines that one or more grounds for revoking the foreign nonprofit's authority to transact business as described in Section 33–31–1530(b) exists, it may enter a decree dissolving the corporation and specifying the effective date of the dissolution, and the clerk of the court shall deliver a certified copy of the decree to the Secretary of State, who shall file it without charging any fee.

Before revoking the foreign nonprofit corporation's authority to transact business in this State, the court shall consider whether:

(1) there are reasonable alternatives to revoking the authority;

(2) revoking the authority is in the public interest, if the corporation is a public benefit corporation; and,

(3) revoking the authority is the best way of protecting the interests of members, if the corporation is a mutual benefit corporation.

The court of common pleas of Richland County may order any other form of relief which it deems proper in the circumstances.

(c) The authority of a foreign corporation to transact business in this State ceases on the date shown on the certificate revoking its certificate of authority.

(d) The Secretary of State's or Richland County Court of Common Pleas revocation of a foreign corporation's certificate of authority appoints the Secretary of State the foreign corporation's agent for service of process in any proceeding based on a cause of action that arose during the time the foreign corporation was authorized to transact business in this State. Service of process on the Secretary of State under this subsection is service on the foreign corporation. Upon receipt of process, the Secretary of State shall mail a copy of the process to the secretary of the foreign corporation at its principal office shown in its most recent notice of change of principal office or in any subsequent communications received from the corporation stating the current mailing address of its principal office, or, if none are on file, in its application for a certificate of authority.

(e) Revocation of a foreign corporation's certificate of authority does not terminate the authority of the registered agent of the corporation.

OFFICIAL COMMENT

Section 15.31 sets forth the method by which the certificate of authority may be revoked. The foreign corporation must be advised of the proposed revocation and have an adequate opportunity to take action to prevent the revocation from taking place. A foreign corporation that believes that it has been improperly treated may seek judicial review of the revocation pursuant to section 15.32.

Section 15.31 is based on section 14.21. See Official Comment to Section 14.21 for an explanation of the policies underlying section 15.31.

SOUTH CAROLINA REPORTERS' COMMENTS

This section is somewhat similar to both Sections 33–31–1421 and 33–15–310 of the South Carolina Business Corporation Act. The second part of subsection (c) is very similar to Section 33–31–1430(b) and is not a Model Act provision. See the South Carolina Reporters' Comments to sections 33–31–1421 and 33–31–1430.

<< SC ST § 33–31–1532 >>

Section 33–31–1532. Appeal from revocation.

(a) A foreign corporation may appeal the Secretary of State's revocation of its certificate of authority to the Richland County Court of Common Pleas within thirty days after the service of the certificate of revocation was received. The foreign corporation appeals by petitioning the court to set aside the revocation and attaching to the petition copies of its certificate of authority and the Secretary of State's certificate of revocation.

(b) The court may summarily order the Secretary of State to reinstate the certificate of authority or may take any other action the court considers appropriate.

(c) The court's final decision may be appealed as in other civil proceedings.

OFFICIAL COMMENT

  Section 15.32 authorizes a foreign corporation to appeal from the Secretary of State's revocation of its certificate of authority. States adopting this section should indicate the court in which the appeal should be filed. Normally this should be a court in the county of the corporation's principal office or a court in the state capitol. States adopting this section should also specify the party who has the burden of proof and the standard for judicial review. See Official Comment to Section 1.26.

SOUTH CAROLINA REPORTERS' COMMENTS

  This section is similar to the formerly applicable statute, Section 33–15–320 of the South Carolina Business Corporation Act.

Article 16

Records and Reports

Subarticle A

Records

<< SC ST § 33–31–1601 >>

Section 33–31–1601. Corporate records.

  (a) A corporation shall keep as permanent records minutes of all meetings of its members and board of directors, a record of all actions taken by the members or directors without a meeting, and a record of all actions taken by committees of the board of directors as authorized by Section 33–31–825(d).

  (b) A corporation shall maintain appropriate accounting records.

  (c) A corporation or its agent shall maintain a record of its members in a form that permits preparation of a list of the name and address of all members, in alphabetical order by class, showing the number of votes each member is entitled to cast.

  (d) A corporation shall maintain its records in written form or in another form capable of conversion into written form within a reasonable time.

  (e) A corporation shall keep a copy of the following records at its principal office:

   (1) its articles or restated articles of incorporation and all amendments to them currently in effect;

   (2) its bylaws or restated bylaws and all amendments to them currently in effect;

   (3) resolutions adopted by its board of directors relating to the characteristics, qualifications, rights, limitations, and obligations of members or any class or category of members;

   (4) the minutes of all meetings of members and records of all actions approved by the members for the past three years;

   (5) all written communications to members generally within the past three years, including the financial statements furnished for the past three years under Section 33–31–1620;

   (6) a list of the names and business or home addresses of its current directors and officers; and

   (7) its most recent report of each type required to be filed by it with the Secretary of State under this chapter.

OFFICIAL COMMENT

  Section 16.01 requires corporations to keep specified records. The remainder of the chapter deals with members' rights to inspect, copy and receive copies of these records and reports.

  1. Permanent Records

  Section 16.01(a) requires a corporation to keep permanent records of: (i) minutes of all meetings of its members and a record of all actions taken by its members by written ballot and written consent without a meeting (see sections 7.04 and 7.08); and (ii) minutes of all meetings of its directors, all actions taken by directors without a meeting, and all actions taken by committees of the board in place of the board (see section 8.25).

  A corporation is required to keep permanent records of board committee actions only when: (i) the committee takes action in place of the board, and (ii) the committee is appointed pursuant to section 8.25. If the committee is appointed pursuant to

section 8.25 but does not take action in place of the board, section 16.01(a) does not require a record of its activities. If the action taken is only advisory, section 16.01(a) does not require a record of the deliberations or advice.

Section 16.01(a) does not require a corporation to keep permanent records of non-board committee actions.

The underlying rationale of section 16.01(a) is that there should be a permanent record of actions taken by the members, the board and committees of the board acting in place of the board. The section does not require that the minutes or record of an action include a discussion of or reasons for an action. The amount of detail is left to the discretion of each nonprofit organization. The minutes or records may merely recite that after consideration a certain action was taken or they may go into great detail as to the background, rationale, and reasons for the particular action.

2. Accounting Records

Section 16.01(b) requires a corporation to maintain "appropriate accounting records." The required records are the current accounting records of the corporation. Section 16.01(b) does not require that these records be kept permanent or address the question of how long accounting records should be kept. For tax, regulatory and record-keeping reasons each nonprofit corporation should determine how long it should keep its accounting records.

The question of what accounting records are "appropriate" depends on the nature, size and other characteristics of the corporation. Numerous nonprofit corporations have a relatively small amount of money and operate with volunteer staffs. In such cases, "appropriate accounting records" may be composed of checkbooks, canceled checks and receipts. In the case of entities with significant funds, more detailed accounting records are appropriate.

"Appropriate" records should allow the financial statements to be prepared in a fashion that fairly presents the financial condition and results of operations of the corporation. There is no requirement that accounting records be kept in accordance with generally accepted accounting principles. Many nonprofit corporations operate on a cash rather than an accrual basis. As accounting for nonprofit organizations is presently in a state of transition, no particular approach is required by the Model Act.

3. Membership Lists

Section 16.01(c) requires a corporation to maintain a record of its current members in a form that allows preparation of an alphabetical list of members, their addresses, by class, and an indication of the number of votes each member is entitled to cast. The records themselves do not have to be kept in this form. Sections 16.02 through 16.05 deal with the circumstances under which membership lists are available for inspection and copying.

4. Form of Records

Section 16.01(d) requires that corporate records be maintained in written form or another form capable of conversion into a written form within a reasonable time. This allows nonprofit organizations to keep records on microfilm or microfiche, in computer memory or in any other appropriate manner. The records must, however, be kept in a form that allows the corporation to comply with members' rights to obtain and inspect the records.

5. Records Required at Principal Office

Section 16.01(e) requires that specified corporate records be kept at the principal office of the corporation. For domestic corporations the principal office of the corporation is defined in section 1.40(26) as an office in the state designated in the annual report filed pursuant to section 16.22. Section 16.22 requires a corporation to designate annually the address of its principal office in the state. In some instances, particularly for small nonprofit corporations, the home of an officer or director may be the principal office of the corporation.

SOUTH CAROLINA REPORTERS' COMMENTS

This section makes two changes from the previously applicable statute, Section 33–16–101 of the South Carolina Business Corporation Act: The requirement under subsection (d)(4) that records of members' actions be maintained has been lowered from ten to three years, and the requirement that tax returns be maintained has been deleted. In addition, under prior law, nonprofit corporations were required to make an annual report to the Department of Revenue and Taxation, and this report was required to be maintained. Nonprofit corporations are no longer required to make such reports. In certain circumstances, reports must be made to the Secretary of State, and the most recent of each of such reports must be maintained under subsection (e)(7).

<< SC ST § 33–31–1602 >>

Section 33–31–1602. Inspection of records by members.

(a) Subject to subsection (e) and Section 33–31–1603(c), a member is entitled to inspect and copy, at a reasonable time and location specified by the corporation, any of the records of the corporation described in Section 33–31–1601(e) if the member gives the corporation written notice or a written demand at least five business days before the date on which the member wishes to inspect and copy.

(b) Subject to subsection (e), a member is entitled to inspect and copy, at a reasonable time and reasonable location specified by the corporation, any of the following records of the corporation if the member meets the requirements of subsection (c) and gives the corporation written notice at least five business days before the date on which the member wishes to inspect and copy:

  (1) excerpts from any records required to be maintained under Section 33–31–1601(a), to the extent not subject to inspection under Section 33–31–1602(a);

  (2) accounting records of the corporation; and

  (3) subject to Section 33–31–1605, the membership list.

(c) A member may inspect and copy the records identified in subsection (b) only if:

  (1) the member's demand is made in good faith and for a proper purpose;

  (2) the member describes with reasonable particularity the purpose and the records the member desires to inspect; and

  (3) the records are directly connected with this purpose.

(d) This section does not affect:

  (1) the right of a member to inspect records under Section 33–31–720 or, if the member is in litigation with the corporation, to the same extent as any other litigant; or

  (2) the power of a court, independently of this chapter, to compel the production of corporate records for examination.

(e) The articles or bylaws of a religious corporation may limit or abolish the right of a member under this section to inspect and copy any corporate record.

OFFICIAL COMMENT

  1. Automatic Access to Certain Records

  Section 16.02(a) gives each member the right to inspect and copy at a reasonable time and place the records described in section 16.01(e). This right is conditioned only upon the member giving the corporation written notice of the demand at least five business days before the date on which the member wishes to inspect and copy the records and paying any reasonable charge the corporation may impose pursuant to section 16.03(c). The member does not have to show that the demand is made in good faith for a proper purpose. Nor does the member have the show the purpose for the request or that the records are directly connected with the member's purpose.

  2. Limited Access to Certain Records

  Section 16.02(b) allows members to copy and inspect specified records, but imposes more conditions that section 16.02(a). Members have the right to inspect the following types of records:

  (1) Excerpts of any meetings of the board, records of any action of a committee of the board as authorized by section 8.25 while acting in place of the board, minutes of any meeting of members and records of actions taken by members or directors without a meeting to the extent not subject to inspection under section 16.02(a).

  (2) The accounting records of the corporation. See Official Comment to Section 16.01 for a discussion of what accounting records the corporation must keep.

  (3) The membership list. See section 16.05 for limitations on use of the membership list. Also see section 7.20 for the right members have to inspect membership lists beginning two business days after notice of the membership meeting is given and continuing through the meeting.

  A demand to copy and inspect records under section 16.01(b) must be made in good faith for a proper purpose. See section 16.02(c). The proper purpose must reasonably relate to the member's interest as a member, which may be boarder than a shareholder's interest in a business corporation. In addition, the member must describe with reasonable particularity the purpose and the records the member desires to inspect. The object of this requirement is to inform the corporation in general terms of the object of the member, not to limit the purpose of the inspection rights. Thus, for example, a request to contact fellow members concerning the corporation or a request to examine records to determine whether improper transactions have occurred or a charitable trust breached states a proper purpose.

  3. Religious Corporations

The articles or bylaws of religious corporations may limit or abolish the rights of inspection set forth in section 16.02. If no limit is placed on these rights, members of religious corporations have the same inspection rights under section 16.02 as members of other nonprofit corporations. Even if the articles or bylaws limit the rights set forth in section 16.02, a member may still have other inspection rights. See section 16.02(d).

4. Additional Rights of Inspection

The rights set forth in section 16.02 may not be abolished or limited by a public benefit or mutual benefit corporation. Moreover the rights set forth in section 16.02 are not exclusive. Section 16.02(d) "provides that the right of inspection granted by section 16.02 is an independent right of inspection that is not a substitute for or in derogation of rights of inspection that may exist (1) under section 7.20, to inspect the [membership] list following the establishment of a record date for a meeting; (2) as part of a right of discovery that exists in connection with litigation; and (3) as a 'common law' right of inspection, if any is found to exist by a court, to examine corporate records. Section [16.02(d) ] simply preserves whatever independent right of inspection exists under these sources and does not create or recognize any rights, either expressly or by implication." Official Comment to Model Business Corporation Act Section 16.02.

SOUTH CAROLINA REPORTERS' COMMENTS

This section replaces previously applicable statutory law found at Section 33–16–102 of the South Carolina Business Corporation Act. Several changes are made:

(1) Subsection (e) permits the articles or bylaws of a religious corporation to limit or abolish the right to inspect records under this section. Subsections (a) and (b) are made subject to this provision.

(2) There is no provision for inspection of tax returns, as is found at Section 33–16–102(a).

(3) Inspection under subsections (a) and (b) is to be made "at a reasonable time and reasonable location specified by the corporation", not during business hours at the corporation's principal office, as provided by Section 33–16–102.

(4) The right under subsection (b)(3) to see the membership list is made subject to Section 33–31–1605, which imposes limits on the availability of the membership list.

<< SC ST § 33–31–1603 >>

Section 33–31–1603. Scope of inspection rights.

(a) A member's agent or attorney has the same inspection and copying rights as the member the agent or attorney represents.

(b) The right to copy records under Section 33–31–1602 includes, if reasonable, the right to receive copies made by photographic, xerographic, or other means.

(c) The corporation may impose a reasonable charge, covering the costs of labor and material, for copies of any documents provided to the member. The charge may not exceed the estimated cost of production or reproduction of the records.

(d) The corporation may comply with a member's demand to inspect the record of members under Section 33–31–1602(b)(3) by providing the member with a list of its members that was complied no earlier than the date of the member's demand.

OFFICIAL COMMENT

Section 16.03 allows a member's agent and attorney to have the same inspection and copying rights as the member. These rights include the right, if reasonable, to receive copies made by photographic, xerographic or other means. In some instances corporations may keep records in bubble memories, computer disks or other nonprinted form. If reasonable, section 16.03 requires corporations to make copies of these records and charge the member for the cost of reproduction. The cost of reproduction includes the cost of preparing the information for reproduction and reproducing the information.

SOUTH CAROLINA REPORTERS' COMMENTS

No change was made by this section from the previously applicable statute, Section 33–16–103 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–1604 >>

Section 33–31–1604. Court-ordered inspection.

(a) If a corporation does not allow a member who complies with Section 33–31–1602(a) to inspect and copy any records required by that subsection to be available for inspection, the circuit court in the county where the corporation's principal office in this State, or, if none in this State, its registered office, is located may summarily order inspection and copying of the records demanded at the corporation's expense upon application of the member.

(b) If a corporation does not allow a member to inspect and copy any other record, the member who complies with Section 33–31–1602(b) and (c) may apply to the circuit court in the county where the corporation's principal office in this State, or if none in this State, its registered office, is located for an order to permit inspection and copying of the records demanded. The court shall dispose of an application under this subsection on an expedited basis.

(c) If the court orders inspection and copying of the records demanded, it also shall order the corporation to pay the member's costs, including reasonable counsel fees, incurred to obtain the order unless the corporation proves that it refused inspection in good faith because it had a reasonable basis for doubt about the right of the member to inspect the records demanded.

(d) If the court orders inspection and copying of the records demanded, it may impose reasonable restrictions on the use or distribution of the records by the demanding member.

OFFICIAL COMMENT

1. Summary Procedure for Refusal to Comply with Section 16.02(a)

Members have the right under section 16.02(a) to inspect the records described in section 16.01(e) imply by showing that they are members of the corporation. If the corporation refuses to allow inspection of the records, the member or members may seek a summary order directing the corporation to allow inspection and copying at the corporation's expense. See section 16.02(e) for a list of the records that are subject to this summary procedure.

2. Expedited Procedure for Refusal to Comply with Section 16.02(b)

Members have the right to inspect and copy certain records under section 16.02(b) and, depending on state law, the common law. Members seeking to enforce these rights are entitled to a hearing on "an expedited basis." However, a member must comply with the requirements of subsections 16.02(b) and (c) and, if applicable, section 16.05 prior to obtaining access to the records. Consequently the court procedure may take longer than the procedure to obtain records under section 16.02(a).

The Model Act does not indicate who should pay for inspection and copying of records if it is necessary to obtain a court order to enforce section 16.02(b) or common law rights. This matter is left to the discretion of the court.

3. Payment of Costs Including Reasonable Counsel Fees

If a court orders inspection and copying of records the corporation must pay the member's costs "including reasonable counsel fees" incurred in obtaining the order unless the corporation proves that its refusal is in good faith because it had a reasonable basis for doubt about the member's right to inspect the records. "This normally will involve reasonable doubt whether the [member] had the necessary good faith and proper purpose or whether the records demanded are directly connected to the [member's] purpose. The phrase "in good faith because it had a reasonable basis for doubt' establishes a partially objective standard, in that the corporation must be able to point to some objective basis for its doubt that the [member] was acting in good faith or had a purpose that was proper. For example, a corporation may point to earlier conduct of the [member] involving improper use of information obtained from the corporation in the past as indicating that reasonable doubt existed as to his present purpose. A corporation may not avoid the imposition of costs under this section merely by showing it had no information one way or the other about the issues in controversy." Official Comment to Model Business Corporation Act Section 16.04. See section 16.05 for limitations on the uses to which membership lists can be put.

SOUTH CAROLINA REPORTERS' COMMENTS

No change is made by this section from the previously applicable statute, Section 33–16–104 of the South Carolina Business Corporation Act. Under this section, inspection and copying of lists of contributors is not a matter of membership right.

<< SC ST § 33–31–1605 >>

Section 33–31–1605. Limitations on use of membership list.

Without consent of the board, a membership list or any part of a membership list may not be obtained or used by a person for any purpose unrelated to a member's interest as a member. Without limiting the generality of the foregoing, without the consent of the board a membership list or any part of the list may not be:

(1) used to solicit money or property unless the money or property will be used solely to solicit the votes of the members in an election to be held by the corporation;

(2) used for any commercial purpose; or

(3) sold to or purchased by any person.

OFFICIAL COMMENT

A nonprofit corporation's membership list is a valuable asset. For public benefit and religious corporations, the membership list may represent a list of contributors. For mutual benefit corporations the list may represent a list of members of a trade association, social club, political organization or other significant group. Section 16.05 sets forth the basic premise that a membership list may not be obtained or use by any person for any purpose unrelated to a member's interest as a member. It then provides that a membership list may not be used in any of the following three purposes without the board's consent:

(1) The solicitation of money or property unless such money or property will be used solely to solicit the votes of members in an election held by the corporation. A membership list therefore cannot be used by members who in good faith believe the organization has strayed from its purposes and want to solicit the members to contribute to a competitive organization that is carrying out the true purposes of the corporation whose membership list is sought. Nor can members use a membership list to solicit contributions for a non-competitive organization, even if the non-competitive organization has laudable purposes.

(2) Used for any commercial purpose. Commercial organizations frequently desire to use membership lists of nonprofit organizations to contact members. Such use is only allowed if approved by the board of directors of the nonprofit corporation.

(3) Sold to or purchased by any person. Members of a nonprofit organization do not have the right to sell a membership list to any person. Nor may a person seeking a membership list purchase it except from the corporation with the approval of the board of directors.

A corporation must have some factual basis for believing that the members seeking the membership list will violate the provisions of section 16.05 to deny inspection rights pursuant to section 16.05. If a corporation has a legitimate doubt as to the purposes for which a member seeks a membership list, the matter can be heard by a court pursuant to section 16.04. The court should closely scrutinize the transaction to determine whether a member has a legitimate purpose or whether the corporation was simply using section 16.05 as a ruse to prevent and frustrate a member's rights. See Official Comment to Section 16.04 for the circumstances in which a court may order the corporation to pay attorney fees and costs.

SOUTH CAROLINA REPORTERS' COMMENTS

This section had no counterpart under prior statutory law.

Subarticle B

Reports

<< SC ST § 33–31–1620 >>

Section 33–31–1620. Financial statements for members.

(a) Except as provided in the articles or bylaws of a religious corporation, a corporation upon written demand from a member or the Attorney General shall furnish the demanding party its latest annual financial statements, which may be consolidated or combined statements of the corporation and one or more of its subsidiaries or affiliates, as appropriate, that include a balance sheet as of the end of the fiscal year and statement of operations for that year. If financial statements are prepared for the corporation on the basis of generally accepted accounting principles, the annual financial statements also must be prepared on that basis.

(b) If annual financial statements are reported upon by a public accountant, the accountant's report must accompany them. If not, the statements must be accompanied by the statement of the president or the person responsible for the corporation's financial accounting records:

(1) stating the president's or other person's reasonable belief as to whether the statements were prepared on the basis of generally accepted accounting principles and, if not, describing the basis of preparation; and

(2) describing any respects in which the statements were not prepared on a basis of accounting consistent with the statements prepared for the preceding year.

OFFICIAL COMMENT

Nonprofit organizations are not required to mail annual financial statements to any member unless the member makes a written demand for the latest financial statements. The cost of an automatic mailing to all members would be prohibitive for some nonprofit organizations. In many instances, the only financial report that members receive is an oral report at an annual meeting. While the bylaws of some organizations require that annual financial statements be delivered to all members, section 16.20 only requires that the latest annual financial statement be furnished to a member upon written demand of that member. In addition, members have the right to receive a report on the financial condition of the corporation at the annual meeting. Section 7.01(c).

Because there is so much diversity in nonprofit organizations and because accounting treatment of nonprofit corporations is in a transition state, section 16.20 does not require that financial statements be prepared on the basis of generally accepted accounting principles. However, if the corporation prepares financial statements on the basis of generally accepted accounting principles, the annual financial statements must also be prepared on that basis.

There is no requirement that the annual financial statements be audited. Where, however, they are audited, the accountant's report must accompany the statement.

"Section 16.20 refers to a 'public accountant.' The same terminology is used in section 8.30 (standards of conduct for directors) of the Model Act. In various states, different terms are employed to identify those persons who are permitted under the state licensing requirements to act as professional accountants. Phrases like 'independent public accountant,' 'certified public accountant,' 'public accountant,' and others may be used. In adopting the term 'public accountant,' the Model Act uses the words in a general sense to refer to any class or classes of persons who, under the applicable requirements of a particular jurisdiction, are professionally entitled to practice accountancy." Official Comment to Model Business Corporation Act Section 16.20.

If the financial statements are not reported upon by an accountant, they must be accompanied by a report of the president or other person in charge of the corporation's financial accounting records. The object of the report is to describe the basis upon which the financial statements were prepared so the members will have a basis for evaluating them. The report must:

(1) indicate the reporting person's reasonable belief as to whether the statements were prepared on the basis of generally accepted accounting principles. If not, the report should describe the basis on which the statements were prepared. The financial statements may, for example, be prepared on a cash basis. If so, the report should so indicate.

In some circumstances, the financial records of the organization may be in a state of disarray. If so, this fact should be disclosed. The report should indicate how the statements were prepared. If appropriate, the report may have to state that the financial statements do not fairly reflect the condition and operations of the corporation.

(2) describe any respects in which the financial statements were not prepared on a basis consistent with the statements prepared for the preceding year. Members are entitled to know whether the financial statements were prepared on a consistent basis so they can determine whether a year-to-year comparison of financial reports will yield comparable figures.

Business and nonprofit corporations control subsidiaries through stock ownership. Nonprofit corporations control other nonprofit corporations by holding all or a majority of their memberships or through article or bylaw provisions. The term "affiliates" in section 16.20 refers to corporations controlled by nonprofit corporations regardless of whether control is exercised through memberships, or articles or bylaw provisions.

SOUTH CAROLINA REPORTERS' COMMENTS

This section changes previously applicable statutory law, found at Section 33–16–200 of the South Carolina Business Corporation Act, in several ways:

1. It contains an exemption for religious corporations.
2. It does not require that financials be mailed, but only that they be provided on demand.
3. A provision is added empowering the Attorney General to demand nonprofits' financial statements.
4. Under subsection (b), the president is not solely responsible for certifying the basis of preparation of financial statements.

<< SC ST § 33–31–1621 >>

Section 33–31–1621. Report of indemnification to members.

If a corporation indemnifies or advances expenses to a director under Section 33–31–851, 33–31–852, 33–31–853, or 33–31–854 in connection with a proceeding by or in the right of the corporation, the corporation shall report the indemnification or advance in writing to the members with or before the notice of the next meeting of members.

OFFICIAL COMMENT

Section 16.21 requires that members be notified of indemnification of directors under sections 8.51, 8.52 and 8.54 and advances for expenses under section 8.53. The report must be made only if the payment or advances were made in a derivative action. The report must be made with or before the notice of the next members' meeting.

SOUTH CAROLINA REPORTERS' COMMENTS

This section makes no change from the previously applicable statute, Section 33–16–210(a) of the South Carolina Business Corporation Act.

Article 17

Miscellaneous

<< SC ST § 33–31–1701 >>

Section 33–31–1701. Application to Existing Domestic Corporations

(a) This chapter applies to all domestic corporations which on this chapter's effective date were governed by Title 33, Chapter 31 of the 1976 Code.

(b) This chapter applies to each domestic corporation in existence on its effective date, organized other than under Title 33, Chapter 31, Code of Laws of South Carolina, 1976, upon such corporation's filing with the Secretary of State an irrevocable election to be governed by the provisions of this chapter. The irrevocable election shall contain all the information required by, and may include any other matter permitted by, Section 33–31–202 (except that information required by subsection (a)(4), relating to the incorporators, is not required). The irrevocable election shall be signed by the presiding officer of its board (or other governing body), its president, by another of its officers, or any other person, regardless of designation, whose functions are those of, or equivalent to such officer.

(c) This chapter applies to all domestic corporations resulting from the merger of any corporation with a corporation organized under this chapter, when the latter is designated as the surviving corporation.

OFFICIAL COMMENT

The underlying concept of the Model Act is that it applies to all or substantially all nonprofit corporations organized in a state. Many states have a general nonprofit corporation statute and special laws for particular types or categories of nonprofit corporations. The Model Act provides an opportunity to adopt a unified, consistent, and understandable law applicable to all or substantially all nonprofit organizations in a state. States adopting the Model Act should specify the statutes it replaces.

The concept of a uniform law is enhanced by the mandate of section 17.01 that the Model Act is applicable on its effective date to all corporations subject to its provisions. See section 17.06 [section 33–31–1705] for provisions relating to the effective date.

Section 17.01 applies to corporations formed under statutes that have reserved the right to amend or repeal their provisions. The Model Act may therefore be made applicable to all corporations to which it can be constitutionally applied. As most statutes adopted in this century have "reservation of power" clause the act will have general applicability to most nonprofit corporations.

Some states may wish to adopt optional subsection (b) which allows a few nonprofit corporations to decide whether or not to be governed by the provisions of the Model Act. Usually these corporations would be corporations formed under old statutes or charters that did not reserve the power of amendment, or religious corporations formed under some special statute. These corporations might prefer the Model Act and should be given the opportunity to come under its provisions in whole or in part.

SOUTH CAROLINA REPORTERS' COMMENTS

Subsection (a). Pursuant to section 33–31–1701(a), amended Title 33, Chapter 31 applies to all South Carolina corporations governed by former Title 33, Chapter 31 ("Nonprofit Corporations Generally"). The power to alter the statutory governance of

existing corporations was reserved by the General Assembly by Code Section 33–1–102, which, by operation of Code Section 33–20–103 applies to nonprofit corporations organized under the provisions of Title 33, Chapter 31.

 Subsection (b). Amended Title 33, Chapter 31 applies only to corporations chartered under former Title 33, Chapter 31 and its predecessors and not, therefore, to entities organized under any other chapter including, for example, Title 33, Chapters 35, 37, 39, 45, 47, 49, and 53 (expect that section 33–31–834 specifically applies to electrical coops organized under Chapter 49). Subsection (b) entitles such entities to elect to be governed by Title 33, Chapter 31 by an irrevocable election filed with the Secretary of State. This subsection also permits corporations which were specifically legislatively chartered and those which may have been chartered by cities or other local governmental units to elect to be governed by this chapter. Such an election by a legislatively chartered corporation would constitute, in effect, the surrender by the latter of its legislative charter powers. Enactment of section 33–31–1701 by the General Assembly constitutes that body's consent to the surrender of such powers and adoption by the corporation of the powers, rights, governance provisions, and obligations provided in this chapter.

 Subsection (c). Subsection (c) is a non-Model Act provision, intended to make clear that any corporation may merge with a corporation governed by this chapter pursuant to any applicable merger statute and that the corporation organized under this chapter will be the surviving corporation, if so designated in the terms of merger. Such a merger between a corporation governed by this chapter and a corporation possessing a pre–1900 legislative charter would constitute, in effect, the surrender by the latter of its legislative charter powers. Enactment of section 33–31–1701 by the General Assembly constitutes that body's consent to the surrender of such powers.

<< SC ST § 33–31–1702 >>

Section 33–31–1702. Application to Qualified Foreign Corporations

 A foreign corporation authorized to transact business in this State on the effective date of this chapter is subject to this chapter but is not required to obtain a new certificate of authority to transact business under this chapter.

OFFICIAL COMMENT
 Foreign corporations are subject to the Model Act as of its effective date. See section 17.06 [section 33–31–1705]. However, as a result of section 17.02, it is not necessary for foreign corporations to obtain a new certificate of authority to transact business.

<< SC ST § 33–31–1703 >>

Section 33–31–1703. Saving Provisions

 (a) Except as provided in subsection (b), the repeal of a statute by this chapter does not affect:
  (1) the operation of the statute or any action taken under it before its repeal;
  (2) any ratification, right, remedy, privilege, obligation, or liability acquired, accrued, or incurred under the statute before its repeal;
  (3) any violation of the statute or any penalty, forfeiture, or punishment incurred because of the violation, before its repeal;
  (4) any proceeding, reorganization, or dissolution commenced under the statute before its repeal, and the proceeding, reorganization, or dissolution may be completed in accordance with the statute as if it had not been repealed; or
  (5) any meeting of members or directors or action by written consent noticed or any action taken before its repeal as a result of a meeting of members or directors or action by written consent.
 (b) If a penalty or punishment imposed for violation of a statute repealed by this chapter is reduced by this chapter, the penalty or punishment if not already imposed shall be imposed in accordance with this chapter.

OFFICIAL COMMENT
 Section 17.03 is derived from section 25 of the Uniform Statutory Construction Act adopted by the National Conference of Commissioners on Uniform State Laws in 1965.

SOUTH CAROLINA REPORTERS' COMMENT
 Section 33–31–1703 is substantially identical to section 33–20–105 of the South Carolina Business Corporation Act.

<< SC ST § 33–31–1704 >>

Section 33–31–1704. Severability

  If any provision of this chapter or its application to any person or circumstance is held invalid by a court of competent jurisdiction, the invalidity does not affect other provisions or applications of this chapter that can be given effect without the invalid provision or application, and to this end the provisions of this chapter are severable.

OFFICIAL COMMENT
  Section 17.04 is a standard severability provision.

<< SC ST § 33–31–1705 >>

Section 33–31–1705. Effective Date

  As used in this chapter, the term 'this chapter's effective date' or any similar variation means the effective date of the act which revised the provisions of Chapter 31 of Title 33 to enact the South Carolina Nonprofit Corporation Act of 1994.

<< SC ST § 33–31–1706 >>

Section 33–31–1706. Public Benefit, Mutual Benefit, and Religious Corporations

  (a) On the effective date of this chapter, each domestic corporation that is or becomes subject to this chapter shall be designated as a public benefit, mutual benefit, or religious corporation as follows:
   (1) any corporation designated by statute as a public benefit corporation, a mutual benefit corporation, or a religious corporation is the type of corporation designated by statute;
   (2) any corporation that does not come within subsection (1) but is organized primarily or exclusively for religious purposes is a religious corporation;
   (3) any corporation that does not come within subsection (1) or (2) but that is recognized as exempt under section 501(c)(3) of the Internal Revenue Code, or any successor provision, is a public benefit corporation;
   (4) any corporation that does not come within subsection (1), (2) or (3), but that is organized for a public or charitable purpose and that upon dissolution must distribute its assets to a public benefit corporation, the United States, a state, or a person that is recognized as exempt under section 501(c)(3) of the Internal Revenue Code or any successor provision, is a public benefit corporation; and
   (5) any corporation that does not come within subsection (1), (2), (3), or (4) is a mutual benefit corporation.
  (b) In any filing with the Secretary of State, an existing corporation may elect designation as a public benefit, mutual benefit, or religious corporation.

OFFICIAL COMMENT
  Section 17.07 [section 33–31–1706] sets forth the rules for determining whether nonprofit corporations existing on the effective date of the Model Act are public benefit, mutual benefit, or religious corporations.
  Subsection (1) provides that corporations may be designated by a statute other than the Model Act as public benefit, mutual benefit, or religious corporations. Health maintenance organizations or other corporations may feel that the type of corporation they would be required to be under subsections (2) through (5) is inappropriate. If so, they can be designated as a public benefit, mutual benefit, or religious corporation under a law other than the Model Act.
  A corporation not covered by subsection (1) that is organized primarily or exclusively for religious purposes is a religious corporation.
  Under subsection (3) a corporation not falling within subsection (1) or (2) that is recognized as exempt under section 501(c)(3) of the Internal Revenue Code, or any successor section, is a public benefit corporation. A corporation obtains the tax benefits of section 501(c)(3) by holding itself out as operating or a public or charitable purpose and not for the private benefit of its officers, directors, members, or controlling persons. Its entire reason for being is to operate in the public interest. Consequently the

Model Act requires it to be a public benefit corporation. See Introduction of Model Nonprofit Corporation Act for a discussion of public benefit corporations.

Subsection (4) provides that any corporation not falling under subsection (1), (2), or (3) is a public benefit corporation if: (i) it is organized for a public or charitable purpose; and (ii) upon dissolution its assets must be distributed to the United States, a public benefit corporation, a state, or a section 501(c)(3) organization. Because corporations described by subsection (4) have the same objectives as public benefit corporations and their members have no economic interest in their assets, they are in effect and the Model Act treats them as public benefit corporations. The Sierra Club or some other organization holding themselves out as operating for a public purpose, but that have lost or never obtained section 501(c)(3) tax status because of political activities would fall within the provisions of subsection (4) if their assets must be distributed to a public benefit corporation, the United States, a state, or a section 501(c)(3) organization.

A corporation that exists on the effective date of the Model Act may consider itself to be a public benefit corporation, but not have the dissolution clause described in subsection (4). If it wishes to become a public benefit corporation, it should amend its articles to insert an appropriate dissolution clause.

Subsection (5) is a catch-all provision. Any corporation not otherwise covered by subsections (1) through (4) is treated as a mutual benefit corporation by subsection (5). The members of many of these corporations have an economic interest in the corporate assets upon dissolution. Country clubs and social organizations typically fall within this category. Some corporations may be formed for the private benefit of their members, but must distribute their assets on dissolution to a section 501(c)(3) organization. They would be treated as mutual benefit corporations by subsection (5).

SOUTH CAROLINA REPORTERS' COMMENTS

Section 33–31–1706(a) is a default provision, applying to an existing nonprofit corporation unless and until it makes an election under subsection (b). Subsection (b), a non-Model Act provision, permits existing corporations to choose to be categorized as religious, mutual benefit or public benefit corporations (as may corporations which organize under this chapter after effectiveness).

If an existing corporation wishes to make this election it may do so on the Notification by Existing Corporation form described in section 33–31–1707 or by an appropriate statement on any other filing with the Secretary of State. In respect of the right of corporations to choose their category under this chapter, the Reporter for the Model Act observed as follows:

Incorporators may choose the category of nonprofit corporation they believe is most appropriate for the corporation's intended activities....

When an incorporator has chosen to form a public benefit, mutual benefit, or religious corporation, the Secretary of State may not question the proposed corporation's intended activities, purposes, or operations if the [Model Act's] filing requirements are met. The Secretary of State cannot challenge the corporation on the ground that it will not benefit the public or its member or that its purposes are not really religious. [Footnote: In appropriate cases, a corporation may be challenged in a quo warranto proceeding.]

The [Model Act] does not deal with the question of whether the activities of a public benefit corporation, or any other nonprofit corporation, can be so offensive to public policy that its existence can be challenged by the state in a quo warranto or other proceeding. The matter is left to judicial development on a state-by-state basis.

M. Hone, Revised Model Nonprofit Corporation Act xxiii (Prentice Hall 1987). The Reporter goes on to observe that practical considerations will determine category selection to a large extent. As an example, he points out that a corporation qualifying under IRC section 501(c)(3) could not abide by the Model Act's rules governing mutual benefit corporations.

<< SC ST § 33–31–1707 >>

Section 33–31–1707. Existing domestic and foreign corporations required to file 'Notification by Existing Corporation' form.

(a) All domestic corporations in existence on the effective date of this act which are governed by this chapter, and all foreign nonprofit corporations authorized to transact business in this State on the effective date of this act which do not then have on file with the Secretary of State either a current registered office or a current registered agent at that office shall file on or before January 2, 1996, 'Notification by Existing Corporation' form. Such form shall designate:

(1) the name of the corporation;

(2) the street address of the registered office in this State with zip code; and,

(3) the name of the registered agent whose office address shall be identical with the registered office.

 (b) If any domestic or foreign corporation fails to make the filing required by subsection (a) on or before January 2, 1996, it is considered as of January 2, 1996, to have designated the Secretary of State as its agent upon whom process against it may be served in any action or proceeding arising in any court in this State. Service of process is made by delivering to and leaving with the Secretary of State, or with any person designated by him to receive such service, duplicate copies of the process, notice, or demand. The Secretary of State immediately shall cause copies to be forwarded by certified mail addressed to the corporation at (1) the headquarters or principal office of the domestic corporation designated upon its declaration and petition for incorporation or application for qualification of a foreign corporation, (2) the last address of the domestic or foreign corporation known to the plaintiff, and (3) with respect to a foreign corporation, any registered office in the jurisdiction of incorporation (which address shall be as provided to the Secretary of State by the plaintiff). All costs of mailing shall be paid by the plaintiff and the Secretary of State may charge a fee of twenty dollars for the service.

 (c) All domestic corporations in existence on the effective date of this act which are governed by this chapter, and all foreign nonprofit corporations authorized to transact business in this State on the effective date of this act whose headquarters or principal office as listed upon its declaration and petition for incorporation as a domestic nonprofit corporation or application for certificate of authority to transact business as a foreign nonprofit corporation which is no longer the location of the corporation's principal office shall file (1) a Notice of Change of Principal Office as is required by Section 33–31–505 or Section 33–31–1515, or (2) may designate upon the notice filed pursuant to subsection (a) the current street address along with the zip code of the corporation's principal office and the address of the former principal office (which filing shall serve as a Notification of Change of Principal Office). Any such domestic corporation may also elect a designation as a public benefit, mutual benefit, or religious corporation as is provided in Section 33–31–1706(b).

SOUTH CAROLINA REPORTERS' COMMENTS

 This is not a Model Act section. There is no comparable provision in the Business Corporation Act. Most nonprofit corporations have no statutory agent. This section provides that if the Secretary of State has not been notified of the name of the statutory agent by January 2, 1996, that the Secretary of State is designated as the corporation's agent for service of process. It is also likely that the principal office of existing nonprofit corporations as listed on the corporation's declaration and petition for incorporation is no longer current. Each nonprofit corporation is required to maintain a current address with the Secretary of State, and therefore, it may be convenient for existing corporations to make a combined filing, both identifying a statutory agent and also the entity's current principal office. If the corporation fails to keep its principal office current it is subject to being administratively dissolved. Likewise the Secretary of State is authorized to dissolve a corporation which fails to keep a current filing of the name and address of its statutory agent. The Secretary of State is given discretion as to whether to pursue dissolution actions against nonprofit corporations which have failed to make these technical filings. It is assumed that prior to January 2, 1996, that the Secretary of State will exercise this discretion by not pursuing dissolution actions against nonprofit corporations solely on the basis that they have not provided the name of a statutory agent or brought their principal place of business address up to date.

 The failure of any corporation to make a filing required by this section does not in and of itself impair its good standing or qualification to do business, nor in any way impair the validity of any contract or act taken by such corporation. However, the failure may provide grounds for the Secretary of State to commence a dissolution action against the corporation as provided in other sections of this chapter.

 Some nonprofit corporations such as Rotary clubs, the Kiwanis, and others, will not have an actual permanent location. They will have a usual place of meeting and may maintain a mailbox or a member's address as their mailing address. It is anticipated that the Secretary of State will liberally construe the requirement in this section that the organization list its "street address." In situations where the organization does not actually own or lease property, it is assumed that the filing will be acceptable if it specifies the usual mailing address which the organization uses. The organization, if it desires, could also specify its usual date, time, and place of meeting—or merely its usual place of meeting.

<< SC ST § 33–31–1708 >>

Section 33–31–1708. Provisions not applicable.

Other sections of this chapter notwithstanding, cooperative nonprofit membership corporations organized under or transacting business pursuant to Chapter 49 of this title and telephone cooperatives organized under or transacting business pursuant to Chapter 45 or any other provision of law in this title are not subject to the provisions of this chapter and no provision of this chapter shall repeal or amend any provision of Chapter 49 of this title, or any provision of Chapter 45 of this title or any other provision of law in this title relating to telephone cooperatives.

Applicability to domestic business or nonprofit corporations

SECTION 2. Section 15–9–210 of the 1976 Code, as last amended by Act 181 of 1993, is further amended to read:

<< SC ST § 15–9–210 >>

"Section 15–9–210. (a) A domestic business or nonprofit corporation's registered agent is the agent of the corporation for service of any process, notice, or demand required or permitted by law to be served, and the service is binding upon the corporation.

(b) The business or nonprofit corporation may be served under Rule 4(d)(8) of the South Carolina Rules of Civil Procedure by registered or certified mail, return receipt requested, addressed to the office of the registered agent, or the office of the secretary of the corporation at its principal office. Service is effective upon the date of delivery as shown on the return receipt. Entry of default and default judgments shall be subject to the conditions of Rule 4(d)(8).

(c) If the business or nonprofit corporation has no registered agent, or the agent cannot be served with reasonable diligence by means authorized by rule or statute, other than under Section 15–9–710, and such appears by affidavit, the court or judge thereof, the clerk of the court of common pleas or the master may grant an order that the corporation may be served by registered or certified mail, return receipt requested, addressed to the office of the secretary of the corporation at its principal office. The summons shall state the date it was mailed under this subsection, and the date service is effective. Service is perfected five days after its deposit in the United States mail, as evidenced by the postmark, or other evidence of the date the summons and complaint was mailed pursuant to this paragraph, if mailed postpaid and correctly addressed to the address of the company's principal office which is listed on the last filed annual report of the business corporation or last filed notice of change of principal office for a nonprofit corporation or, if none has been filed, the address of the principal office specified in the initial annual report of the business corporation filed with the South Carolina Department of Revenue and Taxation and, in the Articles of Incorporation (or initial annual report, if filed) for a nonprofit corporation. Entry of judgment and judgment by default may be taken as otherwise provided by Rule 55 of the Rules of Civil Procedure.

(d) This section does not prescribe the only means, or necessarily the required means, of serving a domestic business or nonprofit corporation."

Applicability to foreign business or nonprofit corporations

SECTION 3. Section 15–9–240 of the 1976 Code, as last amended by Act 42 of 1993, is further amended to read:

<< SC ST § 15–9–240 >>

"Section 15–9–240. (a) The registered agent of a foreign business or nonprofit corporation authorized to transact business in this State is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the foreign corporation.

(b) A foreign business or nonprofit corporation may be served under Rule 4(d)(8) of the South Carolina Rules of Civil Procedure by registered or certified mail, return receipt requested, addressed to the office of the registered agent, or office of the secretary of the foreign corporation at its principal office shown in its application for a certificate of authority or in its most recent annual report. Service is effective upon the date of delivery as shown on the return receipt. Entry of default and default judgments shall be subject to the conditions of Rule 4(d)(8).

(c) If the foreign business or nonprofit corporation:

(1) has no registered agent or its registered agent cannot be served with reasonable diligence by other means authorized by rule or statute, other than under Section 15–9–710 service by publication;

(2) has withdrawn from transacting business in this State as provided by law; or

(3) has had its certificate of authority revoked as provided by law, and such appears by affidavit, the court or judge, the clerk of court of common pleas, or the master may grant an order that the corporation may be served by registered or certified mail, return receipt requested, addressed to the office of the secretary of the corporation at its principal office. The summons shall state the date it was mailed under this subsection and that service is perfected five days after its deposit in the United States mail.

(d) Service is perfected under subsection (c) five days after its deposit in the United States mail, as evidenced by the postmark, or other evidence of the date the summons and complaint was mailed pursuant to this subsection, if mailed postpaid and correctly addressed to the address of the company's principal office which is listed on the filed annual report of a business corporation or listed on the last filed notice of change of principal office for a nonprofit corporation (or in its application for certificate of authority if no annual report or notice of change of principal office has ever been filed).

(e) This section does not prescribe the only means, or necessarily the required means, of serving a foreign business or nonprofit corporation."

Applicability to foreign business or nonprofit corporations

SECTION 4. Section 15–9–245 of the 1976 Code, as last amended by Act 444 of 1988, is further amended to read:

<< SC ST § 15–9–245 >>

"Section 15–9–245. (a) Every foreign business or nonprofit corporation which is not authorized to do business in this State, by doing in this State, either itself or through an agent, any business, including any business activity for which authority need not be obtained as provided by Section 33–15–101, is considered to have designated the Secretary of State as its agent upon whom process against it may be served in any action or proceeding arising in any court in this State out of or in connection with the doing of any business in this State.

(b) Service of the process is made by delivering to and leaving with the Secretary of State, or with any person designated by him to receive such service, duplicate copies of the process, notice, or demand. The Secretary of State immediately shall cause one of the copies to be forwarded by certified mail, addressed to the corporation either at its registered office in the jurisdiction of its incorporation, its principal place of business in the jurisdiction, or at the last address of the foreign business or nonprofit corporation known to the plaintiff, in that order.

(c) Proof of service must be by affidavit of compliance with this section and filed, together with a copy of the process, with the clerk of court in which the action or proceeding is pending. There must be filed with the affidavit of compliance the return receipt signed by the foreign business or nonprofit corporation or other official proof of delivery or, if acceptance was refused, there must be filed the original or a photostated or certified copy of the envelope with a notation by the postal authorities that acceptance was refused. If acceptance was refused, a copy of the notice and process, together with notice of the mailing by certified mail and of refusal to accept must be sent promptly to the foreign business or nonprofit corporation. If this section is complied with, the refusal to accept delivery of the certified mail or to sign the return receipt shall not affect the validity of the service, and the foreign corporation refusing to accept the certified mail must be charged with knowledge of the contents thereof.

(d) Service under this section may be made also by delivery of a copy of the process to any foreign business or nonprofit corporation outside the State. Proof of the delivery must be made by affidavit of the person making delivery, and the affidavit must be filed with the clerk of court in which the action or proceeding is pending.

(e) The Secretary of State shall charge a fee of ten dollars for the service.

(f) This section does not prescribe the only means, or necessarily the required means, of serving a foreign business or nonprofit corporation not authorized to do business in this State."

Applicability to business corporations

SECTION 5. Section 15–9–430 of the 1976 Code, as last amended by Act 444 of 1988, is further amended to read:

<< SC ST § 15–9–430 >>

"Section 15–9–430. (a) Each director of a domestic business corporation who is a nonresident of this State at the time of his election or who becomes a nonresident during his term in office, shall by his acceptance of election or by continuing in office as director, be deemed to have appointed the Secretary of State as an agent to receive service of process upon him in any action or proceeding relating to actions of such corporation and arising while he held office as director of such corporation.

(b) Service of such process shall be made by delivering to and leaving with the Secretary of State, or with any person designated by him to receive such service, duplicate copies of such process. The Secretary of State shall thereupon immediately cause one of such copies to be forwarded to the nonresident director by certified mail. Proof of service shall be by affidavit of compliance with this section filed, together with a copy of the process, with the clerk of court in which the action or proceeding is pending.

(c) Service under this section may also be made by delivery of a copy of the process to the nonresident director at his address outside the State. Proof of such delivery shall be made by affidavit of the person making delivery and the affidavit shall be filed with the clerk of court in which the action or proceeding is pending.

(d) The resignation in good faith of any nonresident director, effective as of the date of filing with the Secretary of State a notice of his resignation, shall terminate the application to him of the provisions of this section, except for any cause of action already accrued.

(e) Every domestic business corporation which has any director who is or becomes a nonresident of this State after the corporation has filed its most recent annual report pursuant to Section 12–19–20 shall file with the Secretary of State the names and addresses of its directors and shall file supplementary reports showing any change of address or residence of any director. The reports must be filed within ten days from the date of election, removal from this State, or change of address of any director. The Secretary of State shall compile and maintain a current list, indexed by corporation, of all nonresident directors of domestic business corporations which are listed on such interim filings. Delivery of copies of service as required in subsections (b) and (c) to the nonresident director must be made by delivering the copy to the most recent address on file with the company's most current annual report or any more current interim report which has been filed with the Secretary of State pursuant to this subsection.

(f) The Secretary of State shall charge a fee of ten dollars to accompany service thereunder."

Applicability to business or nonprofit corporations

SECTION 6. Section 33–11–101 of the 1976 Code is amended to read:

<< SC ST § 33–11–101 >>

"Section 33–11–101. (a) Business corporations may merge into,

(i) another business corporation or

(ii) a nonprofit corporation, to the extent permitted by Section 33–31–1101, if the board of directors of each corporation adopts and its shareholders, of a business corporation, and members, of a nonprofit corporation, if required by Section 33–11–103 for business corporations and Section 33–31–1103 for nonprofit corporations, approve a plan of merger.

(b) The plan of merger must set forth the:

(1) name of each corporation planning to merge and the name of the surviving corporation into which each other corporation plans to merge;

(2) terms and conditions of the merger; and

(3) manner and basis of converting the shares of each business corporation into shares, obligations, other securities, or membership interests of the surviving or any other corporation or into cash or other property in whole or part.

(c) The plan of merger may set forth:

(1) amendments to the articles of incorporation of the surviving corporation; and

(2) other provisions relating to the merger.

(d) For purposes of this Section 33–11–101, the term 'corporation' means both business and nonprofit corporations."

Immunity from liability

SECTION 7. The 1976 Code is amended by adding:

<< SC ST § 33–49–690 >>

"Section 33–49–690. All directors, trustees, or members of the governing bodies of electric cooperatives organized under this chapter are immune from suit arising from the conduct of the affairs of these electric cooperatives in the same manner and under the same conditions as directors, trustees, and members of the governing bodies of not-for-profit cooperatives, corporations, associations, and organizations are immune under Section 33–31–834. This immunity from suit is removed when the conduct

amounts to wilful, wanton, or gross negligence. Nothing in this section may be construed to grant immunity to the electric cooperatives."

Exceptions as to nonprofit corporations and electric and telephone utilities

SECTION 8. Section 33–20–103 of the 1976 Code is amended to read:

<< SC ST § 33–20–103 >>

"Section 33–20–103. Except for corporations organized under or transacting business pursuant to the provisions of Chapter 49 of this title, except for corporations organized under or transacting business pursuant to Chapter 45 of this title or any other provision of law in this title relating to telephone cooperatives, and except for those nonprofit corporations which are governed exclusively by the provisions of Chapter 31 of this title, Chapters 1 through 20 of this Title apply to every domestic nonprofit corporation and to any other foreign nonprofit corporation which is authorized or transacts business in this State except as otherwise provided in Chapters 1 through 20 of this Title or by the law regulating the organization, qualification, or governance of the nonprofit corporation."

Forfeiture or reversion of trust property not caused

SECTION 9. The 1976 Code is amended by adding:

<< SC ST § 62–7–507 >>

"Section 62–7–507. Nothing contained in Sections 33–31–150, 33–31–151, and 62–7–506 may be construed to cause a forfeiture or reversion of any of the property of a trust which is subject to such sections, or to make the purposes of the trust impossible of accomplishment."

Repeal

<< Repealed: SC ST §§ 33–33–10, 33–33–20, 33–33–30, 33–33–40, 33–33–50, 33–33–60, 33–33–70 >>

SECTION 10. Chapter 33 of Title 33 of the 1976 Code is repealed.

Analysis lines, official comments, and reporter's notes

<< Note: SC ST § 33–31–101 >>

SECTION 11. The analysis lines preceding the code sections are for identification only and are not considered part of the Code sections. The Official Comments and the South Carolina Reporter's Notes which are included after each section are included for analytical and information purposes only and must not be considered part of the sections themselves.

Time effective

SECTION 12. This act takes effect upon approval by the Governor.

Approved the 10th day of May, 1994.

SC LEGIS 384 (1994)