# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Liberty Property Holdings SC, LLC individually, derivatively on behalf of Renaissance Tower Horizontal Property Regime, and on behalf of a class of all other similarly situated; Azure Bleu, LLC; Edelyne Beauvais-Thomas; Jason E. Blosser; Nicole M. Blosser; Eshellah D. Calhoun; Zachary G. Calhoun, David DiMaio; Linda DiMaio; Susan H. Ferguson; Four Parts Whole, LLC; Sharon M. Hubbard; Carol A. Messenger; Jeffrey S. Palmer; Summalin, Inc.; Terry J. Tuminello; Shelley Ware; and Jonathan S. Williams,<br><br>　　　　　　Plaintiffs.<br><br>　　v.<br><br>Jeffrey L. Richardson; William S. Spears; Brent M. Whitesell; Laurie Z. Wunderley; Madeline R. Mercer; Catherine M. Gregor; Dennis J. Sassa; Tracy A. Meadows; Peter A. Grusauska; and William Douglas Management, Inc.,<br><br>　　　　　　Defendants. | CASE NO. 4:22-CV-03556-RBH<br><br><br><br><br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Defendants, by and through undersigned counsel, submit this Reply to Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Response").

## ARGUMENT

### I. Director Defendants are Immune from Liability under the Non-Profit Act.

In the Motion to Dismiss, the Director Defendants argue that the immunities in the Nonprofit Corporation Act ("Non-Profit Act") protect them from personal liability. *See* S.C. Code § 33-31-202(b) (providing immunity for directors under the Non-Profit Act, unless the director

violates the duty of loyalty, intentionally violates the law, or acts in bad faith). Plaintiffs respond to this argument in three ways. *First*, Plaintiffs contend that the Director Defendants *may* enjoy protection from liability for certain claims under the Non-Profit Act, but the Plaintiffs have not yet had the chance to discover this fact and it is outside the pleadings. *Second*, Plaintiffs argue that they sufficiently alleged that the Director Defendants' actions were "not in good faith in the Complaint," and therefore Plaintiffs' allegations are sufficient to overcome the immunities in the Non-Profit Act. *Third*, Plaintiffs argue that their claims under the Horizontal Property Regime Act ("HPR Act") are not subject to the immunities under the Non-Profit Act. Each of Plaintiffs' arguments fail.

### a. Director Defendants are Immune from Personal Liability under the Regime's Articles of Incorporation.

Plaintiffs argue that the Non-Profit Act affords immunity from personal liability to directors generally "unless the articles [of incorporation] provide otherwise." (**ECF 14, p. 4**). Plaintiffs claim not to know what the Regime's Articles of Incorporation state in this regard. Plaintiffs also argue that this Court cannot consider the Regime's Articles at the motion to dismiss stage because the Articles are outside the pleadings. *Id.*

As Defendants discussed in their Motion to Dismiss, courts may take judicial notice of certain things outside the pleadings (such as publicly available documents) when ruling on a motion to dismiss. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (courts can take judicial notice of publicly available documents without converting a motion to dismiss into a motion for summary judgment); Fed. R. Evid. 201 (courts at any stage of a proceeding may "judicially notice a fact that is not subject to reasonable dispute," provided that the fact is "generally known within the court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). More

broadly, "there are exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to the in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F.App'x 395, 396-97 (4th Cir. 2006). Finally, the Fourth Circuit has specifically affirmed that courts "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is not dispute about the document's authenticity." *Goines v. Valley Comty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

Like all South Carolina non-profit corporations, the Regime's Articles and subsequent amendments are public records, available for download from the South Carolina Secretary of State's website. *See* S.C. Secr. of State Business Name Search, *available at* Entity Profile - Business Entities Online - S.C. Secretary of State (sc.gov). Thus, the Court may take judicial notice of the Regime's Articles because the Articles are publicly available. Defendants downloaded these publicly available public records and attached them to this Reply as **Exhibit 1**.

In addition, the Court may take judicial notice of the Regime's Articles because the Complaint explicitly references them in paragraph 90. (**ECF 1, ¶ 90**). Plaintiffs also implicitly rely on the Articles for their Breach of Fiduciary Duty claims, which necessarily rest on the fact that the Regime created a Board of Directors in the Articles that would be subject to the fiduciary duties set forth in the Non-Profit Act. *See* (**ECF 1, ¶¶ 164-178**). So, the Articles are both referenced in the Complaint and integral to the Complaint, and for this reason as well, the Court may consider them in ruling on the Motion to Dismiss.

As the Court can see, the Regime's Articles *do not* remove the immunities from personal liability found in the Non-Profit Act. In fact, the Regime's Articles explicitly incorporate the

immunities of the Non-Profit Act. The Articles state the following: "Your Petitioners pray that the Secretary of State does issue to the aforesaid Renaissance Towers Horizontal Property Regime, a charter with all rights, powers, privileges, and *immunities* and subject to all of the limitations and liabilities conferred by Chapter 31, Title 33 [the Non-Profit Act]." (**Exhibit 1, pp. 11-12**) (emphasis added). Accordingly, the Director Defendants are protected from personal liability under the Non-Profit Act.

### b. *Plaintiffs Did Not Allege Facts Making it Plausible that the Director Defendants' Actions Were "Not in Good Faith."*

Under the Non-Profit Act, a director is not entitled to immunity from personal liability if he acts "not in good faith." In their Response Memorandum, Plaintiffs spend a significant amount of time attempting to parse the meaning of "not in good faith." Distilled to a few salient points, Plaintiffs argue the following: (1) "not in good faith" is something different than intentional misconduct or a knowing violation of the law; (2) "not in good faith" is more egregious than gross negligence but does not require subjective bad faith; and, (3) acting in good faith requires corporate directors to "abide by the norms of corporate governance and comply with legal standards while performing their jobs." (**ECF 14, pp. 5-9**). While Defendants do not agree with all of Plaintiffs' attempts to define "not in good faith" (and believe certain cases are entirely mischaracterized), Defendants would turn the Court's focus to the more fundamental issue. Even accepting Plaintiffs' legal conclusions about the meaning of "not in good faith" above as true, did Plaintiffs allege facts in the Complaint making it plausible that the Director Defendants' actions were "not in good faith?" The answer is no.

Plaintiffs never once alleged in the Complaint that the Director Defendants acted in "bad faith" or "not in good faith." In fact, the word "faith" does not appear at all in the Complaint. Instead, in the Complaint, Plaintiffs only alleged that Defendant Directors potentially violated the

duty of care. Plaintiffs repeat numerous times that the Director Defendants did not "act in the manner an ordinarily prudent director in a like position would under similar circumstances." *See*, *e.g.*, (**ECF 1, ¶¶ 166, 169-174**). Plaintiffs also allege that the Director Defendants were "grossly negligent and incompetent." *Id.* at ¶ 175. Ordinary prudence and gross negligence are both concepts tied to the duty of care, not the duty of loyalty or the duty to act in good faith.

In the Response Memorandum, Plaintiffs try to change the allegations in the Complaint to assert that the Director Defendants acted "not in good faith." According to the Response Memorandum, the Complaint alleges that the Director Defendants consciously disregarded their duties. On page 14 of the Response Memorandum, Plaintiffs maintain that the Complaint "allege[s] that the Director Defendants' failure to repair the structural components was a ***conscious*** disregard of their responsibilities because they were ***consciously*** 'permitting damage to the steel structural components . . . to continue.'" (**ECF 14, p. 10**) (emphasis added). Plaintiffs cite paragraph 172 of the Complaint to support their argument. The problem is Paragraph 172 of the Complaint ***never*** once uses the words "conscious" or "consciously." Instead, paragraph 172 alleges that the "Defendants failed to act in the manner an ordinarily prudent director in a like position would under similar circumstances by permitting damage . . . ." (**ECF 1, ¶ 172**). This is clearly an allegation that the Director Defendants were negligent and violated the duty of care, not that the Defendant Directors acted "not in good faith."

Plaintiffs make a second attempt in their Response Memorandum to try to change the allegations in the Complaint to allege that the Director Defendants acted "not in good faith." This time, Plaintiffs argue that the Complaint "allege[s] that the Director Defendants' breaches of their duties were willful or deliberate." (**ECF 14, p. 10**). In the Complaint, Plaintiffs do not allege that the Director Defendants willfully or deliberately breached their ***fiduciary duties***, nor do they allege

that the Director Defendants' negligence and gross negligence were willful or deliberate. Instead, Plaintiffs state under their Second Cause of Action for Breach of Covenants and By-Laws that "the Master Deed provides that . . . the Regime may bring an action against an owners for violation of the [HPR] Act, the Master Deed, or the By-Laws, and that where the owner's violation was willful or deliberate, the owner must pay the Regime's attorney's fees." (**ECF 1, ¶ 184**). Plaintiffs do not then go on to allege that the Director Defendants acted willfully or deliberately, although they do allege several paragraphs later that "Plaintiffs are entitled to an award of their attorney's fees." *Id.* at ¶ 191. Regardless, Plaintiffs did not plead that the Director Defendants committed willful or deliberate violations of their fiduciary duties under the Non-Profit Act; rather, read in the most generous light, Plaintiffs alleged that the Director Defendants willfully and deliberately violated their obligations as co-owners under the Master Deed, the HPR Act, and/or the By-laws.

The Complaint simply does not allege facts making it plausible that the Director Defendants acted "not in good faith." Because the Complaint only alleges facts that could plausibly support a breach of the duty of care, the Court should dismiss the claims against the Director Defendants because they are immune from personal liability for breaches of the duty of care (including gross negligence) under the Non-Profit Act. *See* S.C. Report's Comments, S.C. Code §§ 33-31-202(b) (stating that the Non-Profit Act explicitly protects directors from personal liability for gross negligence because non-profit directors are volunteers serving for nominal or no compensation).

Defendants also wish to note that Plaintiffs stated in the Response Memorandum that they now want to re-write the Complaint in response to Defendants' Motion to Dismiss (presumably to add new allegations related to "not in good faith"), making this entire exercise a waste of the Defendants' and this Court's time and resources. Plaintiffs should have waited to bring their

Complaint until they had obtained sufficient facts and legal grounds to support their causes of action. Defendants urge the Court to consider dismissing Plaintiffs' claims with prejudice.

### c. *Director Defendants' Protection Under the Non-Profit Act is Not Overcome by the HPR Act.*

Plaintiffs argue that their self-styled "breach of contract" claims against the Director Defendants under the HPR Act and Master Deed are not impacted by the protection afforded to directors under the Non-Profit Act. (**ECF 14, pp. 11-16**). Plaintiffs are simply wrong. In two cases, the South Carolina Court of Appeals recognized that directors of a horizontal property regime are entitled to the immunities under the Non-Profit Act from allegations based on the HPR Act, a Master Deed, or the regime's bylaws (in these cases, the protection came in the form of the business judgment rule). *See Fisher v. Shipyard Vill. Council of Co-Owners*, 760 S.E.2d 121, 130 (S.C. Ct. App. 2014) ("The circuit court erred in finding the business judgment rule did not apply because the Master Deed, Bylaws, and the [HPR] Act applied instead. The business judgment rule applies to actions allowed by the Master Deed, Bylaws, and [HPR] Act, *intra vires* acts."); *see also Vill. West Horizontal Prop. Regime v. Int'l Sales & Mktg. Group*, No. 2007-UP-111, 2007 WL 8326688, at *4 (S.C. Ct. App. Mar. 7, 2007) (unpublished) (holding that the regime's corporate governing board was entitled to protection under the business judgment rule for allegations that the board violated the regime's by-laws).

Plaintiffs ask this Court to treat the Director Defendants simply as co-owners in the Regime who are in violation of the Master Deed, entitling the Regime or other aggrieved owners to bring suit for damages. But the only alleged violations of the Master Deed against the Director Defendants relate to their duties as directors. Therefore, absent an allegation that the Director Defendants acted *ultra vires* (*i.e.* that they took actions not authorized under the HPR Act, Articles of Incorporation, Master Deed, or By-Laws), the Director Defendants are entitled to the

immunities under the Non-Profit Act for actions taken in their capacity as directors. Plaintiffs make no allegations of *ultra vires* acts, so Plaintiffs' argument must fail.

## II.  The Statute of Limitations Ended in August 2022.

The parties seem to agree that a court can grant a motion to dismiss based on the Statute of Limitations ("SOL") if the SOL is clear on the face of the Complaint. (**ECF 14, pp. 16-18**). As explained further below, the SOL issue here is clear on the face of the Complaint.

The Non-Profit Act creates a SOL that is the lesser of three years from the failure complained of **_or_** two years after the harm complained of is or reasonably should have been discovered (hereinafter the "Non-Profit SOL"). The Complaint alleges "[d]espite knowing of the damaged structural steel components and that the damage was worsening with the passage of time, the August 2020 newsletter [to Members] states that the Board decided to delay repairing the damaged steel components." (**ECF 1, ¶ 110**). In their Response Memorandum, Plaintiffs argue that the August 2020 newsletter described in the Complaint did not provide them with sufficient notice of the harm about which they now complain.

Plaintiffs premise their breach of fiduciary duty claims, breach of contract claims, and negligence claims on the allegation that the Director Defendants failed to act appropriately when faced with a serious, urgent problem (*i.e.*, the erosion of the steel structure supporting the building). This alleged failure to act appropriately is the "harm complained of."[1] The August 2020 newsletter explicitly put the Plaintiffs on notice that the steel structure required repairs and that the Board elected to delay those repairs. Plaintiffs now attempt in the Response to reframe the newsletter as

---

[1] Plaintiffs also argue that there are numerous allegations in the Complaint of harms occurring after August 2020, such as the evacuation of building and corresponding financial damages to Plaintiffs. (**ECF 14, p. 21**). But these "harms" are simply alleged damages caused by the harm complained of, which is Director Defendants' decision to delay repairs in August 2020.

"simply not[ing] that 'minor structural steel elements' were 'in need of repair.'" (**ECF 14, p. 22**).

But in actuality, the Complaint alleges the following:

> 109. In August of 2020, the Board sent a newsletter to members stating the horizontal structural steel that supports the first floor and the minor structural steel elements that transfer the first-floor loads into the foundation system are in need of repair and that the need for those repairs is a direct result of the structural steel being in a corrosive coastal marine environment and water infiltration from several different sources.
>
> 110. Despite knowing of the damaged structural steel components and that the damage was worsening with the passage of time, the August 2020 newsletter states that the Board decided to delay repairing the structural steel components . . . .

(**ECF 1**). So, contrary to what Plaintiffs state in the Response, the Complaint acknowledges that the Board told Members that the structural steel supporting the first floor and transferring loads into the foundation were in need of repair due to corrosion and water infiltration in August 2020. A Member exercising reasonable diligence (*i.e.*, reading the newsletter) therefore knew or should have known in August 2020 that the Board made a decision to delay "needed repairs." That is the harm complained of, and therefore it is clear on the face of the Complaint that the two-year Non-Profit SOL began to run in August 2020, and ended in August 2022.[2]

## III.    Plaintiffs Did Not Adequately Plead Demand or Demand Futility.

---

[2] Plaintiffs argue that laches is the correct defense to Plaintiffs' derivative claims, rather than SOL. Courts have recognized that when there is an "analogous [SOL]" for an equitable claim that is brought outside the analogous SOL, "laches typically prevents the cause of action from continuing, barring extraordinary circumstances." *Plumbers & Steamfitters Union Local No. 10 v. Waters*, 451 F.Supp.3d 543, 552 (E.D. Va. 2020). Plaintiffs bear the burden of showing that it would inequitable to apply laches in such a case. *Id.* Here, there is an analogous SOL for the Plaintiffs' direct claims, and Plaintiffs have not shown why it would be inequitable to apply the doctrine of laches. As such, laches would similarly preclude Plaintiffs' derivative claims.

The Motion to Dismiss argues that Plaintiffs did not meet the strict federal pleading requirements for a derivative lawsuit in several regards. (**ECF 8-1, pp. 10-14**). Most importantly, Plaintiffs did not adequately plead either pre-suit demand of the Director Defendants or demand futility. Plaintiffs argue in their Response that the Complaint adequately pleads demand futility because (1) South Carolina requires pre-suit demand to include a demand to initiate litigation, and (2) a demand of the Director Defendants to sue themselves would have been futile. (**ECF 14, pp. 24-29**). Plaintiffs' analysis is incorrect and all of their derivative claims should be dismissed.

### a. Plaintiffs' Did Not Adequately Plead Demand Futility with Regard to the Director Defendants.

Plaintiffs claim that making pre-suit demand of the Director Defendants, as required by FRCP 23.1, would have been futile because the Director Defendants clearly would not consent to sue themselves. Plaintiffs argue that pre-suit demand for litigation is the only form of demand that matters under South Carolina law. Plaintiffs are mistaken.

In a case directly on point, the South Carolina Supreme Court found that a letter from derivative plaintiffs making pre-suit demand of a board of directors to take several actions (<u>none of which</u> included initiating litigation) was sufficient pre-suit demand for purposes of Rule 23(b)(1), SCRCP. *Patterson v. Witter*, 821 S.E.2d 677, 688-89 (S.C. 2018). After making the pre-suit demand of the board of directors, the plaintiffs initiated litigation against the board of directors, bringing both direct and derivative claims. *Id.* at 682-83. With regard to the derivative claims, the Supreme Court overturned the decisions of the circuit court and the Court of Appeals finding that the pre-suit demand letter was insufficient for purposes of Rule 23(b)(1), SCRCP, noting that the demand letter met the requirements of identifying the alleged wrongdoers, describing the harm, and requesting remedial relief. *Id.* at 688-89. The Supreme Court **did not** require the pre-suit

demand to include requesting that the board initiate litigation against themselves or pleading the futility of doing so.

Plaintiffs rely on a single case, *Walbeck v. l'On Co., LLC*, 827 S.E.2d 348, 357 (S.C. Ct. App. 2019), to argue that pre-suit demand is only sufficient if it is a demand to initiate litigation. (**ECF 14, p. 24-25**). But *Walbeck* is not on point. There, the derivative plaintiffs sued a ***third party*** on behalf of a homeowner's association ("HOA"). *Id.* at 355-56. Logically, it would have been appropriate for the derivative plaintiffs to first demand that the HOA board of directors initiate litigation on the HOA's behalf ***prior to*** the derivative plaintiffs bringing a suit on behalf of the HOA, ***unless*** demand to initiate litigation would have been futile. But, the plaintiffs in *Walbeck* did not adequately allege facts indicating that demand of the HOA board to initiate litigation against the third party would have been futile, which is why the Court of Appeals ruled that the circuit court should have dismissed the derivative claims for not meeting the pleading requirements of Rule 23(b)(1). *Id.* at 357. While this case may be instructive with regard to whether Plaintiffs should have made pre-suit demand for litigation against William Douglas (a third party from the Regime), it is not relevant to whether the Plaintiffs should have made pre-suit demand of the Director Defendants.

Similar to *Patterson*, the Court should find here that Plaintiffs did not allege making ***any*** demands of the Director Defendants at any time to take any remedial actions prior to bringing this lawsuit. Further, Plaintiffs did not sufficiently allege why making demand for the Director Defendants to take particular actions (outside of suing themselves) would have been futile. As such, Plaintiffs did not meet the heightened pleading requirements of FRCP 23.1. For these reasons, the Court should dismiss Plaintiffs' derivative claims against the Director Defendants for failing to meet the FRCP 23.1 pleading requirements.

Further, Defendants note an additional issue with Plaintiffs' derivative claims and pleadings. Plaintiffs have sued five (5) current board members and four (4) former board members (whose terms ended in 2020 or before). Plaintiffs do not explain why they are only suing certain former and current board members and not others, which is itself concerning. Regardless, Plaintiffs have not explained why it would have been futile to demand that the *current* board initiate litigation against the *former* board members for their alleged breaches and negligence during their terms. For all of the foregoing reasons, the Court should dismiss Plaintiffs' derivative claims against the Director Defendants for failing to meet the FRCP 23.1 pleading requirements.

### b. *No Pleading of Demand or Demand Futility Related to William Douglas.*

Plaintiffs bring a derivative claim against Defendant William Douglas in negligence. (**ECF 14, ¶¶ 197-199**). According to the Complaint, William Douglas' contract to provide property management services to the Regime ended as of 2020. (**ECF 1, ¶ 85**). Plaintiffs do not allege any facts demonstrating that they ever made demand of the Board of Directors to initiate suit against William Douglas, or why it would have been futile to make such a demand prior to bringing this derivative action. Under the reasoning in *Walbeck*, the Court should dismiss Plaintiffs' derivative claims against William Douglas for failing to meet the pleading requirements under FRCP 23.1.

## IV. The Court Should Dismiss Plaintiffs' Negligence Claims.

Plaintiffs claim that their negligence and gross negligence claims are well-pled and not subject to dismissal because: (1) William Douglas had a "special relationship" with the Regime creating duties outside of contract, and (2) Defendants' arguments about a lack of proximate cause go to the merits and are premature. (**ECF 14, pp. 32-35**). Plaintiffs are wrong on both counts.

### a. *Plaintiffs Have Not Pled nor Demonstrated a Special Relationship with William Douglas.*

Defendants argue in the Motion to Dismiss that Plaintiffs failed to plead the source of William Douglas' duty to Plaintiffs, and that William Douglas' duties to Plaintiffs arose solely in contract, precluding claims against William Douglas in tort under South Carolina's economic loss rule. (**ECF 8-1, pp. 15-16**). Plaintiffs respond that it need only be plausible (based on the factual allegations) that William Douglas had a duty to Plaintiffs, and that in South Carolina a special duty of care *may* arise outside of the contract between parties. (**ECF 14, pp. 32-34**). Plaintiffs cite (in a footnote) to a South Carolina case finding a special duty between a design engineer and a contractor as support. *Id.* at 33 n. 8 (citing *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, *supra*). Finally, Plaintiffs note that the Complaint alleges "[a]s the manager for the Renaissance Tower and the Regime, William Douglas owed duties to the Regime and its members to exercise due care in the management, operations, maintenance, and repair of the Renaissance Tower and the Regime." (**ECF 14, p. 33**) (quoting **ECF 1, ¶ 66**).

Plaintiffs point to no allegations in the Complaint making it plausible that William Douglas had a special duty to Plaintiffs outside of contract. The proper inquiry for the Court is whether the duties alleged in the "negligence cause of action arise from the parties' contract or independently therefrom." *Koontz v. Thomas*, 511 S.E.2d 407, 412 (S.C. Ct. App. 1999) (discussing the holding in *Tommy L. Griffin Plumbing & Heating Co.*, 463 S.E.2d at 88). Here, William Douglas' only alleged duties are those "as the manager for the Renaissance Tower and the Regime," which was a duty created by contract. Thus, Plaintiffs cannot bring this action in tort.[3]

---

[3] Notably, when evaluating a motion to dismiss under the economic loss rule, Judge Childs declined to find a duty of care arising outside of the parties' contract because "[t]he appellate authority simply d[id] not exist under South Carolina law" for the issue at hand. *Besley v. FCA US, LLC*, No. 1:15-cv-01511-JMC, 2016 WL 109877, at *5 (D.S.C. Jan. 8, 2016). Judge Childs noted "this court should not create such an expansion of existing law." *Id.* Similarly, this Court should not expand existing South Carolina law unless it is plausible from the facts alleged that a recognized special relationship exists under South Carolina law.

### *b. Plaintiffs Have Not Sufficiently Pled Negligence and Gross Negligence.*

At the outset, Defendants wish to remind the Court that the Director Defendants are protected from personal liability under the Non-Profit Act for negligence and gross negligence in performing *intra vires* acts. Plaintiffs have not pled any *ultra vires* acts by the Director Defendants, nor have Plaintiffs pled any facts that would suggest Director Defendants acted "not in good faith." Separate and apart from the Director Defendants protection from personal liability, Plaintiffs also have not alleged sufficient facts to support an inference that Plaintiffs' alleged damages were foreseeable or that Defendants were the "but-for" cause of Plaintiffs' alleged damages.

On the issue of foreseeability, Plaintiffs merely recite the element and state that their damages were foreseeable, which is insufficient for purposes of surviving a motion to dismiss. (**ECF 1, ¶ 197**); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiffs argue in the Response that it requires "no great leap" to infer foreseeability from Plaintiffs' factual allegations. (**ECF 14, p. 35**). But Plaintiffs' pleading belies this assertion. The Complaint states that after the Champlain Towers collapse in June 2021, the Board retained an engineer to perform an inspection and prepare a scope of repairs, entered into a contract for repairs, and then evacuated the building after repairs commenced and exposed the extent of the damage. (**ECF 1, ¶¶ 113-1130**). Plaintiffs make no allegations that evacuation and the corresponding costs/expenses were foreseeable prior to June 2021 (at which time the Board took immediate, appropriate action). The lack of alleged foreseeability is supported by the alleged fact that the engineer had performed at least one previous inspection years earlier and never stated that the damaged steel would require imminent evacuation. *See id.*, at ¶ 97. After all, if the engineer could not foresee that, how could the Defendants? On the issue of "but-for" cause, Plaintiffs make no allegations that had the Board

commenced repairs any number of years earlier, then no evacuation and corresponding costs/expenses would have been necessary. There are also not alleged facts that would lead the Court to infer this.

Finally, Plaintiffs make no factual allegations that any of the Defendants ***intentionally*** or ***consciously*** failed to do something it was incumbent on them to do, which the standard for gross negligence. *See supra*, p. 5; *Faile v. S.C. Dep't of Juvenile Justice*, 556 S.E.2d 536, 544 (S.C. 2002) (discussing the standard for gross negligence).

In summary, Plaintiffs are asking the Court to reach the legal conclusion that Plaintiffs have adequately alleged facts that plausibly support the elements for negligence and gross negligence, but they clearly have not.

Dated: February 17, 2023        **BURR & FORMAN LLP**

By     */s/ James K. Gilliam*
       James K. Gilliam     (Fed ID 10761)
       104 South Main St., Suite 700 (29601)
       Post Office Box 447
       Greenville, SC  29602
       864.271.4940 (Telephone)
       864.271.4015 (Facsimile)
       jgilliam@burr.com
       *ATTORNEY FOR DEFENDANTS*