**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| Nicole M. Blosser, individually, derivatively on behalf of Renaissance Tower Horizontal Property Regime, and on behalf of a class of all others similarly situated; Azure Bleu, LLC; Edelyne Beauvais-Thomas; Jason E. Blosser;; Eshellah D. Calhoun; Zachary G. Calhoun; David DiMaio; Linda DiMaio; Susan H. Ferguson; Four Parts Whole, LLC; Sharon M. Hubbard; Liberty Property Holdings SC, LLC; Carol A. Messenger; Jeffrey S. Palmer; Summalin, Inc.; Terry J. Tuminello; Shelley Ware; and Jonathan S. Williams, <br><br> Plaintiffs, <br><br> v. <br><br> Jeffrey L. Richardson; William S. Spears; Brent M. Whitesell; Laurie Z. Wunderley; Madeline R. Mercer; Catherine M. Gregor; Dennis J. Sassa; Tracy A. Meadows; Peter A. Grusauskas; and William Douglas Management, Inc., <br><br> Defendants. | CIVIL ACTION NO.: 4:22-cv-03556-SAL <br><br><br><br> **CONSENT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**[1] |

Plaintiffs, by and through their counsel and with the consent of Defendants, hereby move this Court, pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(e), for entry of an Order certifying a proposed settlement class, appointing a class representative, appointing class counsel, granting preliminary approval of a class action settlement, and approving class notice, all for purposes of settlement of this matter. This motion is based on the following.

---

[1] No memorandum is submitted with this Motion as a full explanation of the motion is set forth herein. Local Civ. Rule 7.04 (D.S.C.).

## BACKGROUND

Plaintiffs filed this putative class and derivative action on October 13, 2022, on behalf of condominium owners in the Renaissance Tower building in Myrtle Beach, South Carolina. The Defendants were members of the Board of Directors of the Renaissance Tower Horizontal Property Regime ("HPR") and the building's property management company, William Douglas Management, Inc. ("WDM"). Due to severe deterioration of the building's structural steel that rendered it unsafe, the building was evacuated and remained so for 141 days. Plaintiffs sought damages to compensate them for assessments they were required to pay for the repairs of the steel and other damages resulting from the evacuation of the building on October 7, 2022, pursuant to an order of the municipality.

On December 13, 2022, Defendants moved to dismiss the action, and in response, Plaintiffs moved to amend their Complaint. On June 20, 2023, the Court granted the motion to amend and denied the motion to dismiss. Since June 20, 2023, the parties have conducted extensive fact discovery including the depositions of the numerous parties and expert witnesses, engaged and produced reports from six expert witnesses, and undertook considerable efforts to resolve the claims.

Discovery ended on February 28, 2025, and the parties mediated the claims on March 5, 2025, with mediator Dawes Cooke, Esq. Though Plaintiffs claimed damages of more than twelve million dollars, Defendants had less than three million in potential insurance coverage for the claims. Of that potential insurance coverage, the majority was a directors' and officers' ("D&O") policy with two million dollars in eroding limits coverage, where the costs to defend the claims to date has substantially eroded the available limits, and which would continue to erode with further litigation of the claims. The D&O coverage was further eroded due to the Board Defendants'

defense and indemnity obligations to former defendant WDM who was represented by separate counsel.  Additionally, both insurance carriers defending the claims contended that limitations and exclusions in their policies would result in their respective policies providing no coverage or only partial coverage for any judgment on the claims.

The Parties reached a settlement in principle of all claims at the mediation in the form outlined in the settlement agreement attached hereto as Exhibit A (the "Agreement").  Defendants have agreed to a total settlement amount of $1,250,000.00, and that total settlement amount will cover the class claims, the derivative claims, and the individual claims, and all amounts related to the claims, including the notice and administrative costs and the attorney's fees and expenses sought by Plaintiffs' counsel.[2]

Plaintiffs file this motion pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, seeking this Court's approval of the settlement and of a settlement class.

## STANDARD

Rule 23(e) requires parties to seek approval from the district court before settling a class action. Fed. R. Civ. P. 23(e). Judicial approval is necessary to ensure that the rights of absent class members are adequately protected. *See In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Clark v. Experian Info. Solutions, Inc.*, 219 F.R.D. 375, 378 (D.S.C. 2003). To that end, Rule 23(e) provides that class members must be given notice of a proposed settlement and the opportunity to request exclusion from the class ("opt out") or object. Thus, prior to final approval, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able

---

[2]  A separate motion will be filed requesting an award of attorneys' fees as a percentage of the overall settlement and the fees incurred by Plaintiff's counsel in the course of this litigation.

to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

District courts possess broad discretion in certifying a class. *Mr. Dee's Inc. v. Inmar, Inc*., No. 23-2165, 2025 WL 467566, at *3 (4th Cir. Feb. 12, 2025). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule, . . . and must do so with evidentiary proof." *In re Zetia (Ezetimibe) Antitrust Litig*., 7 F.4th 227, 234 (4th Cir. 2021) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541 (2011)). "It is the plaintiffs' burden to demonstrate compliance with Rule 23, but the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Wal–Mart*, 564 U.S. at 351).

## **ARGUMENT**

For the reasons set forth below, the proposed class meets the requirements for class certification and the proposed settlement can be approved under Rule 23(e)(2) for purposes of settlement. As such, certification of the class, appointment of the class representative, appointment of class counsel, and preliminary approval of the proposed settlement are appropriate, and notice of the proposed settlement should be provided to class members.

### I.     **The Proposed Settlement Class Satisfies the Elements of Rule 23(a).**

Fed. R. Civ. P. 23(a) imposes four prerequisites for a class action: (1) numerosity of parties ("numerosity"), (2) common questions of law or fact ("commonality"), (3) typicality of claims or defenses of the representative parties ("typicality"), and (4) adequacy of representation ("adequacy"). Apart from these enumerated requirements, "Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable." *Peters v. Aetna Inc*., 2

F.4th 199, 241–42 (4th Cir. 2021) (quoting *EQT Prod.*, 764 F.3d at 358). Described in other circuits as the "ascertainability" requirement, this principle provides that "a class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *EQT Prod.*, 764 F.3d at 358. The goal is not to identify every class member at this stage, however, but to define a class in such a way as to ensure that there will be some "administratively feasible [way] for the court to determine whether a particular individual is a member" at some point. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (quoting *EQT Prod.*, 764 F.3d at 358).

The proposed settlement class satisfies the requirements of ascertainability, numerosity, common question of law and fact, and typicality and adequacy of the proposed class representative.

### A. Ascertainability

Here, the settlement terms limit class membership to all non-Defendant persons who owned a condominium in the Renaissance Tower building on October 7, 2022. With this objective criteria, class members can be identified through Horry County property records and, if necessary, verified by their own objective documentation, including drivers' licenses, ownership records, utility bills, and/or through other sworn, documentary proof evidencing ownership at the relevant time. An abstractor's search of property records indicates the owners of 300 condominium units in the Renaissance Tower building on October 7, 2022, that are in the proposed settlement class, as reflected in the abstractor's report attached hereto as Exhibit B.

### B. Numerosity

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "no specified number is needed to maintain a class action, . . . a class of 40 or more members raises a presumption of impracticability of joinder based

on numbers alone*." In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th at 234 (quoting *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967); 1 *Newberg on Class Actions* § 3:12 (5th ed. 2021).

As reflected in the abstractor's report attached hereto as Exhibit B, there are approximately 300 members of the class, and 300 members is sufficiently numerous to satisfy Rule 23(a)(1)'s numerosity requirement.

### C. Commonality

While Rule 23 speaks in terms of common questions, "what matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal–Mart*, 564 U.S. at 350 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009) (emphasis in original). Thus, "[a] single common question will suffice if it is of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke[.]'" *Peters*, 2 F.4th at 242 (quoting *Wal–Mart*, 564 U.S. at 349-50).

There are sufficient common questions of law or fact to justify certification of the proposed settlement class, in satisfaction of Rule 23(a)(2). These include:

- Whether Defendants breached their fiduciary duties by failing to inspect, maintain, and repair the steel structural components under the first floor of the Renaissance Tower;

- Whether Defendants breached their fiduciary duties by failing to repair structural damage and prevent further damage to the steel structural components under the first floor of the Renaissance Tower;

- Whether Defendants breached their fiduciary duties by permitting damage to the steel structural components under the first floor of the Renaissance Tower to continue;

- Whether Defendants breached their fiduciary duties by failing to obtain a reserve study;

- Whether Defendants breached their fiduciary duties by failing to maintain reasonably sufficient reserves;

- Whether Defendants breached the Master Deed by failing to inspect, maintain, repair, or replace the steel structural components under the first floor of the Renaissance Tower;

- Whether Defendants acted *ultra vires* by consciously refusing to repair the structural steel components under the building in violation of the Master Deed's requirements that the Regime acting through the Board undertake the maintenance, repair, and replacement of the Common Elements;

- Whether Defendants were negligent, careless, reckless, and grossly negligent in failing to inspect, maintain, and repair the steel structural components under the first floor of the Renaissance Tower and otherwise failing to do so in a timely or appropriate manner in accordance with their duties and in accordance with the advice of an engineer(s);

- Whether Defendants were negligent, careless, reckless, and grossly negligent in failing to promptly repair damage to the steel structural components under the first floor of the Renaissance Tower;

- Whether Defendants were negligent, careless, reckless, and grossly negligent in failing to prevent or protect against further damage to the steel structural components under the first floor of the Renaissance Tower despite knowing that the situation was such that further damage to the steel components and other impacts to the structure and building would occur if preventative measures were not explored and implemented;

- Whether Defendants were negligent, careless, reckless, and grossly negligent in consciously permitting further damage to the steel structural components under the first floor of the Renaissance Tower;

- Whether Defendants were negligent, careless, reckless, and grossly negligent in failing to monitor or otherwise periodically inspect the damaged structural steel components;

- Whether Defendants were negligent, careless, reckless, and grossly negligent in failing to obtain a reserve study;

- Whether Defendants were negligent, careless, reckless, and grossly negligent in failing to maintain reasonably sufficient reserves and failing to account for the need for timely structural repairs of which they were intimately aware;

- Whether Defendants did not act in good faith by consciously disregarding their responsibilities to maintain, repair, and replace the Common Elements of the Regime;

- Whether Defendants did not act in good faith by egregiously and consciously failing to maintain, repair, and replace the Common Elements of the Regime in violation of their duties as directors;

- Whether Defendants did not act in good faith by failing to timely address and repair the steel structural elements below the building when they knew and understood that it was necessary to do so and where their purported rationale for refusing to do so was not supported by the facts uniquely known and otherwise reasonably available to them;

- Whether Defendants did not act in good faith by acting *ultra vires* in deciding not to maintain, repair, or replace the steel structural components below the building where the Master Deed requires the Regime acting through the Board to maintain, repair, and replace the Common Elements;

- Whether Defendants acted not in good faith by failing to disclose to, and consciously withholding from, the other members of the Regime, accurate and material information regarding the severity of the condition of the steel structural components under the building, that the structural steel components were experiencing progressive and ongoing further damage with the passage of time, that in 2018 and/or earlier the engineer retained by the Regime had advised the Board that repairs to the structural steel components needed to be performed promptly and that the failure to timely repair the structural steel components would create structural and safety problems for the building, and that at all relevant times the Regime had insufficient reserves to address the structural steel components despite the Board's specific knowledge of the extent of the issue for several years.

If a class were not certified, each individual property owner would offer the same evidence, including the same experts, against Defendants. Additionally, "[t]he commonality requirement— at least as it relates to a settlement class—is 'not usually a contentious one: the requirement is generally satisfied by the existence of a single issue of law or fact that is common across all class members and thus is easily met in most cases.'" *Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, 340 F.R.D. 242, 247 (D.S.C. 2021) (quoting 1 *Newberg on Class Actions* § 3:18 (5th ed. 2021)).

### D. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties" be "typical

of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied if the plaintiff's claim is not "so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim. That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." *Commissioners of Pub. Works of City of Charleston*, 340 at 247 (quoting *Deiter v. Microsoft Corp*., 436 F.3d 461, 466–67 (4th Cir. 2006)). Rather, the typicality requirement is met if a plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory. *Freeman v. Progressive Direct Ins. Co.*, 733 F. Supp. 3d 463, 489 (D.S.C. 2024) (citations omitted).

Plaintiff Nicole Blosser's claims are typical of the Class as a whole.  She is—and was on October 7, 2022—the owner of a condominium in the Renaissance Tower building.  Her claims arise out of the same alleged course of conduct that gives rise to the claims of the other class members, and her request for recovery is based on the same legal theory.

### E.  Adequacy of Representative and Counsel

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Freeman*, 733 F. Supp. 3d at 490 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231 (1997)). A conflict must be "fundamental" to defeat the adequacy requirement. *Id*. "A conflict is not fundamental when . . . all class members share common objectives and the same factual and legal positions and have the same interest in establishing the liability of defendants." *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (quotation and alteration omitted); *see also, Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430-31 (4th Cir. 2003).

The principal factor in determining the adequacy of plaintiffs as class representatives is whether they have the ability and commitment to prosecute the action vigorously. *S.C. Nat. Bank v. Stone*, 139 F.R.D. 325, 329 (D.S.C. 1991). This inquiry involves two issues: (i) "whether plaintiffs have any interest antagonistic to the rest of the class;" and (ii) whether plaintiffs' counsel are "qualified, experienced and generally able to conduct the proposed litigation." *Id*. (quoting *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718 (11th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220 (1988)). "The adequacy of plaintiffs' counsel, like that of the individual plaintiffs, is presumed in the absence of specific proof to the contrary." *Id*. Furthermore, courts generally hold that the employment of competent counsel ensures vigorous prosecution. *Id*. "[I]n a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." *Gunnells,* 348 F.3d 417 at 430 (quoting 32B Am .Jur. 2d Federal Courts § 1888 (1996)).

Plaintiff Nicole Blosser would adequately represent the interests of the members of the proposed settlement class, as required by Rule 23(a)(4).  This requirement is satisfied in large part by the absence of any disabling antagonism or intra-class conflict.  All members of the proposed settlement class sustained damages arising out of Defendants' uniform conduct toward the members of the proposed settlement class.  Plaintiff Nicole Blosser and her counsel share the same interest and commitment as class members in pursuing this action and her pursuit of claims on behalf of the class benefits all proposed settlement class members.

## II.     The Proposed Settlement Class Satisfies the Elements of Rule 23(b).

In addition to meeting the requirements of Rule 23(a), the party seeking certification must

show the proposed class meets the requirements of one of the three subsections of Rule 23(b). Plaintiffs here seek certification pursuant to Rule 23(b)(3), which aims to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponent into court at all." *Amchem*, 521 U.S. at 617. For this reason, Rule 23(b)(3) is a common vehicle for "mass tort class actions," which seek damages for widespread wrongful conduct. *Krakauer*, 925 F.3d at 655 (citing *Gunnells*, 348 F.3d at 424). Rule 23(b)(3) requires plaintiffs to demonstrate that the questions of law or fact common to class members predominate over any questions affecting only individual members ("predominance"), and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ("superiority"). The rule provides that the following matters are pertinent to these findings: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Rule 23(b)(3).

### A. Predominance

The predominance component of Rule 23(b)(3) is similar to but "more stringent" than the commonality requirement of Rule 23(a). *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006). "Predominance presupposes that a common question exists and measures the question's significance to the pending litigation. While commonality serves to ask whether classwide proceedings are even possible, predominance 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Stafford v. Bojangles' Restaurants, Inc*, 123 F.4th 671, 679 (4th Cir. 2024) (quoting *Amchem*, 521 U.S. at 623).

Here, the facts and legal elements relevant to the claims of all class members involve

common allegations: Plaintiffs assert damages due to the deterioration of the structural steel in the Renaissance Tower.

To support these allegations, Plaintiffs retained expert witnesses who reviewed Defendants' documents and additional publicly available documents and provided reports on the scope of repairs that were necessary compared to what would have been necessary had the deterioration been discovered earlier, the differential in costs between the two scenarios, and the damages suffered on account of the building being evacuated for 141 days. The predominating claim in this litigation involves Defendants' liability (or not) for the unimpeded deterioration of the structural steel leading to the building's evacuation during the period in question. Because these allegations pertain to Defendants' common conduct with respect to the proposed class members, the common issues surrounding this liability predominate over individualized concerns among the class members, particularly in the context of this settlement. As mentioned above, Defendants deny liability and dispute Plaintiffs' claims in their entirety, including Plaintiffs' arguments that their claims are appropriate for class certification, but have agreed to settle as a compromise to resolve the lawsuit.

### B. Superiority

Superiority is the second prong of Rule 23(b)(3) and "requires the court to analyze whether the proposed class action would be 'superior to other available methods for the fair and efficient adjudication of the controversy raised by the action.'" *Gunnells*, 348 F.3d at 449 (quoting Rule 23(b)(3)). This case involves common answers to common questions, which will apply to all class members, making a class action an efficient form of adjudication. *Freeman*, 733 F. Supp. 3d at 488. Further, there is nothing to indicate that individual class members have any significant interest in litigating their claims separately, as the costs of prosecuting each class member's property

damage claims individually would likely exceed each member's damages, given the amount of expert testimony that would be necessary to establish individual property damage claims. Because the recoveries of each individual class member will be relatively small, a class action is superior to other methods of adjudication. *Id*.

### III.     Plaintiff Nicole Blosser Should Be Appointed Class Representative

For the reasons stated *supra*, Part I.E, the appointment of Plaintiff Nicole Blosser as class representative is appropriate.

### IV.     Class Counsel Should Be Appointed

Rule 23(g)(1) requires the appointment of counsel when a court certifies a class. In selecting who shall serve as class counsel, Rule 23(g) requires courts to consider four enumerated factors: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *Bell v. Brockett*, 922 F.3d 502, 511 (4th Cir.  2019). Fed. R. Civ. P. 23(g)(1)(A). The rule also permits courts to consider any "other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id*. (quoting Fed. R. Civ. P. 23(g)(1)(B)).

As discussed in Section I.A.v, *supra*, Plaintiffs' counsel undertook considerable efforts to investigate the class claims, including discussions with and retention of experts in the fields of engineering, corporate governance, and property valuation.  Counsel have also fully litigated this case through extensive discovery, the development of expert opinions, motions practice, and mediation. Plaintiffs' counsel have considerable experience with complex litigation and specifically class action litigation. Plaintiffs' counsel have committed and will continue to commit

the time and resources necessary to ensure that the claims asserted on behalf of the class are vigorously pursued to the best of their ability and in the best interests of the class. Accordingly, F. Elliotte Quinn IV and Rachel Igdal of The Steinberg Law Firm, LLC and Jaan Rannik of Epting & Rannik, LLC should be appointed as class counsel.

V.      **Approval is Appropriate Under Rule 23(e)(2).**

When the court reviews a proposed class action settlement, it acts as a fiduciary for the class. *In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020). At the preliminary approval stage, the Court must assess the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *Commissioners of Pub. Works of City of Charleston*, 340 F.R.D. at 249. The Fourth Circuit has bifurcated this analysis into consideration of the fairness of settlement negotiations and the adequacy of the consideration to the class. *Id.* (citing *In re Jiffy Lube*, 927 F.2d at 158–59). At the preliminary approval stage, however, the Court need only find that the settlement is within "the range of possible approval." *Id*. (citations omitted).  The parties' settlement agreement is attached hereto as Exhibit C.[3]

A.  **The Proposed Settlement is Fair.**

The fairness analysis is intended primarily to ensure that a "settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion." *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015). The Fourth Circuit has identified four factors in analyzing a class settlement for fairness: "(1) the posture of the case at the time settlement was proposed, (2) the

---

[3] Counsel are working to obtain signatures to the settlement agreement from all parties, the settlement agreement filed as Exhibit C has the signatures counsel have obtained to date, and counsel will file an amended version of Exhibit C upon receipt of all signatures.  The parties agreed to redact the threshold in Section 8 of the settlement agreement but will file an unredacted version under seal for in camera review by the Court if the Court approves and directs such a sealed filing.

extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation." *Id*. (quoting *In re Jiffy Lube*, 927 F.2d at 159).  In assessing a proposed class action settlement, "a presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." *Brunson v. Louisiana-Pacific Corp.*, 818 F. Supp. 2d 922, 927 (D.S.C. 2011) (*quoting* Newberg & Conte, *Newberg on Class Actions* (3d ed. 1992) § 11.41).

The fairness factors, as applied to the present case, favor preliminary approval of the proposed settlement. First, collusion is absent. Plaintiffs' counsel have engaged in protracted negotiations where the outcome was uncertain. Next, Plaintiffs' counsel were fully and sufficiently informed to vigorously advocate on behalf of the proposed class. In addition to the formal discovery that the parties have undertaken, Plaintiffs' counsel have committed substantial resources to the investigation and legal analysis of the claims, and in retaining the experts necessary to assist them in pursuing these claims, such that they have obtained sufficient information to weigh the benefits of the proposed settlement against the risks of continued litigation.

### B.  The Proposed Settlement Is Adequate.

When a proposed settlement appears to fall within the range of "possible approval," it is appropriate to issue preliminary approval and direct notice to members of the settlement class.  *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 855 F. Supp. 825, 827-28 (E.D.N.C. 1994); *see also Manual for Complex Litigation* (Fourth) §§ 21.632, 21.633 (2004). In an analysis of the adequacy of a proposed settlement, the relevant factors to be considered may include: (1) the

relative strength of the case on the merits, (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated judgment, (5) the degree of opposition to the proposed settlement, (6) the posture of the case at the time settlement was proposed, (7) the extent of discovery that had been conducted, (8) the circumstances surrounding the negotiations, and (9) the experience of counsel in the substantive area and class action litigation. *Commissioners of Pub. Works of City of Charleston*, 340 F.R.D. at 250 (citing *Jiffy Lube*, 927 F.2d at 159).

While the Court will also consider these factors at the final fairness hearing, the weighing of these factors at this time demonstrates that the proposed settlement falls within the range of possible approval and, thus, is adequate for preliminary approval purposes. First, the strength of Plaintiffs' case, balanced against the assured relief under the proposed settlement, weighs in favor of the adequacy of the compromise. Plaintiffs' ability to prevail on the merits of this litigation, like all contested matters, is uncertain. Second, the relief afforded under the proposed settlement correlates adequately with the claims of damages and losses asserted by Plaintiffs in light of the available insurance.  It is Plaintiffs' counsel's opinion that the relief provides objectively superior results. Third, there can be no serious debate that this litigation could continue unabated at great expense and delay for the class. The outcomes of dispositive motions, class certification, and trial of this matter would certainly be the subjects of an appeal to the Fourth Circuit. In addition, proceeding to trial in this matter will require testimony from many or all of the six designated expert witnesses, thus increasing Plaintiffs' costs in a matter where the insurance coverage is limited and eroding. Fourth, it is difficult for Plaintiffs' counsel to conclude that the class can achieve a similar or better result should the settlement fail to move forward.

### C.  The Proposed Settlement Is Reasonable.

Although the Fourth Circuit has not enumerated any factors for assessing a proposed settlement's reasonableness, assessing whether a class settlement is "reasonable" involves examining the amount of the settlement. *1988 Tr. for Allen Child. Dated 8/8/88*, 28 F.4th at 527. "To the extent that reasonableness does any work not already performed by one of the other Rule 23(e)(2) requirements, we think it at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *Id.* The proposed settlement compensates class members for their alleged property damages at an equitable, pro rata rate that takes into consideration potential lost rental value measure of damages without the need for class members to take further action or incur the additional costs that would be necessary to prosecute their claims. Given the limited and eroding insurance available to satisfy class members and the various legal and merits defenses presented, the proposed settlement is reasonable in light of the scale of the litigation and the plaintiffs' chances of success at trial.

### VI.     Notice Should Be Directed to the Class.

Rule 23(e) provides that class members must be given notice of a proposed settlement and the opportunity to request exclusion from the class ("opt out") or object.  To that end, prior to final approval, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).

The proposed Notice Plan is attached hereto as Exhibit D, and the proposed Class Notice is included as Exhibit A to the Notice Plan.

The proposed Summary Notice accurately summarizes the settlement terms and advises

the class of its benefits, rights, and limitations. While the Summary Notice condenses the terms of the proposed settlement, it covers all relevant topics: the history of the litigation, the substantive terms of the proposed settlement, the class definition, the effect of the proposed settlement and release of claims, the conditions of the proposed settlement, what class members must do to exclude themselves from the class, what they must do if they wish to object to the settlement, and how to receive benefits under the settlement.  Importantly, both the Summary Notice and the Detailed Notice are written and formatted to communicate this information in a clear and concise manner that will be easily understood by class members who, presumably, are not lawyers. *See In re LandAmerica 1031 Exch. Servs., Inc. Internal Revenue Serv. § 1031 Tax Deferred Exch. Litig.*, No. 3:09-CV-00054, 2012 WL 13124593, at *7 (D.S.C. July 12, 2012) ("Class members are entitled to a notice which clearly and concisely states [the settlement terms] in plain, easily understood language[.]"). Notice of the proposed settlement should be directed under Rule 23(e)(1)(B) to all class members who would be bound by the proposed settlement in substantially the same manner as set forth in the proposed Notice Plan.

### VII.     The Settlement of the Derivative Claims Should Be Approved.

Plaintiffs also seek approval of the settlement of their derivative claims.  Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, parties must obtain approval from the District Court of the settlement of a derivative action.

The derivative claims in this action were asserted as a fallback legal position to the individual and class claims.  The damages here were primarily suffered, not by the HPR itself, but by the owners of the condominiums in the building on October 7, 2022, who lost the use of their units when the building was evacuated and who paid the majority of the assessments imposed to repair the steel issues.  While the Regime paid for the steel repairs, the source of the Regime's

funds for those payments were assessments imposed on the condominium owner members of the Regime.

The Settlement Agreement allocates $50,000.00 of the Settlement Amount to the derivative claims.  This number was reached because it approximates the purported increase in the insurance premiums for the Board of Directors' E&O coverage that resulted from the filing of this action, an expense which is borne by the HPR.  Accordingly, this allocation resolves the derivative claims on behalf of the HPR while maximizing the recovery to the class members.

### A.  Notice Should Be Directed to the Shareholders.

Rule 23.1 provides: "Notice of a proposed settlement . . . must be given to shareholders or members in the manner that the court orders."  Fed. R. Civ. P. 23.1(c).  The proposed Derivative Action Notice is attached as Exhibit C to the proposed Notice Plan which is Exhibit D hereto.  The Proposed Notice plan includes sending notice of the settlement of the derivative claims to each condominium unit in the Renaissance Tower building.

### CONCLUSION

For the reasons set forth herein, Plaintiffs, respectfully request that the Court enter an order certifying the settlement class, appointing Nicole Blosser as class representative, appointing F. Elliotte Quinn IV and Jaan G. Rannik as class counsel, preliminarily approving the settlement, and approving the proposed Notice Plan so that notice may be issued.  Defendants consent to this Motion and requested action for purposes of this settlement only and reserve all rights including the right to object to and challenge class certification in the event this settlement is not approved or otherwise is terminated.

Respectfully submitted,

THE STEINBERG LAW FIRM, LLC
3955 Faber Place Dr., Ste. 300
North Charleston, SC 29405
(843) 720-2800


By:     s/Elliotte Quinn
      F. Elliotte Quinn IV
      Fed. Bar No.: 12563
      SC Bar No.: 100450
      equinn@steinberglawfirm.com

      Rachel Igdal
      Fed. Bar No.: 12775
      SC Bar No.: 102744
      rigdal@steinberglawfirm.com


EPTING & RANNIK, LLC
Jaan G. Rannik
Fed. Bar No. 12621
46A State Street
Charleston, SC 29401
(843) 377-1871
jgr@epting-law.com

*Attorneys for Plaintiffs*


**WE CONSENT:**

GORDON REES SCULLY MANSUKHANI
677 King Street, Suite 450
Charleston, SC 29405
(843) 278-5900

By:     s/Patrick Norris
Peter G. Siachos (Fed. ID 7591)
John Patrick Norris (Fed. ID 10646)
Matthew K. Harrison (Fed. ID 12939)
psiachos@grsm.com
pnorris@grsm.com
mharrison@grsm.com

*Attorneys for Defendants*