UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Nicole M. Blosser, individually, derivatively on behalf of Renaissance Tower Horizontal Property Regime, and on behalf of a class of all others similarly situated; Azure Bleu, LLC; Edelyne Beauvais-Thomas; Jason E. Blosser; Eshellah D. Calhoun; Zachary G. Calhoun; David DiMaio; Linda DiMaio; Susan H. Ferguson; Four Parts Whole, LLC; Sharon M. Hubbard; Liberty Property Holdings SC, LLC; Carol A. Messenger; Jeffrey S. Palmer; Summalin, Inc.; Terry J. Tuminello; Shelley Ware; and Jonathan S. Williams,<br><br>    Plaintiffs,<br><br>  v.<br><br>Jeffrey L. Richardson; William S. Spears; Brent M. Whitesell; Laurie Z. Wunderley; Madeline R. Mercer; Catherine M. Gregor; Dennis J. Sassa; Tracy A. Meadows; Peter A. Grusauskas; and William Douglas Management, Inc.,<br><br>    Defendants. | C/A No.: 4:22-cv-3556-SAL<br><br>ORDER<br>GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, ATTORNEYS' FEES AND COSTS (ECF NO. 106) AND PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES (ECF NO. 105) |

  This matter is before the court on Plaintiffs' Motion for Final Approval of Settlement, Attorneys' Fees, and Costs, ECF No. 106, and Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, ECF No. 105 (together, the "Motions"). The court held a hearing on the Motions on October 21, 2025. For the reasons set forth below, the court grants the Motions.

## BACKGROUND

  On October 13, 2022, Plaintiffs filed this putative class and derivative action on behalf of

1

owners of condominiums in the Renaissance Tower building in Myrtle Beach, South Carolina, who owned those condominiums on October 7, 2022. The Defendants were members of the Board of Directors of the Renaissance Tower Horizontal Property Regime ("HPR"), the horizontal property regime for the Renaissance Tower building. Due to what the local building officials determined was deterioration of the building's structural steel that rendered the building unsafe, the Renaissance Tower building was evacuated, and the owners were not permitted to return to the building and use their condominiums for 141 days. Plaintiffs sought damages to compensate them for assessments they were required to pay for the repairs to the steel, the loss of use of their condominiums, and other damages they alleged resulted from the evacuation of the building and repairs of the structural steel.

The parties reached a settlement of all claims at a mediation on March 5, 2025, and subsequently entered into a formal settlement agreement (the "Settlement Agreement") providing for the resolution of all claims in this action. [ECF No. 106-1.] Defendants agreed to pay a total settlement amount of $1,250,000.00, and that total settlement amount will cover the class claims, the derivative claims, and the individual claims, and all amounts related to the claims, including the notice and administrative costs and the attorneys' fees and costs sought by Plaintiffs' counsel.

On May 9, 2025, Plaintiffs, with the consent of Defendants, moved for preliminary certification of the settlement class and approval of settlement of the class and derivative claims in this action. [ECF No. 96.] On June 16, 2025, the court entered an order (the "Preliminary Approval Order") preliminarily certifying the settlement class, preliminarily approving the settlement of the class and derivative claims, approving Plaintiffs' plan for notifying the class members of the class settlement and notifying the members of the HPR of the derivative claim

2

settlement, appointing Epiq Class Action & Claims Solutions, Inc. as the claims administrator ("Claims Administrator") for handling the notices and any requests for exclusion or objections and for administering the settlement funds, and establishing a common fund (the "Settlement Fund") to be administered by the Claims Administrator subject to specified terms. [ECF No. 103.] The court set a hearing for October 21, 2025, for consideration of final approval of the settlement and attorneys' fees and costs.

As set forth in the record, Plaintiffs then carried out the court-approved plan for notifying the class members and the members of the HPR. [ECF No. 106-3.] Specifically, the Claims Administrator sent the court-approved class notice to the class members by U.S. Mail using the current or last-known address of each class member as determined by database and records searches. The Claims Administrator also sent the court-approved derivative notice to the HPR and the HPR's members by U.S. Mail. The Claims Administrator and the parties did not receive any requests for exclusion from the class or objections to the settlement.

On August 22, 2025, Plaintiffs filed a Motion for Approval of Attorneys' Fees and Reimbursement of Expenses. [ECF No. 105.] On October 15, 2025, Plaintiffs filed a motion seeking final approval of the settlement, fees, and expenses. [ECF No. 106.]

The court heard the Motions on October 21, 2025, and counsel for all parties were present at the hearing, as well as several named plaintiffs and a member of the class not named as a plaintiff. No person present at the hearing indicated any desire to object to the settlement or request to be excluded from the class, and the parties and the court have not otherwise received any objections to the settlement or requests to be excluded from the class.

## **LEGAL STANDARD**

I.    **<u>Court Approval of Class Settlement</u>**

Rule 23(e) requires parties to seek approval from the district court before settling a class action. Fed. R. Civ. P. 23(e). Judicial approval is necessary to ensure that the rights of absent class members are adequately protected. *See In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Clark v. Experian Info. Solutions, Inc.*, 219 F.R.D. 375, 378 (D.S.C. 2003). To that end, Rule 23(e) provides that class members must be given notice of a proposed settlement and the opportunity to request exclusion from the class ("opt out") or object. "It is the plaintiffs' burden to demonstrate compliance with Rule 23, but the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

"The primary concern addressed by the requirements of Rule 23 is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-MN-2873-RMG, 2024 WL 4866717, at *7 (D.S.C. Nov. 22, 2024) (citing *In re Jiffy Lube*, 927 at 158). Under Rule 23(e)(2), the court may approve a class settlement only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

4

>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. Rule 23(e)(2). The Fourth Circuit developed multifactor standards to apply when assessing whether a class action settlement is "fair, reasonable, and adequate" under Rule 23(e)(2). *Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020); *see also Jiffy Lube*, 927 F.2d at 159. These "factors for assessing class-action settlements almost completely overlap" with the Rule 23(e)(2) factors. *Lumber Liquidators*, 952 F.3d at 484 n.8; *see also Herrera v. Charlotte Sch. of L., LLC*, 818 F. App'x 165, 176, n.4 (4th Cir. 2020) ("[T]his Court continues to apply its own standards as they almost completely overlap with the new Rule 23(e)(2) factors, rendering the analysis the same.").

Specifically, the Fourth Circuit identified the following factors in assessing a settlement's fairness: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of the class action litigation." *Lumber Liquidators*, 952 F.3d at 484. While the Fourth Circuit has not enumerated factors for assessing a settlement's reasonableness, it has identified the following factors for assessing a settlement's adequacy: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Id.*

5

When a district court preliminarily approves a settlement after a hearing, the proposed settlement enjoys a presumption of fairness. *See Berkeley v. U.S.*, 59 Fed. Cl. 675, 681 (2004) ("Settlement proposals enjoy a presumption of fairness afforded by a court's preliminary fairness determination."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("This preliminary determination establishes an initial presumption of fairness . . . ."); *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013) (accord); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (accord); *Gaston v. LexisNexis Risk Sols. Inc.*, No. 516CV00009KDBDCK, 2021 WL 2077812, at *1 (W.D.N.C. May 24, 2021) (accord).

## II.     Court Approval of Derivative Settlement

Under Rule 23.1 of the Federal Rules of Civil Procedure, "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval" and "[n]otice of a proposed settlement, voluntary dismissal, or compromise, must be given to shareholders or members in the manner that the court orders." In reviewing a proposed settlement of a derivative action, a court is to "exercise judgment sufficiently independent and objective to safeguard the interests of shareholders not directly involved in the action." *Greenspun v. Bogan*, 492 F.2d 375 (1st Cir. 1974). In doing so, a court generally makes the same fair, reasonable, and adequate determination made as to a class settlement. *See In re Wendy's Co. Shareholder Deriv. Action*, 44 F.4th 527, 536 (6th Cir. 2022) ("To settle a derivative action, the parties must obtain the district court's approval. And to garner the court's approval, the proposed agreement must be reasonable, fair and adequate." (internal citations and quotations omitted)); 7C Wright & Miller, *Federal Practice and Procedure* § 1839 (3d ed. 2022) ("The generally accepted standard is that the agreement must be fair and adequate in light of the interests of all the parties . . . .").

**III.     Court Approval of Fees and Costs**

When, as here, a class settlement results in the creation of a common fund for the benefit of the class members, reasonable attorneys' fees may be awarded from the common fund. Fed. R. Civ. P. 23(h); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (explaining the common fund doctrine as a "well recognized exception to the general principle that requires every litigant to bear his own attorney's fees [which] . . . rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense").

In determining the reasonableness of the fees, courts generally employ one of two methods: (i) the "lodestar" method of multiplying the number of hours expended by a reasonable hourly rate, or (ii) the self-explanatory "percentage-of-fund" method. *See, e.g.*, *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 461–62 (S.D.W. Va. 2010). When using the lodestar method, courts may also employ a multiplier to increase the award of fees, taking into account various factors such as the complexity of the case, the risks involved, and the beneficial results obtained. *Id.*

When using the "percentage-of-fund" method, courts usually find an amount representing 25% to 35% of the settlement fund is reasonable. In making this determination, courts often compare the amount of the requested award to the lodestar amount (a "lodestar cross-check") to prevent a windfall to the plaintiffs' attorneys relative to the effort expended. *Kay Co.*, 749 F. Supp. 2d at 462–63. A fee request consistent with the lodestar amount is presumptively reasonable; indeed, "courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Id.* at 470.

The Fourth Circuit has not announced a preferred method for determining the reasonableness of fees, instead leaving it to the district court's discretion. *McAdams v. Robinson*,

26 F.4th 149, 162 (4th Cir. 2022). Nor has the Fourth Circuit identified factors to be considered by the district court in making its determination. *Id.* However, the "prevailing view among courts [is] that the percentage method is the superior method for calculating attorneys' fees from a common fund . . . ." *Kay Co.*, 749 F. Supp. 2d at 463.

A so-called "lodestar cross-check" is the comparison of (1) a calculation of attorneys' fees using the percentage-of-recovery method to (2) a rough or imprecise lodestar calculation. *In re: Lumber Liquidators*, 952 F.3d at 482 n.7. The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar. *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 688 (D. Md. 2013). "[W]here the lodestar fee is used 'as a mere crosscheck' to the percentage method of determining reasonable attorneys' fees, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *In re Royal Ahold N.V. Sec.*, 461 F.Supp.2d 383, 385 (D. Md. 2006) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

To calculate the lodestar number the court multiplies a reasonable hourly rate by the number of hours reasonably expended. *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 204 F. Supp. 3d 846, 850 (D.S.C. 2016). A court may presume that a percentage of recovery fee request is reasonable when it is less than the lodestar number. *McAdams*, 26 F.4th at 162; *Weckesser*, 402 F. Supp. 3d at 307 (fee request was reasonable where it was lower than the lodestar cross-check).

## DISCUSSION

### I. Certification of Settlement Class

For certification under Rule 23 of the Federal Rules of Civil Procedure, the proposed settlement class must meet the requirements of numerosity, commonality, typicality, and adequacy

of representation. In addition, the proposed settlement class must satisfy one of the subsections of Rule 23(b).

On June 16, 2025, the court preliminarily certified the proposed settlement class, finding the proposed class met the requirements for certification. Since granting that preliminary approval, Plaintiffs sent notice of the proposed class certification and settlement as directed in the Preliminary Approval Order. The parties and the Claims Administrator report that they did not receive any objections to the proposed class certification and settlement, and the court is not otherwise aware of any objections. No person communicated any objection to the court, and no person appeared at the final fairness hearing to voice any objection. Accordingly, no argument or information has been presented to cause the court to second-guess its conclusions in the preliminary approval order that the proposed class meets the requirements for certification. Having carefully reviewed the parties' information and arguments, the court confirms its prior conclusion—the proposed class meets the requirements for certification.

Specifically, the court confirms its prior holding that the proposed settlement class is ascertainable. The settlement class is defined by objective criteria—ownership of real property on a particular date—allowing the identification of class members through public records and if necessary, by verification using class members' documentation. Moreover, Plaintiffs effectively ascertained the membership of the class prior to the court granting preliminary approval with Plaintiffs having had an abstractor search property records to identify the owners on October 7, 2022, of the 300 condominium units in the proposed class.

The court likewise confirms its prior holding that the proposed class satisfies the numerosity requirement of Rule 23(a)(1) because there are approximately 300 members of the

proposed class as shown by the abstractor's report produced by Plaintiffs. While "no specified number is needed to maintain a class action, . . . a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021). Even with less than forty members, a class can meet the numerosity requirement. *See, e.g.*, *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (stating a class of eighteen members met the numerosity requirement).

The court further confirms its holding that the commonality requirement of Rule 23(a)(2) is met. For the commonality requirement, "what matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (emphasis in original). Thus, "[a] single common question will suffice if it is of such nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke . . . ." *Peters v. Aetna, Inc.*, 2 F.4th 199, 242 (4th Cir. 2021) (internal quotations omitted). As detailed by the parties and as found in the preliminary approval order, there are various common questions present here where the resolution of the common question across all class members will resolve central issues for the claims across all the class members.

The court also confirms its prior holding that the typicality requirement of Rule 23(a)(3) is met. This requirement is met if the plaintiff's claim is not "so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim," but that is "not to say that typicality requires that the plaintiff's claim and the claims of the class members be perfectly identical or perfectly aligned." *Commissioners of Pub. Works of City of Charleston* v. *Costco Wholesale Corp.*, 340 F.R.D. 242, 247 (D.S.C. 2021). Plaintiff and class

representative Nicole Blosser's claims are typical of the proposed class as a whole. She was, on October 7, 2022, the owner of a residential condominium in the Renaissance Tower building. She asserts her claims as arising from the same course of conduct and based on the same legal theories as the claims for the class members. The court is not aware of any difference between Plaintiff Blosser's claims and the absent class members' claims, much less a difference that could cause any concerns as to typicality.

The court confirms its prior holding that Plaintiff Blosser and Plaintiffs' counsel are adequate representatives of the class. In reaching this determination, the court considered whether Plaintiff Blosser and Plaintiffs' counsel will fairly and adequately protect the interests of the class, including whether there are any antagonistic interests between Plaintiff Blosser and the class members, whether Plaintiffs' counsel are competent to undertake this litigation, and whether Plaintiff Blosser and Plaintiffs' counsel have demonstrated vigorous prosecution of the class claims throughout this case.

Finally, the court confirms its prior holding that the proposed class meets the predominance and superiority requirements for certification under Rule 23(b). The claims in this action concern whether the defendants breached duties owed to the horizontal property regime and the condominium owner members of that regime through alleged acts and omissions made as to the entire regime and all its condominium owner members. The predominating questions in this action are whether the Defendants breached duties in relation to the class as a whole, whether any such breach caused damages to the class as a whole, the types and amounts of damages caused, and whether the Defendants have any legal defense that bars claims for all class members. While the amount of damages may differ among the class members, the parties have shown through the

method of dividing the proposed class settlement among the class members, that the differing amounts of damages among the class members can be determined using objective criteria and mathematical formulas. Deciding those common questions on a classwide basis would be far superior to other available methods for resolution of the claims. Requiring the owners of each condominium to pursue their claims in a separate action or as named plaintiffs together with other owners in one action would be inefficient, duplicative, create the potential for inconsistent outcomes on claims that are essentially legal and factually identical, and likely cost-prohibitive due to the numerous expert, deposition, and general litigation costs a class member would likely need to incur to prosecute the claims.

Accordingly, a settlement class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is hereby certified, with the certified class defined as:

> All persons or entities who owned a residential condominium unit in the Renaissance Tower Horizontal Property Regime on October 7, 2022, excluding: (a) any Judge presiding over this action and members of their families and (b) Defendants and their spouses, parents, children, siblings, and any entity for which a majority ownership is held alone or in combination by Defendants and their spouses, parents, children, and siblings.

## II.     Appointment of Class Representative and Class Counsel

Having certified the class and considering the work Plaintiff Blosser and Plaintiffs' counsel have done in identifying, investigating, and pursuing claims in this action; counsel's experience in handling complex litigation; counsel's knowledge of the applicable law; and the time and financial resources Plaintiff Blosser and Plaintiffs' counsel have expended in representing the class, the court appoints Nicole M. Blosser as the class representative, and appoints F. Elliotte Quinn IV and Rachel Igdal of The Steinberg Law Firm, LLC and Jaan G. Rannik of Epting & Rannik, LLC as class counsel.

### III.     Final Approval of Class Settlement

Under Rule 23(e)(1) the court will approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1). At the preliminary approval stage, the court made an initial determination that the proposed settlement is fair, reasonable, and adequate. At this final approval stage, the court confirms those preliminary determinations.

The settlement is fair as shown by the agreement having been reached through arm's length negotiations facilitated by a mediator, and only after extensive investigation and discovery had been performed thereby allowing the parties' and their counsel to intelligently assess the case and the benefits and risks of settlement versus further litigation. Additionally, the parties' counsel is experienced in similar litigation, and there were no objections to the settlement.

The settlement is also adequate. In reaching the determination that the settlement is adequate, the court considered:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expenses of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*Lumber Liquidators*, 952 F.3d at 484. Plaintiffs highlight that "[t]his was a difficult case that involved factual and legal obstacles that made class certification and Plaintiffs' ability to prevail on the merits uncertain." [ECF No. 106 at 11.] Plaintiffs also highlight the limited and eroding insurance coverage available. [ECF No. 106 at 3.] The court finds that the likelihood of substantial future costs and delay weighed against the uncertain outcome of further litigation favors approving the proposed settlement.

Finally, the court finds the class settlement is reasonable. Assessing whether a class settlement is "reasonable" involves examining the amount of the settlement. *1988 Tr. for Allen*

13

*Child. Dated 8/8/88*, 28 F.4th 513, 527 (4th Cir. 2022). "To the extent that reasonableness does any work not already performed by one of the other Rule 23(e)(2) requirements," it would be to "ensure[] the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *Id.* Plaintiffs explain that the net class settlement amount after payment of the requested attorneys' fees and costs would total $703,211.33, resulting in payments to class members per condominium ranging from $1,378.61 to $3,446.91. [ECF No. 106 at 12.]

Based on the record, the court is satisfied that due and adequate notice of the settlement was sent to the Class Members. Again, the court received no objections to the settlement, and the court finds that settlement amount is reasonable, especially in light of the costs and risks of continued, protracted litigation and the limited, eroding insurance coverage available. Accordingly, the court finally approves the class action settlement.

## IV.    Final Approval of Settlement of Derivative Claims

The parties also seek final approval of the settlement of the derivative claims asserted in this action, which the court previously preliminarily approved. Here, too, the court finds that Plaintiffs provided due and adequate notice to the HPR and its members of the proposed settlement of the derivative claims, and the parties and the court have not received any objections to the proposed settlement of the derivative claims. The court generally finds the settlement of the derivative claims to be fair, adequate, and reasonable for the same reasons as the class settlement. The derivative claim settlement was reached through the same arm's length bargaining and extensive discovery and litigation as the class settlement. The derivative claims also faced the same factual and legal difficulties, limited and eroding insurance coverage, and costs and risks of further litigation as the class claims. Moreover, as explained by Plaintiffs in their briefing and at the hearing, the derivative claims played a secondary and fallback role in this case. While Plaintiffs

alleged the HPR and the condominium owners were all harmed, Plaintiffs argue, and the court accepts Plaintiffs' reasoning, that the condominium owners at the time of the evacuation—i.e., the class members—bore the vast majority of the damages because, in addition to their loss of use of their condominiums during the evacuation period, those owners either paid assessments to the HPR to fund the repairs of the building or sold their condominiums at a reduced value to purchasers expecting assessments. Additionally, there were no objections to the proposed settlement of the derivative claims. For the foregoing reasons, the court finds the proposed derivative settlement to be fair, adequate, and reasonable and finally approves the settlement of the derivative claims.

V.     **Approval of Attorneys' Fees and Costs of Plaintiffs' Counsel**

Plaintiffs' counsel moved for a total award of $436,788.67 in attorneys' fees and costs, with that total consisting of $312,500.00 in attorneys' fees and $124,288.67 in costs. The court received no objections to Plaintiffs' counsel's request for this award.

Plaintiffs' counsel undertook the representation pursuant to a contingency fee agreement, whereby counsel would receive 35% of any recovery plus reimbursement of case-related expenses. However, Plaintiffs' counsel has reduced its fee request to 25% of the recovery. The court finds this to be reasonable.

A review of the *Barber* factors,[1] as discussed at length in Plaintiffs' motion for the award, demonstrates, and the court concludes, that Plaintiffs' counsel expended significant effort, time, and financial resources to obtain a successful resolution of this action and the issues presented in the case were difficult and complex. Plaintiffs' counsel also took on substantial risk in expending

---

[1] The underlying purpose of this analysis using the *Barber* factors is to ensure that Plaintiffs' counsel are not disproportionately remunerated relative to the effort, complexities, and risks in involved in the representation. As discussed *infra*, the court is entirely satisfied that the fee request is reasonable and proportionate.

15

their effort, time, and financial resources with the possibility of receiving no compensation for those expenditures. The court finds the $124,288.67 in costs to be reasonable and necessary to the favorable result obtained by Plaintiffs in this case. Given the complexity of the factual and legal issues in the case, the skill, effort, and resources that Plaintiffs' counsel expended on the case, the risk incurred by Plaintiffs' counsel, the results obtained, the percentage of the recovery requested as a fee, the court finds the attorneys' fees sought to be likewise reasonable.

Finally, a lode-star crosscheck confirms the reasonableness of the fee request. Using counsel's estimates of time spent, the lodestar amount is $320,215.00, which is greater than the requested fee amount. Accordingly, the fee request is reasonable. *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022). Therefore, the request for fees and costs is approved.

## **CONCLUSION**

For the foregoing reasons, the court **ORDERS** as follows:

1. Plaintiffs' Motion for Final Approval of Settlement, Attorneys' Fees, and Costs, ECF No. 106, and Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, ECF No. 105, are **GRANTED**;

2. The court certifies the following class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons or entities who owned a residential condominium unit in the Renaissance Tower Horizontal Property Regime on October 7, 2022, excluding: (a) any Judge presiding over this action and members of their families; and (b) Defendants and their spouses, parents, children, siblings, and any entity for which a majority ownership is held alone or in combination by Defendants and their spouses, parents, children, and siblings.

3. The court appoints Nicole M. Blosser as the class representative, and appoints F.

Elliotte Quinn IV and Rachel Igdal of The Steinberg Law Firm, LLC and Jaan G. Rannik of Epting & Rannik, LLC as class counsel;

    4.      The court approves the settlement of the class claims;

    5.      The court approves the settlement of the derivative claims;

    6.      The court approves the requested award of attorneys' fees and costs;

    7.      The court orders Defendants, as provided in Settlement Agreement, to deliver payment of $110,000.00 to Plaintiffs' counsel within thirty days of the date of this Order, with that amount constituting the $50,000.00 to be paid to the HPR and the $60,000.00 to be paid to the named plaintiffs pursuant to the terms of the Settlement Agreement;

    8.      The court orders Defendants, as provided in the Settlement Agreement, to make payment of $1,140,000.00 to the Settlement Fund within thirty days of the date of this Order;

    9.      The court orders that, as set forth in the Preliminary Approval Order, the Settlement Fund shall be used to make payments to the class members under the terms of the Settlement Agreement and to pay $436,788.67 to Plaintiffs' counsel as the approved award for attorneys' fees and costs.

    **IT IS SO ORDERED.**

November 19, 2025  
Columbia, South Carolina

Sherri A. Lydon  
United States District Judge